**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MANHART, individually and on behalf of all others similarly situated, | ) ) | |
| | ) | No. 1:24-cv-8209 |
| Plaintiff, | ) ) | |
| | ) | Hon. Mary M. Rowland |
| v. | ) ) | |
| | ) | Magistrate Judge Keri L. |
| AJP EDUCATIONAL FOUNDATION, INC., d/b/a | ) | Holleb Hotaling |
| AMERICAN MUSLIMS FOR PALESTINE, et al., | ) ) | |
| Defendants. | ) | |

**DEFENDANT WESPAC FOUNDATION INC'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>**

## **INTRODUCTION**

Defendant WESPAC Foundation, Inc. ("WESPAC") submits this memorandum of law in support of its Motion to Dismiss Plaintiff Christopher Manhart's First Amended Complaint ("Amended Complaint" or "FAC").

For the Court's convenience, and to avoid needless duplication, WESPAC respectfully adopts and incorporates by reference, as if fully set forth herein, the arguments of co-defendants which are applicable to all defendants. Those include, without limitation, the arguments contained in the Memorandum of Law in Support of Defendant Jewish Voice for Peace's Motion to Dismiss ("JVPs Brief") that (1) this SLAPP suit should be dismissed pursuant to the Illinois Citizen Participation Act; (2) there is no private right of action for obstructing highways under Illinois law; (3) Plaintiff lacks standing to maintain a suit for public nuisance; (4) Plaintiff fails to state a claim for false imprisonment; and (5) Plaintiff fails to state claims for in-concert and conspiracy liability.[1]  This brief will focus on the additional reasons why Plaintiff's Amended Complaint should be dismissed specifically against WESPAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and Rule 12(b)(2) for lack of personal jurisdiction over WESPAC.

Plaintiff alleges he was the victim of a massive conspiracy to "blockade" traffic near O'Hare International Airport on April 15, 2024.  According to Plaintiff, this conspiracy was hatched "to extort political change from faraway luminaries[.]" *See* FAC ¶¶ 1-2.  In Plaintiff's telling, he spent "over an hour" in his car due to the "blockade."  *Id.* ¶ 72.  Putting aside whether Plaintiff accurately describes the events at issue or whether Plaintiff's allegations state a claim against *any* Defendant, the Complaint should be dismissed against WESPAC because of Plaintiff's serial failure to plead that *anyone* acting on WESPAC's behalf did *anything* in relation

---

[1] Plaintiff has dropped the aiding and abetting liability claims against WESPAC contained in his original Complaint.

to the alleged events - or to allege any other cognizable theory of liability.

Initially, it must be noted that the Amended Complaint has abandoned all the inflammatory – and false – allegations Plaintiff had offered previously that sought to tie WESPAC directly to the events at issue. Plaintiff's original complaint made a range of conclusory statements about things American Muslims for Palestine ("AMP"), National Students for Justice in Palestine ("NSJP"), U.S. Campaign for Palestinian Rights ("USCPR") and WESPAC supposedly did collectively in relation to the O'Hare protest, including that: (i) "Defendants AMP, NSJP USCPR, and WESPAC…implemented the NSJP toolkit by planning, sponsoring, and then publicizing (during and after) large-scale barricades…This blockade strategy was only the beginning of Defendants NSJP, AMP, USCPR, and WESPAC's propaganda offensive on behalf of Hamas"; (ii) "Defendants NSJP, WESPAC, USCPR, and AMP started to organize disruptive activities beyond college campuses"; (iii) "Defendants AMP, NSJP, USCPR, and WESPAC, acting as Hamas's propaganda arm…implemented that strategy of disruption"; (iv) "Defendants AMP, NSJP, USCPR, and WESPAC were instrumental in coordinating the national A15 Action plan and the plan specific to the Chicago area"; (v) "Defendants AMP, NSJP, USCPR, and WESPAC [] furthered the A15 Action plan"; (vi) "Dissenters – in addition to AMP, NSJP, USCPR, and WESPAC - was [sic] instrumental in identifying and justifying the key chokehold in the Chicago area for executing that specific A15 Action blockade"; (vii) "Defendants AMP, WESPAC, NSJP, JVP and Dissenters planned and/or advertised the blockade beforehand and amplified the tortious conduct via social media." Complaint ¶¶ 44, 46, 50, 54-56, 104.

