**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated,*

     *Plaintiff,*

v.

AJP EDUCATION FOUNDATION, INC. d/b/a AMERICAN MUSLIMS FOR PALESTINE, WESPAC FOUNDATION, INC., NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, DISSENTERS, EDUCATION FOR A JUST PEACE IN THE MIDDLE EAST, d/b/a US CAMPAIGN FOR PALESTINIAN RIGHTS, JEWISH VOICE FOR PEACE, TIDES CENTER, d/b/a COMMUNITY JUSTICE EXCHANGE, JINAN CHEHADE, SUPERIOR MURPHY, RIFQA FALANEH, and SIMONE TUCKER,

     *Defendants.*

No. 1:24-cv-8209

Hon. Mary L. Rowland

Magistrate Judge Keri L. Holleb Hotaling

**DEFENDANT WESPAC FOUNDATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL <u>RULES OF CIVIL PROCEDURE</u>**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ........................................................................................................... 1

**ARGUMENT** ................................................................................................................. 7

    **I.** **THE COURT SHOULD AWARD SANCTIONS BECAUSE PLAINTIFF'S CLAIMS VIOLATE RULE 11** ........................................................................ 7

        **A.** **Plaintiff's Agency Vicarious Liability Theory Is Not Supported by Existing Law, or a Nonfrivolous Argument for a Departure Therefrom** ...................... **7**

        **B.** **Plaintiff's Claim of Personal Jurisdiction Over WESPAC in Illinois Is Not Supported by Existing Law, or a Nonfrivolous Argument for a Departure Therefrom** ........................................................................................ 9

    **II.** **PLAINTIFF AND PLAINTIFF'S COUNSEL VIOLATED RULE 11 BECAUSE THE COMPLAINT AND AMENDED COMPLAINT WERE FILED FOR AN IMPROPER PURPOSE.** ................................................................................. 11

    **III.** **PLAINTIFF AND PLAINTIFF'S COUNSEL SHOULD BE ORDERED TO PAY WESPAC'S REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN RESPONDING TO THE COMPLAINT AND AMENDED COMPLAINT.** ............. 11

**CONCLUSION** ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082 (9th Cir. 2000)............................ 10

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007) ...................................................... 7

*Bogenberger v. Pi Kappa Alpha Corp.*, 104 N.E.3d 1110 (Ill. 2018) ...................................... 8

*Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773 (2017)............................ 10

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ........................................................ 9, 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984) ............................ 10

*Int'l Shoe Co. v. Washington*, 66 S. Ct. 154 (1945)........................................................ 9

*N. Ill. Telecom, Inc. v. PNC Bank, NA*, 2015 WL 1943271 (N.D. Ill. Apr. 29, 2015),
    *rev'd sub nom.* 850 F.3d 880 (7th Cir. 2017)......................................................... 2

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773 (7th Cir. 2003)...................... 9

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................................ 10

**Statutes**

625 ILCS Sections 5/11-1416.............................................................................. 5

735 ILCS 5/2-209 ....................................................................................... 10

**Other Authorities**

Restatement (Third) of Agency ........................................................................... 8

**Rules**

Fed. R. Civ. P. 11 ................................................................................. passim

Fed. R. Civ. P. 4....................................................................................... 9

## INTRODUCTION

WESPAC Foundation ("WESPAC") is a New York non-profit corporation with its principal place of business in Westchester County, New York. Since 1947, it has been educating, agitating and organizing for a more just and peaceful world, an end to militarism and racism and a fairer economy that works for all. Its members involve themselves with criminal justice reform and police accountability, food justice work, fair housing, climate justice and safe renewable energy, immigrant protection, solidarity with Indigenous Peoples, an end to drone warfare, and the struggle for justice, equal rights and human dignity for all the inhabitants of Israel/Palestine.[1] WESPAC's 2008 mission statement says:

> WESPAC Foundation has been a leading force in Westchester County for peace and justice work for over three decades. WESPAC Foundation provides outreach and community to individuals, groups and leaders in civic and religious organizations in greater Westchester who find themselves without a voice or support system for their progressive positions. WESPAC Foundation's purpose is to give a human face to those who would otherwise be unrecognized victims of war, injustice and environmental degradation. WESPAC Foundation connects the people of Westchester with a progressive agenda for the planet and its peoples.[2]

That same statement says WESPAC's purpose is:

> To provide a meeting space along with material, organizational and moral support for groups and individuals in the greater Westchester Community to organize, educate and work toward peace, justice and a sustainable environment for the planet and for all people.[3]

Under Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), the filing of a pleading certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing

---

[1] About WESPAC | WESPAC Foundation, from its website, January 2, 2025.

