UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>AJP EDUCATION FOUNDATION, d/b/a/ AMERICAN MUSLIMS FOR PALESTINE; WESPAC FOUNDATION, INC.; STUDENTS FOR JUSTICE IN PALESTINE; DISSENTERS; EDUCATION FOR A JUST PEACE IN THE MIDDLE EAST, d/b/a US CAMPAIGN FOR PALESTINIAN RIGHTS; JEWISH VOICE FOR PEACE; TIDES CENTER, d/b/a COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; and SIMONE TUCKER, | Case No. 1:24-cv-08209<br><br>Honorable Mary M. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND COMPLAINT**

1. On January 6, 2025, every defendant served Manhart's counsel with putative Rule 11 motions, as Rule 11(c)(2) provides. That rule invites the recipient of the served motion to "withdraw[] or appropriately correct[]" "the challenged paper, claim, defense, contention, or denial … within 21 days after service."

2. Manhart investigated the served fifty-two pages of briefing, much of which misrepresented state and federal law and the facts. *Compare*, *e.g.*, Dkt. 59-1 at 23 (arguing the false imprisonment claim is frivolous because Manhart was "free to leave his car" unattended on the interstate) (also citing Restatement (Second) of Torts § 36, comment d) *with* Restatement (Second) of Torts § 36, comment a (a victim of false imprisonment "is not required to run any risk of harm to his

person or to his chattels … to relieve the actor from a liability to which his intentional misconduct has subjected him"); *Robinson v. Miller*, 1985 Ill. App. LEXIS 2179 (Ill. Ct. App. May 14, 1985) (question of fact for jury whether defendant committed false imprisonment for a road blockade, even though plaintiffs were not trapped in their cars like Manhart was; implicitly rejecting comment d raised by dissent) (attached as Exhibit 1).[1]

3.  Nevertheless, for the purposes of narrowing the issues before this Court and to avoid collateral litigation over Rule 8 pleading standards, on January 17, Manhart's counsel notified defendants that Manhart intended to seek leave to amend the complaint on January 23 or 24. Manhart invited discussion of, and agreement on, a new briefing schedule reflective of that. Dkt. 59-2. Despite the Court's January 13 order (Dkt. 49), some Defendants refused to negotiate a briefing schedule, instead wasting the Court's time. WESPAC filed its motion to dismiss the First Amended Complaint January 22 (Dkt. 53), while the parties were still discussing whether defendants would consent for leave to file the Second Amended Complaint, and about an hour or two before Manhart's counsel intended to share the redline of the complaint with Defendants. This forced Manhart to file his motion for leave without concluding those discussions before other defendants tried to prejudice the motion. Dkt. 55. The motion attached a proposed Second Amended Complaint that narrowed or clarified the claims so that resolution of many arguments would not require parsing the complaint for whether a

---

[1] Illustration 4 notes that liability for false imprisonment attaches even if plaintiff could have escaped with "material harm to [his] clothing." Nevertheless, Tides, while citing (and thus aware of) the Restatement, asserts that Manhart is *frivolously* asserting false imprisonment because he could have simply broken the law and left his car on the highway.

But even the part of the Restatement Tides cites does not help them. Comment d raises the scenario where a defendant blocks a plaintiff from *entering* a highway, not one where a defendant unlawfully restrains a plaintiff from "freedom of locomotion" by trapping him in his car. The part of comment d that Tides leaves out of its quote indeed anticipates scenarios where liability does attach for such blockades. *Compare id.* Illustration 11.

Note separately that Tides, represented by sophisticated counsel, violates the express language of Rule 11(c)(2) by filing its Rule 11 correspondence with the Court (Dkt. 59-1) despite the Rule's command that such correspondence "*must not* be filed or be *presented* to the court" (emphasis added) in these circumstances. And Tides does so to evade the fifteen-page briefing limit of N.D. Ill. LR 7.1. Manhart will decline Tides's invitation to bring his own motion for sanctions, though the Court certainly has the power to issue an order to show cause *sua sponte*.

viable claim was preserved under Rule 8. Another defendant filed an unnecessary motion for additional pages for motion to dismiss the First Amended Complaint that Manhart seeks to amend when Manhart had offered to include a stipulation for extra pages as part of the agreed-upon briefing schedule. Dkt. 56.

