**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*, | |
| *Plaintiff*, | No. 1:24-cv-8209 |
| v. | Hon. Mary L. Rowland |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, A PROJECT OF WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; JEWISH VOICE FOR PEACE; TIDES CENTER, D/B/A COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; AND SIMONE TUCKER, | Magistrate Judge Keri L. Holleb Hotaling |
| *Defendants*. | |

**DEFENDANT TIDES CENTER D/B/A COMMUNITY JUSTICE EXCHANGE'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS**
**PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

## INTRODUCTION

Under Rule 11(b) of the Federal Rules of Civil Procedure ("Rule 11"), the filing of a pleading certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "it is not being presented for any improper purpose, such as to harass." It prohibits the filing of claims that are baseless and made without a reasonable and competent inquiry. Defendant Tides Center d/b/a Community Justice Exchange ("CJE") requests sanctions against Plaintiff and his counsel because they violated Rule 11 for two independent reasons, in violation of: (1) Rule 11(b)(2), they have again filed baseless claims against CJE in the Second Amended Verified Complaint (the "SAC") that are not grounded in existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law, and (2) Rule 11(b)(1), the claims against CJE are being pursued for an improper purpose, such as to harass. This has been true for every version of the complaint. Having had three safe harbor periods to rethink their actions, it is time that they be sanctioned for their egregious conduct.

On April 15, 2024, protesters blocked traffic to O'Hare Airport. The Chicago protest was one of over 80 similar protests that day. Plaintiff alleges that he got stuck in traffic due to the protest, which resulted in a rescheduled flight, and a missed business dinner and networking opportunity. Plaintiff then initiated this lawsuit. The only allegations about CJE relate to its creation of a nationwide bail fund to support anyone who applied for assistance in connection with the protests (the "Bail Fund"). Based solely on this, the SAC contains meritless claims against CJE and attempts to paint CJE as complicit with foreign terrorist organizations. Although Plaintiff and his counsel always have an obligation to comply with Rule 11, the extraordinary nature of the claims and the inflammatory nature of the gratuitous references seeking to tie CJE to terrorism

should have prompted them to focus even more on their Rule 11 obligations. But they manifestly did not do so. Their disregard of these obligations warrants sanctions.

*First,* sanctions are warranted because Plaintiff has been warned three times that he does not have Article III standing. Sitting in traffic and missing a "business dinner" and "networking opportunity" are not concrete injuries-in-fact, per well-established case law. Even if they were, the "irreducible constitutional minimum of standing" also requires "a causal connection between the [claimed] injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant. . . .'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). Here, the only allegations against CJE center on its creation of a nationwide bail fund; that is it. The undisputed facts defeat the necessary causal connection here: Illinois does not have a cash bail system, and Plaintiff has not identified any need for a bail fund in Chicago. Plaintiff cannot establish *any* causal connection between the Bail Fund and any alleged harm from an Illinois highway being blocked. And, as discussed below, CJE was not part of any conspiracy, and thus Plaintiff cannot trace his alleged injuries to a conspiracy that CJE participated in.

*Second*, it is egregious that after receiving the last Rule 11 letter, Plaintiff and his counsel still failed to make a "*reasonable and competent*" inquiry into the claims against CJE. Indeed, Plaintiff's claims against CJE for conspiracy and aiding and abetting the "common-law tort for foreseeable injury caused by intentional breach of duty" and false imprisonment are frivolous and not well grounded in the law. As an initial matter, the conspiracy and aiding and abetting claims fail because Plaintiff failed to sufficiently allege that CJE agreed with a co-conspirator to commit a wrong or substantially assisted an alleged wrong, particularly because none of the protesters would have needed cash from the Bail Fund in a state that no longer utilizes cash bail and in a county with a public defender's office. Additionally, conspiracy and aiding and abetting claims

2

are not standalone causes of action—both require an underlying tort. But the underlying torts asserted are frivolous. The first—"common-law tort for foreseeable injury caused by intentional breach of duty"—is nonsensical because Plaintiff's alleged injury is not the type of injury protected by the Illinois Vehicle Code. And Plaintiff's false imprisonment claim fails because the SAC does not allege the kind of cognizable imprisonment required by Illinois law. Plaintiff also seeks an injunction against CJE's First Amendment-protected activity—solicitation of charitable contributions—without pleading anything that could overcome CJE's constitutional rights.

