IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>　　*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, A PROJECT OF WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; JEWISH VOICE FOR PEACE; TIDES CENTER, D/B/A COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; AND SIMONE TUCKER,<br><br>　　*Defendants*. | No. 1:24-cv-8209<br><br>Hon. Mary L. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**DEFENDANT TIDES CENTER D/B/A COMMUNITY JUSTICE EXCHANGE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**INTRODUCTION**[1]

Plaintiff Christopher Manhart ("Plaintiff") and his counsel have filed a meritless action against Defendant Community Justice Exchange ("CJE"). On April 15, 2024, protesters blocked traffic to O'Hare Airport. The Chicago protest was one of over 80 similar protests that day. Plaintiff alleges that he got stuck in traffic due to the protest, which resulted in a rescheduled flight, and a missed business dinner and networking opportunity. Plaintiff then initiated this lawsuit. The only allegations about CJE relate to its creation of a nationwide bail fund to support anyone who applied for assistance in connection with the protests (the "Bail Fund"). Based solely on this, the Second Amended Complaint (the "SAC") contains frivolous claims against CJE and attempts to falsely paint CJE as complicit with foreign terrorist organizations as discussed in CJE's Memorandum of Law in Support of its Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11 Memo of Law").

As a threshold matter, Plaintiff does not have Article III standing. It is well established that sitting in traffic and missing a "business dinner" and "networking opportunity" are not concrete injuries-in-fact. And, even if they were, the "irreducible constitutional minimum of standing" also requires "a causal connection between the [claimed] injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant. . . .'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). Here, the only allegations about CJE in the SAC center on its creation of the Bail Fund; that is it. Thus, the undisputed facts defeat the necessary causal connection here: Illinois does not have a cash bail system, and Plaintiff has not identified any need for the Bail Fund in Chicago. Plaintiff cannot establish *any* causal connection between the Bail Fund and any alleged harm from an Illinois highway being blocked.

---

[1] CJE incorporates by reference the arguments it makes in its Rule 11 Memo of Law (as defined below), ECF 72.

And, as discussed below, CJE was not involved in any conspiracy, and thus Plaintiff cannot trace his alleged injuries to a conspiracy that CJE participated in. In addition, Plaintiff's request for injunctive relief should be dismissed for lack of standing because it cannot reasonably be asserted that Plaintiff faces a real and immediate threat of future injury.

Moreover, even if Plaintiff had Article III standing, Plaintiff's claims against CJE for conspiracy and aiding and abetting the "common-law tort for foreseeable injury caused by intentional breach of duty" and false imprisonment are meritless and not well grounded in the law. First, the conspiracy and aiding and abetting claims fail because Plaintiff does not sufficiently allege that CJE agreed with a co-conspirator to commit a wrong or substantially assisted a wrong, particularly because none of the protesters would have needed cash for bail or legal assistance from the Bail Fund in a state that no longer utilizes cash bail and in a county with a public defender's office. Second, the conspiracy and aiding and abetting claims are not standalone causes of action—both require a meritorious underlying tort. But the underlying torts asserted in the SAC are meritless. The first tort—"common-law tort for foreseeable injury caused by intentional breach of duty"—is nonsensical because Plaintiff's alleged injury is not the type of injury protected by the Illinois Vehicle Code and there is no private right of action in the Illinois Vehicle Code. And the second tort—false imprisonment—fails because the SAC does not allege the kind of cognizable imprisonment required by Illinois law.

The Court also lacks personal jurisdiction over CJE, a California entity. Plaintiff does not allege that CJE did anything that would support a finding that CJE had sufficient minimum contacts with Illinois under the state's long arm statute or that extending jurisdiction to CJE would "comport with traditional notions of fair play and substantial justice," so the Court cannot exercise general or specific personal jurisdiction over CJE.

