**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MANHART, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:24-cv-8209 |
| v. | ) ) ) | Hon. Mary M. Rowland |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, et al., | ) ) ) | |
| Defendants. | ) ) | |

**<u>DEFENDANT JEWISH VOICE FOR PEACE'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 2

ARGUMENT ................................................................................................................ 4

    I.    This is a SLAPP Suit and Should Be Dismissed Pursuant to the Illinois Citizen Participation Act ............................................................................................................ 4

        a.    Defendants' Acts were in Furtherance of Their First Amendment Rights ................... 7

        b.    Plaintiff's Meritless and Retaliatory Claims are Solely in Response to Defendants' First Amendment Activity .................................................................................... 11

           i.    Plaintiff's claims are meritless ................................................................ 11

           ii.    Plaintiff's claims are retaliatory ............................................................. 14

        c.    Plaintiff Cannot Show that Defendants' Acts Were Not Aimed at Procuring Favorable Government Action ............................................................................................... 16

    II.    All of Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted ................................. 17

        a.    Plaintiff Fails to State a Claim for False Imprisonment ............................................. 18

        b.    "Foreseeable Injury Caused by Intentional Breach of Duty" Is Not a Valid Cause of Action Under Illinois Law ............................................................................................ 20

        c.    Plaintiff's Remaining Claims for In-Concert Liability, Conspiracy, and Aiding-and-Abetting Fail ............................................................................................................ 26

        d.    Plaintiff Has Not Plausibly Alleged that JVP was Involved in the Action ................. 28

CONCLUSION .......................................................................................................... 30

## TABLE OF AUTHORITIES

### Cases

*Adler v. Frontier Airlines*, 2017 WL 2214982 (N.D. Ill. May 19, 2017) ..................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 8, 17, 28, 30

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................................ 8

*Benitez v. Bogucki*, 2024 WL 4953818 (N.D. Ill. Dec. 3, 2024) ................................................. 23

*Blood v. VH-1 Music First*, 668 F.3d 543 (7th Cir. 2012) ........................................................... 25

*Boim v. Quranic Literacy Inst. & Holy Land Found. For Relief And Dev.*, 291 F.3d 1000 (7th Cir. 2002) ................................................................................................................................ 10

*Bond v. Floyd,* 385 U.S. 116 (1966) ............................................................................................. 6

*Brendlin v. California*, 551 U.S. 249 (2007) ............................................................................... 20

*Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009) ............................................................................. 18

*Carmichael v. Prof'l Transp., Inc.*, 239 N.E.3d 512 (Ill. App. Ct. 2021) ................................... 21

*Chadha v. N. Park Elementary Sch. Ass'n*, 123 N.E.3d 519 (Ill. App. Ct. 2018) ....................... 26

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) ................................................ 23

*City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987) ....................................................................... 6

*Connick v. Myers*, 461 U.S. 138 (1983) ........................................................................................ 7

*Cowper v. Nyberg*, 28 N.E.3d 768 (Ill. 2015) ............................................................................. 22

*Cox v. State of La.*, 379 U.S. 559 (1965) .................................................................................... 25

*David M. Swain & Son v. Chicago, B. & Q.R. Co.*, 97 N.E. 247 (1911) ..................................... 12

*Duffy v. Godfread*, 2015 WL 1727148 (N.D. Ill. Apr. 9, 2015) ................................................. 30

*Faoro v. Jewish Voice for Peace, et al.*, No. 25-cv-289 (D.D.C. Jan. 31, 2025) ......................... 15

*First Fin. Inv. Fund III, LLC v. Johnson*, 2021 WL 4343999 (Ill. App. Ct. 2021) ............ 7, 11, 16

*Fortae v. Holland*, 778 N.E.2d 159 (Ill App. Ct. 2002) ......................................................... 26, 28

*Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943 (E.D. Wis. 2018)............................ 19

*Garrido v. Arena*, 993 N.E.2d 488 (Ill. App. Ct. 2013)................................................................. 4

*Georgakis v. Illinois State Univ.*, 722 F.3d 1075 (7th Cir. 2013).................................................. 30

*Gibson v. Detella*, 1997 WL 136694 (N.D. Ill. Mar. 24, 1997)..................................................... 13

*Gilmore v. Stanmar*, Inc., 633 N.E.2d 985 (Ill. App. Ct. 1994).................................................... 25

*Godun v. United Airlines, Inc.*, 2017 WL 11569125 (N.D. Ill. Feb. 15, 2017) ............................ 15

*Goral v. Kulys*, 21 N.E.3d 64 (Ill. App. Ct. 2014) ........................................................................ 14

*Hale v. Pace*, 2011 WL 1303369 (N.D. Ill. Mar. 31, 2011) ........................................................ 18

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ............................................................. 9

*Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016 (7th Cir. 2018) .................................... 27

*Illinois State Toll Highway Auth.*, 575 F. Supp. 2d 919 (N.D. Ill. 2008) ..................................... 12

*In re Estate of Case*, 59 N.E.3d 175 (Ill. App. Ct. 2016)............................................................. 24

*In re Paraquat Products Liab. Litig.*, 2023 WL 3948249 (S.D. Ill. June 12, 2023).................... 12

*In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828 (N.D. Ill. 2002) …..…………12

*Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993 (N.D. Ill. June 4, 2018)......... 29

*Johnson v. May*, 585 N.E.2d 224 (Ill. App. Ct. 1992) ................................................................. 24

*Keller v. Lvnv Funding, LLC*, 2022 WL 7501335 (N.D. Ill. Oct. 13, 2022) ......................... 12, 13

*Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564 (Ill. App. Ct. 2004) ........................................... 28

*Lacy v. City of Chicago*, 728 F. Supp. 3d 901 (N.D. Ill. 2024) ................................................... 22

*Lopez v. Winchell's Donut House*, 466 N.E.2d 1309 (Ill. App. Ct. 1984)................................... 19

*Marcano v. Nw. Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595 (N.D. Ill. 1982) ............. 18, 19

*McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242 (Ill. 1999) ............................. 27, 28

*N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886 (1982)............................................... 10, 30

*Nagel v. ADM Inv'r Services, Inc.*, 995 F. Supp. 837 (N.D. Ill. 1998)......................................... 23

*Packingham v. North Carolina*, 582 U.S. 98 (2017) ....................................................................... 8

*Parizer et al. v. AJP Education Foundation et al.*, No. 1:24-cv-724 (E.D. Va. July 9, 2024) ..... 15

*Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041 (7th Cir. 2021) ................................................. 12

*Pilotto v. Urban Outfitters W., L.L.C.*, 72 N.E.3d 772 (Ill. App. Ct. 2017) .......................... 21, 22

*Pollak, et ano. v. CodePink Women for Peace, et al.*, No. 2:24-cv-6253 (C.D. Ca, July 24, 2024) ................................................................................................................................................... 15

*Price v. Vill. of Homewood*, 2024 WL 4502106 (7th Cir. Oct. 16, 2024) .................................... 12

*Priddle v. Dean Malanis & Great Lakes Serv. II, Inc.*, 2017 WL 372302 (N.D. Ill. Jan. 25, 2017) ................................................................................................................................................... 20

*Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661 (N.D. Ill. Dec. 18, 2017).................... 29

*Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230 (Ill. App. Ct. 2007) ................................. 27

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781 (1988)............................................... 8

*Rommel v. Ill. State Toll Hwy. Auth.*, 938 N.E.2d 1163 (Ill. App. Ct. 2010)................................ 23

*Ryan v. Fox Television Stations, Inc.*, 979 N.E.2d 954 (Ill. App. Ct. 2012)...................... 4, 14, 16

*Sandholm v. Kuecker*, 962 N.E.2d 418 (Ill. 2012) ................................................................... 4, 11

*Schnaider v AMP, et al.*, No. 24-cv-1067 (M.D. Fl. May 2, 2024) ............................................. 15

*Shank v. H.C. Fields*, 869 N.E.2d 261 (Ill. App. Ct. 2007) ................................................... 23, 24

*Snyder v. Phelps*, 562 U.S. 443 (2011) .................................................................................... 6, 25

*Stevens v. Shelton*, 2019 WL 1239784 (N.D. Ill. Mar. 18, 2019) ............................................... 19

*Stone v. Chapman*, 2012 WL 7006985 (Ill. App. Ct. 2012) ........................................................ 25

*Texas v. Johnson*, 491 U.S. 397 (1989) ......................................................................................... 7

*Trodden, Inc. v. J & E Auto Enterprises, Ltd*, 2014 WL 1117028 (Ill. App. Ct. 2014) .............. 27

*Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157 (Ill. App. Ct. 1998)............................ 26, 28

iv

*United States v. Alvarez*, 567 U.S. 709 (2012) ............................................................. 25

*United States v. Grace*, 461 U.S. 171 (1983)................................................................. 25

*United States v. Osadzinski*, 97 F.4th 484 (7th Cir. 2024)........................................ 8, 10

*United States v. Wright*, 937 F.3d 8 (1st Cir. 2019)....................................................... 10

*Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620 (1980) ....................... 8

*Vodak v. City of Chicago*, 624 F. Supp. 2d 933 (N.D. Ill. 2009)................................... 25

*Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665 (7th Cir. 2021)............................. 12

*Wilson ex rel. Adams v. Cahokia Sch. Dist. No. 187*, 470 F. Supp. 2d 897 (S.D. Ill. 2007) ........ 19

*Wolf v. Liberis*, 505 N.E.2d 1202 (Ill. App. Ct. 1987)................................................... 26

*Wynn v. Illinois Dep't of Human Services*, 81 N.E.3d 28 (Ill. App. Ct. 2017)............................. 14

**Statutes**

18 U.S.C. § 3142(c)(2).................................................................................................... 14

625 ILCS § 5/11-1416 ............................................................................................... 12, 20

625 ILCS 5/11-208(a)(2) ............................................................................................... 21

625 ILCS 5/16-102 ........................................................................................................ 21

725 ILCS 5/110-1.5 ....................................................................................................... 13

735 ILCS 110 .......................................................................................................... *passim*

**Other Authorities**

Francesca Albanese (Special Rapporteur), *Anatomy of a Genocide: Report of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967*, U.N. Doc. A/HRC/55/73 (Jul. 1, 2024), https://documents.un.org/doc/undoc/gen/g24/046/11/pdf/g2404611.pdf .................................... 1

*Human Rights Watch Founder Accuses Israel of Genocide*, BBC NEWS, June 2, 2024, https://www.bbc.co.uk/programmes/p0j1rk0c............................................................................ 1

*Report of the Special Committee to Investigate Israeli Practices Affecting the Human Rights of the Palestinian People and Other Arabs of the Occupied Territories*, U.N. Doc. A/79/363 (Sep. 20, 2024), https://documents.un.org/doc/undoc/gen/n24/271/19/pdf/n2427119.pdf ........ 1

Restatement (Second) of Torts § 36, comment d (1965) ............................................................ 19

United Nations Regional Information Centre for Western Europe, *South Africa vs Israel: 14
Other Countries Intend to Join the ICJ Case* (Oct. 30, 2024), https://unric.org/en/south-africa-
vs-israel-14-other-countries-intend-to-join-the-icj-case/ ......................................................... 1

## Rules

Federal Rule of Evidence 201(b) ................................................................................................ 13

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 2, 17

## INTRODUCTION

For more than a year, individuals across the country and around the world, including Defendants, have engaged in First Amendment protected activity opposing what they view as the unjustified slaughter of Palestinians in Gaza by the state of Israel, which has left more than 45,000 Palestinians dead. Defendants and others have decried what they see as a genocide, a characterization shared by United Nations committees, state governments around the world, and international human rights experts.[1] This increase in activism against Israel's atrocities has been met with a retaliatory backlash, of which this lawsuit is just one example.

Plaintiff Christopher Manhart alleges that a demonstration outside Chicago's O'Hare International Airport against the Israeli military's actions in Gaza "inconvenienced" him by causing him to be stuck in traffic for over an hour, resulting in him missing a flight and a networking event. For this inconvenience, he sues four individuals and five organizations, all of whom Plaintiff characterizes as active in the Palestinian liberation movement, bringing claims for false imprisonment, obstructing a highway, conspiracy, aiding and abetting, and in-concert liability. Plaintiff has few if any factual allegations tying most of these defendants to the relevant protest and, even if he did, he fails to state a claim for any of his purported causes of action. In short, this is not a lawsuit brought in good faith. This is a targeted attack on a political movement that Plaintiff disagrees with. Plaintiff's attempt to wield civil litigation as a weapon against activists whose views he dislikes runs contrary to the most fundamental values of this country

---

[1] *See, e.g. Report of the Special Committee to Investigate Israeli Practices Affecting the Human Rights of the Palestinian People and Other Arabs of the Occupied Territories*, at ¶ 69, U.N. Doc. A/79/363 (Sep. 20, 2024), https://documents.un.org/doc/undoc/gen/n24/271/19/pdf/n2427119.pdf; Francesca Albanese (Special Rapporteur), *Anatomy of a Genocide: Report of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967*, at 1, U.N. Doc. A/HRC/55/73 (Jul. 1, 2024), https://documents.un.org/doc/undoc/gen/g24/046/11/pdf/g2404611.pdf; United Nations Regional Information Centre for Western Europe, *South Africa vs Israel: 14 Other Countries Intend to Join the ICJ Case* (Oct. 30, 2024), https://unric.org/en/south-africa-vs-israel-14-other-countries-intend-to-join-the-icj-case/; *Human Rights Watch Founder Accuses Israel of Genocide*, BBC NEWS, June 2, 2024, https://www.bbc.co.uk/programmes/p0j1rk0c.

enshrined in the First Amendment to the United States Constitution. This Court should accordingly grant Defendant Jewish Voice for Peace's motion to dismiss pursuant to the Illinois Citizen Participation Act, 735 ILCS 110, or, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

The facts relevant to Plaintiff's actual claims are few and straightforward. Plaintiff alleges that on the morning of April 15, 2024, activists protesting Israel's "alleged genocide" in Palestine staged a blockade on Interstate 190 outside O'Hare International Airport. Dkt. 69, Second Amended Complaint ("SAC"), ¶¶ 2, 65; Dkt. 33, First Amended Complaint ("FAC"), ¶ 49.[2] Some of the activists "linked their arms with PVC piping" to create a "wall" across the interstate while others "held signs or filmed and broadcasted the activity across social media." Dkt. 69 ¶ 70. The blockade caused a traffic jam which delayed some people in reaching the airport, while others got out of their cars and walked. *Id.* ¶¶ 71, 75. Police cleared the blockade and arrested 40 people. *Id.* ¶ 77. Traffic resumed after about two and a half hours. *Id.* ¶¶ 66, 78.

On the morning of the protest, Plaintiff was on his way to the airport to catch a flight to Virginia for a work trip. *Id.* ¶ 76. Because of the blockade, he was stuck in traffic for over an hour. *Id.* He chose not to get out of his car to walk to the airport as other travelers did because he felt he was too far away from the airport, and doing so would have required abandoning his car. *Id.* Plaintiff missed his flight and spent several hours re-booking his flight. *Id.* ¶ 79. He arrived at his destination that evening but missed an "important work dinner and networking session." *Id.* The experience caused him "[a]nnoyance, inconvenience, physical discomfort, anxiety and

---

[2] After receiving Rule 11 letters from multiple Defendants, Plaintiff removed certain allegations that were included in the Original and First Amended Complaints from his Second Amended Complaint. Defendant JVP cites to all versions throughout this motion because despite their removal the allegations are relevant to showing Plaintiff's intent in bringing this lawsuit, and JVP includes them in its argument section, below.

emotional distress." *Id.* ¶ 96. Plaintiff purports to bring this lawsuit on behalf of himself and a class of similarly situated individuals. *Id.* ¶ 80.

Plaintiff alleges that Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker ("Individual Defendants") helped organize the action, were present at the blockade and "active participants in its execution," and that Defendants Chehade and Murphy were among the arrestees. *Id.* ¶¶ 62, 67, 77. He further alleges that Defendants Jewish Voice for Peace ("JVP"), WESPAC Foundation ("WESPAC"), National Students for Justice in Palestine ("NSJP"), Dissenters, and Tides Center/Community Justice Exchange ("CJE") (collectively, "Organizational Defendants") took various actions in support of the protest. For instance, he alleges "on information and belief" that Defendants JVP and NSJP "furthered the A15 Action Plan" by selecting the location for the protest, coordinating funding for supplies, recruiting participants, and "actively promot[ing] the bail fund and the O'Hare blockade on social media both during and after the event." *Id.* ¶ 60. Dissenters allegedly helped select O'Hare as the target, *id.* ¶ 61, and CJE allegedly created a bail fund to support the protest. *Id.* ¶ 64. Defendants Falaneh and Tucker are alleged to be agents of Defendants CJE and JVP, respectively. *Id.* ¶ 68. Finally, NSJP is alleged to be an agent of WESPAC. *Id.* ¶¶ 13–14, 50.

