UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff,*<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, *et al.*<br><br>*Defendants.* | Case No. 1:24-cv-8209<br>Hon. Judge Mary L. Rowland |

### INDIVIDUAL DEFENDANTS AND DISSENTERS' MOTION FOR SANCTIONS

Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, Simone Tucker ("Individual Defendants"), and Dissenters, by and through their undersigned counsel, respectfully move this Court to enter an order sanctioning Plaintiff Christopher Manhart ("Plaintiff") and his counsel. In support, Defendants state as follows:[1]

### INTRODUCTION

Plaintiff attempts to contort an interruption he experienced in his travel schedule into a broad class action in order to intimidate advocates for Palestinian liberation into silence. In service of that goal, Plaintiff asserts a private right of action where none exists, colors his time spent in traffic as akin to imprisonment and concocts a broad conspiracy to violate his rights based on little more than social media posts and his own "information and belief." All the while, the plain text of the complaint attempts to frame Defendants' advocacy as terrorism. With these acts, Plaintiff violates the core purpose of Rule 11—to deter litigants from filing baseless claims

---

[1] The Individual Defendants and Dissenters by reference adopt the arguments put forth by Defendant Tides Center in sections I(A)-(B) of its Motion for Rule 11 Sanctions. ECF 71-72.

1

in federal court for improper purposes. As a result, the Individual Defendants and Dissenters request that this court impose those sanctions which would serve to correct this abuse of the courts, compensate Defendants for having to respond to Plaintiff's frivolous Second Amended Complaint, and deter future baseless filings of this sort.

## FACTUAL BACKGROUND

This case arises from a protest in support of the Palestinian liberation movement. that occurred outside of Chicago's O'Hare International Airport on April 15, 2024. ECF 69 at ¶ 65-71. The protest blocked a part of the roadway for approximately two hours and thirty minutes. *Id.* at ¶ 66. This protest resulted in a traffic jam, which ended when law enforcement at the scene removed the protestors from the roadway and placed them under arrest. *See id.* at ¶¶ 77-78. Plaintiff alleges that he was one of these persons involved in the traffic jam for approximately one hour. *Id.* at ¶ 76.[2]

Five months later, on September 9, 2024, Plaintiff, by and through his counsel, filed this suit on behalf of a broad "class" of persons who may have been involved in this traffic jam. *Id.* at ¶ 80. He brought suit against seven local and nationwide organizations and four individuals. *Id.* at ¶¶ 12-25. On January 6, 2025, the Individual Defendants and Dissenters, by and through their counsel, served upon Plaintiff's counsel a copy of their motion for sanctions and a Rule 11 letter. (See Ex. 1) Defendants' counsel informed Plaintiff's counsel that they would seek sanctions for the frivolous and improper allegations against their clients, if Plaintiff did not voluntarily withdraw these allegations in the First Amended Complaint ("FAC"). On January 29, 2025, Plaintiff filed a Second Amended Complaint ("SAC"). The SAC contains many of the same

---

[2] In Plaintiff's Second Amended Complaint, Plaintiff now alleges the traffic back-up lasted two and a half hours (rather than an hour as originally alleged), but again alleges he was personally stuck in his car for about an hour. ECF 69 at ¶¶ 6, 66.

2

allegations and baseless claims for false imprisonment and highway obstruction, which Plaintiff attempted to restyle as an intentional "breach of duty" common law tort based on the same Illinois Vehicle Code provision.

Defendants' motion for sanctions is still warranted. Defendants satisfied the safe harbor provision of Rule 11 by serving an earlier version of this motion on Plaintiff's counsel aimed at the largely unchanged allegations and claims that Plaintiff persists with in his SAC. Plaintiff's insistence on pursuing these meritless claims after notice of Defendants' motions for sanctions, renders the latest filing more egregious.

