# EXHIBIT 1

January 6, 2025

**Via email**

Neville S. Hedley
Theodore H. Frank
M. Frank Bednarz
Hamilton Lincoln Law Institute
1440 W. Taylor Street, #1487
Chicago, Illinois 60607
ned.hedley@hlli.org
ted.frank@hlli.org
frank.bednarz@hlli.org

Max Schreiber
Hamilton Lincoln Law Institute
5868 E. 71st Street, Suite E-709
Indianapolis, Indiana 46220
max.schreiber@hlli.org

>	Re: Manhart v. AJP Education Foundation Inc., et al., No. 24-cv-08209 - Notice of Intent to Move for Rule 11 Sanctions

Counsel,

	We write in our capacity as the attorneys for Defendants Jinan Chehade, Superior Murphy, Simone Tucker, Rifqa Falaneh ("Individual Defendants"), and Dissenters. This letter serves as notice of our intent to move for the imposition of sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff Christopher Manhart and your firm if your client does not dismiss this suit against our clients. A copy of the motion is attached with this correspondence, in accordance with Fed. R. Civ. P. 11(c)(2).

	This complaint asserts baseless legal claims against our clients predicated on conclusory statements that have no legal or factual basis. It was filed for the improper purpose of harassing, intimidating, and punishing our clients for engaging in their constitutionally protected free speech and assembly rights. It is sanctionable on both grounds provided by Rule 11, as set forth in more detail in the attached motion. *See Brown v. Fed. of State Med. Bds. of U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) (authorizing sanctions for frivolous pleadings and those filed for improper purposes). As a result, the Individual Defendants and Dissenters demand that Plaintiff withdraw all legal claims against them and voluntarily dismiss this suit.

	The complaint is ungrounded in law and fact. All attorneys have an affirmative duty to investigate the facts and law prior to filing any pleading. 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 11.02[3], pp. 11-15 to 11-17 (2d ed. 1990) (footnotes omitted); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1331, pp. 21 (2d ed. 1990). That duty is to make a reasonable inquiry into both fact and law. *Brown*, 830 F.2d at 1435. Neither inquiry could have

1

occurred, based on even a cursory review of the claims. Your client brings obstruction of highway, public nuisance, and false imprisonment claims against the Individual Defendants. The first two are impossible assertions, as there is no private right of action to enforce a statutory violation of this sort under Illinois law. *See* 720 ILCS 5/47-5(5). The state is tasked with enforcing these laws, not your client as a private citizen. As for false imprisonment, you lack the necessary intent and actual confinement of your client to prevail, according to even a liberal reading of the facts alleged. The complaint repeatedly states that the purpose of the blockades was to disrupt the economy, not to confine your client. ECF 33 at ¶¶ 2, 25, 41, 44, 51-52. Similarly, the complaint repeatedly references other drivers who left their vehicles to secure other means of transportation to O'Hare. *Id.* at ¶ 70. An inconvenience does not amount to imprisonment. Restatement (Second) of Torts § 36 (1965); *Hanna v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 794; *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982). Without these underlying torts, all conspiracy, in-concert, and aiding and abetting claims against the Individual Defendants and Dissenters fail. But even if the underlying torts remained intact, the conclusory statements provided in the complaint would fail to support any suggestion that there was an agreement between our clients and other Defendants. The allegations amount to vague assertions that our clients used A15 coordination accounts, based on no more than your client's "information and belief." ECF 33 at ¶¶ 53, 57. All other attempts to tie our clients into a conspiracy to plan and participate in the April 15 protest rely either on news articles or social media posts that do not mention them, or social media posts created *after* the blockade. ECF 33-1 at ¶¶ 36, 4-46, 56, 69-70, 76-77. The complaint is bereft of any factual basis to support a meeting of the minds and acts in furtherance of the underlying tort, as required to allege this category of claims.

