## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, individually and behalf of all others situated, | |
| Plaintiffs, | Case No. 24:cv8209 |
| v. | Honorable Mary M. Rowland |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, *et al.* | |
| Defendants. | |

## DISSENTERS, JEWISH VOICE FOR PEACE AND INDIVIDUAL DEFENDANTS' MOTION TO STRIKE ALLEGATIONS FROM SECOND AMENDED COMPLAINT

Defendants Dissenters, Jewish Voice for Peace, Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker by and through their undersigned counsel, move pursuant to Federal Rule of Civil Procedure 12(f) to strike certain allegations from the Amended Complaint, and in support, state as follows:

## INTRODUCTION

Plaintiff's Second Amended Complaint (Doc. 69) is a putative class action alleging that four individuals who participated in an April 15, 2024, protest action caused a traffic jam near the O'Hare Airport.[1] The protest aimed to raise awareness about Gaza—specifically the United States' financial support of the military

---

[1] Plaintiff also alleges that the Organizational Defendants provided various forms of support to the April 15,2024 action.

incursion. Like the thousands of travelers who miss an O'Hare flight because of traffic, Plaintiff missed his flight and had to wait at the airport for three hours. He now claims that the Defendants owe him and all those similarly situated compensation for this inconvenience and alleges that the Defendants engaged in *inter alia,* the tort of false imprisonment. But Plaintiff's Complaint reads more a like hodgepodge of anti-Palestinian propaganda than a federal lawsuit. The Complaint contains 79 paragraphs containing factual allegations. But only 16 of those paragraphs refer to the Defendants' actions. *See* Doc. 69 at 59-75.  The remaining "allegations" reveal nothing about Plaintiff's claims. Instead, they affirm the Plaintiff's real motive in filing this lawsuit: it's a clumsy attempt to use tort law to silence those who support Palestinian liberation and to litigate the righteousness of the Zionist cause.[2]

The Complaint alleges as fact Plaintiff's opinions about Palestine, political theory, and geopolitics—each opinion is wholly unrelated to any alleged violations of tort law. In his federal lawsuit, Plaintiff opines that settler-colonialism is "phony," and a "myth." Plaintiff also offers his interpretation of various historical

---

[2] In the accompanying Motions to Dismiss, Defendants argue that this case should be dismissed because it violates the Illinois Citizen Participation Act, 735 ILCS 110/15, also known as Illinois SLAPP Act (strategic lawsuit against public participation)  "A SLAPP plaintiff's goal is achieved not by success on the merits but by forcing defendants to expend funds on attorney fees and litigation costs, thus discouraging them from pursuing their protests." *Garrido v. Arena*, 993 N.E.2d 488, 495 (Ill. App. Ct. 2013). "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Ryan v. Fox Television Stations, Inc.*, 979 N.E.2d 954, 959 (Ill. App. Ct. 2012). ICPA is "expressly designed" to prevent "lawsuits that try to abuse the justice system by bringing unfounded claims in retaliation against defendants who legitimately exercise their First Amendment rights." *Garrido*, 993 N.E.2d at 497.

events concerning the state of Israel and unsupported conspiracy theories about people who support Palestinians' right to exist and self-govern. Plaintiff's anti-Palestinian rantings and baseless conspiracy theories have no place in a federal lawsuit. Perhaps they could find a home on Fox News. But as alleged here, they are immaterial, impertinent, and scandalous. Defendants cannot possibly answer allegations regarding the history of violence and repression in Israel and Palestine since 1948. Nor can Defendants be expected to respond to allegations regarding the tactics and motivations of Hamas, the Iran Revolutionary Guard Corps, and the government of Iran. These allegations will prolong and complicate this lawsuit—which alleges only violations of Illinois tort law. For these reasons, and those explained further below, Defendants move to strike certain allegations from Plaintiff's Complaint pursuant to Fed. R.Civ.P.12(f).

## ARGUMENT

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have wide discretion in deciding whether to strike portions of a pleading. *Talbot v. Roberts Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Courts should grant a motion to strike requesting removal of unnecessary clutter when doing so would expedite a case. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Wei Liang v. Frontline Asset Strategies, LLC*, No. 15 C 09054, 2017 WL 1365604, at 2 (N.D. Ill. Apr. 14, 2017). Redundant historical allegations are properly the subject of

3

a motion to strike. *Brown v. ABM Indus., Inc.*, No. 15 C 6729, 2015 WL 7731946, at 2 (N.D. Ill. Dec 1, 2015). Immaterial or impertinent allegations are allegations that have no relationship to the cause of action or bear no possible relationship to issues at trial. *VPHI, Inc. v. Nat'l Educ. Training Grp., Inc.*, No. 94 C 5559, 1995 WL 51405, at 3 (N.D. Ill. Jan. 20, 1995) (citing *Capitol Indemnity Corp. v. Tranel Developments, Inc.*, 144 F.R.D. 346, 347 (N.D. Ill. 1992); *In re Asbestos Cases*, No. 86 C 1739, 1990 WL 36790, at 4 (N.D. III. Mar. 8, 1990). Allegations are void of merit and unworthy of consideration if they are unrelated to the claims at issue. *Cumis Ins. Soc'y, Inc. v. Peters*, 983 F. Supp. 787, 798 (N.D. III. 1997). Finally, in addition to showing that the challenged allegations are "redundant, immaterial, impertinent, or scandalous," the moving party typically must also show that prejudice will result if it is required to answer certain allegations. *In re Asbestos Cases*, 1990 WL 36790, at 3. Prejudice results when the allegations have the effect of confusing the issues or are so lengthy and complex that they create an undue burden on the responding party. *Cumis Ins. Soc., Inc.,* 983 F. Supp. at 798.

