# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, individually and on behalf of all others similarly situated, ) ) ) | |
| ) | No. 1:24-cv-8209 |
| Plaintiff, ) ) | |
| ) | Hon. Mary M. Rowland |
| v. ) ) | |
| ) | Magistrate Judge Keri L. |
| NATIONAL STUDENTS FOR JUSTICE ) IN PALESTINE, et al., ) ) | Holleb Hotaling |
| Defendants. ) | |

# DEFENDANT WESPAC FOUNDATION INC'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
# PLAINTIFF'S SECOND AMENDED COMPLAINT

## **INTRODUCTION**

Defendant WESPAC Foundation, Inc. ("WESPAC") submits this memorandum of law in support of its Motion to Dismiss Plaintiff Christopher Manhart's Second Amended Complaint ("SAC").

WESPAC Foundation ("WESPAC") is a New York non-profit corporation with its principal place of business in Westchester County, New York. This is the third iteration of Plaintiff's baseless case against WESPAC, which was not aware of the April 15, 2024 protest before it happened, had nothing to do with it, and did not fund it. Indeed, the SAC, like Plaintiff's two earlier pleadings, does not actually allege that anyone on behalf of WESPAC knew of the "blockage" before it occurred, participated in it, called for anyone else to participate in it, communicated with anyone about it, was anywhere near Chicago or even in Illinois at the relevant times, made any social media posts or any other statements about it, or did *anything at all* in connection with it.

Instead, Plaintiff relies on the bankrupt theory that WESPAC's acting generally as a fiscal sponsor automatically subjects it to liability for anything anyone associated with National Students for Justice in Palestine ("NSJP") allegedly did to anyone, anywhere. Notwithstanding the absence of any (1) case law imposing on a fiscal sponsor any legal duty of care to Plaintiff or those like him, or (2) factual allegations specifically tying WESPAC to the O'Hare protest, Plaintiff and his attorneys have persisted in pressing his frivolous claims, now for the third time, while falsely portraying WESPAC as antisemitic and complicit with foreign terrorist organizations as part of a systematic effort to harass and punish it for its advocacy of Palestinian liberation and its fiscal sponsorship of other organizations, like NSJP, who do the same.

Plaintiff alleges he was the victim of a massive conspiracy to "blockade" traffic near O'Hare International Airport on April 15, 2024. According to Plaintiff, this conspiracy was

hatched "to extort political change from faraway luminaries[.]" *See* SAC ¶¶ 1-2. According to Plaintiff, this action, which caused "traffic into the airport [to be] stopped for almost three hours," was of such international significance that it must have had the blessing of Hamas and the Iranian Revolutionary Guard Corps. *Id.* ¶¶ 2-4; *see also id.* ¶ 5. In Plaintiff's telling, he had the not-remotely unusual experience of spending "over an hour" in "brutal, standstill traffic" due to the "blockade." *Id.* ¶ 6. He missed a business dinner and a networking opportunity, the substance and significance of which is not alleged, and also allegedly suffered unspecified lost "business opportunities,", "annoyance, inconvenience and physical discomfort, anxiety and emotional distress," and "loss of time." *Id.* ¶¶ 96, 108, 116, 123, 130, 137, 144.

To avoid needless duplication, WESPAC respectfully incorporates by reference the arguments of co-defendants that apply to WESPAC and all Defendants, including, without limitation, those in ECF 75, the Memorandum of Law in Support of Defendant Jewish Voice for Peace's Motion to Dismiss ("JVP Brief"); ECF 74, Defendant Tides Center D/B/A Community Justice Exchange's Memorandum of Law in Support of its Motion to Dismiss ("CJE Brief"); and Defendant National Students For Justice in Palestine's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's SAC ("NJSP Brief").

First, Plaintiff's alleged injuries do not establish Article III standing because ordinary inconvenience and annoyance, and missing a networking dinner without more, are not the requisite "concrete injuries"; and since Plaintiff has failed to allege that WESPAC *did anything* in connection with this protest, there is no "causal connection between the [claimed] injury and [WESPAC's] conduct complained of." *See* CJE Br. 6-8.