Plaintiff did not abandon those allegations because of an attack of good conscience. Rather, on October 21, 2024, WESPAC sent a Rule 11 letter to Plaintiff's counsel, pointing out, among other things, that Plaintiff had not offered a single allegation to substantiate any of those

false conclusory assertions that had been offered in impermissible group-pleading fashion. In response, Plaintiff simply abandoned these allegations as they related to WESPAC. *See* FAC ¶¶ 46, 50, 54-56, 104. Obviously, Plaintiff's surrender demonstrates there never was any remotely good-faith basis to proffer the offending allegations against WESPAC, an issue to be addressed more fully another day in a separate motion.

As to the allegations in the Amended Complaint against WESPAC, Plaintiff asserts only that WESPAC has acted generally as a fiscal sponsor to NSJP (collecting donations for and disbursing them to NSJP), promoted unspecified NSJP events through its social media accounts, and "indicated that their missions were aligned." *See* FAC ¶¶ 15, 17. But now, Plaintiff is careful not to allege that WESPAC promoted, raised money for, or did anything else relating to any protest at O'Hare.

As such, the Amended Complaint against WESPAC fails for two independent reasons, just as Plaintiff's original pleading did. First, Plaintiff fails to state a claim. Plaintiff's wild theory – that WESPAC's acting generally as a fiscal sponsor automatically makes NSJP an agent of WESPAC's, thereby subjecting it to vicarious liability for anything NSJP allegedly does to anyone, anywhere – has no legal basis and actually flies in the face of agency law. Given the fatal failings in Plaintiff's legal theories and the absence of any factual allegation specifically tying WESPAC to the O'Hare protest, Plaintiff has failed entirely to plead plausible claims against WESPAC. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, there is no basis to exercise personal jurisdiction over WESPAC which, as Plaintiff concedes, is a New York entity. *See* FAC ¶ 17. Plaintiff does not allege that WESPAC did anything in Illinois, let alone engage in tortious conduct in the state. Thus, there cannot be general or specific personal jurisdiction here.

Put simply, Plaintiff does not have – and never has had -- any valid basis to assert claims against WESPAC, and those claims should be dismissed with prejudice.

**RELEVANT FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT**

The Amended Complaint alleges that a group of perhaps 50 people blocked traffic near O'Hare International Airport on April 15, 2024.  FAC ¶ 3.  According to Plaintiff, this action, which caused "traffic into the airport [to be] stopped for almost three hours," was of such international significance that it must have had the blessing of Hamas and the Iranian Revolutionary Guard Corps.  *Id.* ¶¶ 2-4; *see also id.* ¶ 5 ("Americans were dragged into the conflict because the Defendants and foreign terrorist organization Hamas have decided a propaganda offensive in America is their best weapon against Israel.").  Plaintiff claims that "[v]acations, interviews, weddings, and other important lifetime events were cast aside as the activists forced the public to participate in their demonstration by falsely imprisoning them. Commuters were stuck waiting in the middle of the highway trapped in their cars for hours with no inkling as to when their freedom of movement would be restored or whether their plans were salvageable."  *Id.* ¶ 4.  As for Plaintiff, he was in traffic for "over an hour."  *Id.* ¶ 71.

Without addressing the credibility of Plaintiff's assertions that a global conspiracy involving designated terrorist groups was formed to stop cars at O'Hare, or whether people in traffic can claim to have been falsely imprisoned (they cannot, as demonstrated in JVP's Brief), it is clear that WESPAC had nothing to do with these events.  In fact, WESPAC's complete lack of involvement is underscored not only by the absence of any allegations tying WESPAC to the O'Hare incident in the Amended Complaint, but also by the fact that Plaintiff – under threat of a motion for sanctions – decided to abandon the false, collectively pled allegations he made in his original pleading about WESPAC's supposed involvement.