[2] https://wespac.org/2008/04/25/mission/

[3] Id.

new law" and that "it is not being presented for any improper purpose, such as to harass." Fed. R. Civ. P. 11(b). Rule 11 prohibits the filing of claims that are "baseless and made without a reasonable and competent inquiry." *N. Ill. Telecom, Inc. v. PNC Bank, NA*, 2015 WL 1943271, at *5 (N.D. Ill. Apr. 29, 2015), *rev'd sub nom.* 850 F.3d 880 (7th Cir. 2017).

WESPAC files this motion for sanctions against Plaintiff Christopher Manhart ("Manhart" or "Plaintiff") and his attorneys at Hamilton Lincoln Law Institute ("Plaintiff's Counsel") because they have violated their obligations under Rule 11 by (1) filing, in violation of Rule 11(b)(2), a Complaint and First Amended Complaint (the "Amended Complaint" or "FAC") against WESPAC that is not grounded in "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (2) pursuing those claims against WESPAC for an "improper purpose, such as to harass," in violation of Rule 11(b)(1).

On October 23, 2024, in response to the original Complaint in this case, WESPAC delivered a Rule 11 Letter to Plaintiff's attorneys, attached as Exhibit A. The Letter pointed out that WESPAC had nothing to do with the O'Hare blockage, as underscored by the fact that, apart from the impermissible group pleading of what Defendants did collectively, the Complaint failed to allege that anyone on behalf of WESPAC actually knew of the alleged blockage before it occurred, participated in it, called for anyone else to participate in it, communicated with anyone about it, was anywhere near Chicago or even in Illinois at the relevant times, made any social media posts or any other statements about it, or did *anything at all* in connection with it.

The Letter also pointed out that (1) simply alleging, as the Complaint did, that WESPAC acted generally as a fiscal sponsor to NSJP was not actionable, (2) Plaintiff and his attorneys had no good faith basis for alleging that WESPAC violated any rights of Plaintiff or any other putative class members, and (3) Plaintiff and his counsel had obviously sued WESPAC for the improper

purpose of harassing and punishing WESPAC for its activities in publicly petitioning and participating in support of pro-Palestinian advocacy, all in violation of Rule 11. In particular, the Letter noted that the Complaint failed to state a claim against WESPAC and failed to allege a factual or legal basis for personal jurisdiction over WESPAC, having alleged only that WESPAC was a New York corporation with its principal place of business in New York. The Letter concluded by demanding that Plaintiff and his attorneys fulfill their obligation under Rule 11 (and 28 U.S.C. Section 1927) to dismiss their case against WESPAC forthwith.

Instead of doing so, Plaintiff and his attorneys filed the FAC, which did not cure any of the deficiencies of the original. To be sure, the FAC does abandon the inflammatory – and false – group allegations Plaintiff had offered previously that sought to tie WESPAC directly to the events at issue.[4] Plaintiff is also careful now not to allege that WESPAC promoted, raised money for, or did anything else relating to the blockage at O'Hare. Plaintiff has also abandoned the aiding and abetting claims against WESPAC that he frivolously asserted in the original

---

[4]Plaintiff's original complaint made a range of conclusory statements about things WESPAC, American Muslims for Palestine ("AMP"), National Students for Justice in Palestine ("NSJP"), and U.S. Campaign for Palestinian Rights ("USCPR") supposedly did collectively in relation to the O'Hare protest: (i) "Defendants AMP, NSJP USCPR, and WESPAC…implemented the NSJP toolkit by planning, sponsoring, and then publicizing (during and after) large-scale barricades…This blockade strategy was only the beginning of Defendants NSJP, AMP, USCPR, and WESPAC's propaganda offensive on behalf of Hamas"; (ii) "Defendants NSJP, WESPAC, USCPR, and AMP started to organize disruptive activities beyond college campuses"; (iii) "Defendants AMP, NSJP, USCPR, and WESPAC, acting as Hamas's propaganda arm…implemented that strategy of disruption"; (iv) "Defendants AMP, NSJP, USCPR, and WESPAC were instrumental in coordinating the national A15 Action plan and the plan specific to the Chicago area"; (v) "Defendants AMP, NSJP, USCPR, and WESPAC [] furthered the A15 Action plan"; (vi) "Dissenters – in addition to AMP, NSJP, USCPR, and WESPAC - was [sic] instrumental in identifying and justifying the key chokehold in the Chicago area for executing that specific A15 Action blockade"; (vii) "Defendants AMP, WESPAC, NSJP, JVP and Dissenters planned and/or advertised the blockade beforehand and amplified the tortious conduct via social media." Complaint ¶¶ 44, 46, 50, 54-56, 105.