4. Now WESPAC and Tides Foundation complain that Manhart did exactly what they invited Manhart to do with their Rule 11 letters: narrow and clarify his complaint. Fed. R. Civ. Proc. 11(c)(2). As these two acknowledge, Manhart did amend his complaint in response to their first Rule 11 letters in October, and then they made new arguments in their second set of communications, to which Manhart responded with a proposed amended complaint.

5. The only grounds WESPAC and Tides give for denying the motion for leave to amend is "futility." They cite no authority for the proposition (and we could find none) that a court should find a motion for leave to amend is "futile" when no motion to dismiss has been fully briefed, much less *adjudicated*. And for good reason. "[C]ases of clear futility at the outset of a case are rare." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (reversing finding of futile argument in amended complaint, even after a granted motion to dismiss and final judgment).

6. The place to litigate a motion to dismiss for the first time is with a motion to dismiss, rather than by making futility arguments before any such motion has been adjudicated. *Chen v. Yellen*, 2021 WL 5005373, 2021 U.S. Dist. LEXIS 208317, *7 (N.D. Ill. Oct. 28, 2021) (citing cases).

7. Tides, through its Community Justice Exchange entity that it fiscally sponsored, established and promoted a bail fund for the express purpose of providing financial compensation to people arrested for the April 15 protests designed and intended to "cause pain to the economy" and injuring a class of people trapped on the interstate outside O'Hare Airport including Manhart. While organizations may establish general bail funds for charitable purposes without liability for the actions of bailed defendants, targeting a bail fund at a *specific* future crime to incentivize individuals to participate in the criminal act creates civil liability to victims of the crime in question. No court has rejected such a claim.

8. Manhart not only has a good-faith legal basis for asserting Article III standing, but is legally correct. *Cf. Uzuegbunam v. Preczewski*, 592 U.S. 279, 285-289 (2021) (redressability through nominal damages). Tides's contention (Dkt. 59 at 2) that it's frivolous for Manhart to do so for an intentional common-law tort of false imprisonment is itself frivolous. At no point has the Supreme Court disclaimed Article III standing for common-law intentional torts available at the Founding, only for new statutory causes of action created by Congress. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016) (noting importance of historical precedent). For such historical torts and their analogs, even "difficult to prove" "intangible" harms are considered "concrete"—even when the cause of action is created by Congress. *Id.* (citing examples). Here, Manhart pleads not merely an *analog* to a pedigreed historical tort, he alleges precisely such a black-letter tort. Thus, the district court case of *Keller v. LVNV Funding, LLC*, which Tides relies on, is inapposite because the underlying statutory allegations in that case did not "share a sufficiently close relationship with common law privacy torts to establish Article III standing." 2022 WL 7501335 (N.D. Ill. Oct. 13, 2022). Tides's other cases similarly reject attempts to extend statutory causes of action and have to be read in that inapposite context.

9. Tides's contention that Manhart seeks an injunction against "CJE's First Amendment protected activity of soliciting charitable contributions" is frivolous, and absent from any version of Manhart's complaint.

10. National Students for Justice in Palestine ("NSJP"), one of the organizers of the April 15 blockade that injured Manhart and the class, has no independent corporate structure. During the relevant time, it was under the umbrella of WESPAC, its fiscal sponsor. As the fiscal sponsor, WESPAC funneled charitable § 501(c)(3) funds to NSJP, with an obligation under federal tax law to control and supervise NSJP, which had no legal right on its own to solicit tax-deductible contributions. WESPAC does not deny that that federal tax law obligation existed for it in April 2024. Whether one characterizes this as a principal-agent theory or a vicarious liability theory or an alter ego theory or a negligent supervision theory, Manhart has stated a claim that WESPAC is liable for NSJP's actions. Notably, the same theory and corporate structure applies to Tides and the Community Justice Exchange, and Tides never contends that they would not be liable for the Community Justice

Exchange's tortious acts, only denying that those acts and the acts they aided and abetted, are actionable.