*Lastly*, Plaintiff and his counsel should be sanctioned because the inflammatory allegations in the SAC strongly suggests they sued for the improper purpose of harassing CJE. The SAC contains dozens of allegations attempting to tie CJE to Hamas and the Iranian Revolutionary Guard Corps (IRGC) (designated foreign terrorist organizations)—allegations that have no relevance to the state law claims against CJE, which themselves are facially meritless. And, in light of congressional efforts to give the Treasury Department carte blanche authority to strip organizations of their 501(c)(3) status if it deems that they have ties to terrorism, it strongly appears that Plaintiff and his counsel included these irrelevant allegations and refused to dismiss this frivolous complaint against CJE solely for the improper purpose of attempting to generate hostile publicity for those supporting the April 15 protest by implying, without a shred of evidence, that they were supporters of terrorism and acting at the behest of terrorists. Plaintiff's lawsuit is thus clearly an improper attempt to intimidate CJE from engaging in First Amendment protected conduct in support of the Palestine solidarity movement due to a fear of losing its 501(c)(3) status.

## FACTUAL BACKGROUND

### CJE's Mission Centers on the Reform of the Criminal Justice System

CJE is a 501(c)(3) non-profit organization "support[ing] . . . organizations . . . that are

experimenting with . . . power-building interventions [in the] criminal legal . . . system[].”[1] In line with its mission, it maintains a list of over 90 bail funds, hosts the National Bail Fund Network, and “during local and national protests, specific protest bail funds may be established.”[2]

**CJE's Creation of a Nationwide Bail Fund for Pro-Palestinian Protests**

In April 2024, CJE created the Bail Fund “to support community members who are criminalized in the U.S. for their solidarity with Palestine.” ECF 69, SAC ¶ 63. The Bail Fund's link was posted on a15action.com, a website created as part of a worldwide civil disobedience effort in seventeen countries. *Id.* ¶ 56–57. Plaintiff's sole allegations against CJE are that it created, helped advertise, and managed the “bail fund” “to incentivize participation in A15 Action blockades and to ensure activists arrested for violations of state and federal criminal law . . . could . . . mount a more competent legal defense” and “get them back on the streets faster.” *Id.* ¶ 63. But, in 2023, Illinois abolished cash bail.[3] And the Cook County Public Defender represents indigent people.[4] Plaintiff also pointlessly alleges that “the statute of limitations has not yet run for possible federal prosecution,” and that “[f]ederal law provides for cash bail.” *Id.*

**The SAC**

After three proverbial bites at the apple, rather than withdraw his baseless claims against CJE, on January 30, 2025, Plaintiff filed the SAC, which still purported to assert class action claims against a range of defendants, including CJE. Relevant here, Plaintiff seeks to pursue four of the SAC's nine counts against CJE: (1) conspiracy to obstruct highways (Count V); (2) conspiracy to

---

[1] Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Feb. 24, 2025); *Mussat v. Power Liens, LLC*, 2014 WL 3610991 at *3 (N.D. Ill. Jul. 21, 2014) (noting that courts have the discretion to take judicial notice of the contents of a website.)

[2] Community Justice Exchange, *Directory of Community Bail Funds*, https://www.communityjusticeexchange.org/en/nbfn-directory (last visited Feb. 24, 2025).

[3] Illinois Legal Aid Online, *Cash Bail Changes - 2023 SAFE-T Act* (Dec. 4, 2024), https://www.illinoislegalaid.org/legal-information/cash-bail-changes-2023-safe-t-act (last visited Feb. 24, 2025).