## FACTUAL BACKGROUND[2]

**CJE's Mission Centers on the Reform of the Criminal Justice System**

CJE is a California-based 501(c)(3) non-profit organization "support[ing] . . . organizations . . . that are experimenting with . . . power-building interventions [in the] criminal legal . . . system[]."[3] In line with its mission, CJE maintains a list of over 90 bail funds, hosts the National Bail Fund Network, and "during local and national protests, specific protest bail funds may be established."[4]

**CJE's Creation of a Nationwide Bail Fund for Pro-Palestinian Protests**

In April 2024, CJE created the Bail Fund "to support community members who are criminalized in the U.S. for their solidarity with Palestine." ECF 69, SAC ¶ 63. The Bail Fund's link was posted on a15action.com, a website created as part of a worldwide civil disobedience effort in seventeen countries. *Id.* ¶ 56–57. Plaintiff's sole allegations against CJE are that it created, helped advertise, and managed the Bail Fund "to incentivize participation in A15 Action blockades and to ensure activists arrested for violations of state and federal criminal law . . . could . . . mount a more competent legal defense" and "get them back on the streets faster." *Id.* ¶ 63. But in 2023, Illinois abolished cash bail,[5] and the Cook County Public Defender represents indigent people.[6] In light of this, Plaintiff pointlessly alleges in the SAC that "the statute of limitations has not yet run for possible federal prosecution," and that "[f]ederal law provides for cash bail." *Id.*

---

[2] Reproduced here for ease of reference are relevant portions of the Factual Background in CJE's Rule 11 Memo of Law, ECF 72, pp. 3-6.
[3] Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Feb. 24, 2025); *Mussat v. Power Liens, LLC*, 2014 WL 3610991 at *3 (N.D. Ill. Jul. 21, 2014) (noting that courts have the discretion to take judicial notice of the contents of a website.)
[4] Community Justice Exchange, *Directory of Community Bail Funds*, https://www.communityjusticeexchange.org/en/nbfn-directory (last visited Feb. 3, 2025).
[5] Illinois Legal Aid Online, *Cash Bail Changes - 2023 SAFE-T Act*, https://www.illinoislegalaid.org/legal-information/cash-bail-changes-2023-safe-t-act (last visited Feb. 24, 2025).
[6] Cook County Public Defender's Office, *Public Defender FAQ*, https://www.cookcountypublicdefender.org/Resources/public-defender-faq (last visited Feb. 24, 2025).

**The SAC**

On January 30, 2025, Plaintiff filed the SAC, which purported to assert class action claims against a range of defendants, including CJE. Relevant here, Plaintiff seeks to pursue four of the SAC's nine counts against CJE: (1) conspiracy to obstruct highways (Count V); (2) conspiracy to commit false imprisonment (Count VI); (3) aiding and abetting obstructing a highway (Count VII); and (4) aiding and abetting false imprisonment (Count VIII).

The SAC is based on a protest that occurred on April 15, 2024, where protesters in Chicago blocked the portion of the I-190 leading to O'Hare Airport between 7:00 a.m. and 9:30 a.m. *Id.* ¶¶ 65–66. Plaintiff alleges that he "was en route to a flight . . . for a business trip," *id.* ¶ 76; "was frozen on the highway for well over an hour, unable to move or navigate out of the traffic jam," and "was also too far away from the blockade to simply get out of his car and walk to the airport (plus that would have required abandoning his car)," *id.*; and that "[a]s a result of being stuck in traffic, Plaintiff missed his flight that morning and spent the next several hours re-booking his flight," *id.* ¶ 79, which caused him to miss "an important work dinner and networking session." *Id.* Plaintiff admits that "[s]everal passengers exited stopped . . . vehicles and walked . . . to the terminals." *Id.* ¶ 75. Plaintiff alleges that the protest caused him a "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort, anxiety and emotional distress," and "loss of time having to rearrange travel plans after missing his flight." *Id.* ¶¶ 96, 108, 116, 123, 130, 137, 144. Plaintiff seeks compensatory and punitive damages, and "injunctive relief prohibiting Defendants from further engaging in the unlawful conduct." *Id.* at p. 35.

**LEGAL STANDARD**

The standing doctrine under Article III of the Constitution "confines the federal courts to

4

a properly judicial role and limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). The standing doctrine "requires the plaintiff or party invoking federal jurisdiction to demonstrate that he has suffered an injury in fact that is fairly traceable to the defendant's conduct and redressable by a favorable judicial decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The plaintiff 'must establish standing at the time suit is filed and cannot manufacture standing afterwards.'" *Id.* (quoting *Pollack v. U.S. Dep't of Just.*, 577 F.3d 736, 742 n.2 (7th Cir. 2009)).

Moreover, to survive a Rule 12(b)(6) motion, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has interpreted *Twombly* and *Iqbal* to "require . . . 'some specific facts' to support the legal claims asserted in the complaint." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). "While the required level of specificity 'is not easily quantified,' a plaintiff must allege 'enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (citation omitted). "[T]he plausibility determination . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 586-87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)). At this stage, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013).