In addition to the relatively narrow set of facts relevant to Plaintiff's claims, large portions of Plaintiff's Complaint are devoted to setting out Plaintiff's view of the geo-political history of the occupation of Palestine, *id.* ¶¶ 22–28, of the October 7, 2023 attacks, *id.* ¶¶ 29–34, and of the Palestine solidarity movement writ large. *See, e.g. id.* ¶¶ 39–48. Plaintiff repeatedly makes the bold allegation that various Defendants have ties to Hamas and the Iranian Revolutionary Guard Corps ("IRGC") and that the protest was part of those organizations' "propaganda" operation. *See, e.g.* Dkt. 69 ¶¶ 2, 5, 13, 18, 28, 37–40, 52–53, 55, 63, 72.

**ARGUMENT**

**I.     This is a SLAPP Suit and Should Be Dismissed Pursuant to the Illinois Citizen Participation Act**

Under the Illinois Citizen Participation Act ("ICPA"), a defendant is immunized from lawsuits brought solely to infringe on the defendant's rights to petition for relief from the government. 735 ILCS 110/15. ICPA is also referred to as Illinois's "anti-SLAPP" statute. *Sandholm v. Kuecker*, 962 N.E.2d 418, 422 (Ill. 2012). ICPA is designed to protect defendants from what are termed "Strategic Lawsuits Against Public Participation" ("SLAPPs"), which are "lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Id.* at 427. "A SLAPP plaintiff's goal is achieved not by success on the merits but by forcing defendants to expend funds on attorney fees and litigation costs, thus discouraging them from pursuing their protests." *Garrido v. Arena*, 993 N.E.2d 488, 495 (Ill. App. Ct. 2013). "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Ryan v. Fox Television Stations, Inc.*, 979 N.E.2d 954, 959 (Ill. App. Ct. 2012). ICPA is "expressly designed" to prevent "lawsuits that try to abuse the justice system by bringing unfounded claims in retaliation against defendants who legitimately exercise their First Amendment rights." *Garrido*, 993 N.E.2d at 497. To combat SLAPPs, ICPA provides for a mandatory award of attorney's fees and costs to prevailing movants. 735 ILCS 110/25.

Illinois courts have frequently observed that it can be "very hard to distinguish" SLAPP suits from ordinary lawsuits, but this is not one of those difficult cases. *Garrido*, 993 N.E.2d at 495; *Ryan*, 979 N.E.2d at 960. This is a textbook SLAPP suit. Plaintiff's Complaint makes no effort to hide his political motivations or that his goal is to "chill [Defendants'] speech or protest activity." *Ryan*, 979 N.E.2d at 959. Plaintiff's intentions are blatant on the face of the Complaint.

4

Rather than focus his attention on Defendants' allegedly tortious conduct or his damages,[3] Plaintiff devotes the majority of his Complaint to a screed about Hamas and his unfounded claims that Defendants are somehow associated with that organization. *See, e.g.* Dkt. 69 ¶¶ 2, 5, 13, 18, 22–40, 52–55, 63, 72. Plaintiff simply does not like Defendants' politics or the content of their speech. He considers it to be part of a "propaganda offensive" organized by "terrorist[s]." *Id.* ¶ 5. He believes Defendants' ideas are "dumb and radical" and should be confined to college campuses. Dkt. 33 ¶ 45. Plaintiff also does not like Defendants' protest tactics. He considers them "misguided" and "self-defeating." Dkt. 69 ¶ 1. Plaintiff explicitly states that he believes the Defendants should be "punished without remorse or hesitation," which is why he is bringing this suit. Dkt. 33 ¶ 8. He describes Defendants' political movement as if it were a cancer, warning that it will "metastasize in the body politic" if it is not repressed. *Id.* Plaintiff's pleadings make clear that his goal is to ensure that Defendants and others do not engage in future protests that he disagrees with. He requests that this Court enjoin Defendants from engaging in future advocacy without any basis to suggest he would be personally impacted by Defendants' hypothetical future political action. Dkt. 69 ¶ 1, p. 35. Plaintiff would clearly not be pursuing litigation if he had become stuck in traffic as a result of, say, a traffic accident or road construction. He is suing Defendants because of their association with a protest movement he dislikes.

It is worth noting that Plaintiff alleges at least 40 individuals participated in the supposedly tortious blockade, but rather than sue those individuals (who Plaintiff could easily identify due to their arrests), Plaintiff has targeted multiple major national Palestine solidarity organizations whose alleged connection to this protest, even accepting the allegations in the light

---

[3] Notably, Plaintiff makes no effort to explain the significance of the "networking opportunity" he missed. He does not, for instance, suggest that he lost career opportunities or suffered any financial consequences as a result. In the SAC, Plaintiff alleges for the first time that "several" unidentified individuals "lost revenue or incurred additional pecuniary expense" but he specifically does not allege that he is one of them. Dkt. 69 ¶ 75.

most favorable to Plaintiff, is flimsy at best.[4] Dkt. 69 ¶¶ 70, 77. Additionally, not all of the Individual Defendants are alleged to have been arrested, making any claim that they participated in the blockade dubious. *Id.* ¶¶ 62, 77. However, according to Plaintiff's Complaint, the Individual Defendants are all affiliated with organizations that oppose Israel's atrocities in Gaza. *Id.* ¶¶ 18–21. Simply put, Plaintiff's choice of defendants reveals that his true motive is not to hold accountable those responsible for allegedly causing him to miss his flight, but rather to deal a blow to the movement for Palestinian human rights by attacking prominent organizations within the movement and those who amplify its message.

Plaintiff's effort to silence protesters whose message he disagrees with offends this nation's core values as embodied by the First Amendment to the United States Constitution. "The central commitment of the First Amendment . . . is that debate on public issues should be uninhibited, robust, and wide-open." *Bond v. Floyd*, 385 U.S. 116, 136 (1966) (cleaned up). While Plaintiff may have found Defendants' message offensive, it is a "bedrock principle" underlying the First Amendment that speech "cannot be restricted simply because society finds the idea itself offensive or disagreeable." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1987).

In Illinois, the analysis for determining whether a lawsuit constitutes a SLAPP and should be dismissed under ICPA has three prongs:

> (1) the movant's acts were in furtherance of his right to petition, speak, associate, or otherwise participate in government to obtain favorable government action; (2) the

---

[4] Other Organizational Defendants' arguments regarding the tenuous nature of the allegations connecting them to this protest are fleshed out further in their Motions for Rule 11 Sanctions and Motions to Dismiss.

nonmovant's claims are solely based on, related to, or in response to the movant's acts in furtherance of his constitutional rights; and (3) the nonmovant fails to produce clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action.

*First Fin. Inv. Fund III, LLC v. Johnson*, 2021 WL 4343999, *6 (Ill. App. Ct. 2021). The "movant bears the burden of proof under the first two prongs of the test, after which the burden shifts to the nonmovant." *Id.* Here, all three prongs compel that this lawsuit be dismissed.

### a. Defendants' Acts were in Furtherance of Their First Amendment Rights

As for the first prong, it is clear from the face of the Complaint that Plaintiff is targeting Defendants for engaging in activity in furtherance of their First Amendment rights. He is suing protesters for exercising their freedom of speech to speak out in opposition to Israel's assault on Gaza and the United States government's support thereof. That speech is plainly on a matter of public concern, and it was carried out in a public place. *See Texas v. Johnson*, 491 U.S. 397, 411 (1989) ("[E]xpression of dissatisfaction with the policies of this country, [is] expression situated at the core of our First Amendment values."); *Connick v. Myers*, 461 U.S. 138, 145 (1983) ("Speech on public issues occupies the highest rung of the hierarchy of First Amendment values and is entitled to special protection.") (cleaned up).

Plaintiff has sued numerous organizations whose primary alleged involvement in the action was posting on social media in support of the protest, which is protected by the First Amendment. Plaintiff alleges that "Defendants broadcasted the blockade on their social media accounts along with pre-coordinated pro-Palestinian boilerplate, hoping to generate international publicity against the 'Zionist war machine.'" Dkt. 69 ¶ 3; Dkt. 33 ¶ 3. He complains that social media posts by Defendants Dissenters, NSJP, and JVP "[gave] the activists blocking traffic what they wanted—worldwide media attention" and "amplified the activists' message worldwide." Dkt. 69 ¶¶ 72, 74. He also attacks individual defendants who were allegedly physically present at

the blockade for posting footage of the protesters on social media or speaking to the media. *Id.* ¶¶ 19, 21. All of these allegations target Defendants' exercise of their First Amendment rights. *See Packingham v. North Carolina*, 582 U.S. 98, 105 (2017) (noting that social media and the internet are now "the most important places (in a spatial sense) for the exchange of views"); *United States v. Osadzinski*, 97 F.4th 484, 491 (7th Cir. 2024) (noting that forwarding multimedia links and sending messages over social media are First Amendment protected activities). Plaintiff's unhappiness that the activists' message, which he views as "propaganda," was disseminated on the internet and to the press does not mean that it was not protected speech. Likewise, Plaintiff targets certain Defendants including WESPAC and CJE for soliciting charitable donations and fundraising, activity that is also protected by the First Amendment. Dkt. 69 ¶¶ 3, 14, 50, 63; *see Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds . . . involve a variety of speech interests . . . that are within the protection of the First Amendment"); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795–96 (1988). Based on the Complaint, it is clear that Plaintiff's true target is not Defendants' allegedly tortious conduct, but their First Amendment protected activities.