## LEGAL STANDARD

Pursuant to Rule 11, an attorney who presents a pleading to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the pleading is not being presented for an improper purpose, the claims are warranted by existing law, and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1)-(4). The "central purpose" of Rule 11 is to "deter baseless filings" in federal court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1988). To that end, Rule 11 allows the district court to impose sanctions on any attorney, law firm, or party that violates these obligations. *Rodgers v. Lincoln Towing Servs.*, 771 F.2d 194, 205 (7th Cir. 1985). "[T]he decision to award sanctions under Rule 11" and what sanctions to award, including attorneys' fees, "is within the Court's discretion." *N. Ill. Telecom, Inc. v. PNC Bank, NA*, 2015 WL 1943271, at *5 (N.D. Ill. Apr. 29, 2015), *rev'd sub nom.* 850 F.3d 880 (7th Cir. 2017). "Under Rule 11 the court 'shall' award sanctions if it finds a violation." *Eberhardt v. Village of Tinley Park*, 2022 WL 22896754, at *2 (N.D. Ill. 2022) (citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)). "A sanction imposed under this rule must be limited to

what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Courts have historically been reluctant to impose sanctions. As a result, in 1983, Congress amended the Rule with the express purpose of "reduc[ing] the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." *Rodgers*, 771 F.2d at 205.

## ARGUMENT

Rule 11 provides two grounds for sanctions: filing frivolous legal claims and facts, and filing those claims and facts for an improper purpose. *Brown v. Fed. of State Med. Bds. of U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987). Each ground is "concerned with eliminating abuses in federal courts." *Id.* Plaintiff's conduct in filing the SAC is sanctionable on both grounds. First, the legal claims alleged in the complaint contain stark, fatal errors that cannot survive a motion to dismiss. At the same time, the facts provided in support of these claims amount to mere conclusory statements against the Defendants. No attorney who made a reasonable inquiry into the law or facts would file this frivolous complaint. Plaintiff was placed on-notice that these issues were present in the FAC, and Plaintiff did not correct these deficiencies in filing the SAC. Second, the language of the SAC complaint demonstrates an objectively improper purpose for its filing. Plaintiff brought these baseless claims to court for the purpose of harassing and intimidating Defendants for exercising their constitutional rights.

### I. Plaintiff should be sanctioned for filing a frivolous complaint

Rule 11 allows courts to sanction litigants for filing frivolous claims. *Bus. Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 541 (1991). "This portion of Rule 11 is composed of two sub-parts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law." *Brown*, 830

4

F.2d at 1435. A violation of either subpart is a violation of Rule 11. *Id.* This is "an affirmative duty on the attorney or party to investigate the facts and the law prior to the subscription and submission of any pleading, motion or paper . . . ." 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 11.02[3], pp. 11-15 to 11-17 (2d ed. 1990) (footnotes omitted); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1331, pp. 21 (2d ed. 1990) (detailing how litigants owe a duty to the court system "to conserve its resources and avoid unnecessary proceedings."). Whether a litigant violated this duty is "an objective determination" that asks if a sanctioned party's conduct was "reasonable under the circumstances." *Brown*, 830 F.2d at 1435.

To determine whether the attorney made a reasonable inquiry into the law, courts consider: "the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law." *Id.*

To determine whether the attorney made a reasonable inquiry into the facts alleged, courts consider:

> ". . . whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts."

*Id.* Here, an objective analysis indicates that no such inquiries occurred.

Plaintiff alleged the following tort claims against the Individual Defendants in his FAC: obstructing highways, public nuisance, and false imprisonment. ECF 33 at ¶¶ 89-100. In the SAC, Plaintiff dropped the public nuisance claim, but kept in the false imprisonment and

5

obstructing highways claims, restyling the latter as an intentional breach of duty based on the Illinois Vehicle Code.[3] ECF 69 at ¶¶ 94-100. A reasonable inquiry into any of these tort claims would have revealed fundamental flaws. And, despite the nine months that elapsed between the protest and the filing of Plaintiff's SAC, the allegations Plaintiff provides reveal a lack of reasonable inquiry into the law and facts.