Second, the complaint was filed for a plainly improper purpose. It is a bare attempt to harass, intimidate, and punish our clients for their alleged roles in a protest. And it shows its cards on this front–twice. An improper purpose may be shown through direct evidence of subjective intent or an automatic inference when a meritless claim is ungrounded in law and fact. *Vandeventer v. Wabash Nat. Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995). As outlined above, the claims asserted are meritless. There is no private right of action to sue for obstructing a highway as a public nuisance, and the few conclusory statements provided about our clients cannot support any remaining theory. What is more, the plain language of the complaint cements the bad faith nature of this filing. Whether it be *ad hominem* attacks on our clients' character, ECF 33 at ¶¶ 1, 8, 16, 45, or thinly veiled attempts to prime the reader to paint our clients' advocacy as "terrorism," *id.* at ¶¶ 2, 16, 30, 34, 41, 44, the ultimate goal of this filing is the same. The Complaint makes clear that the true impetus for filing these claims—Plaintiff disagrees with our clients' opposition to US support of Israel's ongoing genocide in Gaza, seeks to harass and silence them for those positions, and wishes to chill any further efforts to engage in protected First Amendment activity. The improper purpose of this filing is evident, and it should be withdrawn in whole.

For the foregoing reasons, we demand that Plaintiff Christopher Manhart dismiss this suit against our clients. Under the safe harbor provisions of Rule 11, we are putting you on notice of our intention to file the attached motion for sanctions if you do not dismiss the Complaint within 21 days of receiving this letter.

2

Respectfully,

s/Sheila Bedi
Sheila A. Bedi
Roderick Macarthur Justice Center
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu
*Attorney for Defendants Jinan Chehade, Superior Murphy, Simone Tucker, Rifqa Falaneh, and Dissenters*

s/Megan Porter
Megan Porter
PO Box 408246
Chicago, IL 60607
(872) 246-3379
port.cjm@gmail.com
*Attorney for Defendants Jinan Chehade, Superior Murphy, Simone Tucker, Rifqa Falaneh, and Dissenters*

s/Amanda S. Yarusso
Amanda S. Yarusso
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
*Attorney for Defendants Jinan Chehade, Superior Murphy, Simone Tucker, and Rifqa Falaneh*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Christopher Manhart,                                 ) | |
| ) | |
|        Plaintiff,     ) | |
| ) | Case No. 1:24-cv-08209 |
| v.                                           ) | Honorable Mary M. Rowland |
| ) | |
| AJP Education Foundation, et al.,     ) | |
| ) | |
|        Defendants.   ) | |

**DEFENDANTS JINAN CHEHADE, SUPERIOR MURPHY, RIFQA FALANEH, SIMONE TUCKER, AND DISSENTERS MOTION FOR SANCTIONS**

Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, Simone Tucker ("Individual Defendants"), and Dissenters, by and through their undersigned counsel, respectfully move this Court to enter an order sanctioning Plaintiff Christopher Manhart ("Plaintiff"). In support, Defendants state as follows:[1]

**INTRODUCTION**

Plaintiff attempts to contort an interruption he experienced in his travel schedule into a broad class action in order to intimidate advocates for Palestinian liberation into silence. In service of that goal, Plaintiff asserts a private right of action where none exists, colors his time spent in traffic as akin to imprisonment, and concocts a broad conspiracy to violate his rights based on no more than social media posts and his own "information and belief." All the while, the plain text of the complaint insults Defendants' intelligence and attempts to frame their advocacy as terrorism. With these acts, Plaintiff violates the core purpose of Rule 11–to deter litigants from filing baseless claims in federal court for improper purposes. As a result, the

---

[1] The Individual Defendants and Dissenters by reference adopt the arguments put forth by Defendant Tides Center in sections I(A)-(B) of its Motion for Rule 11 Sanctions.

1

Individual Defendants and Dissenters request that this court impose those sanctions which would serve to correct this abuse of the courts, compensate Defendants for having to respond to Plaintiff's frivolous Complaint, and deter future baseless filings of this sort.