Plaintiff's allegations regarding geo-political history, the state of Israel, and his opinions on the Palestinian liberation movement don't just burden the Defendants; they also impose a significant burden on this Court and attempt to litigate here the most vexing and deadly political conflict facing the world today. Plaintiff's complaint is replete with immaterial, irreverent, and scandalous allegations that are wholly unrelated to the alleged violations of tort law—and perhaps most pointedly—impossible for these parties to prove or disprove.

### A. Inflammatory Allegations Intended to Silence and Incite Harm (¶¶2, 5, 13, 18, 26, 28, 37, 40, 43, 63, 72)

Plaintiff alleges a number of false, inflammatory allegations that have nothing to do with the tort violations alleged by the Plaintiff. Instead, they are included to prejudice the Defendants and associate them with organizations the United States government has deemed terrorist organizations. For example:

¶2: Hamas viewed U.S. protests like the one at issue here "as critical to its campaign to stop Israeli self-defense efforts, and resisted negotiations for a ceasefire in the hopes that Western activists would cause Western governments to pressure Israel to stop the war and allow Hamas to survive." Protests like the one at issue here prolonged the war because direct actions gave "Hamas false hope that its leadership could continue . . ."

¶5: Plaintiff's alleged injuries occurred because Hamas "decided a propaganda offensive in America is their best weapon against Israel."

¶13: Describes WESPAC's fund recipients as "anti-Israel and pro-Hamas clientele."

¶18: Defendant Chehade lost an employment offer because she publicly supported "the October 7, 2024, massacre of innocent Israeli citizens by Hamas militants on social media."

¶¶26, 28: Hamas is a proxy of the Iran Revolutionary Guard Corps, which seeks to eliminate the state of Israel. Hamas has this same goal and recognizes that

doing so "is impossible without a drastic shift in America's pro-Israel paradigm. Accordingly, the focus of its propaganda war now centers" in the U.S.

¶¶37, 40, 43: Hamas issued a call for "resistance abroad." Hamas's call for resistance included a call for "agitation, the spreading of mis- and disinformation through social media, and visible economic disruption." The "blockade strategy was only the beginning of Defendant NSJP's propaganda offensive...on behalf of Hamas." Defendants' actions fulfilled Hamas's propaganda goals and Defendants' protests result in violence.

¶63: A bail fund was established to ensure activists would quickly return to the streets "to cause more chaos on Hamas's (and by extension, Defendant NSJP's) behalf."

¶72: Hamas planned the April 15 action "to maximize the public relations effect."

To be clear, Hamas is not party to this case. So why does the Plaintiff spill far more ink describing Hamas's tactics, use of violence, and views of Israel than it does describing the Defendants' alleged wrongdoing? The answer is described at length in the Defendants' accompanying motions to dismiss and motions for sanctions—this case is not about the Plaintiff's injuries, but is instead about the Plaintiff's desire to quash Defendants' advocacy in support of the Palestinian people. But the allegations equating the Defendants with Hamas aren't just an attempt to silence them. These false and unsupported allegations place the individual Defendants and the

organizations' employees, volunteers, and directors at a significant risk of harm.[3] This was Plaintiff's goal—because the Plaintiff abhors the Defendants' advocacy and considers the Palestinians "barbarians."[4]

Allegations that are at best an attempt to silence and at worst an attempt to incite harm have no place in a federal complaint. Courts routinely strike allegations when they are both this inflammatory and this disconnected from the underlying claims. *Bray v. Purple Eagle Ent., Inc.*, No. 18-CV-5205 (GBD) (HBP), 2019 WL 549137 (S.D.N.Y. Feb. 12, 2019) (striking allegations that referred to involved parties as "divisive," "hateful," "alt-right," and "extremist" and allegations related to unrelated personal misconduct); *Cumis Ins. Society,* 983 F. Supp. at 798 (allegations are impermissibly prejudicial if the allegation has the effect of confusing the issues

---

[3] Protestors for Palestine have faced especially high levels of harassment and doxing since October 7, 2023. From displaying the names and photos of advocates on trucks, to harassing university presidents at their homes, to physically assaulting students, to sending activists death threats, Pro-Palestine advocates have faced significant risks. *See* Tesfaye Negussie & Nadine El-Bawab*, Doxxing campaign against pro-Palestinian college students ramps up*, ABC News, Oct. 20, 2023*; Brian Schwartz, Top Republican donors fund group doxxing pro-Palestinian college students,* CNBC, May 13, 2024; *Chris Mendell, Six pro-Palestinian students report harassment, assault at General Studies Gala,* Columbia Spectator, May 3, 2024, *Alex Kane, A "McCarthyite Backlash" Against Pro-Palestine Speech,* Jewish Currents, Oct. 20, 2023. In fact, a "news" publication published a photo of defense counsel's minor child alongside counsel's email and phone number in an article critiquing the Defendants and their counsel. Lexi Boccuzzi, *Northwestern Law School Clinic Funds Legal Defense of Anti-Israel Activists Who Shut Down Chicago Airport,* Washington Free Beacon (Feb. 18, 2025).