Second, this SLAPP suit should be dismissed pursuant to the Illinois Citizen Participation Act. *See* JVP Br. 1-17.

Third, Plaintiff explicitly alleges that he suffered the same harm as every other driver

2

trying to get to O'Hare and therefore fails to allege the "special injury" required for standing to assert a public nuisance claim. *See* JVP Br. 11-12.

Fourth, Plaintiff fails to state a claim for false imprisonment (Claim I) because he was not involuntarily confined physically or in any other unlawful or cognizable way. *See* JVP Br. 18-20; CJE Br. 12.

Fifth, Plaintiff's claim of "foreseeable injury caused by intentional breach of duty," (Claim II), as an alternative to Plaintiff's prior statutory claim of obstructing a highway, is frivolous because, *inter alia*, his alleged injury is not the type protected by the Illinois Vehicle Code, there is no private of action in that Code, and defendants did not breach any cognizable duty to Plaintiff. *See* CJE Br. 2, 11; JVP Br. 20-26.

Sixth, Plaintiff's derivative conspiracy, aiding and abetting, and in-concert liability claims (Claims III, IV, V, VI, VII, VIII) fail because the underlying tort claims are baseless, and because (a) as to conspiracy, Plaintiff's allegations of an agreement among the organizational defendants are conclusory and unsupported by any specific factual allegations; and (b) as to aiding-and-abetting and in-concert liability, Plaintiff has not alleged that the organizational defendants "substantially assisted" the individual defendants in their allegedly tortious conduct. *See* JVP Br. 26-28; CJE Br. 8-11; NSJP Br. 11-13.  In WESPAC's case, these derivative claims are particularly frivolous since the SAC does not allege that WESPAC knew anything about the April 15, 2025 blockage, let alone did anything in connection with it, so WESPAC could not have *agreed* with anyone to commit any tortious conduct or otherwise injure Plaintiff, or to knowingly assist NSJP or anyone else in committing any alleged tort against, or cause injury to, Plaintiff.

This time around, in silent recognition that these claims against WESPAC are unsupportable, the SAC adds a Claim IX, sounding in "Negligence or Recklessness," alleging

3

that WESPAC had a legal duty "to control and supervise the activities of NSJP," which WESPAC breached. There is, however, no such legal duty. There is no case, or logic, or public policy, that would support imposing on a fiscal sponsor a legal duty to control the *activities* of its sponsored organization -- to Plaintiff or anyone on the face of the planet who feels aggrieved by the allegedly tortious actions of the sponsored organization. Here, such a duty would be particularly nonsensical when it is undisputed that WESPAC, the fiscal sponsor, had no awareness of or relationship with Plaintiff or any other driver near O'Hare. Nor may such duty to Plaintiff to control a sponsored organization's actions be implied from an IRS revenue ruling that held that an unidentified organization could retain its tax exemption because it had maintained discretion and control over the *funds* – not the *activities* – of another organization for charitable purposes, which historically have included the First-Amendment-protected social justice advocacy engaged in by both WESPAC and NSJP. If the Government's grant of a tax exemption creates any legal duty at all, it is limited to the Government, for the grant, not Plaintiff.

The balance of this brief will address that unsupportable claim and the additional reasons why the SAC should be dismissed against WESPAC pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and Rule 12(b)(2) for lack of personal jurisdiction in light of Plaintiff's serial failure (i) to plead that *anyone* acting on WESPAC's behalf did *anything* in relation to the alleged events – or to allege any other cognizable theory of liability – and (ii) to offer any basis for the exercise of personal jurisdiction.[1]

## THE FAC AND SAC

The SAC - like the First Amended Complaint ("FAC") - omits the inflammatory, and

---

[1] We also incorporate by reference the arguments in ECF 54, WESPAC's Memorandum of Law in support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"); ECF. 60, WESPAC's Objection to Plaintiff's Motion for Leave to File a Second Amended Complaint, which also help show how Plaintiff has repeatedly tried to modify and salvage his bankrupt claims against WESPAC without succeeding in curing any of its deficiencies.