4

To be clear, even now, in his second pleading, Plaintiff does not claim that anyone on behalf of WESPAC actually:

- Knew of any alleged "blockade strategy" or "disruptive activities beyond college campuses";

- Communicated with anyone about any alleged "blockade strategy" or "disruptive activities beyond college campuses";

- Called for anyone to participate in any alleged "blockade strategy" or "disruptive activities beyond college campuses";

- Knew of any alleged "national A15 Action plan and the plan specific to the Chicago area," including the alleged "key chokehold":

- Communicated with anyone about any alleged "national A15 Action plan and the plan specific to the Chicago area," including the alleged "key chokehold";

- Called for anyone to participate in any alleged "national A15 Action plan and the plan specific to the Chicago area," including in relation to the alleged "key chokehold";

- Was anywhere near Chicago at the relevant times (or even in Illinois);

- Made any statement via social media or otherwise in relation to the alleged protest or "blockage"; or, in fact,

- Did *anything at all* relating to the alleged conduct at O'Hare International Airport.

Rather, the only factual allegations Plaintiff now offers against WESPAC have nothing to do with the relevant events. Plaintiff only asserts that WESPAC is a nonprofit located in New York, was a fiscal sponsor for NSJP (and other groups that are not even parties here), and, as fiscal sponsor, collected and disbursed donor funds. FAC ¶ 15. Plaintiff also asserts WESPAC has promoted NSJP events through social media but critically does not – and cannot – allege that WESPAC promoted this protest at issue, or anything related to it. *See Id.* ¶ 17. In fact, as noted above, Plaintiff has abandoned his prior allegation that "Defendants AMP, WESPAC, NSJP, JVP and Dissenters planned and/or advertised the blockade beforehand and amplified the tortious conduct via social media." *Compare* Complaint ¶ 105 *with* FAC ¶ 104. Plainly, nothing

Plaintiff alleges in the Amended Complaint states any claim against WESPAC, let alone in connection with alleged events at O'Hare.

**ARGUMENT**

### A.     THIS ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST WESPAC

A district court must dismiss a cause of action if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Also, courts need not accept as true conclusory legal allegations cast in the form of factual allegations. *Id.*

WESPAC is sued in the Amended Complaint only in Counts IV, V and VI, and Counts VII, VIII, and IX. Fittingly, Plaintiff has entirely abandoned the aiding and abetting claims he frivolously asserted against WESPAC in his original pleading. *Compare* Count X, Count XI, and Count XII of the original Complaint *with* Count X, Count XI, and Count XII of the Amended Complaint. But Plaintiff's remaining liability theories are no less frivolous.

In Counts IV, V, and VI, Plaintiff claims WESPAC is vicariously liable as the principal of NSJP and also liable under an "[i]n-concert liability" theory for a statutory count of obstructing highways, and the torts of public nuisance and false imprisonment. Amended

Complaint ¶¶ 105-106 (Count IV), 114-115 (Count V), 117-120 (Count VI).[2]   As we noted

above, at 1, we adopt and incorporate herein the reasons contained in JVP's Brief as to why the

obstruction, nuisance, false imprisonment and in-concert liability claims are substantively

defective as to all defendants.   We focus here on the additional defects in Plaintiff's agency,

vicarious liability, in-concert liability and conspiracy claims as they apply to WESPAC.

### 1.  Plaintiff Does Not Plausibly Allege Agency or Vicarious Liability

Plaintiff's agency argument on his vicarious liability theory is just this:

> As fiscal sponsor for NSJP, WESPAC was responsible to "retain control and
> discretion over the use of funds" allocated to NSJP, and to "maintain[] records
> establishing that the funds were used for section 501(c)(3) purposes" [sic] Rev.
> Rul. 68-489, 1968-2 C.B. 210.  Accordingly, during the relevant time, NSJP acted
> as an agent of WESPAC, thereby subjecting WESPAC to vicarious liability under
> Illinois law.  *See Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 ¶ 42 (Ill. 2012)
> (principal may be held liable for torts of an agent even if the principal does not
> engage in any conduct directed at the plaintiff).