Complaint.  But Plaintiff's remaining liability theories are no less frivolous.

The FAC repeats the Complaint's allegations that WESPAC has acted generally as a fiscal sponsor to NSJP (collecting donations for and disbursing them to NSJP), promoted unspecified NSJP events through its social media accounts (but critically does not - and cannot - allege that such events related to the alleged protest at issue), and "indicated that their missions were aligned."  *See* FAC ¶¶ 15, 17.  Based on those allegations, the FAC claims that WESPAC is liable vicariously as the principal of NSJP and also liable under an "[i]n-concert liability" theory for a statutory count of obstructing highways and the torts of public nuisance and false imprisonment, FAC ¶¶ 105-106 (Count IV), 114-115 (Count V), 117-120 (Count VI); and liable in conspiracy for obstructing highways, nuisance, and false imprisonment. *See* FAC ¶¶ 131 (Count VII), 138 (Count VIII), 145 (Count IX).[5]

But those counts are so defective as to be frivolous.  For the reasons set forth in Defendant Tides Center d/b/a Community Justice Exchange ("CJE")'s Memorandum of Law in Support of its Motion for Sanctions under Rule 11 of the Federal Rules of Civil Procedure ("CJE's Brief"), Plaintiff lacks Article III standing, and there is simply no liability under Illinois law on the substantive obstruction, nuisance and imprisonment claims, or on the derivative in-concert liability and conspiracy claims, and no nonfrivolous argument can be made for a departure from settled Illinois law on any of those claims.[6]

---

[5] Plaintiff has dropped the aiding and abetting liability claims against WESPAC contained in his original Complaint.

[6] For the Court's convenience, and to avoid needless duplication, WESPAC respectfully adopts and incorporates by reference, as if fully set forth herein, the statements of fact and legal arguments of co-defendants which are applicable to all defendants, including, without limitation, those contained in CJE's Brief.  Particularly salient sections of CJE's Brief include (1) the Introduction, briefly describing the O'Hare protest and Plaintiff's FAC, and summarizing the

First, Plaintiff lacks Article III standing because the only injuries he alleges in the FAC – annoyance, anxiety, inconvenience, loss of time and other non-concrete injuries – do not rise to the requisite level for standing in this Circuit.

Second, there is no private right of action for a civil violation of Obstructing Highways, 625 ILCS Sections 5/11-1416.

Third, Plaintiff did not suffer injuries substantial enough to be cognizable as nuisance, nor the requisite "special injury" from the alleged public nuisance rather than those injuries sustained by the general public.

Fourth, Plaintiff's choosing to remain with his automobile and belongings when a highway is obstructed does not rise to the level of false imprisonment under Illinois law when, as here, there was no physical restraint or restriction on his freedom to move.

Fifth, Plaintiff's derivative in-concert liability theory on those underlying claims is as frivolous as the underlying claims themselves since (1) such liability requires Plaintiff to prove that the party WESPAC was acting in concert with committed underlying conduct that was tortious, and (2) Plaintiff has failed to state a tort claim against *any* defendant either for obstructing a highway, public nuisance or false imprisonment.

Sixth, since Plaintiff's underlying substantive claims are frivolously defective, his civil conspiracy claims are as well. Plaintiff also has not sufficiently alleged that WESPAC actually

---

legal arguments explaining why the FAC is baseless and obviously designed to punish and harass Defendants like WESPAC, whom Plaintiff perceived as being involved in pro-Palestinian advocacy, grounded in a message with which they politically disagreed; (2) the Factual Background describing the April 15, 2024 Illinois protest and the FAC; (3) the Legal Standard and Argument sections setting forth the Rule 11 legal standards and supporting case law and explaining why the FAC's claims are so sanctionably defective and frivolous; and (4) Sections II and III explaining why the FAC was so obviously filed for an improper purpose and why Plaintiff and his attorneys should be required to pay reasonable attorneys' fees and costs.

agreed with anyone to commit these torts, since Plaintiff has effectively conceded in the FAC that WESPAC did not organize or participate in the blockade, communicate with anyone about it, post on social media about it, or in fact do *anything* in connection with it.

In short, the FAC against *all defendants* is so patently baseless, and made without a reasonable and competent inquiry, as to be frivolous, and like the original, obviously pursued for the improper purpose of harassing and punish them for its pro-Palestinian advocacy.