11. As Manhart's complaint has alleged from the beginning, WESPAC has apparently disassociated itself from NSJP since the April 15 road blockade. Manhart strongly suspects that discovery on the decision to end fiscal sponsorship will be instructive.

12. A January 2025 "notice of no affiliates" does not answer a complaint's allegation that WESPAC was NSJP's parent in April 2024, and it's frivolous to assert otherwise. Local Rule 3.2 defines "affiliate" as an entity that "owns" 5% or more of a party, and does not require a list of affiliates from the beginning of time. Manhart never alleges that WESPAC has particular owners.

13. WESPAC could falsify the contention that NSJP had no independent corporate structure by pointing to NSJP's independent corporate structure. They do not (and did not in any of its Rule 11 correspondence), instead citing its own unadjudicated *ipse dixit* assertion in the Central District of California regarding a different violent anti-Semitic entity that it fiscally sponsored. Dkt. 60 at 6. The procedural time and place to adjudicate disputed issues of fact is at trial or via dispositive motion after discovery.

14. To the extent that WESPAC is liable for NSJP's tortious actions, there's no question that there's personal jurisdiction over WESPAC in Illinois for torts committed in Illinois by its fiscally sponsored project. The contention that it's frivolous to assert personal jurisdiction over WESPAC given this theory is itself frivolous. WESPAC's Rule 11 papers (Dkt. 64 at 9-11), filed today, never attempt to engage with that legal question. WESPAC premises its entire argument on an *ipse dixit* assertion that WESPAC has no liability for NSJP's actions, even though it admits to being NSJP's fiscal sponsor. Dkt. 64-1 at 3.

15. WESPAC nevertheless asks for the motion for leave to amend to be "stricken," without actually making a motion to strike. Dkt. 60 at 7. It cites no authority or Federal Rule for the proposition that a motion can, much less should, be stricken. *Cf. Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 726-28 (7th Cir. 2006) ("motion to strike" outside Federal Rules of Appellate Procedure is "frivolous" waste of court's time when it requires adjudication of the merits; issuing

sanctions). (Perhaps WESPAC's basis for striking is that Manhart has not yet verified the proposed second amended complaint. But, except for certain federal statutory causes not relevant here, a federal complaint need not be verified by the plaintiff. Fed. R. Civ. Proc. 11(a). So that argument would be frivolous as well.) Again, Manhart will decline the invitation to create additional collateral litigation by moving for sanctions, but reserves the right to seek attorneys' fees as the prevailing party should WESPAC not withdraw its Rule 11 motion.

16. The motion for leave to amend should be granted. Any questions on the merits should be litigated with the appropriate procedural Rule 12 or Rule 56 motion, not as an attachment to a response to a motion for leave to amend.

Dated: January 27, 2025.

/s/ *Theodore H. Frank*
Theodore H. Frank (IL Bar. No. 6224948)
Neville S. Hedley (IL Bar No. 6237279)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW
Suite 300
Washington, DC
Telephone: (703) 203-3848
Email: ted.frank@hlli.org
Email: ned.hedley@hlli.org

M. Frank Bednarz (IL Bar No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
1440 W. Taylor Street #1487
Chicago, IL 60607
Telephone: (801) 706-2690
Email: frank.bednarz@hlli.org

Max Schreiber (*pro hac vice*)
HAMILTON LINCOLN LAW INSTITUTE
5868 E. 71st Street, Suite E-709
Indianapolis, IN 46220
Telephone: (401) 408-9370
Email: max.schreiber@hlli.org

*Attorneys for Plaintiff*