[4] Cook County Public Defender's Office, *Public Defender FAQ*, https://www.cookcountypublicdefender.org/Resources/public-defender-faq (last visited Feb. 24, 2025).

4

commit false imprisonment (Count VI); (3) aiding and abetting obstructing a highway (Count VII); and (4) aiding and abetting false imprisonment (Count VIII).

On April 15, 2024, protesters in Chicago blocked the portion of the I-190 leading to O'Hare Airport between 7:00 a.m. and 9:30 a.m. *Id.* ¶¶ 65–66. Plaintiff alleges that he "was en route to a flight . . . for a business trip," *id.* ¶ 76; "was frozen on the highway for well over an hour, unable to move or navigate out of the traffic jam," and "was also too far away from the blockade to simply get out of his car and walk to the airport (plus that would have required abandoning his car)," *id.*; and that "[a]s a result of being stuck in traffic, Plaintiff missed his flight that morning and spent the next several hours re-booking his flight," *id.* ¶ 79, which caused him to miss "an important work dinner and networking session." *Id.* Plaintiff does admit that "[s]everal passengers exited stopped . . . vehicles and walked . . . to the terminals." *Id.* ¶ 75. Plaintiff then alleges that the protest caused him a "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort, anxiety and emotional distress," and "loss of time having to rearrange travel plans after missing his flight." *Id.* ¶¶ 96, 108, 116, 123, 130, 137, 144. Plaintiff seeks compensatory and punitive damages, and "injunctive relief prohibiting Defendants from further engaging in the unlawful conduct." *Id.* at p. 35.

The SAC also contains dozens of inflammatory allegations that the A15 Action effort was organized at the behest of Hamas and the IRGC, both designated foreign terrorist organizations under U.S. law. Of the 57 paragraphs in the fact allegations section of the SAC, at least half include these inflammatory allegations about Hamas and the IRGC, implying that the defendants were terrorists or supported terrorism, including the following representative examples:

> "The tortious conduct at issue derives from the generational conflict between Hamas and Israel . . . , which Hamas has now exported to the United States." *Id.* at p. 9. "Hamas recognizes that its ultimate goal of eliminating the State of Israel is impossible without a drastic shift in America's pro-Israel paradigm." *Id.* ¶ 28. "On

5

October 7, 2023, Hamas launched the deadliest attack against Israel in its history—killing almost 1,200 Israelis, most of them innocent civilians, and taking even more hostage (including some Americans living in Israel)." *Id.* at p. 10. "Hamas soldiers use innocent Palestinian non-combatants as human shields and intercept aid trucks to resell supplies for profit." *Id.* ¶ 34. "[T]he IRGC issued an internal memorandum entitled 'Supporting and Encouraging Palestinian Movements towards the Political Isolation of Zionism' that called for 'an economic blockade across four continents in solidarity with Palestinians' to take place on April 15, 2024." *Id.* ¶ 52.

Significantly, there is not a single fact about why these allegations are relevant to the claims, let alone relevant to CJE, or how CJE could possibly have any ties to Hamas or the IRGC.

## LEGAL STANDARD

Rule 11 requires an attorney "presenting to the court a pleading . . . or other paper" to certify that "the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and that "it is not being presented for any improper purpose, such as to harass." Fed. R. Civ. P. 11(b). Sanctions are warranted "if counsel files with improper motives or inadequate investigation." *Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). Rule 11 sanctions are warranted where "it should have been obvious . . . before filing" that the claims were not viable. *Wilford v. Cnty. of Rush*, 2003 WL 77003, at *5 (S.D. Ind. Jan. 7, 2003). "The purpose of Rule 11 is to deter baseless filings." *Eberhardt v. Vill. of Tinley Park*, 2022 WL 22896754, at *2 (N.D. Ill. Aug. 18, 2022).