Finally, the requirement that the court have personal jurisdiction over defendants

5

"prevent[s] states from reaching beyond the limits of their sovereignty." *B.D. v. Samsung SDI Co., Ltd.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). The Illinois long-arm statute permits courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment, which only "authorizes personal jurisdiction over out-of-state defendants" when they have "certain minimum contacts with the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe* at 316); 735 ILCS 5/2-209(c). To survive a 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of" either general or specific jurisdiction over the defendant. *Kipp v. Ski Ent. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015) (quoting *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (plaintiff must "make out a prima facie case of personal jurisdiction")); *see also Daimler*, 571 U.S. at 125.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE COMPLAINT FOR LACK OF STANDING.

Plaintiff's Complaint should be dismissed for lack of Article III standing. A plaintiff has standing only if he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Keller v. Lvnv Funding, LLC*, 2022 WL 7501335, at *1 (N.D. Ill. Oct. 13, 2022) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Plaintiff cannot meet this standard for two reasons. First, the SAC claims harm only in the form of harassment, annoyance, and a general loss of time, which falls far short of concrete injuries-in-fact. *Id.*; *see also Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044–45 (7th Cir. 2021). Second, even if the harm alleged was a concrete injury, Plaintiff's

6

only allegations against CJE—that it created the Bail Fund—do not come close to alleging that the claimed harms (sitting in traffic, missing a flight, etc.) were fairly traceable to CJE's conduct. CJE helped raise bail money for protestors across the country. But *Illinois abolished* cash bail in 2023. CJE's Bail Fund was thus not needed in Illinois. The Bail Fund *could not have* caused anyone in Illinois to do anything. Accordingly, the Complaint should be dismissed for lack of standing.[7]

      Plaintiff's request for injunctive relief should also be dismissed for lack of standing. Plaintiff seeks injunctive relief "prohibiting Defendants from further engaging in the unlawful conduct alleged in th[e] Complaint." ECF 69, SAC at p. 35. But Plaintiff has no standing to seek this relief. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 856–57 (N.D. Ill. 2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). To establish standing for injunctive relief, a plaintiff "must show that she faces—going forward—a 'real and immediate threat of future injury' from [the defendant's] actions." *Id.* (quoting *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017)). "The equitable remedy of injunctive relief 'is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . .'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). The Seventh Circuit has frequently dismissed requests for injunctive relief where the purported threat of future injury is "merely conjectural or hypothetical," *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017), and where "'the possibility' that the plaintiff 'would suffer any injury as a result of' the challenged practice was 'too speculative." *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 395 (7th Cir. 2019) (quoting *Robinson v. City of Chi.*, 868 F.2d 959, 966 (7th Cir. 1989)).

---

[7] CJE incorporates by reference the Article III standing arguments CJE makes in its Rule 11 Memo of Law, ECF 72, Section I.A., pp. 7-8.

Here, the Court should dismiss Plaintiff's request for injunctive relief because it cannot reasonably be asserted that Plaintiff faces a "real and immediate threat of future injury." First, as discussed above, Plaintiff's allegations of harm—harassment, annoyance, and a general loss of time—do not constitute a legally cognizable injury. Therefore, any future threat of the same harm by definition cannot constitute a threat of future legally cognizable injury. Second, the likelihood that Plaintiff, an Indiana resident, will be stuck in traffic again on the way to O'Hare Airport on account of a similar protest is too speculative to confer jurisdiction. "Speculation about a possible chain of future events does not establish standing." *Otero v. Dart*, 2012 WL 5077727, at 5 (N.D. Ill. Oct. 18, 2012). Plaintiff has not even alleged that any defendant has engaged in or plans to engage in similar conduct in Illinois and on I-190, or how often he travels on that highway. Indeed, the only conduct at issue that Plaintiff claims he was injured by is a *one-time* protest blocking I-190 on the one day he happened to be traveling out of Chicago. There simply is no "real and immediate threat" of harm to Plaintiff, and his request for injunctive relief should be dismissed.

## II.  THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM.

Plaintiff alleges only civil conspiracy and aiding and abetting claims against CJE, but those claims themselves are facially defective because Plaintiff failed to allege the existence of the agreement required for a conspiracy claim or the substantial assistance of wrongdoing required for an aiding and abetting claim. And, even if the civil conspiracy and aiding and abetting claims were not plainly meritless, they still fail automatically because the underlying tort claims that Plaintiff asserts are meritless.[8]

Plaintiff's first underlying tort of a "common-law tort for foreseeable injury caused by

---

[8] CJE incorporates by reference the arguments it made in its Rule 11 Memo of Law, ECF 72, Section I.B, pp. 8-13.