Plaintiff attempts to delegitimize Defendants' constitutionally protected advocacy by repeatedly insisting that it was undertaken at the behest of Hamas and the IRGC, but his attempts are unavailing. As an initial matter, Plaintiff's allegations that Defendants are Hamas agents are wholly unsupported, conclusory, and implausible and are precisely the type of "naked assertions devoid of factual support" that courts need not accept as true at the pleadings stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007)). In the previous versions of the Complaint, Plaintiff attempted to tie now-dismissed Defendant American Muslims for Palestine ("AMP")—through alleged predecessor

organizations—to Hamas, relying only on unproven allegations in complaints from other lawsuits in support of his outlandish accusations. *See* Dkt. 33 at ¶ 13, p. 5 n.4. Plaintiff then asserted, with no factual support, that NSJP was founded by AMP, and remains controlled by AMP. *Id.* ¶ 14. Plaintiff provided no specific factual allegations connecting any of the other Defendants to Hamas or the IRGC. In the SAC, Plaintiff dropped AMP as a defendant and removed his allegations about that organization's supposed ties to Hamas, thus severing his only tenuous link between any of the current Defendants and Hamas. He nevertheless continues to repeatedly imply, without a shred of evidence, that all the Defendants are Hamas operatives and participants in its "propaganda offensive." *See, e.g.* Dkt. 69 ¶¶ 5, 37, 72. Plaintiff's repeated unfounded allegations that any advocacy critical of Israel is undertaken at the direction of Hamas not only dismisses the millions of people who are driven by their consciences to oppose what they view as a genocide, it is also a classic tactic employed by those who wish to discredit criticism of Israel, exposing Plaintiff's true political motivations in bringing this lawsuit.

Regardless, even construing Plaintiff's conclusory and unsupported accusations in the light most favorable to him, Plaintiff has not alleged that Defendants did anything more than express criticism of Israel's destruction of Gaza and opposition to Zionism more broadly, which are messages that Hamas and the IRGC also happen to support. The Supreme Court and the Seventh Circuit have reaffirmed time and time again that such independent advocacy is protected by the First Amendment, even when that advocacy happens to overlap with the goals of groups that the United States government has designated as terrorist organizations. *See, e.g. Holder v. Humanitarian Law Project*, 561 U.S. 1, 26 (2010) (emphasizing that the statute proscribing material support for terrorism was constitutional in part because it "does not prohibit independent advocacy or expression of any kind"); *Boim v. Quranic Literacy Inst. & Holy Land*

*Found. For Relief And Dev.*, 291 F.3d 1000, 1026 (7th Cir. 2002) (noting individuals can "with impunity, become members of Hamas, praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas"); *Osadzinski*, 97 F.4th at 491–92 (noting that "sending pro-ISIS messages over social media" is First Amendment protected expression and that the Supreme Court has "in no way questioned the right to independently express personal views—positive, negative, or neutral—about terrorist organizations"). "Advocacy is always subject to the highest levels of scrutiny under the First Amendment." *Boim*, 291 F.3d at 1026.[5] In short, Plaintiff's incessant efforts to paint Defendants as Hamas agents—which have nothing whatsoever to do with the actual claims in this lawsuit—are a red herring designed to distract from his blatant attack on Defendants' protected conduct.

In addition, Plaintiff suggests that Defendants were not engaged in "speech" because one of the stated aims of the protest was to "blockade major choke points in the economy … with the aim of causing the most economic impact." Dkt. 69 ¶¶ 1–2, 7, 57. But the Supreme Court has recognized that protests do not lose their First Amendment protection because their objectives include causing economic injury. *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 914 (1982) (upholding constitutionality of boycott although organizers "certainly foresaw—and directly intended—that the merchants would sustain economic injury as a result of their campaign"). Therefore, Plaintiff's efforts to cast Defendants' actions as anything other than constitutionally protected protest cannot succeed.

---

[5] Plaintiff repeatedly alleges that the blockade was consistent with Hamas's propaganda strategy, citing, for example, calls from Hamas leaders for "resistance abroad." *See, e.g.* Dkt. 69 ¶¶ 5, 27, 37, 53. But even if Plaintiff had any factual allegations to support his claim that Defendants took any action motivated by Hamas's vague alleged calls to action, activity undertaken in response to a "general call for support" from a group designated a Foreign Terrorist Organization is insufficient as a matter of law to show that the activity occurred in coordination with or at the direction of the organization such that the activity would lose its First Amendment protected character. *Osadzinski*, 97 F.4th at 492–93; *see United States v. Wright*, 937 F.3d 8, 28–29 (1st Cir. 2019) (finding that coordination "with the strategy, the tactics of the foreign terrorist organization" rather than with the organization itself was insufficient to support conviction under material support for terrorism statute).

### b. Plaintiff's Meritless and Retaliatory Claims are Solely in Response to Defendants' First Amendment Activity

Moving to the second prong of the analysis, Plaintiff's Complaint demonstrates that his claims "are solely based on, related to, or in response to" Defendants' actions in furtherance of their constitutional rights. *Sandholm*, 962 N.E.2d at 430. When assessing this issue, courts analyze whether the claim is "meritless" and whether it was "filed in retaliation in order to deter the other party from further engaging in such activities." *Johnson*, 2021 WL 4343999 at *7.

### i. Plaintiff's claims are meritless

A claim is meritless "if the moving party disproves some essential element of the nonmovant's claim." *Id.* As argued below in Section II, Plaintiff has not stated a single legitimate claim against any Defendant, so this case is meritless.

What's more, Plaintiff himself has implicitly acknowledged that several of the claims he originally brought in this lawsuit were meritless. After receiving Rule 11 letters from multiple Defendants threatening sanctions for filing unfounded claims, Plaintiff dropped all of his claims against two of the original Organizational Defendants: AMP and US Campaign for Palestinian Rights ("USCPR"). As AMP pointed out in its draft motion for Rule 11 sanctions served on Plaintiff, Plaintiff's claims against AMP were based solely on the notion that NSJP is AMP's agent, which is factually and legally false and disproven by the very sources Plaintiff cited in his Complaint and attached as exhibits. As for USCPR, its draft Rule 11 motion pointed out that, among other defects, Plaintiff's Complaint failed to establish any basis to find personal jurisdiction in Illinois over Washington D.C.-based USCPR. By dismissing these defendants to avoid sanctions, Plaintiff acknowledged that he had no basis to pursue his claims against them.

Plaintiff also voluntarily dismissed four of his original claims based on a public nuisance theory. Dkt. 33 ¶¶ 93–97, 110–118, 134–140, 154–159. As Plaintiff's dismissal recognizes, those

claims were meritless because Plaintiff's alleged injuries (annoyance and inconvenience from being stuck in traffic and missing a networking event) do not demonstrate a special injury that is different in kind from that suffered by the general public, a requirement to have standing to pursue a claim for public nuisance under Illinois law. *See In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828, 848 (N.D. Ill. 2002). Illinois courts have long rejected injuries such as Plaintiff's as a basis to confer standing for public nuisance in the context of highway obstruction. *See In re Paraquat Products Liab. Litig.*, 2023 WL 3948249, at *6 (S.D. Ill. June 12, 2023) (noting that "where the injury was loss of time, business engagements, and the like, there is merely an injury to the public right to use the street" that would not provide standing to pursue an action for public nuisance) (*quoting David M. Swain & Son v. Chicago, B. & Q.R. Co.*, 97 N.E. 247, 249 (1911)).[6]