First, Plaintiff's false imprisonment claim suffers fatal flaws. A false imprisonment claim requires a showing that the defendant willfully detained, restrained, or confined the plaintiff within a bounded area fixed by the defendant and that the plaintiff is conscious of or harmed by the confinement. 1 Illinois Tort Law § 2.01 (2024); Restatement (Second) of Torts § 35 (1965). Crucially, false imprisonment requires "an actual or legal intent to restrain." *Lopez v. Winchell's Donut House*, 126 Ill. App. 3d 46, 50. In other words, there must be a purpose or desire to confine the plaintiff. *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982); *Johnson v. Jackson*, 43 Ill. App. 2d 251, 258. As Plaintiff alleges in his complaint, the purpose of the stoppage was not to restrain, but to disrupt major economic centers. ECF 69 at ¶¶ 2, 41, 54, 57.

Even if the requisite intent was there, the complaint allegations plainly state that Plaintiff was not restrained. At all times, he, like countless others on the roadway, was free to exit his vehicle and secure other means of transportation to O'Hare. *See id.* at ¶¶ 75-76. If there is a known means to escape, even one involving inconvenience, there is no false imprisonment claim. Restatement (Second) of Torts § 36, comment d (1965) ("[O]ne who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied."); *Robinson v. Sabis Educ. Sys., Inc.*,

---

[3] Plaintiff's derivative conspiracy, in-concert and aiding and abetting claims still refer to the underlying tort as "Highway Obstruction."

1999 WL 414262, at *15 (N.D. Ill. 1999) ("[A] false imprisonment claim does not lie where the plaintiff is merely prevented from being or remaining in a place where she wants to be."); *see, e.g.*, *Marcano*, 550 F. Supp. at 599, 603 (finding that a plaintiff whose car was repossessed which left him stranded was not falsely imprisoned, as he had means to leave); *Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018) (parking tow truck behind plaintiffs' car was not false imprisonment because plaintiffs were "free to leave their car"); *Martin v. Lincoln Park West Corp.*, 219 F.2d 622, 624 (7th Cir. 1955) (finding no false imprisonment where an individual chooses to remain with their belongings). Had Plaintiff done the required reasonable inquiry into the claim he would have determined it is baseless and should not have been filed. Although Plaintiff claims it was illegal to abandon his car in the SAC, ECF 69 at ¶ 75, that does not address the established case law that Defendants provided to Plaintiff that a concern about leaving personal property does not amount to false imprisonment.

Second, there is no private right of action to enforce a statutory violation for obstructing a highway as an intentional or common-law negligence tort. *Priddle v. Dean Malanis & Great Lakes Serv. II, Inc.*, 2017 WL 372302, at *4 (N.D. Ill. Jan. 25, 2017). Only a public official may prosecute a statutory violation of this sort, and no individual can bring a suit for injunctive relief or damages. *See* 625 ILCS 5/16-102. Courts decline to find that there is a private right of action to enforce the Illinois Vehicle Code because there is a robust statutory scheme to ensure compliance. *See Lacy v. City of Chicago*, 728 F. Supp. 3d 901, 916 (N.D. Ill. 2024) (declining to find implied private right of action to enforce Illinois Vehicle Code provision because other remedies were available). A reasonable inquiry into the statutory code and prevailing case law would have revealed this glaring legal deficiency. Plaintiff attempts to get around this legal bar by re-titling his "obstructing highways" claim as a "Common-Law Tort for Foreseeable Injury

7

Caused by Intentional Breach of Duty," but the paragraphs comprising this "Count" remain almost identical to the prior alleged obstructing highways claim. *Compare* ECF 69 at ¶¶ 97-100 *to* ECF 33 at ¶¶ 89-92. The same claim with a new title suffers the same fatal flaws Defendants explained in the served Rule 11 motion and as outlined in Defendant Jewish Voice for Peace's motion to dismiss. ECF 75 at 22-26.

At the same time, Plaintiff alleges the following claims against Dissenters and the Individual Defendants predicated on the underlying tort claims in Counts I and II: in-concert liability for the aforementioned torts, conspiracy to commit those torts, and aiding and abetting in the commission of those torts. ECF 69 at ¶¶ 101-144. Each of these claims rely on the underlying tort violations, which suffer fatal flaws as explained above. For that reason alone, these claims should be dismissed. *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3253604, at *6 (N.D. Ill. 2006) (citing *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (1st Dist. 2004)) ("'Conspiracy' is not an independent tort."); *A Communication Co., Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1125 (S.D. Ill. 2014) (dismissing conspiracy claim where litigant failed to sufficiently plead underlying claim); *Id.* (citing *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006)) (dismissing aiding and abetting claim where underlying tort claim failed).