## FACTUAL BACKGROUND

This case arises from a protest that occurred outside of Chicago's O'Hare International Airport on April 15, 2024. ECF 33 at ¶ 60. On that day, protestors engaged in constitutionally-protected speech by blocking part of the roadway leading into O'Hare to call attention to the demands of the Palestinian liberation movement. *See id.* at ¶¶ 60-66. The protest blocked a part of the roadway for approximately one hour and fifteen minutes. *See id.* at ¶ 6. This protest resulted in a traffic jam, which ended when law enforcement at the scene removed the protestors from the roadway and placed them under arrest. *See id.* at ¶¶ 70-73. Plaintiff alleges that he was one of these persons involved in the traffic jam for approximately one hour. *Id.* at ¶ 6.

Five months later, on September 9, 2024, Plaintiff, by and through his counsel, filed this suit on behalf of a broad "class" of persons who may have been involved in this traffic jam. *Id.* at ¶ 75. He brought suit against seven local and nationwide organizations and four individuals. *Id.* at ¶¶ 12-25. On January 6, 2025, the Individual Defendants and Dissenters, by and through their counsel, served upon Plaintiff's counsel a copy of this motion alongside a Rule 11 letter. Defendants' counsel informed Plaintiff's counsel that they would seek sanctions for the frivolous and improper allegations against their clients, if Plaintiff did not voluntarily withdraw these allegations.

## LEGAL STANDARD

Pursuant to Rule 11, an attorney who presents a pleading to the court certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under

2

the circumstances" the pleading is not being presented for an improper purpose, the claims are warranted by existing law, and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b)(1)-(4). The "central purpose" of Rule 11 is to "deter baseless filings" in federal court. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1988). To that end, Rule 11 allows the district court to impose sanctions on any attorney, law firm, or party that violates these obligations. *Rodgers v. Lincoln Towing Servs.*, 771 F.2d 194, 205 (7th Cir. 1985). "[T]he decision to award sanctions under Rule 11" and what sanctions to award, including attorneys' fees, "is within the Court's discretion." *N. Ill. Telecom, Inc. v. PNC Bank, NA*, 2015 WL 1943271, at *5 (N.D. Ill. Apr. 29, 2015), *rev'd sub nom.* 850 F.3d 880 (7th Cir. 2017). "Under Rule 11 the court 'shall' award sanctions if it finds a violation." *Eberhardt v. Village of Tinley Park*, 2022 WL 22896754, at *2 (N.D. Ill. 2022) (citing *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989)). "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Courts have historically been reluctant to impose sanctions. As a result, in 1983, Congress amended the Rule with the express purpose of "reduc[ing] the reluctance of courts to impose sanctions by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." *Rodgers*, 771 F.2d at 205.

## ARGUMENT

Rule 11 provides two grounds for sanctions: filing frivolous legal claims and facts, and filing those claims and facts for an improper purpose. *Brown v. Fed. of State Med. Bds. of U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987). Each ground is "concerned with eliminating abuses in federal courts." *Id.* Plaintiff's conduct in filing this complaint is sanctionable on both grounds. First, the legal claims alleged in the complaint contain stark, fatal errors that cannot survive a

motion to dismiss. At the same time, the facts provided in support of these claims amount to mere conclusory statements against the Defendants. No attorney who made a reasonable inquiry into the law or facts would file this frivolous complaint. Second, the language of the complaint demonstrates an objectively improper purpose for its filing. Plaintiff brought these baseless claims to court for the purpose of harassing and intimidating Defendants for exercising their constitutional rights.