[4]*Id.* (Plaintiff's counsel is quoted as criticizing the Northwestern Law Clinic's representation of the Defendants on the grounds that the clinic is devoting "scarce resources to defending people who want to destroy the very system of Western abundance in favor of barbarians."

or is so lengthy and complex that it places an undue burden on the responding party).

## B. Allegations Regarding the Geopolitical History of the Middle East (¶¶22-37, 53-55)

Plaintiff's complaint also contains numerous wholly irrelevant allegations about the origins of the state of Israel, the history of Hamas, and Hamas's tactics, including its use of violence. ¶¶22-37. Plaintiff further alleges as fact his opinions that that settler-colonial narrative of Israel is "phony" and that any analysis describing Israel as a colonizer is based on "myth." ¶25. These allegations are removed from the alleged tort violations that occurred on April 15, 2024, by hundreds of years and thousands of miles. They drag this Court and the parties into a geopolitical conflict that has been raging for decades. Defendants could not answer these allegations, nor could either party conduct discovery on them. This Court should therefore strike each allegation contained in paragraphs 22-37. *See Madison v. Colquitt Cnty. Sch. Dist.*, No. 7:23-CV-00031 (WLS), 2024 WL 3317377, at 6 (M.D. Ga. June 20, 2024) ("[a]lthough granting a motion to strike is a drastic remedy, Plaintiff has devoted large portions of the Amended Complaint to include matters not necessary or relevant to adequately plead his claims. There are appropriate mediums through which to discuss history, political views, and current events, but a pleading in federal court is not one of them—as Rule 8 clearly requires. Including such matters is a waste of judicial resources and imposes significant unnecessary burdens on defendants attempting to craft a meaningful response"); *United States v. Am. Bank*

*of Oklahoma*, 2023 WL 6393177, at *3 (striking allegations regarding the Tulsa Massacre from a complaint because it cast a derogatory light on the Defendant).

## CONCLUSION

Fed. R. Civ. P. 12(f) permits the striking of allegations that are "neither responsive nor relevant to the issues involved in the action and... could not be put in issue or be given in evidence between the parties." *Sutton Place Dev. Co. v. Green*, No. 83 C 5020, 1987 WL 5951, *1 (N.D. Ill. Jan. 27, 1987). "A successful motion to strike typically seeks to remove unnecessary clutter from the case, because in that situation, the motion expedites the case and moves the parties forward." *McDowell v. Morgan Stanley & Co.*, 645 F. Supp. 2d 690, 693 (N.D. Ill. 2009); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Each allegation described above constitutes unnecessary clutter—included to either harm the Defendants or bog this Court down in a geopolitical dispute. Defendants realize that Motions to Strike are often disfavored. But Fed. R. Civ. 12(f) exists for a reason—to protect parties from the kind of inflammatory, prejudicial, wholly unresponsive—and frankly dangerous— allegations proffered by the Plaintiff here. This Court should therefore strike from Plaintiff's complaint ¶¶2, 5, 22-37, 72, and the portions of ¶¶13, 18, 40, 43, and 63 that reference Hamas.

Dated: February 25, 2025          Respectfully Submitted:


                                  /s/ Sheila A. Bedi
                                  Sheila Bedi
                                  Community Justice and Civil Rights Clinic
                                  Northwestern Pritzker School of Law
                                  375 E. Chicago Ave., 8th Floor

Chicago, IL 60611
Phone: 312-503-2492
sheila.bedi@law.northwestern.edu

Megan Porter
PO Box 408246
Chicago, IL 60607
(872) 246-3379
port.cjm@gmail.com
***Attorneys for Defendants Jinan
Chehade, Superior Murphy, Rifqah
Faleneh, Simone Tucker, and Dissenters***

Amanda S. Yarusso
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
***Attorney for Defendants Jinan Chehade,
Superior Murphy, Rifqah Faleneh and
Simone Tucker***

Nora Snyder
Brad Thomson
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
773-235-0070
norasnyder@peopleslawoffice.com
brad@peopleslawoffice.com

Dan Stormer
Hanna Chandoo
Hadsell Stormer Renick & Dai, LLP
128 N Fair Oaks Ave
Pasadena, CA 91103
(626) 585-9600
hchandoo@hadsellstormer.com
dstormer@hadsellstormer.com
***Attorneys for Defendant Jewish Voice for
Peace***

10