4

false, allegations Plaintiff had offered in his original Complaint that sought to tie WESPAC to the events at issue.[2] *Compare* Complaint ¶¶ 44, 46, 50, 54, 104 *with* FAC ¶¶ 46, 50, 54, 104. In the FAC, Plaintiff also was careful not to claim WESPAC promoted, raised money for, or did anything relating to the O'Hare protest. The FAC further abandoned the frivolous aiding and abetting claims against WESPAC that Plaintiff had asserted in the original Complaint.

But Plaintiff's remaining liability theories in the FAC were no less frivolous. The FAC repeated allegations from the Complaint that WESPAC had acted generally as a fiscal sponsor to NSJP and promoted unspecified NSJP events through its social media accounts. *See* FAC ¶¶ 15, 17. Based only on those allegations, the FAC asserted that WESPAC was liable vicariously as the principal of NSJP and also liable under an "[i]n-concert liability" theory for a statutory count of obstructing highways and the torts of public nuisance and false imprisonment, *id.* ¶¶ 105-106, 114-115, 117-120; and liable in conspiracy for obstructing highways, nuisance, and false imprisonment. *See id.* ¶¶ 131, 138, 145.

The FAC failed entirely for two independent reasons as to WESPAC. First, Plaintiff's theory that WESPAC's acting generally as a fiscal sponsor automatically made NSJP an agent of WESPAC's, thereby subjecting it to vicarious liability for anything NSJP allegedly did to anyone, anywhere – was contrary to agency law (and common sense). Second, the FAC alleged nothing that could justify the exercise of personal jurisdiction over WESPAC, a New York entity. *See* FAC ¶ 17.

Plaintiff has now filed the SAC. But like his two prior pleadings, the SAC does not state

---

[2] For example, the original Complaint alleged that: (i) "Defendants AMP, NSJP USCPR, and WESPAC…implemented the NSJP toolkit by planning, sponsoring, and then publicizing (during and after) large-scale barricades"; (ii) "Defendants NSJP, WESPAC, USCPR, and AMP started to organize disruptive activities beyond college campuses"; (iii) "Defendants AMP, NSJP, USCPR, and WESPAC, acting as Hamas's propaganda arm…implemented that strategy of disruption"; (iv) "Defendants AMP, NSJP, USCPR, and WESPAC were instrumental in coordinating the national A15 Action plan and the plan specific to the Chicago area"; (v) "Defendants AMP, WESPAC, NSJP, JVP and Dissenters planned and/or advertised the blockade beforehand and amplified the tortious conduct via social media." Complaint ¶¶ 44, 46, 50, 54, 104.

cognizable claims against WESPAC or explain how personal jurisdiction may properly be exercised over WESPAC here.

The SAC now offers a menu of theories as to why WESPAC should be held liable for a protest it did not know about, take any part in, or fund. First, Plaintiff tepidly posits that "*[u]pon information and belief*, WESPAC's fiscal-sponsorship arrangement…caused NSJP to become an integrated part of WESPAC with no separate legal identity…." SAC ¶ 49 (emphasis added). But Plaintiff does not - and cannot - plead a single fact to support this assertion, a reality highlighted by the hedging language of "upon information and belief." Plaintiff also appears to recycle the agency argument from the FAC, which fares no better in the SAC. *See id.* ¶ 50. Plaintiff further claims WESPAC has "in-concert" liability for various torts because it "it had awareness of NSJP's blockade strategy—or, as its fiscal sponsor, should have—and…because it gives substantial fiscal assistance to NSJP which help fund its tortious blockade operations…." *Id.* ¶¶ 106, 114. But once more, Plaintiff is offering formulaic statements not even vaguely substantiated by any specific factual allegations.

The same is true in spades with respect to personal jurisdiction. Presumably, not even Plaintiff would assert that general personal jurisdiction could be exercised here. And given that Plaintiff does not allege WESPAC did anything in or directed at Illinois, there is simply no basis to conclude Plaintiff suffered injury from any jurisdictionally adequate action by WESPAC.