FAC ¶ 17

As a threshold matter, Plaintiff's observation that the IRS requires fiscal sponsors to

retain control and discretion over funds sent to sponsored entities to ensure sponsors do not lose

their tax-exempt status is nothing more than an irrelevant legal conclusion that does not amount

to an allegation that WESPAC actually *did* anything to make it liable to Plaintiff in this case.  As

such, the allegation does not remotely state a claim, to whatever extent Plaintiff would claim it

does.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (courts need not accept as true

conclusory legal allegations).

Moreover, Plaintiff's contention that the cited IRS Revenue Ruling, without more, makes

NSJP an agent of WESPAC, is utterly devoid of legal basis.  WESPAC has been unable to find

---

[2] Plaintiff has abandoned his prior theory as to why WESPAC had in-concert liability for these three claims, which was based on the false allegation that "Defendants AMP, WESPAC, NSJP, JVP and Dissenters planned and/or advertised the blockade beforehand and amplified the tortious conduct via social media, where they proudly announced their participation."  Complaint ¶ 105 (Count IV); *id.* ¶ 112 (Count V); *id.* ¶ 119 (Count VI).

any case addressing, let alone supporting, Plaintiff's suggestion that a fiscal sponsor-sponsoree relationship inherently creates a principal-agent relationship, indicating how far-fetched that position is. This is unsurprising, considering that the principles of agency are actually to the contrary.

Under Illinois law, "[a] complaint relying on an agency relationship must plead facts that, if proved, could establish the existence of an agency relationship. A mere allegation of agency is insufficient to establish actual agency. Proof of actual agency requires a showing that (1) a principal/agent relationship existed, (2) the principal controlled or had the right to control the conduct of the agent, and (3) the alleged conduct of the agent fell within the scope of the agency." *Bogenberger v. Pi Kappa Alpha Corp.*, 104 N.E.3d 1110, 1119 (Ill. 2018). The FAC contains only a mere allegation of agency, with no supporting factual allegations that might plausibly establish *any* of those three requisites.

Similarly, under the Restatement (Third) of Agency, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." § 1.01. "An essential element of agency is the principal's right to control the agent's actions." § 1.01, comment f(1). The agent must have authority to act on behalf of the principal, and actual authority exists based on "the principal's assent that the agent take action on the principal's behalf." § 3.01. *See also Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (affirming Rule 12(b)6) dismissal of complaint of vicarious liability, under federal common-law principles of agency, which lacked sufficient factual allegations "showing Subway manifested to the public that T-Mobile was its agent"; and holding that it "is unreasonable for courts to contrive an inference when the scarce facts barely allege a claim.")

Naturally, Plaintiff does not allege that WESPAC did anything either to manifest to the public that NSJP was its agent, or to assent to NSJP's acting on its behalf. Nor does Plaintiff offer any factual allegation that NSJP had any authority to act on behalf of WESPAC. For all these reasons, there is no basis to conclude that WESPAC and NSJP share an agency relationship, let alone one that makes WESPAC automatically liable for anything and everything NSJP allegedly does, to any human being who feels herself aggrieved, anywhere on the planet.

Contrast the FAC's threadbare, conclusory allegation of agency with the facts in *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 (Ill. 2012) (the sole case cited in FAC ¶ 17), where the Illinois Supreme Court concluded that "there was not a total failure or lack of evidence to support the jury's determination" that an agency relationship existed between a company and an investigative firm. *Id.* ¶ 50. In that case, the evidence was that (i) the president of the company decided to conduct an investigation into a former employee; (ii) the president asked an outside attorney to lead the investigation, while designating a company employee as a contact person; (iii) counsel retained a firm to conduct the investigation; (iv) the investigative firm was paid by the company; (v) the company contact person directed the firm to obtain the former employee's phone records and provided the former employee's personal information from the company's files for that purpose; (vi) the contact person and the investigative firm had extensive communications about the former employee's actual phone records; (vii) company employees researched some of the disclosed phone numbers; and (viii) the contact person asked investigators to do additional research regarding certain numbers. *Id.* ¶¶ 47-49.