And that is true in spades for WESPAC for additional reasons specific to it, which is the subject of the balance of this Brief. First, Plaintiff's wild theory – that WESPAC's acting generally as a fiscal sponsor automatically makes NSJP an agent of WESPAC's, thereby subjecting WESPAC to vicarious liability for anything NSJP allegedly does to anyone, anywhere – has no legal basis and actually flies in the face of agency law.

Second, and just as obviously, there is utterly no basis to exercise personal jurisdiction over WESPAC, which, as Plaintiff concedes, is a New York entity. Plaintiff does not allege that WESPAC did anything in Illinois, let alone engage in tortious conduct in the state. Thus, there cannot be general or specific personal jurisdiction here.

On January 6, 2025, WESPAC delivered a copy of this Rule 11 Motion to Plaintiff's attorneys, but Plaintiff has so far declined to withdraw his claims against WESPAC.

## ARGUMENT

### I. THE COURT SHOULD AWARD SANCTIONS BECAUSE PLAINTIFF'S CLAIMS VIOLATE RULE 11

#### A. Plaintiff's Agency Vicarious Liability Theory Is Not Supported by Existing Law, or a Nonfrivolous Argument for a Departure Therefrom

Plaintiff's agency argument on his WESPAC vicarious liability theory is just this:

> As fiscal sponsor for NSJP, WESPAC was responsible to "retain control and discretion over the use of funds" allocated to NSJP, and to "maintain[] records establishing that the funds were used for section 501(c)(3) purposes" [sic] Rev. Rul. 68-489, 1968-2 C.B. 210. Accordingly, during the relevant time, NSJP acted as an agent of WESPAC, thereby subjecting WESPAC to vicarious liability under Illinois law. *See Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 ¶ 42 (Ill. 2012) (principal may be held liable for torts of an agent even if the principal does not engage in any conduct directed at the plaintiff).

FAC ¶ 17.

As a threshold matter, Plaintiff's observation that the IRS requires fiscal sponsors to retain control and discretion over funds sent to sponsored entities to ensure sponsors do not lose their tax-exempt status is nothing more than an irrelevant legal conclusion that does not amount to an allegation that WESPAC actually *did* anything to make it liable to Plaintiff in this case. As such, the allegation does not remotely state a claim, to whatever extent Plaintiff would claim it does. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 (2007) (courts need not accept as true conclusory legal allegations).

Moreover, Plaintiff's contention that the cited IRS Revenue Ruling, without more, makes NSJP an agent of WESPAC, is utterly devoid of legal basis. WESPAC has been unable to find any case addressing, let alone supporting, Plaintiff's suggestion that a fiscal sponsor-sponsoree relationship automatically creates a principal-agent relationship, indicating how far-fetched that position is. This is unsurprising, considering that the principles of agency are actually to the contrary.

Under Illinois law, "[a] complaint relying on an agency relationship must plead facts that, if proved, could establish the existence of an agency relationship. A mere allegation of agency is insufficient to establish actual agency. Proof of actual agency requires a showing that (1) a principal/agent relationship existed, (2) the principal controlled or had the right to control the conduct of the agent, and (3) the alleged conduct of the agent fell within the scope of the agency. *Bogenberger v. Pi Kappa Alpha Corp*., 104 N.E.3d 1110, 1119 (Ill. 2018). The FAC contains only a mere allegation of agency, with no supporting factual allegations that might plausibly establish *any* of those three requisites.

Similarly, under the Restatement (Third) of Agency, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." § 1.01. "An essential element of agency is the principal's right to control the agent's actions." § 1.01, comment f(1). The agent must have authority to act on behalf of the principal, and actual authority exists based on "the principal's assent that the agent take action on the principal's behalf." § 3.01.

Naturally, Plaintiff does not - and cannot - allege that WESPAC did anything to assent to NSJP's acting on its behalf. Nor does Plaintiff offer any factual allegation that NSJP had any authority to act on behalf of WESPAC. Utterly absent, for example, is any allegation that WESPAC ever manifested to the public that NSJP was its agent, or that NSJP ever held itself out to third parties as WESPAC's agent. For all these reasons, there is no basis to conclude that WESPAC and NSJP share an agency relationship, let alone one that makes WESPAC automatically liable for anything and everything NSJP allegedly does, to any human being who feels herself aggrieved, anywhere on the planet. There is simply no legal basis for Plaintiff's

frivolous theory of automatic agency and vicarious liability.