"Rule 11(b) prohibits the filing of frivolous claims," *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015), which are claims that are "baseless and made without a reasonable and competent inquiry" *N. Ill. Telecom, Inc. v. PNC Bank, NA*, 2015 WL 1943271, at *5 (N.D. Ill. Apr. 29, 2015) (citation omitted), *rev'd on other grounds*, 850 F.3d 880 (7th Cir. 2017). "Rule 11 embodies both an objective and a subjective standard, prohibiting both 'frivolousness on the objective side' and 'bad faith on the subjective side.'" *Eberhardt*, 2022 WL 22896754, at *2 (citation omitted). To determine whether a claim is "objectively frivolous, the

court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'" *Id.* (citation omitted); *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 2018 WL 2412386, at *1 (N.D. Ill. May 29, 2018). "An attorney cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019).

"The decision to award sanctions under Rule 11" and what sanctions to award, including attorneys' fees, "is within the Court's discretion." *N. Ill. Telecom, Inc.*, 2015 WL 1943271, at *5; *see also Eberhardt*, 2022 WL 22896754, at *2 (citing *Mars Steel*, 880 F.2d at 935).

## ARGUMENT

**I.     THE COURT SHOULD AWARD SANCTIONS BECAUSE THE SAC IS NOT SUPPORTED BY EXISITING LAW OR A NONFRIVOLOUS ARGUMENT FOR ALTERING EXISTING LAW OR CREATING NEW LAW.**

### A.     Plaintiff Lacks Article III Standing.

The SAC is sanctionable because Plaintiff clearly lacks Article III standing to assert claims against CJE. A plaintiff has standing only if he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Keller v. Lvnv Funding, LLC*, 2022 WL 7501335, at *1 (N.D. Ill. Oct. 13, 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiff cannot meet this standard for two separate reasons. First, the SAC claims harm only in the form of harassment, annoyance, and a general loss of "time and money," which falls far short of a concrete injuries-in-fact. *Id.*; *see also Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044–45 (7th Cir. 2021). Second, even if the harm alleged was a concrete injury, it was not, as a matter of law, fairly traceable to CJE's challenged conduct.

Causation is central to Article III standing. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383–84 (2024). It requires that the alleged injury be "fairly . . . trace[able] to

the challenged action of the defendant," *Lujan*, 504 U.S. at 560–62 (citation omitted). If "[t]he existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors,'" "it becomes the burden of the plaintiff to adduce facts showing that those choices [were] . . . made in such a manner as to produce causation and permit redressability of injury." *Id.* "[T]he 'line of causation between the illegal conduct and injury' . . . must not be too speculative or too attenuated." *All. for Hippocratic Med.*, 602 U.S. at 383 (citation omitted); *see Marion Diagnostic Ctr., LLC v. Becton Dickinson & Co.*, 29 F.4th 337, 348 (7th Cir. 2022) (same).

Here, the causal connection alleged is nothing short of frivolous. Plaintiff's only allegations against CJE—that it created the Bail Fund—do not come close to alleging that the claimed harms (sitting in traffic, missing a flight, etc.) were fairly traceable to CJE's conduct. CJE helped raise bail money for protestors across the country. But *Illinois abolished* cash bail in 2023. CJE's Bail Fund was thus not usable in Illinois. The Bail Fund *could not have* caused anyone in Illinois to do anything. And Plaintiff's assertion of a purported conspiracy does not give Plaintiff standing where his conspiracy allegations are frivolous. *See infra* Section I.B.1; *Hope, Inc. v. DuPage Cnty. Ill.*, 738 F.2d 797, 808 (7th Cir. 1984) (finding plaintiff lacked standing where he failed to substantiate conspiracy claim); *Beauchamp v. Sullivan*, 21 F.3d 789, 790 (7th Cir. 1994) ("[F]rivolousness is an alternative jurisdictional ground for dismissal to lack of standing."). Since Plaintiff and his counsel have been warned three times about his lack of standing, they should be sanctioned.