8

intentional breach of duty" fails because, as discussed below, Plaintiff's purported injuries are plainly not the types of harm that the Illinois Vehicle Code was designed to protect, and that code does not have a private right of action. And Plaintiff's second underlying tort of false imprisonment fails because the SAC makes clear that Plaintiff was merely stuck in traffic, not imprisoned in his car, and he voluntarily decided to stay in his vehicle.

### A. Plaintiff's Conspiracy Claims Are Meritless.

A "[c]ivil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "The agreement is 'a necessary and important' element" of a conspiracy claim. *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999); *see also Trodden, Inc. v. J & E Auto Enters., Ltd*, 2014 WL 1117028, at *6 (Ill. App. 1st Mar. 19, 2014) (affirming dismissal of conspiracy claim because there were no specific details regarding the agreement). The SAC does not allege that CJE entered into any *agreement* to commit tortious conduct. It alleges only that CJE created, advertised, and managed the Bail Fund. CJE is aware of no authority that supports a claim that a nonprofit's creation of a bail fund in line with its mission—constitutionally protected activity—would be the kind of agreement that creates conspiracy liability. Thus, the conspiracy claims fail on their face and should be dismissed.

### B. Plaintiff's Aiding and Abetting Claims Fail.

To maintain an aiding and abetting claim in Illinois, a plaintiff must allege that: "(1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role as part of the overall or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Bank of Am., N.A. v. Knight*, 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012)

9

(quoting *Grimes v. Saikley,* 904 N.E.2d 183, 196 (Ill. App. 4th 2009)). "[I]t is not enough that a defendant assist[s] or encourage[s] another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial." *Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. 5th 2004); *see also Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157, 151 (Ill. App. 2d 1998) (finding assistance was not substantial when the person the defendant assisted likely would have engaged in the same action even without the defendant's involvement).

Here, Plaintiff's only allegations about CJE center on the Bail Fund, and they do not come close to alleging that CJE knowingly and substantially assisted any conduct. Plaintiff has failed to allege *any* contact between CJE and any protestors and thus failed to allege that CJE substantially assisted anyone in engaging in any alleged conduct. CJE simply helped raise money for the Bail Fund. But encouraging access to bail does not constitute actionable wrongful conduct. And, the lack of substantial assistance is particularly glaring given the abolishment of cash bail in Illinois and the existence of the Cook County Public Defender's office, which rendered moot protesters' need for cash or legal assistance from the Bail Fund in Chicago. Therefore, the Bail Fund could not have even "incentivized," let alone substantially assisted, anyone in Illinois to do anything. Thus, Plaintiff's aiding and abetting claims fail and should be dismissed.

### C. The Underlying Tort Claims Also Are Meritless.

The underlying torts alleged in the SAC are meritless. And, conspiracy and aiding and abetting are not independent claims—where the underlying tort claims fail, civil conspiracy and aiding and abetting automatically fail. *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3253604, at *6 (N.D. Ill. Nov. 8, 2006); *see also A Commc'n Co., Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1125 (S.D. Ill. 2014).

1. **Plaintiff's Claim for "Common-Law Tort for Foreseeable Injury Caused by Intentional Breach of Duty" Is Meritless.**

Plaintiff's conspiracy and aiding and abetting claims based on a common-law tort for foreseeable injury caused by intentional breach of duty are meritless. Plaintiff alleges that "Defendants had a legal duty" to anyone "lawfully driving or traveling along or upon any highway" in Illinois, including Plaintiff, to not violate Section 625 ILCS § 5/11-1416 of the Illinois Vehicle Code, which prohibits persons from "willfully and unnecessarily hinder[ing], obstruct[ing] or delay[ing], or willfully and unnecessarily attempt[ing] to delay, hinder or obstruct" traffic. ECF 69, SAC ¶ 99. But the statute that Plaintiff cites—Section 625 ILCS § 5/11-1416 of the Illinois Vehicle Code—"does not provide for a private right of action." *Priddle v. Dean Malanis and Great Lakes Service II, Inc.*, 2017 WL 372302, at *4 (N.D. Ill. Jan. 25, 2017). Plaintiff is attempting to get around the lack of a private right of action in the Illinois Vehicle Code by attempting to bring a common-law tort for foreseeable injury based on the statute. But the claim still fails.