In addition to the dismissed claims, Plaintiff's lawsuit is meritless because it fails to establish the threshold requirements of Article III standing, which requires an injury in fact that is "concrete and particularized." *See Pennell v. Glob. Tr. Mgmt., LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021). Courts in this Circuit have recognized that annoyance, inconvenience, stress, anxiety, and lost time are not concrete injuries for purposes of Article III standing. *See Keller v. Lvnv Funding, LLC*, 2022 WL 7501335, at *2 (N.D. Ill. Oct. 13, 2022); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021); *Price v. Vill. of Homewood*, 2024 WL 4502106, at *1 (7th Cir. Oct. 16, 2024) (no standing based on "time and money" spent defending ticket that exceeded statutory maximum where ticket was dismissed); *Kushner v. Illinois State Toll Highway Auth.*, 575 F. Supp. 2d 919, 922–23 (N.D. Ill. 2008) (no standing based on the "limited inconvenience" caused by getting busy signal for days when trying to

---

[6] As discussed in Section II, Plaintiff also abandoned four claims based on an alleged "statutory tort" for violating 625 ILCS § 5/11-1416 of the Illinois Vehicle Code.

contact government agency, because administrative inconvenience "is an unfortunate reality of daily life."). Plaintiff's allegations that he suffered inconvenience, annoyance, and anxiety from being stuck in traffic, and that he missed an unspecified networking event (the significance of which he does not explain), are not concrete injuries that confer standing. *See Keller*, 2022 WL 7501335, at *2 (finding amorphous "loss of time and money" without specifics regarding how plaintiff was harmed was insufficient to establish standing); *Gibson v. Detella*, 1997 WL 136694, at *3 (N.D. Ill. Mar. 24, 1997) (noting missed medical appointments on their own could not sustain a claim absent evidence that the missed appointments caused some actual injury). Traffic is an unfortunate but unavoidable fact of life, and the existence of a temporary traffic jam, while undeniably annoying, is not the type of annoyance in which the law intervenes. This lawsuit should be dismissed on that basis alone.

Moreover, many of Plaintiff's factual allegations are provably false. For instance, as argued in greater detail in Defendant CJE's Motion for Rule 11 Sanctions, Plaintiff's theory of liability against Defendant CJE is based on it allegedly setting up a "bail fund" to support protesters arrested at the relevant action. Dkt. 69 ¶¶ 3, 63, 120, 127, 136, 143. However, it is a matter of public record that as of September 18, 2023, Illinois criminal courts can no longer order or receive cash bail. *See* Pretrial Fairness Act, 725 ILCS 5/110-1.5 ("[T]he requirement of posting monetary bail is abolished."). This Court can take judicial notice of that fact. *See* FED. R. EVID. 201(b). An alleged bail fund therefore could not have contributed to the action in any way, as cash could not have legally led to the release of any of those arrested. In the SAC, Plaintiff attempts to reframe his spurious theory by hypothesizing that the bail fund could be used not for bail, but for the distinctly different purpose of paying legal fees. Dkt. 69 ¶ 63. However, Plaintiff makes no claim that anyone involved in the protest relied on the purported "bail fund" in any

13

way. He compounds on his conjecture by claiming that the fund could pay for bail for unspecified, hypothetical federal charges in the future. *Id.* This is in spite of the Bail Reform Act explicitly stating that a federal court "may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). Plaintiff's speculation is untethered from reality and reinforces that this is a meritless, frivolous lawsuit.

### ii. Plaintiff's claims are retaliatory

When assessing whether a lawsuit is retaliatory, Illinois courts often consider "(1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and are a 'good-faith estimate of the extent of the injury sustained.'" *See Ryan*, 979 N.E.2d at 962–63. Here, both factors provide compelling evidence of a retaliatory motive. Plaintiff filed his lawsuit five months after the relevant protest and in the midst of an ongoing protest movement. *See Hytel Group, Inc. v. Butler*, 938 N.E.2d 542, 547, 555–56 (Ill. App. Ct. 2010) (affirming dismissal under ICPA of lawsuit filed four months after protected activity); *Goral v. Kulys*, 21 N.E.3d 64, 80 (Ill. App. Ct. 2014) (finding lawsuit filed three and a half months after first instance of protected activity suggested a retaliatory motive); *Wynn v. Illinois Dep't of Human Services*, 81 N.E.3d 28, 42 (Ill. App. Ct. 2017) (finding, in employment case, that five month gap between protected activity and adverse action supported inference of retaliation). This suit also came on the heels of a number of similar SLAPP suits targeting activists critical of Israel being filed around the country, suggesting that this suit was not motivated by Plaintiff's desire to be compensated for his alleged injuries but was rather part of a coordinated, nationwide strategy to inundate Palestine solidarity activists with expensive, time-consuming litigation. *See, e.g. Parizer et al. v. AJP Education Foundation et al.*, No. 1:24-cv-724 (E.D. Va. July 9, 2024);

14

*Schneider v AMP, et al.*, No. 24-cv-1067 (M.D. Fl. May 2, 2024); *Pollak, et ano. v. CodePink Women for Peace, et al.*, No. 2:24-cv-6253 (C.D. Ca, July 24, 2024). Indeed, two days after the SAC was filed, Plaintiff's counsel filed an extremely similar, equally meritless lawsuit in Washington, D.C., against JVP and other organizations opposed to Israel's actions in Gaza. *See Faoro v. Jewish Voice for Peace, et al.*, No. 25-cv-289 (D.D.C. Jan. 31, 2025).

The second factor—whether the damages requested are reasonably related to the facts alleged in the complaint and are a "good-faith estimate of the extent of the injury sustained"— also weighs decisively in Defendants' favor. Plaintiff alleges that he is entitled to over $5,000,000 where his damages are "inconvenience," a missed flight (where he was able to catch another flight a few hours later and arrive at his destination on the same day), and an unnamed "networking event" which he allegedly missed, but does not elaborate regarding how his absence harmed him. Dkt. 69 ¶¶ 6, 10, 79, 96. A seven-figure dollar amount for such alleged injuries is, to put it mildly, absurd. *See Hytel Group, Inc.*, 938 N.E.2d at 556 (affirming dismissal under ICPA where plaintiff's $4 million demand was not supported by the facts, reasoning that such a demand was "intended to strike fear into the defendant rather than being a good-faith estimate of the extent of the injury sustained"). If Plaintiff had missed his flight because of an issue caused by the airline, he would not have been able to recover at all for the "inconvenience damages" which are the sole basis for his Complaint here, let alone recover in the millions. *See Godun v. United Airlines, Inc.*, 2017 WL 11569125, at *5 (N.D. Ill. Feb. 15, 2017); *Adler v. Frontier Airlines*, 2017 WL 2214982, at *2 (N.D. Ill. May 19, 2017). In addition, Plaintiff purports to bring this action on behalf of a larger class of similarly situated individuals, seeking damages for the proposed class to the tune of $36 million. Dkt. 39, Plaintiff's Initial Status Report at 3. The Complaint alleges that the class includes over 1,000 members, but there are no facts supporting

that figure, nor any facts regarding how many of that number missed flights, or how many of those who missed flights suffered anything worse than "inconvenience" and "annoyance." Dkt. 69, ¶ 84. Plaintiff merely alleges that "several" people incurred unspecified "pecuniary expense" or "lost revenue." *Id.* ¶ 75. There is no world in which a $36 million demand is a good-faith estimate of the class's damages resulting from being caught in traffic. *See Ryan*, 979 N.E.2d at 963 (finding complaint alleging $28 million in damages was evidence of a retaliatory motive). "Demanding damages in the millions . . . is a classic SLAPP scenario," and "[b]ased on the nature of plaintiff's alleged injuries, it is difficult to see how such a high demand can be factually justified." *Id.*

Finally, it bears noting that while Illinois courts often consider timing and damages when assessing whether a lawsuit is retaliatory, "this is not an exclusive list and there may well be other factors that are relevant." *Ryan*, 979 N.E.2d at 963. This case presents a rare situation where an inference of retaliation is unnecessary because Plaintiff has admitted his retaliatory motive. As discussed above, Plaintiff spelled out his desire to see Defendants "punished without remorse or hesitation" for engaging in protest that he seeks to prevent others from emulating. Dkt. 33 ¶ 8. In this case, the evidence of a retaliatory motive is overwhelming.

### c. Plaintiff Cannot Show that Defendants' Acts Were Not Aimed at Procuring Favorable Government Action

As for the third prong, Plaintiff cannot meet his burden of proving by "clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action." *Johnson*, 2021 WL 4343999 at *6. Once again, Plaintiff's own words foreclose any such argument. Plaintiff alleges in the first paragraph of the Complaint that

16

Defendants acted in an "effort to extort political change from faraway luminaries." Dkt. 69 ¶ 1.[7]

He also alleges throughout his pleadings that Defendants' goals included influencing the

American public and politicians to oppose Israel. *See id., e.g.* Dkt. 33 ¶ 13 (alleging former

Defendant AMP "seeks to reduce support for Israel by the American public and politicians, and

to impose a domestic cost on pro-Israeli policies implemented by American leaders"); Dkt. 69

¶ 28 (alleging blockade was part of Hamas-led "propaganda war" to cause "a drastic shift in

America's pro-Israel paradigm"); *id.* ¶ 41 (alleging Defendants wanted to "exert pressure on

political leaders to oppose the 'Zionist entity'").