But, even if that were not the case, these would still be baseless legal claims. In-concert liability, conspiracy, and aiding and abetting each require that there be sufficient allegations showing that the Individual Defendants and Dissenters worked collaboratively with the remaining Defendants to commit tortious acts. *See Fortae v. Holland*, 334 Ill. App. 3d 705, 716 (Ill. App. Ct. 2002) (stating that in-concert liability requires "a tortious act in concert with the other or pursuant to a common design"); *Madonis v. Sterling Bay Cos., LLC*, 2020 IL App (1st) 191657-U ¶¶ 28, 30 (stating that conspiracy and aiding and abetting both require concerted

8

action). At no point does the complaint provide that. None of Plaintiff's allegations establish that the Individual Defendants or Dissenters had access to the Proton messaging accounts used for A15 coordination, just the Plaintiff's opaque "information and belief." ECF 69 at ¶¶ 58, 61. While Plaintiff alleges that Dissenters helped pick O'Hare for the protest, their support for that contention is an article cited in a declaration that makes no mention of Dissenters at all. *Id.* at ¶ 61; ECF 33-1 at ¶ 49. Beyond that, Plaintiff contends that Dissenters published social media content in collaboration with the other Defendants which Plaintiff alleges suggests that the Defendants "had on the ground agents participating in the blockade on their behalf," but nothing in the SAC supports that contention. ECF 69 at ¶ 74; ECF 33-1 at ¶ 36 (citing a letter and social media post both published over three months after the A15 Action that Dissenters signed in support of the protesters facing criminal charges), ¶ 44 (citing social media post that makes no reference to Dissenters), ¶¶ 45-46 (citing social media posts of Dissenters from after blockade began), ¶ 56 (citing social media post that makes no reference to Dissenters), ¶ 69 (citing social media post of Dissenters from after blockade began), ¶ 70 (citing social media posts and articles from the days after the blockade), ¶ 76 (citing social media post that makes no reference to Dissenters), ¶ 77 (citing social media post that makes no reference to Dissenters). These allegations, even read in the light most favorable to Plaintiff, do not come close to constituting an agreement ahead of the blockade protest plus acts in furtherance that the conspiracy, in-concert, and aiding and abetting claims require. Defendants' post-hoc distribution or amplification of the message and purpose of the protest does not equate to a conspiracy to engage in tortious activity. By Plaintiff's logic, all media outlets reporting on protests would be co-conspirators.

## II.     Plaintiff filed his complaint for an improper purpose

Rule 11 allows courts to sanction litigants for filing pleadings for the purpose of delaying, harassing, or increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1). "Like the frivolousness clause, whether a party or attorney acted with an improper purpose is based on an objective standard." *Brown*, 830 F.2d at 1435. While a showing of subjective bad faith is not required, it may be considered in a court's analysis where the suit is "objectively colorable." *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). In other words, an improper purpose may be shown through either direct evidence of subjective intent or, where there is no such evidence, inferring such malintent from a meritless claim ungrounded in law and unwarranted by fact. *Vandeventer v. Wabash Nat. Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995). In fact, "substantive meritlessness alone creates an automatic inference of improper purpose, even where the improper purpose is not identified." *Id.* at 842.

This complaint evidences both subjective bad faith and objective impropriety. As to the latter, Defendants incorporate by reference the arguments set forth in the foregoing section that demonstrates that this suit is meritless and ungrounded in law or fact.