**I.      Plaintiff should be sanctioned for filing a frivolous complaint**

Rule 11 allows courts to sanction litigants for filing frivolous claims. *Bus. Guides, Inc. v. Chromatic Comms. Enters., Inc.*, 498 U.S. 533, 541 (1991). "This portion of Rule 11 is composed of two sub-parts: whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law." *Brown*, 830 F.2d at 1435. A violation of either subpart is a violation of Rule 11. *Id.* This is "an affirmative duty on the attorney or party to investigate the facts and the law prior to the subscription and submission of any pleading, motion or paper . . . ." 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 11.02[3], pp. 11-15 to 11-17 (2d ed. 1990) (footnotes omitted); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1331, pp. 21 (2d ed. 1990) (detailing how litigants owe a duty to the court system "to conserve its resources and avoid unnecessary proceedings."). Whether a litigant violated this duty is "an objective determination" that asks if a sanctioned party's conduct was "reasonable under the circumstances." *Brown*, 830 F.2d at 1435.

To determine whether the attorney made a reasonable inquiry into the law, courts consider: "the amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal

4

questions involved; and whether the document was a good faith effort to extend or modify the law." *Id.*

To determine whether the attorney made a reasonable inquiry into the facts alleged, courts consider:

> ". . . whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation underlying the pleading, motion, or other paper; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts."

*Id.* Here, an objective analysis indicates that no such inquiries occurred.

Plaintiff alleges the following tort claims against the Individual Defendants: obstructing highways, public nuisance, and false imprisonment. ECF 33 at ¶¶ 89-100. A reasonable inquiry into any of these tort claims would have revealed fundamental flaws. And, despite the five months that elapsed between the protest and the filing of Plaintiff's Complaint, the few factual allegations Plaintiff provides indicate that no reasonable inquiry went into the facts.

First, there is no private right of action to enforce a statutory violation for obstructing a highway as a public nuisance. Illinois law states that obstruction of a public highway constitutes a public nuisance. 720 ILCS 5/47-5(5). Only a public official may prosecute a statutory violation of this sort, and no individual can bring a suit for injunctive relief or damages. The exceptions to this rule are narrow by design to avoid overwhelming the courts with these suits. To be exempt, Plaintiffs must demonstrate that a "special and particular injury distinct from that suffered in common with the public at large." *Hoyt v. McLaughlin*, 250 Ill. 442, 447. Plaintiff cannot do so. As outlined in the complaint, Plaintiff alleges that the Individual Defendants deprived him of a common right available to the general public, rather than a particularized harm. ECF 33 at ¶¶ 89-

92. Mere hindrance of a public right is insufficient to bring a private action. *See David M. Swain & Son v. Chicago, B. & Q. R. Co.*, 252 Ill. 622, 627. A reasonable inquiry into the statutory code and prevailing case law would have revealed this glaring legal deficiency.

Second, Plaintiff's false imprisonment claim suffers fatal flaws. A false imprisonment claim requires a showing that the defendant willfully detained, restrained, or confined the plaintiff within a bounded area fixed by the defendant and that the plaintiff is conscious of or harmed by the confinement. 1 Illinois Tort Law § 2.01 (2024); Restatement (Second) of Torts § 35 (1965). Crucially, false imprisonment requires "an actual or legal intent to restrain." *Lopez v. Winchell's Donut House*, 126 Ill. App. 3d 46, 50. In other words, there must be a purpose or desire to confine the plaintiff. *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982); *Johnson v. Jackson*, 43 Ill. App. 2d 251, 258. As Plaintiff alleges in his complaint, the purpose of the stoppage was not to restrain, but to disrupt major economic centers. ECF 33 at ¶¶ 2, 25, 41, 44, 51-52.

Even if the requisite intent was there, the complaint allegations plainly state that Plaintiff was not restrained. At all times, he, like countless others on the roadway, was free to exit his vehicle and secure other means of transportation to O'Hare. *See id.* at ¶ 70. If there is a known means to escape, even one involving inconvenience, there is no false imprisonment claim. Restatement (Second) of Torts § 36, comment d (1965) ("[O]ne who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied."); *Robinson v. Sabis Educ. Sys., Inc.*, 1999 WL 414262, at *15 (N.D. Ill. 1999) ("[A] false imprisonment claim does not lie where the plaintiff is merely prevented from being or remaining in a place where she wants to be."); *see, e.g.*, *Marcano*, 550 F. Supp. at 599, 603 (finding that a plaintiff whose car was repossessed

which left him stranded was not falsely imprisoned, as he had means to leave); *Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018) (parking tow truck behind plaintiffs' car was not false imprisonment because plaintiffs were "free to leave their car"); *Martin v. Lincoln Park West Corp.*, 219 F.2d 622, 624 (7th Cir. 1955) (finding no false imprisonment where an individual chooses to remain with their belongings). Had Plaintiff done the required reasonable inquiry into the claim he would have determined it is baseless and should not have been filed.