Beyond these failures, the SAC actually asserts again the aiding and abetting theory against WESPAC that Plaintiff had abandoned in the FAC. However, the SAC makes clear that WESPAC had nothing to do with these events by the absence of any allegations specifically tying WESPAC to the O'Hare blockage. Instead, Plaintiff only asserts that WESPAC (1) is a nonprofit located in New York; (2) was a fiscal sponsor for NSJP (and other groups that are not even parties here), and, as fiscal sponsor, collected and disbursed donor funds; and (3) has

6

promoted NSJP events through social media. SAC ¶ 14. Critically, however, Plaintiff does not – and cannot – allege that WESPAC promoted this protest at issue, or anything related to it. *See id*. And as we have noted before, Plaintiff does not allege that WESPAC provided NSJP with any money specifically for this protest. In fact, NSJP cogently points out that the SAC contains no specific factual allegations plausibly supporting its conclusory group pleading, upon information and belief, that NSJP and JVP "coordinated funding" for the project. *See* NSJP Br. 8-9 ("Plaintiff does not and cannot allege that NSJP contributed a dime to the April 15, 2024, protest."). Since Plaintiff does not – and cannot – allege that WESPAC funded this protest, WESPAC could not have caused any injury to Plaintiff through its general fiscal sponsorship of NSJP. WESPAC's role as a general fiscal sponsor was irrelevant and cannot support Plaintiff's case. Plainly, nothing alleged in the SAC comes closer to stating a claim against WESPAC than the original Complaint or FAC did.

## ARGUMENT

### A. THIS ACTION SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO STATE A CLAIM AGAINST WESPAC

A district court must dismiss a cause of action if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at

7

555). Also, courts need not accept as true conclusory legal allegations cast in the form of factual allegations. *Id*.

### Claim IX Fails to State a Claim

Count IX is as frivolous as Count II's common law tort for foreseeable injury caused by intentional breach of duty. See *ante,* at 3. Plaintiff has made an abortive stab at expanding that bizarre theory to plead an equally bizarre "alternative" negligence or recklessness claim against WESPAC. *See* SAC ¶¶ 51, 146 ("WESPAC acted tortiously by breaching its duty under federal law to exercise control and discretion over NSJP, and is liable for its negligent or reckless supervision of NSJP for NSJP's tortious acts."); *id.* ¶ 146 ("in the alternative, because WESPAC negligently or recklessly breached its duty to control and supervise the activities of NSJP, whose foreseeable illegal actions caused foreseeable injury to the Plaintiff and the Class, causing damages.").

Plaintiff disclaims any reliance on any general duty as a matter of tort law, as he must, because it is undisputed that WESPAC had no prior knowledge of the protest, no awareness of Plaintiff, and no relationship with Plaintiff. Instead, he simply makes up a "duty under federal law," to be imposed on all fiscal sponsors, "to control and supervise the activities of" their sponsored organizations. Plaintiff bases this new legal duty solely on a short, two-paragraph 1968 Revenue Ruling that held, in one case involving an unnamed exempt organization which had limited its distributions to specific projects that were in furtherance of its own exempt purposes and retained control and discretion as to the use of the funds, that "the distributions did not jeopardize the organization's exemption. Rev. Rul. 68-489; 1968-2 C.B. 210.

That single ruling cannot support Plaintiff's imposition of a legal duty on all fiscal sponsors to control and supervise not just the use of the *funds* it provides, but all the *activities* of all their sponsored organizations and projects. In the 57 years since that Revenue Ruling was

8

made, we have been unable to find any case imposing on a fiscal sponsor a legal duty to any person allegedly aggrieved by the tortious actions of its sponsoree, for the same good reasons that made nonsensical the legal duty claimed by Plaintiff in Count II, detailed with supporting case law, in JVP's Br. 22-26: (1) "JVP's research has not revealed any case where "foreseeable injury caused by intentional breach of duty" was recognized as a cause of action" in "Illinois or any other jurisdiction"; (2) there is no relationship between Plaintiff and WESPAC that would require that a legal obligation be imposed upon WESPAC for the benefit of Plaintiff; (3) since WESPAC was not even aware of the protest, WESPAC could not "reasonably foresee" the likelihood of any injury to Plaintiff; and (4) the consequences of imposing such a duty on WESPAC would be that WESPAC and every fiscal sponsor would be exposed to liability for the tortious activity of anyone connected to its sponsored organizations allegedly injuring anyone, anywhere on the planet even if, as here, the plaintiff was stuck in traffic for an hour, and the fiscal sponsor had no inkling that any activity was afoot but nevertheless is asked to pay millions, or tens of millions to a class. *See* ECF 39, at 3.