It is painfully obvious that nothing even remotely like the serial acts relevant in *Lawlor* are alleged here. Plaintiff does not allege that WESPAC decided it should do anything in relation to the O'Hare protest. Plaintiff does not allege that WESPAC provided any funds to NSJP to do anything in connection with O'Hare. Plaintiff does not allege that anyone on behalf

9

of WESPAC asked NSJP to do anything in relation to O'Hare. And Plaintiff does not allege that anyone acting for NSJP took any action in response to any communication, let alone a request for action, from WESPAC relating to O'Hare.

### 2. Plaintiff Does Not Plausibly Allege In-Concert Liability

Plaintiff's argument that WESPAC is liable as a matter of "in-concert liability" for Counts IV, V, and VI fares no better, for reasons in addition to those contained in JVP's Brief. According to Plaintiff, WESPAC is liable "because it had awareness of NSJP's blockade strategy - or, as its fiscal sponsor, should have - and NSJP breached its duty to this class via the O'Hare blockade, which was substantially assisted by WESPAC." FAC ¶¶ 106, 115, 124 (statement appears in the Amended Complaint's "Causes of Action" section).

Again, Plaintiff simply makes things up. Plaintiff alleges no facts making plausible the conclusory statement that WESPAC knew of any "blockade strategy," let alone one to be used at O'Hare. Nor does Plaintiff allege anything to support the notion that WESPAC provided *any*, let alone *substantial*, assistance for the O'Hare blockade. Rather, Plaintiff abandoned all allegations previously made about WESPAC supposedly being involved in planning the protest or otherwise providing actual support for it. *Compare* Complaint ¶¶ 46, 50, 54-56, 105 *with* FAC ¶¶ 46, 50, 54-56, 104.

Accordingly, Plaintiff's assertions that WESPAC "had awareness of NSJP's blockade strategy," and "substantially assisted" it, constitute nothing more than the conclusory, unsupported parroting of legal standards. *See* FAC ¶ 102 (citing *Fortae v. Holland*, 334 Ill. App. 3d 705, 717 (Ill. App. Ct. 2002) for the proposition that a "defendant is subject to in-concert liability…if it…knows that the other's conduct constitutes a breach of duty and gives substantial assistance"). Such legal allegations, even if cast in the form of factual allegations, do not state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Plaintiff's assertion that WESPAC, as NSJP's fiscal sponsor, "*should have*" known about the "blockade strategy" has even less merit, if possible. *See* Amended Complaint ¶¶ 106, 115, 124 (emphasis added). Plaintiff offers no factual allegation which might plausibly substantiate its assertion about constructive knowledge, and there is nothing inherent in the fiscal sponsor-sponsoree relationship that would impute such knowledge to a sponsor with respect to everything a sponsoree plans to do. Moreover, the law, as set forth by Plaintiff, requires actual knowledge that "the other's conduct constitutes a breach of duty" for in-concert liability. *See* FAC ¶ 102.

Plaintiff makes a second desperate attempt to create in-concert liability based on the notion of substantial assistance when it asserts, "[s]eparately, WESPAC also has in-concert liability here because it gives substantial fiscal assistance to NSJP which help fund its tortious blockade operations, and that funding breached WESPAC's duty to 'retain control and discretion over the use of funds by' NSJP so to not injure the class." FAC ¶¶ 106, 115, 124. Again, however, Plaintiff has not alleged any substantial assistance to or in connection with this protest, so this theory fails. And frankly, it is preposterous to contend that general IRS guidance about sponsors' obligations to control funds given to sponsorees created a duty owed by WESPAC to drivers at O'Hare. If that were the law, fiscal sponsors would have strict liability to anyone and everyone for every action taken by someone on behalf of a sponsoree without limitation. It is telling that, even though the Amended Complaint at times cites cases in putative support of its claims, no authority is cited on this point.