**B. Plaintiff's Claim of Personal Jurisdiction Over WESPAC in Illinois Is Not Supported by Existing Law, or a Nonfrivolous Argument for a Departure Therefrom**

Since Plaintiff does not (and cannot) even allege that any individual acting for WESPAC was in the State of Illinois at any relevant time, or that WESPAC itself did anything in Illinois or even directed at Illinois, there is also no legal basis for Plaintiff's claim of personal jurisdiction over WESPAC. Plaintiff contends only that "WESPAC…is a New York corporation with its principal place of business in New York state." FAC ¶ 17. True. But because Plaintiff can make no nonfrivolous argument for personal jurisdiction over WESPAC in Illinois, the FAC entirely ignores the subject. That approach is unavailing, given that Plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *E.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). His failure to do so is blatant.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). However, Plaintiff must demonstrate that WESPAC has "certain minimum contacts" with Illinois, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation and quotation omitted). The strength of contacts required depends on which category of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction. *See Daimler*, 134 S. Ct. at 754.

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler*, 134 S. Ct. at 750-751. For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760 (internal quotations and

citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)).

Plaintiff alleges no actual WESPAC contacts with Illinois, let alone contacts that are "substantial" or "continuous." As such, Plaintiff fails entirely to offer any basis on which this could be deemed the kind of "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

The specific jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation and quotation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

The Illinois long-arm statute grants specific jurisdiction in several enumerated instances. *See* 735 ILCS 5/2-209. The only conceivably relevant scenario contemplated by the statute is "[t]he commission of a tortious act within this State" out of which a plaintiff's claim arises. *Id.* (a)(2). Again, Plaintiff has not even attempted to show WESPAC committed a tort in Illinois. Plaintiff does not allege that anyone connected to WESPAC did anything tortious at all, let alone in Illinois. Indeed, Plaintiff did not (and cannot) plead that anyone from WESPAC even was *present* in Illinois at any relevant time. Obviously, that precludes any argument that Plaintiff's claimed injury of being stuck in his car arose out of a tortious act by WESPAC in Illinois. As

such, specific jurisdiction is utterly lacking. Accordingly, Plaintiff's assertion of personal jurisdiction over WESPAC here is simply frivolous, and eminently deserving of sanctions all by itself.

## II. PLAINTIFF AND PLAINTIFF'S COUNSEL VIOLATED RULE 11 BECAUSE THE COMPLAINT AND AMENDED COMPLAINT WERE FILED FOR AN IMPROPER PURPOSE.

On the authorities and for similar reasons as those contained in CJE's Brief, the Court should award sanctions against Plaintiff and Plaintiff's Counsel because the Complaint and Amended Complaint were filed for the improper purposes of harassing WESPAC in an effort to punish it for its advocacy for Palestinian human rights, and its perceived role as a fiscal sponsor of NSJP in solidarity with Palestine. This SLAPP suit was clearly commenced and continued with the intention to harass and punish WESPAC for these expressive and charitable activities.

## III. PLAINTIFF AND PLAINTIFF'S COUNSEL SHOULD BE ORDERED TO PAY WESPAC'S REASONABLE ATTORNEYS' FEES AND COSTS INCURRED IN RESPONDING TO THE COMPLAINT AND AMENDED COMPLAINT.

On the authorities and for similar reasons as those contained in CJE's Brief, the Court should award WESPAC its reasonable attorneys' fees and costs in responding to the Complaint and Amended Complaint.

**CONCLUSION**

For the foregoing reasons, WESPAC respectfully asks the Court to find that Plaintiff and Plaintiff's Counsel violated Rule 11 and to order Plaintiff and Plaintiff's Counsel to pay WESPAC's reasonable attorneys' fees and costs incurred in defending against Plaintiff's Complaint and Amended Complaint.

Dated:  January 27, 2025                              HERBST LAW PLLC

                                                                  /s/ *Robert L. Herbst*
                                                                    Robert L. Herbst
  rherbst@herbstlawny.com
  420 Lexington Avenue, Suite 300
  New York, New York 10170
  Tel: 914-450-8163 Fax: 888-482-4676
  Attorneys for Defendant
  WESPAC Foundation

## <u>CERTIFICATE OF SERVICE</u>

I, Robert L. Herbst, an attorney, certify that I caused copies of the foregoing **DEFENDANT WESPAC FOUNDATION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE** to be served on all counsel of record via the Court's electronic filing system.

_____/s/ *Robert L. Herbst*_____
*Attorney for WESPAC Foundation, Inc.*