**B.     The Claims Themselves Against CJE Are Also Sanctionable.**

Plaintiff alleges only civil conspiracy and aiding and abetting claims against CJE, but those claims themselves are facially defective because Plaintiff failed to allege the existence of the agreement required for a conspiracy claim or the substantial assistance of wrongdoing required for an aiding and abetting claim. And, even if the claims were not plainly frivolous, they still fail automatically because Plaintiff fails to allege a non-frivolous underlying tort.

8

### 1.    Plaintiff's Conspiracy Claims Are Sanctionably Defective.

A "[c]ivil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "The agreement is 'a necessary and important' element" of a conspiracy claim. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999); *see also Trodden, Inc. v. J & E Auto Enters., Ltd*, 2014 WL 1117028, at *6 (Ill. App. 1st Mar. 19, 2014) (affirming dismissal of conspiracy claim because there were no specific details regarding the agreement).[5]

The SAC does not allege that CJE entered into any *agreement* to commit tortious conduct. It asserts allegation based on CJE's creation of the Bail Fund, which allegedly incentivized participation in the protest. But the SAC does not allege that CJE entered into any agreement with any protestor, or that there was an agreement between CJE and any protestor. CJE is aware of no authority that supports a claim that a nonprofit's bail fund—constitutionally protected activity—would be the kind of agreement that creates conspiracy liability.[6] Thus, these claims fail.

### 2.    Plaintiff's Aiding and Abetting Claims Are Sanctionably Defective.

To maintain an aiding and abetting claim in Illinois, a plaintiff must allege that: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012)

---

[5] Further, there is no such claim as conspiracy to commit negligence. *E.g.*, *Rogers v. Furlow*, 699 F. Supp. 672, 675 (N.D. Ill. 1988) (describing conspiracy to commit negligence as "a paradox at best").

[6] It is well established that soliciting donations for charitable causes is protected speech under the First Amendment. *E.g.*, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("charitable appeals for funds . . . are within the protection of the First Amendment"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794–95 (1988) (same); *Wis. Action Coalition v. City of Kenosha*, 767 F.2d 1248, 1251 (7th Cir. 1985) (same).

(quoting *Grimes v. Saikley,* 904 N.E.2d 183, 196 (Ill. App. 4th 2009)). "[I]t is not enough that a defendant assist[s] or encourage[s] another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial." *Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. 5th 2004); *see also Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157, 151 (Ill. App. 2d 1998) (finding assistance was not substantial when the person the defendant assisted likely would have engaged in the same action even without the defendant's involvement).

Here, Plaintiff's only allegations related to CJE centered on the Bail Fund do not come close to alleging that CJE knowingly and substantially assisted any conduct. Plaintiff has failed to allege *any* contact between CJE and any protestors and thus failed to allege that CJE substantially assisted anyone in engaging in any alleged conduct. It simply helped raise money for bail for protestors across the country. But encouraging access to bail does not constitute actionable wrongful conduct. Were the law otherwise, organizations or people who create and advertise bail funds would be subject to limitless aiding and abetting liability based on the alleged conduct of individuals who they did not know and with whom they have had no contact, merely on the absurd theory that the bail fund encouraged those individuals' alleged wrongful conduct. No Illinois law currently does or can justify Plaintiff's draconian and unsupportable theory of liability.