A party that is injured as a result of a violation of a statute or ordinance may recover only upon a showing that, among other elements, the injury suffered was of the type that the statute or ordinance was designed to protect against. *Miller v. Highway Comm'r of N. Otter Tp. Rd. Dist.*, 801 N.E.2d 599, 610–11 (Ill. App. 4th 2003) (affirming dismissal because harm targeted by the ordinance was not the injury suffered); *Gouge v. Cent. Ill. Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991) (same). Here, Plaintiff describes his injuries as "[l]oss of personal freedom," unspecified "[l]ost business opportunities," "[a]nnoyance, inconvenience, and physical discomfort, anxiety and emotional distress," and "loss of time." ECF 69, SAC ¶¶ 96, 108, 123, 130, 137, 144. These are not the types of harm that the Illinois Vehicle Code was designed to protect; rather, it was "designed to protect human life." *Passarella v. NFI Interactive Logistics, LLC*, 2015 WL 4148674, at *8 (N.D. Ill. July 9, 2015).

### 2. Plaintiff's Claim for False Imprisonment Is Meritless.

Plaintiff's conspiracy and aiding and abetting claims based on false imprisonment are also meritless. There is no false imprisonment claim for being stuck in traffic. To state a claim for false imprisonment, the plaintiff must allege "an unlawful restraint of an individual's personal liberty or freedom of locomotion." *Marsden v. Kishwaukee Cmty. College*, 572 F. Supp. 3d 512, 531 (N.D. Ill. 2021) (citation omitted). As cogently stated in the Restatement (Second) of Torts, "one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied." Restatement (Second) of Torts § 36, comment d (1965).

In *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc*., the court found that choosing to remain with your car and belongings, which Plaintiff alleges he did here, did not constitute unlawful detention as there was no physical restraint or restriction on the freedom to move. 550 F. Supp. 595, 595 (N.D. Ill. 1982). Similarly in *Martin v. Lincoln Park West Corp*., the court held that no false imprisonment was present where an individual subject to no real or perceived restraints chose to remain with his belongings. 219 F.2d 622, 624 (7th Cir. 1955).

Here, Plaintiff was merely stuck in traffic, not imprisoned in his car. The fact that it took longer to reach his destination does not constitute false imprisonment. Moreover, Plaintiff's own allegations admit that others exited vehicles and walked to the airport. SAC ¶ 75. Plaintiff decided to stay in his vehicle, but that is not sufficient to maintain a false imprisonment claim.

### III. THE COURT SHOULD DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION OVER CJE.

Even if Plaintiff had Article III standing and sufficiently stated a claim, the Court should still grant CJE's motion to dismiss because the Court lacks personal jurisdiction over CJE. The SAC contains no allegations to support general or specific jurisdiction over CJE. General

jurisdiction exists only when a defendant is "essentially at home" in the forum state such that it would be a proper forum for "*any* litigation arising out of *any* transaction or occurrence . . . taking place *anywhere* in the world." *Purdue Rsch. Found.*, 338 F.3d at 787; *Daimler*, 571 U.S. at 127. For a corporation, barring exceptional circumstances, none of which are remotely applicable here, general jurisdiction exists only in its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 119; *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). As Plaintiff correctly pleads, CJE is a California-based organization with both its place of incorporation and principal place of business in California. ECF 69, SAC ¶ 17. "There is no question" that CJE is not incorporated in Illinois, nor is Illinois its primary place of business. *North v. Ubiquity, Inc.*, 72 F.4th 221, 225 (7th Cir. 2023). Therefore, the "focus is not on general but instead on specific personal jurisdiction." *Id.*

"Specific jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "When . . . the plaintiff alleges intentional torts, the Court focuses on the 'intentionally directed' part of the [purposeful availment] element." *Chi. Transit Auth. Retiree Health Care Tr. v. Dilworth Paxson, LLP*, 2020 WL 6393006, at *3 (N.D. Ill. Nov. 2, 2020). Plaintiff fails to allege any facts to support a finding of specific jurisdiction over CJE.