Because Defendants have demonstrated that this is a SLAPP suit, this Court should

dismiss this case pursuant to ICPA and award Defendants reasonable attorneys' fees and costs.

## II.  All of Plaintiff's Claims Should Be Dismissed Pursuant to Fed. R. Civ. P 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted

In the alternative, Plaintiff's Complaint should be dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive

a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

(internal quotation marks and citations omitted). The "plausibility standard" asks for "more than

a sheer possibility that a defendant has acted unlawfully." *Id.* While detailed factual allegations

are not required, the complaint must contain more than mere "labels and conclusions or a

formulaic recitation of the elements of a cause of action." *Id.* (cleaned up). "Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*

Courts need not accept "a legal conclusion couched as a factual allegation." *Id.* "[S]ome factual

---

[7] The Original Complaint alleged that Defendants sought to extort political change from "distant capitols," dkt. 1, Original Complaint, at ¶ 1, which sheds light on what Plaintiff means by "faraway luminaries"—namely, governmental actors.

allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). None of Plaintiff's claims state a plausible claim for relief.

### a. Plaintiff Fails to State a Claim for False Imprisonment

Count I alleges that, by causing him to be stuck in traffic for over an hour, the Individual Defendants falsely imprisoned him in his car. Dkt. 69 ¶¶ 94–96. Under Illinois law, false imprisonment is:

> [A]n unlawful restraint of an individual's personal liberty or freedom of locomotion. Imprisonment has been defined as any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go. In order for a false imprisonment to be present, there must be actual or legal intent to restrain.

*Hale v. Pace*, 2011 WL 1303369, at *11 (N.D. Ill. Mar. 31, 2011). There are five ways in which a defendant can cause the required confinement, including "(1) actual or apparent physical barriers; (2) overpowering physical force, or by submission to physical force; (3) threats of physical force; (4) other duress; and (5) asserted legal authority." *Id.* Regardless of the methods employed to cause it, the confinement must be "involuntary." *See Marcano v. Nw. Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982).

Here, Plaintiff has not alleged that there was any actual or apparent physical barrier or use or threat of force that confined him anywhere. On the contrary, Plaintiff alleged that other individuals chose to get out of their cars and walk to the airport. Dkt. 69, ¶ 75. He has not alleged that Defendants or any participants in the blockade prevented those individuals from leaving their cars or refused to let them pass the blockade. Instead he alleges that he "felt compelled" to stay in his car because he believed the hike to the airport was too long and he did not want to abandon his car, which he believes would have violated Illinois law. *Id.* ¶¶ 75–76, 126. An

understandable choice, but his choice nonetheless.[8] Finding it inconvenient to leave a place or leave without your vehicle is not the same thing as being confined against your will, and does not constitute the tort of false imprisonment. *See Marcano*, 550 F. Supp. at 602–03 (dismissing false imprisonment claim where plaintiff was not confined but rather voluntarily chose to remain at car dealership because defendants took her keys and leaving would have required leaving behind her car and belongings, noting that although plaintiff "may have been justified in choosing to remain with the automobile . . . such a choice does not raise the conduct of defendant to the level of a false imprisonment"); *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1312 (Ill. App. Ct. 1984) ("[I]t is not enough for the plaintiff to have felt 'compelled' to remain" in a place absent evidence of "a restraint against the plaintiff's will"); *Stevens v. Shelton*, 2019 WL 1239784, at *9 (N.D. Ill. Mar. 18, 2019) (dismissing false imprisonment claim where defendant refused to let plaintiff leave premises without turning over key to filing cabinet that contained plaintiff's personal belongings, because plaintiff could have left at any time by surrendering the key and abandoning her belongings but chose not to); *Wilson ex rel. Adams v. Cahokia Sch. Dist. No. 187*, 470 F. Supp. 2d 897, 916 (S.D. Ill. 2007) (no false imprisonment claim where plaintiff was not confined against her will but rather voluntarily chose to stay in a place).

At bottom, being stuck in traffic does not meet the elements of false imprisonment:

> [O]ne who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied. Indeed, the actor does not incur any liability by so doing, since the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action.

Restatement (Second) of Torts § 36, comment d (1965); *see also Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018) (parking tow truck behind plaintiff's car so

---

[8] It is worth noting that Plaintiff's putative class includes "passengers" for whom abandoning their cars would not have been an issue. Dkt. 69 ¶ 80.

plaintiff could not back up was not false imprisonment because plaintiffs were "free to leave their car"); *Brendlin v. California*, 551 U.S. 249, 262 (2007) (noting, in Fourth Amendment context, that being stuck in traffic as a result of a police officer pulling over someone else posed only "incidental restrictions on freedom of movement" and did not constitute a seizure). Plaintiff has not stated a claim for false imprisonment and therefore this claim should be dismissed.

### b. "Foreseeable Injury Caused by Intentional Breach of Duty" Is Not a Valid Cause of Action Under Illinois Law

Count II is a bizarre claim against the Individual Defendants for what Plaintiff describes as a "common-law tort for foreseeable injury caused by intentional breach of duty." Dkt. 69 ¶¶ 97–100. Plaintiff alleges that Defendants had a legal duty created by the Illinois Vehicle Code, 625 ILCS § 5/11-1416, which prohibits "willfully and unnecessarily hinder[ing], obstruct[ing] or delay[ing], or willfully and unnecessarily attempt[ing] to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within." Dkt. 69 ¶ 99. According to Plaintiff, the Individual Defendants breached that duty by obstructing the highway, violating the statute and causing Plaintiff injury. *Id.* ¶¶ 98, 100.

Examining the evolution of Count II from the previous versions of the Complaint provides helpful context to understand this strange claim. In the previous versions, Plaintiff advanced a nearly identical claim but styled it as a "statutory tort" for obstructing a highway, seeking to hold the Individual Defendants civilly liable for violating 625 ILCS § 5/11-1416. Dkt. 1, Original Complaint, at ¶¶ 90–93, 104, 142; Dkt. 33 ¶¶ 89–92, 103, 150. As multiple Defendants informed Plaintiff in their draft Rule 11 motions, that claim was fatally flawed because there is no private right of action for individual citizens to enforce 625 ILCS § 5/11-1416. The Illinois Vehicle Code does not expressly provide for a private right of action. *Priddle v. Dean Malanis & Great Lakes Serv. II, Inc.*, 2017 WL 372302, at *4 (N.D. Ill. Jan. 25, 2017).

20

Therefore, the Court would need to find an implied private right of action for this claim to be

viable. In Illinois, in order to find an implied private right of action, a court must find that:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted, (2) the plaintiff's injury is one the statute was designed to prevent, (3) a private right of action is consistent with the underlying purpose of the statute, and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Pilotto v. Urban Outfitters W., L.L.C.*, 72 N.E.3d 772, 781 (Ill. App. Ct. 2017). The Illinois

Supreme Court has implied a right of action under a statute "only in cases where the statute

would be ineffective, as a practical matter, unless a private right of action were implied."

*Carmichael v. Prof'l Transp., Inc.*, 239 N.E.3d 512, 519 (Ill. App. Ct. 2021).

      Here, it is demonstrably not the case that a private right of action is necessary to provide

an adequate remedy for violations of the statute. In assessing this factor, the Illinois Supreme

Court looks to the enforcement mechanisms and remedies provided by the statute itself. *Id.* The

Illinois Vehicle Code contains a robust framework for enforcement, including criminal penalties

and fines. *Id.* at 520 (concluding Illinois Vehicle Code contained adequate enforcement

mechanisms, and therefore there was no private right of action to enforce code provision).

Importantly, the statute empowers the police, not the general public, to enforce the traffic code.

*See* 625 ILCS 5/16-102 ("The Illinois State Police shall patrol the public highways and make

arrests for violation of the provisions of this Act."); 625 ILCS 5/11-208(a)(2) (the Code enables

"local authorities with respect to streets and highways under their jurisdiction and within the

reasonable exercise of the police power" to "[r]egulat[e] traffic by means of police officers").