As to the former, the court need only refer to the plain language of the complaint and its lack of evolution through subsequent amendments to see bad faith. From the beginning, Plaintiff painted Defendants' alleged actions with demeaning language. In the First Amended Complaint, Defendants' actions are referred to as "misguided, self-defeating effort[s]" that resemble a cancer "matastasiz[ing] in the body politic" rather than the plainest examples of free speech. ECF 33 at ¶¶ 1, 8. The SAC merely amends this point to emphasize that it is a "misguided, self-defeating effort[.]" ECF 69 at ¶ 1. Plaintiff has described Defendants' ideas as "dumb and radical" ideas that should be relegated to college campuses. ECF 33 at ¶ 45. To Plaintiff, the Individual

10

Defendants are "impressionable students" rather than individuals and organizations alleged to have participated in constitutionally-protected protest activity. *Id.* at ¶ 16. Moreover, across amendments, Plaintiff has consistently worked to paint Defendants' politics and speech as that of "terrorist[s]." ECF 69 at ¶ 5. He devotes the bulk of the SAC to his unfounded belief that Defendants are connected to Hamas and the Iranian Revolutionary Guard Corps. *Id.* at ¶¶ 2, 5, 13, 18, 22-40, 52-55, 63, 72. Based on this baseless theory, Plaintiff believes that Defendants should be "punished without remorse or hesitation" through this suit. ECF 33 at ¶ 8. Indeed, in a recent press interview, Plaintiff's counsel referred to Defendants' counsel's representation of our clients as follows:

> "There's an irony that these free lawyers, in a world where there's so much legal need, devote scarce resources to defending people who want to destroy the very system of Western abundance in favor of barbarians."[4]

This sort of *ad hominem* attack on Defendants does not exist in a vacuum. It is a racist dog-whistle, one that has been routinely employed against Palestinians specifically. Edward Said, *Orientalism* at 290 (1979) ("Yet it is just such a sense of duty Orientalism has fostered … where in his professional work he confronted the East—its barbarities, its eccentricities, its unruliness—and held it at bay on behalf of the West.").

But that is not the only subjective evidence of improper purpose. The improper purpose of this suit is equally shown to what little is alleged against the Individual Defendants and Dissenters. The first allegations (relevant to Plaintiff's claims) against Dissenters and the Individual Defendants do not appear until halfway through the pleading. ECF 69 at ¶ 61 (Dissenters), ¶ 62 (Individual Defendants). Instead of focusing on the conduct of these

---

[4] Lexi Boccuzzi, *Northwestern Law School Clinic Funds Legal Defense of Anti-Israel Activists Who Shut Down Chicago Airport*, Wash Free Beacon (Feb. 18, 2025), available here.

11

Defendants, the first half of the pleading is devoted to conclusory and inflammatory statements unsupported by evidence that Hamas and the Iranian Revolutionary Guard Corps created the A15 Action, and other allegations about the October 7, 2024 event lead by Hamas (without any connection to the April 15 protest or Plaintiff's claims). *Id.* at ¶¶ 2, 30-37, 55. Plaintiff asserts that this is all shown through an internal memo prepared by the Iranian Revolutionary Guard Corps but provides no evidence of this document beyond their assertion that it exists. *Id.* at ¶ 52. Devoting so much of this complaint to this theory, and so little of this complaint to real factual allegations against Dissenters or the Individual Defendants, is a choice. It is one that seeks to prime the Court to frame Defendants' constitutionally-protected speech as terrorism, rather than the activism that it is. *See id.* at ¶¶ 5, 22-25, 29-32, 53, 63.

Moreover, it reveals the true purpose of Plaintiff's complaint–to harass and punish pro-Palestine advocates for advocating in support of Palestinian liberation. *See Collins v. Daniels*, 916 F.3d 1302, 1323 (10th Cir. 2019) (affirming lower court's sanctions award where a complaint was filed for the improper purpose of expressing political opposition to new bail rules); *Rhodes v. MacDonald*, 2009 WL 3111834, at *1 (M.D. Ga. Sept. 18, 2009) (finding sanctions warranted where court found that plaintiff's motion was "being presented for the improper purpose of using the federal judiciary as a platform to espouse controversial political beliefs rather than as a legitimate forum for hearing legal claims."); *Teno v. Iwanski*, 464 F. Supp. 3d 924, 954 (E.D. Tenn. 2020) (ordering sanctions where a complaint was filed "for the improper purpose of harassing [the defendants] for their own personal and political reasons"); *Muhammad v. Fatehi*, 897 S.E.2d 294, 299 (2024) (ordering sanctions where a complaint was filed for improper purpose of generating political publicity). In fact, to concoct this lawsuit, Plaintiff's counsel had to resort to online solicitation of potential plaintiffs allegedly impacted by

"pro-Hamas" and "anti-Israel" protests.[5] Plaintiff's inflammatory and irrelevant propaganda demonstrates the improper purpose of his complaint, while failing to fulfill the minimum pleading requirements against Dissenters and the Individual Defendants.