At the same time, Plaintiff alleges the following claims predicated on the underlying tort claims against Dissenters and the Individual Defendants: in-concert liability for the aforementioned torts, conspiracy to commit those torts, and aiding and abetting in the commission of those torts. ECF 33 at ¶¶ 101-165; *see Wilsonville v. SCA Services, Inc.*, 86 Ill. 2d 1, 55 (1981).

Each of these claims rely on an underlying tort violation, which suffer fatal flaws as explained above. For that reason alone, these claims should be dismissed. *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3253604, at *6 (N.D. Ill. 2006) (citing *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936 (1st Dist. 2004)) ("'Conspiracy' is not an independent tort."); *A Communication Co., Inc. v. Bonutti*, 55 F. Supp. 3d 1119, 1125 (S.D. Ill. 2014) (dismissing conspiracy claim where litigant failed to sufficiently plead underlying claim); *Id.* (citing *Hefferman v. Bass*, 467 F.3d 596 (7th Cir. 2006)) (dismissing aiding and abetting claim where underlying tort claim failed).

But, even if that were not the case, these would still be baseless legal claims. In-concert liability, conspiracy, and aiding and abetting each require that there be sufficient allegations showing that the Individual Defendants and Dissenters worked collaboratively with the

7

remaining Defendants to commit tortious acts. *See Fortae v. Holland*, 334 Ill. App. 3d 705, 716 (Ill. App. Ct. 2002) (stating that in-concert liability requires "a tortious act in concert with the other or pursuant to a common design"); *Madonis v. Sterling Bay Cos., LLC*, 2020 IL App (1st) 191657-U ¶¶ 28, 30 (stating that conspiracy and aiding and abetting both require concerted action).

 At no point does the complaint provide that. None of Plaintiff's allegations establish that the Individual Defendants or Dissenters had access to the Proton messaging accounts used for A15 coordination, just the Plaintiff's opaque "information and belief." ECF 33 at ¶¶ 53, 57. While Plaintiff alleges that Dissenters helped pick O'Hare for the protest, their support for that contention is an article cited in a declaration that makes no mention of Dissenters at all. *Id.* at ¶ 56; ECF 33-1 at ¶ 49. Beyond that, Plaintiff contends that Dissenters published social media content in collaboration with the other Defendants which Plaintiff alleges suggests that the Defendants "had on the ground agents participating in the blockade on their behalf," but nothing in the Amended Complaint supports that contention. ECF 33 at ¶ 69; ECF 33-1 at ¶ 36 (citing a letter and social media post both published over three months after the A15 Action that Dissenters signed in support of the protesters facing criminal charges), ¶ 44 (citing social media post that makes no reference to Dissenters), ¶¶ 45-46 (citing social media posts of Dissenters from after blockade began), ¶ 56 (citing social media post that makes no reference to Dissenters), ¶ 69 (citing social media post of Dissenters from after blockade began), ¶ 70 (citing social media posts and articles from the days after the blockade), ¶ 76 (citing social media post that makes no reference to Dissenters), ¶ 77 (citing social media post that makes no reference to Dissenters). These allegations, even read in the light most favorable to Plaintiff, do not come close to

8

constituting an agreement ahead of the blockade protest <u>plus</u> acts in furtherance that the conspiracy, in-concert, and aiding and abetting claims require.