Moreover, if the "use of funds" rather than "control of activities" were the touchstone, this Revenue Ruling would not even come into play here, where the SAC does not allege that any general funds WESPAC provided to NSJP were used for any purpose in connection with this protest, tortious or not.

Accordingly, whether WESPAC and NSJP were separate entities (they were) or alter egos joined at the hip (they weren't), Claim IX is as frivolous as Claims I – VIII. Nevertheless, for the avoidance of doubt, we note below that the SAC does not plausibly allege that NSJP is an alter ego of WESPAC, or that NSJP was WESPAC's agent, or that WESPAC has in-concert liability for reasons other than those discussed and batted away above, at 3.

9

**Plaintiff Does Not Plausibly Allege that WESPAC and NSJP Are One Entity**

The SAC alleges that "[u]pon information and belief, WESPAC's fiscal-sponsorship arrangement, whereby WESPAC directly received donations for NSJP, which has no corporate entity of its own, caused NSJP to become an integrated part of WESPAC with no separate legal identity at times relevant to this complaint." Therefore, Plaintiff posits, "WESPAC was liable for NSJP's actions." SAC ¶¶ 14, 49

Plaintiff makes this allegation, *upon information and belief,* with no specific factual allegations of events, conversations or documents lending plausibility to the threadbare conclusory (and patently false) allegation that the WESPAC-NSJP fiscal sponsorship might have been of the "alter-ego," "integrated entity" sort. *See Indus. Packaging Supplies, Inc. v. Channell*, 2018 WL 2560993, at *2 (N.D. Ill. June 4, 2018) (plaintiff's "unsupported suspicions" did not provide "reasonable grounds" to support conclusory allegations made "upon information and belief"); *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *5 (N.D. Ill. Dec. 18, 2017) (rejecting allegations made "on information and belief" where plaintiff did not provide any reasonable basis to support that the facts were true).

All that Plaintiff can muster as a basis is another allegation, again upon information and belief, that WESPAC's fiscal-sponsorship arrangement with NSJP provided NSJP with access to WESPAC's administrative services, staff, and facilities. SAC ¶ 49. But of course, Plaintiff does not - and cannot - identify in any fashion the WESPAC "services, staff, and facilities" that were supposedly used by NSJP, let alone in connection with the O'Hare protest, and that plausibly made the two organizations one entity. Pleading such formulaic statements "on information and

10

belief" does not state a plausible claim. For these reasons, Plaintiff fails entirely even to raise a colorable argument that WESPAC and NSJP are one "integrated" entity.[3]

Thus, the in-concert, conspiracy, and aiding-and-abetting causes of action seemingly based on that theory simply fail. *See* SAC ¶¶ 105, 113 (asserting WESPAC is liable "in-concert" for highway obstruction and false imprisonment solely because "Defendant WESPAC is liable for the acts of NSJP during the relevant timeframe."); *see also id.* ¶¶ 121, 128 (asserting WESPAC is liable in conspiracy for highway obstruction and false imprisonment solely because "Defendant WESPAC is liable for the acts of NSJP during the relevant timeframe."); *see also id.* ¶¶ 135, 142 (asserting WESPAC is liable for aiding and abetting highway obstruction and false imprisonment solely because "Defendant WESPAC is liable for the acts of NSJP during the relevant timeframe.").