### 3.   Plaintiff Does Not Plausibly Allege Conspiracy Liability

In Counts VII, VIII, and IX, Plaintiff asserts that WESPAC is liable in conspiracy for obstructing a highway, nuisance, and false imprisonment as the principal for NSJP. *See* FAC ¶¶ 131, 138, 145. We adopt and incorporate herein JVP's compelling contentions that these civil conspiracy claims fail because the underlying obstruction, nuisance and false imprisonment

11

claims are defective, and because Plaintiff's allegations that the Organizational Defendants "agreed" are conclusory and unsupported by any factual allegations. That is clearly true in WESPAC's case, as Plaintiff has effectively conceded in the Amended Complaint that WESPAC did not organize or participate in the protest, communicate with anyone about it, post on social media about it, or in fact did *anything* in connection with it.

In sum, Plaintiff has not even come close to stating a plausible claim against WESPAC, having failed to offer any non-conclusory allegation that anyone acting for WESPAC did anything – let alone anything actionable – in connection with the O'Hare protest. Indeed, Plaintiff cannot even allege that any individual acting for WESPAC was in Illinois at the time.

## B. THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER WESPAC

The Amended Complaint - like the Complaint - does not contain any allegations that would support the exercise of personal jurisdiction over WESPAC, given that it fails to plead that WESPAC itself did anything in Illinois or even directed at Illinois. Rather, the only allegation offered relevant to this analysis demonstrates that personal jurisdiction may *not* be exercised here, *i.e.,* Plaintiff correctly contends that "WESPAC [] is a New York corporation with its principal place of business in New York state." FAC ¶ 17. Perhaps because no cogent argument can be made regarding personal jurisdiction, Plaintiff ignores the subject entirely. This approach is unavailing, given that Plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *E.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). However, Plaintiff must demonstrate that WESPAC has "certain minimum contacts" with Illinois, "such that the maintenance of the suit does not offend 'traditional notions

of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation and quotation omitted). The strength of contacts required depends on which category of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction. *See Daimler*, 134 S. Ct. at 754.

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler*, 134 S. Ct. at 750-751. For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760 (internal quotations and citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)).

Plaintiff alleges nothing that could justify the exercise of general jurisdiction. Rather, Plaintiff correctly asserts that WESPAC is a New York entity with its principal place of business in New York. FAC ¶ 17. Moreover, Plaintiff alleges no actual contacts with Illinois, let alone contacts that are "substantial" or "continuous." As such, Plaintiff fails entirely to offer any basis on which this could be deemed the kind of "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

The specific jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

The Illinois long-arm statute grants specific jurisdiction in several enumerated instances. *See* 735 ILCS 5/2-209. The only conceivably relevant scenario contemplated by the statute is "[t]he commission of a tortious act within this State" out of which a plaintiff's claim arises. *Id.* (a)(2). Again, Plaintiff had not even attempted to show WESPAC committed a tort in Illinois. Plaintiff does not allege that anyone acting for WESPAC did anything tortious at all, let alone in Illinois. Indeed, Plaintiff did not plead that anyone from WESPAC even was *present* in Illinois at the relevant time. Obviously, that precludes any argument that Plaintiff's claimed injury of being stuck in his car arose out of a tortious act by WESPAC in Illinois. Thus, specific jurisdiction is utterly lacking, and the Amended Complaint should be dismissed on that basis, with prejudice.

## **CONCLUSION**

For the foregoing reasons, WESPAC respectfully requests that this Court grant its motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) to dismiss Plaintiff's Amended Complaint in its entirety as against WESPAC, with prejudice, and grant such additional relief to WESPAC as the Court may deem just and proper.

Dated: January 22, 2025     HERBST LAW PLLC

         By:___/s/ Robert L. Herbst_____
          Robert L. Herbst
          rherbst@herbstlawny.com
          420 Lexington Avenue, Suite 300
          New York, New York 10170
          Tel: 914-450-8163 Fax: 888-482-4676
          Attorneys for Defendant
          WESPAC Foundation