The lack of substantial assistance is particularly glaring given the abolishment of cash bail in Illinois and the existence of the Cook County Public Defender's office, which rendered moot the protesters' need for cash or legal assistance from the Bail Fund in Chicago. Therefore, the Bail Fund could not have even "incentivized," let alone substantially assisted, anyone in Illinois to do anything. Plaintiff attempts to get around this glaring flaw by alleging that the protesters could be prosecuted by federal authorities and "[f]ederal law provides for cash bail." But Plaintiff does not allege anywhere which federal law was violated that would subject the protesters to federal

10

prosecution. And even if they were prosecuted federally, it is simply frivolous to suggest that the

protesters would need cash for bail in this circumstance, as it is widely known that cash bail, while

technically permitted in certain scenarios, is virtually non-existent in the federal system.[7]

### 3. The Underlying Tort Claims Also Are Frivolous.

Conspiracy and aiding and abetting are not independent claims. *Sanchez & Daniels v.*

*Koresko & Assocs.*, 2006 WL 3253604, at \*6 (N.D. Ill. Nov. 8, 2006); *see also A Commc'n Co.,*

*Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1125 (S.D. Ill. 2014). Where the underlying tort claims fail,

civil conspiracy and aiding and abetting automatically fail. *See Sanchez*, 2006 WL 3253604, at \*6.

### a. Plaintiff's claim for "common-law tort for foreseeable injury caused by intentional breach of duty" is sanctionable.

Plaintiff's conspiracy and aiding and abetting claims based on a common-law tort for

foreseeable injury caused by intentional breach of duty are frivolous and warrant sanctions.

Plaintiff now alleges that "Defendants had a legal duty" to anyone "lawfully driving or traveling

along or upon any highway" in Illinois, including Plaintiff, to not violate Section 625 ILCS § 5/11-

1416 of the Illinois Vehicle Code, which prohibits persons from "willfully and unnecessarily

hinder[ing], obstruct[ing] or delay[ing], or willfully and unnecessarily attempt[ing] to delay,

hinder or obstruct" traffic. It is unclear whether this is a negligence claim, a claim for willful and

wanton conduct, or something else, but what is clear is that it is frivolous. This is the best Plaintiff

could come up with to contort the facts to fit something, but he again failed miserably.

A party that is injured as a result of a violation of a statute or ordinance may recover only

upon a showing that, among other elements, the injury suffered was of the type that the statute or

---

[7] *See, e.g.*, Stephanie Wykstra, *Bail reform, which could save millions of unconvinced people from jail, explained*, Vox (Oct. 17, 2018), https://www.vox.com/future-perfect/2018/10/17/17955306/bail-reform-criminal-justice-inequality (last visited Feb. 24, 2025) ("The federal system relies very little on money bail[.]"); Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, U.S. Courts (Sept. 2017) ("the [Bail Reform Act] restricted the use of financial bonds").

ordinance was designed to protect against. *Miller v. Highway Comm'r of N. Otter Tp. Rd. Dist.*, 801 N.E.2d 599, 610–11 (Ill. App. 4th 2003) (affirming dismissal because harm targeted by ordinance was not the injury suffered); *Gouge v. Cent. Ill. Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991) (same). Here, Plaintiff describes his purported injuries as "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort, anxiety and emotional distress," and "loss of time." These are plainly not the types of harm that the Illinois Vehicle Code was designed to protect; rather, it was "designed to protect human life." *Passarella v. NFI Interactive Logistics, LLC*, 2015 WL 4148674, at *8 (N.D. Ill. July 9, 2015). Plaintiff's claim is absurd as it would mean any irate passenger could sue organizers of any major event planned in Chicago where they knew the event would cause increased traffic.

**b.      Plaintiff's claim for false imprisonment is frivolous.**

Plaintiff's conspiracy and aiding and abetting claims based on false imprisonment also warrant sanctions. There is no false imprisonment claim for being stuck in traffic. To state a claim for false imprisonment, the plaintiff must allege "an unlawful restraint of an individual's personal liberty or freedom of locomotion." *Marsden v. Kishwaukee Cmty. College*, 572 F. Supp. 3d 512, 531 (N.D. Ill. 2021) (citation omitted). "The confinement must be against an individual's will; voluntary consent to confinement defeats the claim." *Id.* at 532. Additionally, "not every inducement to remain can rise to the level of false imprisonment." *Marcano v. Nw. Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982). "[A] false imprisonment claim does not lie where the plaintiff is merely prevented from being or remaining in a place where she wants to be." *Robinson v. Sabis Educ. Sys., Inc.*, 1999 WL 414262, at *15 (N.D. Ill. June 4, 1999). As cogently stated in the Restatement (Second) of Torts, "one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied." Restatement (Second) of Torts § 36, comment d (1965).