Plaintiff does not allege any activity by CJE that could be construed as "intentionally direct[ing]" any conduct towards Illinois or "purposefully avail[ing] itself of the privilege of conducting activities" in Illinois. *N. Grain Mktg.*, 743 F.3d 487 at 492–93; *see Chi. Transit Auth.*, 2020 WL 6393006, at *3. In fact, with regard to CJE, the SAC alleges only the formation of a

13

nationwide bail fund advertised on a website promoting a global protest and does not allege *any* activity in or targeting Illinois. That is not sufficient to confer personal jurisdiction over CJE. *See Am. Bridal & Prom Indus. Ass'n v. The P'ships & Uninc. Ass'ns*, 192 F. Supp. 3d 924, 932 (N.D. Ill. 2016) (finding no personal jurisdiction based on website posting where complaint "provided no facts that show that . . . defendant[] . . . aimed any action at Illinois"); *Morton Grove Pharma., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 485, F. Supp. 2d 944, 948 (N.D. Ill. 2007) (finding online solicitation of donations is not a sufficient basis for specific jurisdiction) (collecting cases); *cf. Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019) (finding a single online transaction to Illinois is not a "sufficient scale" to confer personal jurisdiction where the transaction had only an "attenuated relationship to Illinois").

Even if there were cash bail in Illinois—which, as discussed above, there is not—that is not sufficient to confer specific jurisdiction over CJE because there are no allegations that CJE sought to provide or actually provided funds to anyone in Illinois. Courts consistently reject claims for personal jurisdiction where Illinois residents have sought the services of an out-of-state resident, but the out-of-state resident did not seek or conduct business in Illinois. *See, e.g., Brook v. McCormley*, 873 F.3d 549, 553 (7th Cir. 2017) (no specific jurisdiction where "an [Illinois resident] sought out [defendant's] legal services" but defendant never sought out nor conducted business in Illinois); *Page v. DNC*, 2020 WL 8125551, at *4 (N.D. Ill. Aug. 17, 2020) (same).

In addition, the protesters' conduct in Illinois does not confer personal jurisdiction on CJE. Importantly, "the relation between the defendant and the forum 'must arise out of contacts that the "defendant *himself*" creates with the forum.'" *Adv. Tactical Ordinance Systs. v. Real Action Paintball Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (citing *Walden v. Fiore*, 571 U.S. 277, 279 (2014)).

14

Even considering Plaintiff's conspiracy and aiding and abetting claims against CJE, Plaintiff does not allege a "meeting of the minds" with any alleged co-conspirator in Illinois—related to the A15 action or otherwise—to confer personal jurisdiction over CJE. *See supra* Section II.A.; ECF 72, Rule 11 Memo of Law, Section I.B.1, p. 9. "[C]onclusory allegations of conspiracy unsupported by any factual assertions" that would "suggest[] a meeting of the minds" are "insufficient to confer personal jurisdiction." *Ahmed v. Quinn*, 1997 WL 471335, at *3 (7th Cir. Aug. 13, 1997) (internal citations and quotations omitted); *see also Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (finding circumstantial aiding and abetting allegations that failed to connect defendant to principal were "insufficient" to confer personal jurisdiction).

Without any forum-related activities, it is therefore impossible for Plaintiff to show that his alleged injuries arise out of any conduct he alleges CJE participated in by creating the Bail Fund, and certainly not conduct in Illinois. And, without any express allegation of a "meeting of the minds" with any alleged co-conspirator or tying CJE's supposed conduct *in Illinois* to the source of Plaintiff's injuries, any attempt to exert this Court's jurisdiction over CJE must fail. *Purdue Rsch. Found.*, 338 F.3d at 780 ("the unilateral activity of the plaintiff or some other entity" is not sufficient to confer specific jurisdiction).[9]

## CONCLUSION

For the foregoing reasons, CJE respectfully requests that this Court enter an order dismissing the Complaint with prejudice against CJE and ordering any other relief that the Court deems proper.

---

[9] Finally, imposing specific jurisdiction over CJE would not "comport with traditional notions of fair play and substantial justice." *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010) (citing *Int'l Shoe* at 477). While Illinois has a "strong interest in providing a forum for its residents . . . to seek redress," Plaintiff is a resident of Indiana. *Id.*

15

Dated: February 25, 2025          Respectfully submitted,

/s/ *Precious S. Jacobs-Perry*
Precious S. Jacobs-Perry (ARDC No. 6300096)
Ali I. Alsarraf (ARDC No. 6339931)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
pjacobs-perry@jenner.com
aalsarraf@jenner.com

*Counsel for Defendant Tides Center d/b/a Community Justice Exchange*