Indeed, in this case the remedies available under the Code were not just theoretically available,

they were actually obtained. Plaintiff alleges that the Chicago Police Department cleared the

blockade and arrested approximately 40 participants, and it is a matter of public record that they

were criminally prosecuted for blocking traffic. Therefore, a private right of action is patently

unnecessary to remedy violations of the statute. *See Lacy v. City of Chicago*, 728 F. Supp. 3d 901, 916 (N.D. Ill. 2024) (declining to find implied private right of action to enforce Illinois Vehicle Code provision because other remedies were available).

Apparently recognizing the futility of this claim, Plaintiff confusingly attempts to rescue it by asserting it arises from the common law, with the statute providing the basis for the duty, rather than an attempt to directly enforce the statute. Dkt. 69 ¶¶ 97–100. While a statute can provide the basis for a tort duty for purposes of a common-law claim, Plaintiff still needs to plead a valid common-law claim, which he has not done. *See Cowper v. Nyberg*, 28 N.E.3d 768, 774 (Ill. 2015) (plaintiff stated claim despite lack of private right of action in statute where it was "very clear" that claims were based on a common-law negligence theory); *Pilotto*, 72 N.E.3d at 779–81 (valid claim despite lack of private right of action in statute because basis of complaint was common-law cause of action for intentional or negligent infliction of emotional distress).

Unlike the plaintiffs in *Cowper* and *Pilotto*, who stated claims for well-established common-law torts, Plaintiff has not identified any recognizable common-law cause of action to which to tie his claim based on a statutory violation. JVP's research has not revealed any case where "foreseeable injury caused by intentional breach of duty" was recognized as a cause of action under the common law of Illinois or any other jurisdiction. In his derivative claims for conspiracy, aiding and abetting, and in-concert liability, Plaintiff continues to refer to this claim as a claim for "highway obstruction," which is obviously not an independent common-law tort. Dkt. 69 ¶¶ 101–08, 117–23, 131–37. It is clear that this count is not intended to be a negligence claim; Plaintiff pleads a single claim (Count IX) "in the alternative" for "negligence or recklessness" only against Defendant WESPAC for allegedly inadequately supervising the

activities of Defendant NSJP.[9] Dkt. 69 ¶¶ 145–46. Ultimately, this is not a common-law claim at all, but rather a poorly disguised attempt to salvage a statutory claim that Plaintiff knows is not viable. Plaintiff's attempt to do an end-run around the limitations on statutory implied private rights of actions by vaguely invoking the common law does not pass muster. Plaintiff has failed to provide Defendants with adequate notice of the basis for this claim. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946–47 (7th Cir. 2013) (dismissal appropriate where complaint presents a "vague, confusing, and conclusory articulation" of the legal basis for the claim such that "neither the adverse party nor the court can make out the essence of the claims"); *Nagel v. ADM Inv'r Services, Inc.*, 995 F. Supp. 837, 845 (N.D. Ill. 1998) (dismissing confusing complaint that made it "virtually impossible" for defendants to file a responsive pleading).

Even if Plaintiff had pleaded a coherent common-law theory, this claim would fail. Assuming the statute could create a duty, under the facts as Plaintiff has alleged them Defendants did not breach any duty owed *to Plaintiff* or cause the type of injuries that could be redressed by any hypothetical common-law tort. In assessing whether to impose a duty, courts consider "whether there is a relationship between the parties requiring that a legal obligation be imposed upon one for the benefit of the other." *See Rommel v. Ill. State Toll Hwy. Auth.*, 938 N.E.2d 1163, 1166 (Ill. App. Ct. 2010). The relevant factors are "the reasonable foreseeability of injury, the likelihood of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant." *Id.* "[F]oreseeability alone provides an inadequate foundation upon which to base the existence of a legal duty." *Shank v. H.C. Fields*, 869 N.E.2d 261, 265 (Ill. App. Ct. 2007). Courts must also weigh the "public policy implications of finding that a duty exists." *Benitez v. Bogucki*, 2024 WL 4953818, at *5 (N.D. Ill. Dec. 3, 2024).

---

[9] JVP refers to and incorporates Defendant WESPAC's arguments on this claim in its Motion to Dismiss.

Here, Plaintiff's alleged injuries—being inconvenienced by becoming stuck in traffic—are so minor that they weigh heavily against finding a duty. When statutory duties are invoked in common-law negligence actions in the more typical context of traffic accidents, the people with injuries that confer standing to sue are those who were harmed in the accident, not every driver on the road who became stuck in traffic as a result of the accident. *See e.g. In re Estate of Case*, 59 N.E.3d 175, 176 (Ill. App. Ct. 2016) (plaintiff was the administrator of the estate of woman who died in accident); *Johnson v. May*, 585 N.E.2d 224, 225 (Ill. App. Ct. 1992) (plaintiffs were the motorist who was physically harmed in traffic accident and motorist's wife based on loss of consortium). Defendant JVP has been unable to locate any case in which a common-law cause of action based on breach of a statutory duty was found based on becoming stuck in traffic.

On the other hand, the consequences of imposing a duty on Defendants would be severe. Finding a duty here would essentially mean that individuals could be liable to every driver on the road, no matter how tangentially they may be impacted by a violation that occurred miles away. If drivers were empowered to pursue civil litigation every time another driver committed a traffic violation that caused a traffic jam or "inconvenienced" them, courts would have time for little else. Illinois courts have declined to find a duty based on a defendant's actions causing a traffic jam, even when the traffic contributed to an accident, a far more serious outcome than is at issue here. *See Shank*, 869 N.E.2d at 265–66, 267 (finding no duty based on construction company's work causing a lane closure and resultant traffic jam that allegedly contributed to car accident, and noting that "it is possible that traffic would have been backed up even if the lanes were open"). Courts have also repeatedly found that drivers who are responsible for a traffic accident that caused a traffic jam which led to a subsequent accident were not liable to the drivers injured or even killed in the second crash. *See, e.g. Stone v. Chapman*, 2012 WL 7006985, at *3 (Ill.

24

App. Ct. 2012); *Blood v. VH-1 Music First*, 668 F.3d 543, 548–49 (7th Cir. 2012). If individuals cannot recover for a *death* based on the creation of a traffic jam, it goes without saying that Plaintiff cannot recover for being inconvenienced.

Equally importantly, finding a duty here would significantly curtail people's ability to protest in public streets. Most protest marches, even those authorized by municipalities under a permit regime, inevitably cause some traffic and disruption of drivers' ability to travel on the streets. *See Vodak v. City of Chicago*, 624 F. Supp. 2d 933, 940 (N.D. Ill. 2009), *reversed on other grounds by*, 639 F.3d 738 (7th Cir. 2011) ("[B]oth permitted and non-permitted marches cause inconvenience and obstruct traffic."). Nevertheless, the Supreme Court has emphasized that public forums like streets occupy a "special position in terms of First Amendment protection." *United States v. Grace*, 461 U.S. 171, 180 (1983). The Court has "repeatedly referred to public streets as the archetype of a traditional public forum, noting that time out of mind public streets and sidewalks have been used for public assembly and debate." *Snyder*, 562 U.S. at 456 (cleaned up). Police can and often do "ratify" the behavior of demonstrators, allowing them to march in the streets despite the disruption to traffic and "thereby insulating them from liability on their actions." *See Vodak*, 624 F. Supp. 2d. at 968 (*citing Cox v. State of La.*, 379 U.S. 559, 571 (1965)). If Plaintiff's claim is allowed to proceed, then any motorist who is inconvenienced by a demonstration could pursue civil litigation, even against demonstrators whose actions were authorized by the City or "ratified" by the police. *See Gilmore v. Stanmar, Inc.*, 633 N.E.2d 985, 993 (Ill. App. Ct. 1994) (noting that even if defendants had received a permit for construction that obstructed street, that would not defeat a common-law action). Such a result would embolden any driver who dislikes the content of a protest to act as a civil vigilante, using the law as a weapon to silence protesters and chill their ability to exercise their

First Amendment rights. *See United States v. Alvarez*, 567 U.S. 709, 723 (2012) ("The mere potential for the exercise of [censorial] power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom.").

For all of these reasons, Count II fails to state a claim and should be dismissed.

### c. Plaintiff's Remaining Claims for In-Concert Liability, Conspiracy, and Aiding-and-Abetting Fail

Plaintiff brings claims against the Organizational Defendants for in-concert liability, conspiracy, and aiding-and-abetting for allegedly assisting the Individual Defendants in falsely imprisoning Plaintiff and obstructing a highway. Dkt. 69 ¶¶ 101–144. These three causes of action are similar, and Illinois courts sometimes address them together. *See Fortae v. Holland*, 778 N.E.2d 159, 170 (Ill App. Ct. 2002). The elements of civil conspiracy are:

> (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) the overt act was done pursuant to and in furtherance of the common scheme.

*Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987). Aiding and abetting is when:

> (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

*Id.* Finally, in-concert liability requires that the party:

> (a) does a tortious act in concert with the other or pursuant to a common design with him,
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

*Umble v. Sandy McKie & Sons, Inc.*, 690 N.E.2d 157, 158 (Ill. App. Ct. 1998).

While the elements of the three causes of action vary slightly, all three require an underlying tortious or wrongful act. *See Chadha v. N. Park Elementary Sch. Ass'n*, 123 N.E.3d

519, 537–38, 542 (Ill. App. Ct. 2018) (dismissing claims for civil conspiracy and aiding and abetting where underlying tort claims failed because they "are not independent torts" and they "require underlying conduct that is tortious"); *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1025 (7th Cir. 2018) (in-concert liability provides a means to hold an individual liable for the tortious conduct of another). Therefore, because Plaintiff has failed to state a claim for false imprisonment or obstructing a highway, these derivative claims also fail.

Furthermore, even if Plaintiff had adequately pleaded a cause of action for either of the underlying torts, he has not met the elements of these claims. On the conspiracy claim, he has failed to allege an agreement between two or more parties. *See McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) ("The agreement is a necessary and important element" of a conspiracy claim.) (cleaned up). Plaintiff's allegations that the Organizational Defendants "agreed" are conclusory and unsupported by any factual allegations. Dkt. 69, ¶¶ 119, 126; *see Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 242 (Ill. App. Ct. 2007) (a complaint "must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred"); *Trodden, Inc. v. J & E Auto Enterprises, Ltd*, 2014 WL 1117028, at *6 (Ill. App. Ct. 2014) (affirming dismissal of conspiracy claim where plaintiff failed to provide any specific details regarding the alleged agreement). Although Plaintiff alleges that multiple Organizational Defendants participated in organizing the action, he does not allege that the Organizational Defendants worked *together* in organizing the protest, or provide any facts that would support that they did so. He alleges that Defendants reshared each other's social media posts in support of the protest, but merely resharing social media posts or using the same slogans and hashtags does not constitute a conspiracy. Dkt. 69 ¶ 73. To hold otherwise would mean that anyone who shared a post made by

27

somebody else about an ongoing current event could be held liable for that event as a conspirator, an absurd result. Alleging that multiple groups and individuals care about and engage in advocacy around similar issues is insufficient to plead an agreement to establish the existence of a conspiracy. *See McClure*, 720 N.E.2d at 261–62 (holding that parallel conduct alone is insufficient to demonstrate agreement for purposes of a civil conspiracy claim).

As for aiding-and-abetting and in-concert liability, Plaintiff has not alleged that the Organizational Defendants "substantially assist[ed]" the Individual Defendants in their allegedly tortious conduct. Even if he could establish that there was some form of "assistance," not all assistance gives rise to liability. "[I]t is not enough that a defendant assist or encourage another to engage in a tort; rather, to subject a defendant to liability, the assistance or encouragement must be substantial." *Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. Ct. 2004) "The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other." *Fortae*, 778 N.E.2d at 171. Here, the primary involvement that Plaintiff alleges by the Organizational Defendants is posting on social media about the protest. While the social media posts may have helped amplify the activists' message, it does not follow that the action could not have happened without those posts or that the posts provided substantial assistance. *See Umble*, 690 N.E.2d at 159 (finding assistance was not substantial when driver likely would have taken the same course of action even without defendants' involvement).

### d. Plaintiff Has Not Plausibly Alleged that JVP was Involved in the Action

Finally, Plaintiff's claims against JVP fail because his only allegations attempting to connect JVP to the relevant protest are too conclusory to push his claims "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680. Plaintiff alleges in a single paragraph "[o]n information and belief" that JVP and NSJP "furthered" the planning for the action by selecting

28

locations for blockades nationwide, coordinating funding to purchase supplies, recruiting participants, promoting the "bail fund" and the action on social media before and after the event, and "harmoniz[ing] the overall strategy" for multiple actions nationwide. Dkt. 69 ¶ 60. As an initial matter, JVP was not included in this paragraph in the Original Complaint, which listed Defendants AMP, NSJP, USCPR, and WESPAC instead. Dkt. 1 ¶ 55. In the FAC, Plaintiff removed WESPAC and AMP and added JVP to this paragraph shortly after WESPAC issued a Rule 11 letter to Plaintiff threatening sanctions for levying unsubstantiated and false factual allegations against WESPAC. Dkt. 33 ¶ 55. Then, in the SAC, Plaintiff changed his mind again, dropping USCPR from the list. Dkt. 69 ¶ 60. Plaintiff's belated addition of JVP to this paragraph and removal of three others strongly suggests that Plaintiff did not conduct a reasonable investigation into each Organizational Defendant's involvement in the relevant protest prior to filing this lawsuit, but is rather accusing Palestine solidarity organizations at random.

Moreover, Plaintiff has not provided a single fact that supports any of his vague and conclusory allegations made "on information and belief" against JVP. *See Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993, at *2 (N.D. Ill. June 4, 2018) (plaintiff's "unsupported suspicions" did not provide "reasonable grounds" to support conclusory allegations made "upon information and belief"); *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *5 (N.D. Ill. Dec. 18, 2017) (rejecting allegations made "on information and belief" where plaintiff did not provide any reasonable basis to support that the facts were true). Other than allegedly posting on social media during and after the protest—activity that is plainly protected by the First Amendment and which could have been carried out by anyone regardless of whether they were directly involved—Plaintiff has not offered any specific details regarding JVP's supposed involvement. He has not identified any concrete actions that any individual acting on

behalf of the organization took to "further" the protest, raise funds, recruit participants, or "harmonize strategy."[10] He has not alleged that JVP as an organization sponsored or was affiliated with the action in any way. In short, Plaintiff's "naked assertions devoid of factual support" are insufficient to state a claim against JVP. *Iqbal*, 556 U.S. at 678.

Plaintiff has not brought this suit against JVP based on any specific conduct of the organization that can be tied to his purported harm. Rather, he is suing JVP and the other Defendants because they have been part of a vocal, powerful movement opposed to what they view as Israel's genocide in Gaza. Plaintiff has failed to state any claim upon which relief may be granted and therefore this frivolous and retaliatory SLAPP suit should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant Jewish Voice for Peace's Motion to Dismiss and award attorneys' fees and costs pursuant to the Illinois Citizen Participation Act. Given that Plaintiff has already had two chances to amend his Complaint and has still failed to state a valid claim, and that no amendment can cure the fact that this is a SLAPP suit brought for the improper purpose of harassing Defendants, Defendant JVP respectfully submits that the dismissal should be with prejudice. *See, e.g. Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013) (dismissal with prejudice appropriate where lawsuit is frivolous or intended to harass); *Duffy v. Godfread*, 2015 WL 1727148, at *3 (N.D. Ill. Apr. 9, 2015) (finding lawsuit was a SLAPP suit and dismissing with prejudice).

---

[10] Plaintiff alleges that Defendant Tucker is a student organizer with JVP and that they helped plan and directly participated in the blockade. However, he has not alleged that Tucker held the role of "student organizer" on April 15, 2024, nor has he alleged any facts that support that Tucker participated in the protest on behalf of the organization or in their capacity as a JVP organizer. His allegations that Tucker was acting as an agent of JVP, *see, e.g.* dkt. 69 ¶¶ 68–69, are conclusory and insufficient to plausibly plead organizational liability based on Tucker's actions. *See Claiborne Hardware Co.*, 458 U.S. at 930 (finding that organizations may only be held responsible for acts of their agents if those acts were undertaken "within the scope of their actual or apparent authority").

Dated: February 25, 2025                    Respectfully submitted,


                                            /s/ Nora Snyder
                                            Nora Snyder
                                            Brad Thomson
                                            People's Law Office
                                            1180 N. Milwaukee Ave
                                            Chicago, IL 60642
                                            773-235-0070
                                            norasnyder@peopleslawoffice.com
                                            brad@peopleslawoffice.com

                                            /s/ Hanna Chandoo
                                            Hanna Chandoo
                                            Dan Stormer
                                            Hadsell Stormer Renick & Dai, LLP
                                            128 N Fair Oaks Ave
                                            Pasadena, CA 91103
                                            (626) 585-9600
                                            hchandoo@hadsellstormer.com
                                            dstormer@hadsellstormer.com

                                            ***Attorneys for Defendant Jewish Voice for
                                            Peace***