### III. The Court should order Plaintiff to pay the Individual Defendants' and Dissenters' reasonable attorneys' fees and costs

Sanctions are imposed to "deter repetition" of wrongful conduct. Fed. R. Civ. P. 11(c)(4). Courts in this circuit have previously ordered offending parties to pay reasonable attorneys' fees and costs associated with frivolous and harassing suits. *See, e.g.*, *Eberhardt*, 2022 WL 22896754, at *2 (awarding attorneys' fees under Rule 11 where plaintiff filed objectively frivolous claims and plaintiff acted in bad faith with the intent to harass the defendant); *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) (affirming award of attorneys' fees and costs under Rule 11 on the grounds that plaintiff's arguments were objectively unreasonable and frivolous); *Theis v. Smith*, 1986 WL 12304, at *1 (N.D. Ill. 1986) (awarding attorneys' fees under Rule 11 where plaintiff brought claims that were clearly baseless); *Wilford v. County of Rush*, 2003 WL 77003, at *7 (S.D. Ind. Jan. 7, 2003) (awarding attorneys' fees under Rule 11 where the plaintiff filed the lawsuit with the intent to harass the defendant). Fundamentally, "an award of attorneys' fees is appropriate under Rule 11" where the allegations in the pleadings "fall short of th[e] minimal standards" required. *Theis*, 1986 WL 12304, at *1.

Plaintiff's amendment does not insulate him from sanctions. By Rule 11, a motion for sanctions is ripe for filing and decision by the court unless "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or

---

[5] @HamLincLaw, X (Feb. 7, 2024 3:35pm), https://x.com/HamLincLaw/status/1755344433241854442 ("Drivers stuck on the streets by radical pro-Hamas activists have cause for legal action, HLLI president Ted Frank tells @komonews."); @HamLincLaw, X (March 12, 2024 9:42am), https://x.com/HamLincLaw/status/176756185949444254 ("Caught in the chaos of anti-Israel protests on February 1, 2024, that caused traffic jams around DC/Northern Virginia? Contact HLLI attorney Ned Hedley").

within another time the court sets." *See Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552-53 (7th Cir. 2011) (finding that letter providing notice of intent to file motion for sanctions satisfied Rule 11(c)(2)'s safe-harbor provision where the plaintiff did not dismiss, correct or withdraw his complaint and the court entered judgment in defendant's favor). Here, Defendants served their motion for sanctions aimed at the First Amended Complaint on January 6, 2025. Plaintiff acknowledged the sanctions motions in his motion for leave to file a Second Amended Complaint, and informed the Court that the SAC was filed, at least in part, to address those motions. Yet, Plaintiff's SAC still contains two of the claims and almost every factual allegation that Defendants challenged in the served motion for sanctions. Thus, Defendants have substantially complied with the Rule 11 notice requirement and pre-filing procedures.

## CONCLUSION

For the foregoing reasons, Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, Simone Tucker, and Dissenters respectfully request that this Court enter an order finding that Plaintiff's counsel violated Rule 11 and requiring Plaintiff and Plaintiff's counsel to pay reasonable attorneys' fees and costs incurred in defending against this frivolous complaint.

Dated: February 25, 2025          Respectfully,

Sheila A. Bedi
Community Justice & Civil Rights Clinic
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Falaneh, Simone Tucker, and Dissenters*

Megan Porter
PO Box 408246
Chicago, IL 60607

Amanda S. Yarusso
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Falaneh, and Simone Tucker*

(872) 246-3379
port.cjm@gmail.com
*Attorney for Defendants Jinan Chehade,*
*Superior Murphy, Rifqah Faleneh, Simone*
*Tucker, and Dissenters*