## II. Plaintiff filed his complaint for an improper purpose

Rule 11 allows courts to sanction litigants for filing pleadings for the purpose of delaying, harassing, or increasing the cost of litigation. Fed. R. Civ. P. 11(b)(1). "Like the frivolousness clause, whether a party or attorney acted with an improper purpose is based on an objective standard." *Brown*, 830 F.2d at 1435. While a showing of subjective bad faith is not required, it may be considered in a court's analysis where the suit is "objectively colorable." *See In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). In other words, an improper purpose may be shown through either direct evidence of subjective intent or, where there is no such evidence, inferring such malintent from a meritless claim ungrounded in law and unwarranted by fact. *Vandeventer v. Wabash Nat. Corp.*, 893 F. Supp. 827, 840 (N.D. Ind. 1995). In fact, "substantive meritlessness alone creates an automatic inference of improper purpose, even where the improper purpose is not identified." *Id.* at 842.

This complaint evidences both subjective bad faith and objective impropriety. As to the latter, Defendants incorporate by reference the arguments set forth in the foregoing section that demonstrates that this suit is meritless and ungrounded in law or fact. As to the former, the court need only refer to the plain language of the complaint to see bad faith. From the beginning, Plaintiff paints Defendants' alleged actions with demeaning language. Defendants' actions are referred to as "misguided, self-defeating effort[s]" that resemble a cancer "matastasiz[ing] in the body politic" rather than the plainest examples of free speech. ECF 33 at ¶¶ 1, 8. To Plaintiff, the Individual Defendants are "impressionable students" rather than individuals and organizations

9

alleged to have participated in constitutionally-protected protest activity. *Id.* at ¶ 16. As Plaintiff crassly states:

> "There is a cultural expression (some would say myth) in American politics that dumb and radical ideas are safely confined to college campuses, because students quickly mature and abandon them once the 'real world' kicks in after graduation. Not so for Defendants–they decided to take the blockades which local SJP chapters had employed at college campuses and introduce them to the 'real world.'"

*Id.* at ¶ 45. Put differently, Plaintiff filed this baseless suit to put the "dumb and radical" Defendants before the court of law and court of public opinion. Such *ad hominem* can only evidence the improper purpose of this suit.

But that is not the only subjective evidence of improper purpose. The improper purpose of this suit is equally shown to what little is alleged against the Individual Defendants and Dissenters. The first allegations against Dissenters and the Individual Defendants do not appear until halfway through the pleading. *Id.* at ¶¶ 56 (Dissenters), 62 (Individual Defendants). Instead of focusing on the conduct of these Defendants, the first half of the pleading is devoted to conclusory and inflammatory statements unsupported by evidence that Hamas and the Iranian Revolutionary Guard Corps created the A15 Action. *Id.* at ¶¶ 2, 16, 30, 34, 41, 44. Plaintiff asserts that this is all shown through an internal memo prepared by the Iranian Revolutionary Guard Corps but provides no evidence of this document beyond their assertion that it exists. *Id.* at ¶ 47. Devoting so much of this complaint to this theory, and so little of this complaint to real factual allegations against Dissenters or the Individual Defendants, is a choice. It is one that seeks to prime the Court to frame Defendants' constitutionally-protected speech as terrorism, rather than the activism that it is. *See id.* at ¶¶ 5, 26-29, 33-36, 48, 58.