### Plaintiff Does Not Plausibly Allege that NSJP Was WESPAC's Agent

It is not clear that the SAC actually repeats the agency allegation which Plaintiff asserted in prior pleadings. Plaintiff first seems to disavow that argument. *Compare* FAC ¶ 17 (citing *Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530 ¶ 42 (Ill. 2012) to contend "NSJP acted as an agent of WESPAC") *with* SAC ¶ 14 (deleting citation to *Lawlor* and contention about agency). But later Plaintiff appears to adopt his prior agency-related contention. *See* SAC ¶ 50 (appearing to allege an agency relationship alternatively if NSJP were not an integrated part of WESPAC). Plaintiff's agency theory is as meritless as it was before, for the reasons contained in ECF 54, WESPAC's memorandum of law supporting its motion to dismiss the FAC, *see* ECF 54, at 7-9, which we incorporate herein. Once more, Plaintiff offers no factual predicate for his theory. Plaintiff still does not – and cannot – allege definitively that WESPAC maintained the referenced

---

[3] Moreover, Plaintiff's alter-ego theory flies in the face of WESPAC's Notice of No Affiliates, filed on January 13, 2025, Doc. 48, and has been debunked by WESPAC's certification in another SLAPP lawsuit pending in the Central District of California. *See* ECF 60, ¶ 6.

"level of control" or that NSJP actually "used funds" or anything else from WESPAC for the O'Hare protest. Rather, Plaintiff again has to couch these foundational (but false) allegations as being made on "information and belief," a tack that does not state a plausible claim under *Iqbal, Twombly, Indus. Packaging Supplies* or *Prominence Advisors*.

**Plaintiff's Other Contentions About In-Concert Liability Do Not State a Claim**

Plaintiff takes the legally and factually unmoored position that WESPAC has "in-concert liability for highway obstruction and false imprisonment simply because it is generally "liable for the acts of NSJP." SAC ¶¶ 105, 113. Somewhat confusingly, Plaintiff also asserts that WESPAC has "in-concert" liability for those torts because

> "it had awareness of NSJP's blockade strategy—or, as its fiscal sponsor, should have—and NSJP breached its duty to this class via the O'Hare blockade, which was substantially assisted by WESPAC. Separately, WESPAC also has in-concert liability here because it gives substantial fiscal assistance to NSJP which help fund its tortious blockade operations, and that funding breached WESPAC's duty to 'retain control and discretion over the use of funds by' NSJP so to not injure the class."

*Id.* SAC ¶¶ 106, 114.

Again, Plaintiff simply makes things up. Plaintiff alleges no facts making plausible the conclusory statement that WESPAC knew of any "blockade strategy," let alone one to be used at O'Hare. Nor does Plaintiff allege anything to support the notion that WESPAC provided any, let alone substantial, assistance for the O'Hare protest. Rather, Plaintiff long ago abandoned all allegations previously made about WESPAC supposedly being involved in planning the protest or otherwise providing actual support for it. *Compare* Complaint ¶¶ 46, 50, 54-56, 105 *with* FAC ¶¶ 46, 50, 54-56, 104.

Accordingly, Plaintiff's assertions that WESPAC "had awareness of NSJP's blockade strategy," and "substantially assisted" it, constitute nothing more than the parroting of legal standards. *See* SAC ¶ 110 (citing *Fortae v. Holland*, 334 Ill. App. 3d 705, 717 (Ill. App. Ct.

12

2002) for the proposition that a "defendant is subject to in-concert liability…if it…knows that the other's conduct constitutes a breach of duty and gives substantial assistance"). Such legal allegations, even if cast in the form of factual allegations, do not state a claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.[4]

And, frankly, as we noted above, at 8-9, it is preposterous to contend that general IRS guidance about sponsors' obligations to control funds given to sponsorees created a duty owed by WESPAC to drivers at O'Hare. If that were the law, fiscal sponsors would have strict liability to anyone and everyone for every action taken by anyone on behalf of a sponsoree without limitation.