12

In *Marcano*, the court found that choosing to remain with your automobile and belongings, which Plaintiff alleges he did here, did not constitute unlawful detention as there was no physical restriction on the freedom to move. 550 F. Supp. at 603–04; *see also Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018) (parking truck behind plaintiffs' car was not false imprisonment because plaintiffs were "free to leave their car"). Similarly in *Martin v. Lincoln Park West Corp.*, the court held that no false imprisonment was present where an individual subject to no real or perceived restraints chose to remain with his belongings. 219 F.2d 622, 624 (7th Cir. 1955). Courts have consistently rejected false imprisonment claims where plaintiffs "absurdly" allege they have been "confined to all the world except the place where [they] want[ ] to be." *Robinson*, 1999 WL 414262, at *15 (internal citations and quotation marks omitted).

Here, the SAC makes clear that Plaintiff was merely stuck in traffic, not imprisoned in his car. The fact that it took longer to reach his destination does not constitute false imprisonment. Moreover, Plaintiff's own allegations admit that others exited vehicles and walked to the airport. SAC ¶ 75. Similar to the plaintiffs in *Marcano*, *Gable*, and *Martin*, Plaintiff decided to stay in and with his vehicle, and that is not sufficient to maintain a false imprisonment claim.

## II.  PLAINTIFF AND PLAINTIFF'S COUNSEL VIOLATED RULE 11 BECAUSE THE SAC WAS FILED FOR AN IMPROPER PURPOSE.

Sanctions are appropriate where complaints are filed for an "improper purpose, such as to harass." Fed. R. Civ. P. 11(b); *see also Mars Steel*, 880 F.2d at 931–32.

*First*, the SAC was filed for the improper purpose of harassing CJE to punish it for its role in making bail available. In *Burda v. M. Ecker Co.*, the court affirmed a sanctions award where "[p]laintiff's position was not supported by any colorable legal argument," and it was "reasonable to presume that such arguments were pursued to 'vex' defendants." 2 F.3d 769, 777 (7th Cir. 1993) (citation omitted). In *Walton v. First Merchs. Bank Corp.*, the court affirmed a sanctions award

13

against a plaintiff whose "frivolous claims [were] utterly devoid of any factual or legal merit." 2022 WL 480039, at \*6 (S.D. Ind. Feb. 14, 2022), *aff'd*, 2022 WL 3999965 (7th Cir. 2022). The court found that "the mere fact that [plaintiff] presses this suit . . . demonstrates that the suit has no other purpose than to harass [defendant]." *Id.* In *Eberhardt*, the court awarded sanctions because of plaintiff's "improper purpose of being a nuisance." 2022 WL 22896754, at \* 6.

Here, Plaintiff filed the SAC because he was stuck in traffic. Delays from protests are annoyances that happen frequently, and for various reasons. But the inconvenience resulting from the protest does not warrant a federal class action against anyone that Plaintiff believes supported the message underlying the protest. The fact that Plaintiff is aggressively seeking to turn the April 15 Chicago protest into a class action, where Plaintiff has not suffered any cognizable injury, has based the suit on claims unsupported in the law, and is seeking an injunction against CJE's First Amendment protected activity, suggests that Plaintiff is pursuing these claims to harass CJE.