10

Moreover, it reveals the true purpose of Plaintiff's complaint–to harass and punish pro-Palestine advocates for advocating in support of Palestinian liberation. *See*; *see also Collins v. Daniels*, 916 F.3d 1302, 1323 (10th Cir. 2019) (affirming lower court's sanctions award where a complaint was filed for the improper purpose of expressing political opposition to new bail rules); *Rhodes v. MacDonald*, 2009 WL 3111834, at *1 (M.D. Ga. Sept. 18, 2009) (finding sanctions warranted where court found that plaintiff's motion was "being presented for the improper purpose of using the federal judiciary as a platform to espouse controversial political beliefs rather than as a legitimate forum for hearing legal claims."); *Teno v. Iwanski*, 464 F. Supp. 3d 924, 954 (E.D. Tenn. 2020) (ordering sanctions where a complaint was filed "for the improper purpose of harassing [the defendants] for their own personal and political reasons"); *Muhammad v. Fatehi*, 897 S.E.2d 294, 299 (2024) (ordering sanctions where a complaint was filed for improper purpose of generating political publicity). In fact, to concoct this lawsuit, Plaintiff's counsel had to resort to online solicitation of potential plaintiffs allegedly impacted by "pro-Hamas" and "anti-Israel" protests.[2] Plaintiff's inflammatory and irrelevant propaganda demonstrates the improper purpose of his complaint, while failing to fulfill the minimum pleading requirements against Dissenters and the Individual Defendants.

### III. The Court should order Plaintiff to pay the Individual Defendants' and Dissenters' reasonable attorneys' fees and costs

Sanctions are imposed to "deter repetition" of wrongful conduct. Fed. R. Civ. P. 11(c)(4). Courts in this circuit have previously ordered offending parties to pay reasonable attorneys' fees and costs associated with frivolous and harassing suits. *See, e.g.*, *Eberhardt*, 2022 WL 22896754,

---

[2] @HamLincLaw, X (Feb. 7, 2024 3:35pm), https://x.com/HamLincLaw/status/1755344433241854442 ("Drivers stuck on the streets by radical pro-Hamas activists have cause for legal action, HLLI president Ted Frank tells @komonews."); @HamLincLaw, X (March 12, 2024 9:42am), https://x.com/HamLincLaw/status/176756185949444254 ("Caught in the chaos of anti-Israel protests on February 1, 2024, that caused traffic jams around DC/Northern Virginia? Contact HLLI attorney Ned Hedley").

11

at *2 (awarding attorneys' fees under Rule 11 where plaintiff filed objectively frivolous claims and plaintiff acted in bad faith with the intent to harass the defendant); *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) (affirming award of attorneys' fees and costs under Rule 11 on the grounds that plaintiff's arguments were objectively unreasonable and frivolous); *Theis v. Smith*, 1986 WL 12304, at *1 (N.D. Ill. 1986) (awarding attorneys' fees under Rule 11 where plaintiff brought claims that were clearly baseless); *Wilford v. County of Rush*, 2003 WL 77003, at *7 (S.D. Ind. Jan. 7, 2003) (awarding attorneys' fees under Rule 11 where the plaintiff filed the lawsuit with the intent to harass the defendant). Fundamentally, "an award of attorneys' fees is appropriate under Rule 11" where the allegations in the pleadings "fall short of th[e] minimal standards" required. *Theis*, 1986 WL 12304, at *1.

## CONCLUSION

For the foregoing reasons, Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, Simone Tucker, and Dissenters respectfully request that this Court enter an order finding that Plaintiff's counsel violated Rule 11 and requiring Plaintiff and Plaintiff's counsel to pay reasonable attorneys' fees and costs incurred in defending against this frivolous complaint.

Dated: January 27, 2025                          Respectfully,

Sheila A. Bedi                                               Amanda S. Yarusso
Roderick Macarthur Justice Center      1180 N. Milwaukee Ave.
375 E. Chicago Ave.                                 Chicago, IL 60642
Chicago, IL 60611                                      (773) 510-6198
(312) 503-2492                                           amanda.yarusso@gmail.com
sheila.bedi@law.northwestern.edu    *Attorney for Defendants Jinan Chehade,*
*Attorney for Defendants Jinan Chehade,*   *Superior Murphy, Rifqah Faleneh, and*
*Superior Murphy, Rifqah Faleneh, Simone*   *Simone Tucker*
*Tucker, and Dissenters*

Megan Porter
PO Box 408246
Chicago, IL 60607

(872) 246-3379
port.cjm@gmail.com
*Attorney for Defendants Jinan Chehade,
Superior Murphy, Rifqah Faleneh, Simone
Tucker, and Dissenters*