### B. THIS ACTION SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER WESPAC

The SAC - like the Complaint and FAC before it - does not contain any allegations that would support the exercise of personal jurisdiction over WESPAC, given that it fails to plead that WESPAC itself did anything in Illinois or even directed at Illinois. Rather, the only allegation offered relevant to this analysis demonstrates that personal jurisdiction may *not* be exercised here, *i.e.,* Plaintiff correctly contends that "WESPAC [] is a New York corporation with its principal place of business in New York state." SAC ¶ 14. Perhaps because no cogent argument can be made regarding personal jurisdiction, Plaintiff again ignores the subject entirely. This approach is unavailing, given that Plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *E.g., Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

---

[4] Plaintiff's assertion that WESPAC, as NSJP's fiscal sponsor, "*should have*" known about the "blockade strategy" has even less merit, if possible. Plaintiff offers no allegation to substantiate its assertion about constructive knowledge, and there is nothing inherent in the fiscal sponsor-sponsoree relationship that would impute such knowledge to a sponsor with respect to everything a sponsoree plans to do. Moreover, the law, as set forth by Plaintiff, requires actual knowledge that "the other's conduct constitutes a breach of duty" for in-concert liability. *See* FAC ¶ 110.

13

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over [defendants]." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). However, Plaintiff must demonstrate that WESPAC has "certain minimum contacts" with Illinois, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation and quotation omitted). The strength of contacts required depends on which category of personal jurisdiction a plaintiff invokes: general or specific personal jurisdiction. *See Daimler*, 134 S. Ct. at 754.

The standard for obtaining general personal jurisdiction over a corporation is "demanding." *Daimler*, 134 S. Ct. at 750-751. For a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id.* at 760 (internal quotations and citations omitted). Only in an "exceptional case" is general jurisdiction available elsewhere. *Id.* at 751 n.19. An "exceptional case" exists only if a defendant's contacts in the state are "substantial" or "continuous." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868 (1984)).

Plaintiff alleges no actual WESPAC contacts with Illinois, let alone contacts that are "substantial" or "continuous." As such, Plaintiff fails entirely to offer any basis on which this could be deemed the kind of "exceptional case" in which general jurisdiction is available outside New York. *See Daimler*, 134 S. Ct. at 751 n.19, 760.

The specific jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation and quotation omitted). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 1121. "When there is no such

14

connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Court of Calif.*, 137 S. Ct. 1773, 1781 (2017).

The Illinois long-arm statute grants specific jurisdiction in several enumerated instances. *See* 735 ILCS 5/2-209. The only conceivably relevant scenario contemplated by the statute is "[t]he commission of a tortious act within this State" out of which a plaintiff's claim arises. *Id.* (a)(2). Again, Plaintiff has not even attempted to show WESPAC committed a tort in Illinois. Plaintiff does not allege that anyone connected to WESPAC did anything tortious at all, let alone in Illinois. Indeed, Plaintiff did not (and cannot) plead that anyone from WESPAC even was *present* in Illinois at any relevant time. Obviously, that precludes any argument that Plaintiff's claimed injury of being stuck in his car arose out of a tortious act by WESPAC in Illinois. As such, specific jurisdiction is utterly lacking.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant WESPAC's Motion to Dismiss and award attorneys' fees and costs pursuant to the Illinois Citizen Participation Act. Given that (1) Plaintiff has already had two chances to amend his Complaint and has still failed to state a valid claim, (2) no amendment can cure the SAC's deficiencies, and (3) this is a SLAPP suit brought for the improper purpose of harassing WESPAC and the other Defendants, WESPAC respectfully requests that the dismissal be with prejudice. *See, e.g. Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013) (dismissal with prejudice appropriate where lawsuit is frivolous or intended to harass); *Duffy v. Godfread*, 2015 WL 1727148, at *3 (N.D. Ill. Apr. 9, 2015) (finding lawsuit was a SLAPP suit and dismissing with prejudice).

Dated:  February 25, 2025	HERBST LAW PLLC


	By:     /s/ Robert L. Herbst                             
		Robert L. Herbst
		rherbst@herbstlawny.com
		420 Lexington Avenue, Suite 300
		New York, New York 10170
		Tel: 914-450-8163 Fax: 888-482-4676
		Attorneys for Defendant
		WESPAC Foundation

16