*Second*, Plaintiff's unjustifiable inclusion of highly inflammatory and irrelevant allegations seeking to associate CJE with Hamas and the IRGC reveals his improper purpose. It appears that Plaintiff seeks to use this lawsuit to harass CJE into abandoning its mission of making bail available to supporters of Palestine, based on the current debate in Congress around legislation that would grant the Treasury Department the authority to more easily strip organizations of their 501(c)(3) status if it deems that they are linked to terrorist organizations.[8] Plaintiff's allegations about Hamas and the IRGC have nothing to do with the common law claims Plaintiff attempts to assert or his alleged injuries. The protesters could have been protesting anything, and it would not matter to Plaintiff's claims, as the protesters' underlying message has absolutely no relevance to

---

[8] Thalia Beaty & Farnoush Amiri, *House passes bill that would allow Treasury to target nonprofits it deems to support terrorism*, Associated Press, Nov. 22, 2024, https://apnews.com/article/nonprofit-bill-terrorism-treasury-trump-aclu-ac88da656ea0d5cf8deb2e7bd045c1a4 (last visited Feb. 24, 2025).

the elements of the claims. Yet Plaintiff spent half of the factual allegations in the SAC attempting to tie the defendants to terrorist organizations for no purpose other than to damage CJE by wrongly suggesting publicly that CJE has ties to terrorism. This is a clear attempt to intimidate CJE to forgo its mission of encouraging bail funds out of fear that it will jeopardize its 501(c)(3) status. It is not far-fetched that Plaintiff's counsel may be targeting pro-Palestine protestors. Indeed, Plaintiff's counsel has engaged in online solicitation to support claims in connection with other pro-Palestinian protests that they specifically describe as "pro-Hamas" and "anti-Israel."[9] These facts and circumstances unequivocally reveal the SAC's purpose to harass CJE in violation of Rule 11.

## III.    CJE SHOULD BE AWARDED REASONABLE ATTORNEYS' FEES AND COSTS.

To "deter repetition of th[is] conduct," the Court should require Plaintiff and his counsel to pay CJE's reasonable attorneys' fees and costs incurred in connection with this action. Fed. R. Civ. P. 11(c)(4). Courts in this circuit have issued similar sanctions where frivolous and harassing litigation caused the other party to incur attorneys' fees and costs in responding. *See*, *e.g.*, *Eberhardt*, 2022 WL 22896754, at *2 (awarding attorneys' fees under Rule 11 where plaintiff filed objectively frivolous claims and acted in bad faith).[10]

### CONCLUSION

For the reasons stated above, Defendant CJE respectfully requests that this Court enter an order (1) sanctioning Plaintiff and his counsel; (2) awarding Defendant CJE reasonable attorneys' fees and costs incurred in connection with this action; (3) dismissing the SAC with prejudice against CJE; and (4) ordering any other sanctions or relief that the Court deems proper.

---

[9] @HamLincLaw, X (Feb. 7, 2024), https://x.com/HamLincLaw/status/1755344433241854442 (last visited Feb. 24, 2025) ("Drivers stuck on the streets by radical pro-Hamas activists."); @HamLincLaw, X (March 12, 2024), https://x.com/HamLincLaw/status/176756185949444254 (last visited Dec. 5, 2024) ("Caught in the chaos of anti-Israel protests") (on file with CJE's counsel).

[10] *See also Burda*, 2 F.3d at 777 (affirming Rule 11 sanctions award because the arguments were objectively unreasonable and frivolous); *Theis v. Smith*, 1986 WL 12304, at *1 (N.D. Ill. Oct. 29, 1986) (same); *Wilford*, 2003 WL 77003, at *7–8 (awarding attorneys' fees under Rule 11 because the lawsuit was filed with the purpose to harass).

Dated: February 25, 2025

Respectfully submitted,

/s/ *Precious S. Jacobs-Perry*
Precious S. Jacobs-Perry (ARDC No. 6300096)
Ali I. Alsarraf (ARDC No. 6339931)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
pjacobs-perry@jenner.com
aalsarraf@jenner.com

*Counsel for Defendant Tides Center d/b/a Community Justice Exchange*

16