IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*, <br><br> *Plaintiff*, <br><br> v. <br><br> NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, a project of WESPAC FOUNDATION, INC.; *et al.* <br><br> *Defendants*. | Case No. 1:24-cv-8209 <br><br> Hon. Mary L. Rowland |

**DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff Christopher Manhart's Second Amended Complaint ("SAC") seeks to punish those who insist on the dignity of the Palestinian people and object to Israel's genocide in Gaza. He asks the Court to bar future expressions of solidarity with those causes, a fact made clear in the request for *injunctive* relief that would result in an unlawful prior restraint on First Amendment activity. (Dkt. #69, ¶1). In addition to being a "SLAPP" suit and failing to state a claim for the reasons raised by co-Defendants, which are adopted herein, every count against National Students for Justice in Palestine ("NSJP") is irremediably flawed and should be dismissed with prejudice.

When stripped of incendiary rhetoric and inflammatory allegations, the SAC fails on the most rudimentary pleading grounds. It does not—and cannot—identify *anything* that NSJP itself did with respect to the April 15, 2024, protest that temporarily blocked traffic on I-90, "inconvenienced" Plaintiff, and led to this multi-million-dollar putative class action lawsuit.

Nor has Plaintiff alleged any viable theory of vicarious liability that could plausibly rope NSJP into this lawsuit. Plaintiff tries to do so through conclusory allegations focused on an entirely

1

separate entity, Students for Justice in Palestine Chicago ("SJP Chicago"). Plaintiff labels SJP Chicago to be an "affiliate" of NSJP without any explanation of what that means or how an "affiliation" makes NSJP vicariously liable for SJP Chicago's alleged activities related to the April 15, 2024, protest. Plaintiff thus blindly groups NSJP with both co-defendants and separate entities that are not even parties, which deprives NSJP of the most basic notice of the claims made against it. The SAC must accordingly be dismissed under Rule 12(b)(6).

Moreover, because Plaintiff's infirm jurisdictional theory depends on the assertion that NSJP is responsible for the acts of SJP Chicago and other independent third parties, the motion must be dismissed pursuant to Rule 12(b)(2).

I.  **BACKGROUND**

On September 9, 2024, Plaintiff filed a complaint seeking millions of dollars and class-action certification because he was stuck in traffic for "over an hour" on April 15, 2024, due to an anti-genocide protest. (Dkt. #1, ¶6). Plaintiff claims he had to reschedule his flight and "missed an important work dinner and networking function." (*Id*.). Plaintiff named seven entities, including NSJP, and four individuals, in 12 separate counts. Plaintiff filed an amended complaint on November 11, 2024. (Dkt. #33, ¶75). On January 22, 2025, just days before Defendants were to file dispositive motions, Plaintiff sought leave to file another amended complaint. (Dkt. #55). The motion was granted and on January 29, 2025, Plaintiff filed the SAC. (Dkt. #69).[1]

For the sake of efficiency, NSJP adopts the portions of co-Defendants' briefs that address Plaintiff's general allegations. *See*, *e.g.*, Jewish Voices for Peace (JVP), (Dkt. #75, pp. 2 -3); Tides (Dkt. #74, pp. 3-4); WESPAC Foundation Inc. ("WESPAC") (Dkt. #79, pp. 1-7). However, several

---

[1] Plaintiff's FAC was accompanied by a declaration from one of his attorneys, Mr. Hedley. (Dkt. #33-1). The SAC does not attach the declaration, even though it cites to it. Counsel presume that the citations refer to the previously filed declaration at Dkt. #33-1, if the Court is to consider it.

points must be made here. In the SAC, Plaintiff portrays the temporary delay in his travel as a manifest injustice, without even pausing to note that the protestors that "inconvenienced" him were objecting to an ongoing genocide that had at the time killed tens of thousands of Palestinian civilians.[2] Plaintiff also relies on incendiary, ahistorical, bizarre, and blatantly inaccurate allegations, the worst of which smear Defendants as part of foreign terrorist organizations.[3] These scandalous and ultimately irrelevant allegations reveal Plaintiff's over-reach and intent to intimidate, silence, and punish viewpoints he finds disagreeable through this lawfare lawsuit.[4]

As to NSJP, Plaintiff describes it as "an unincorporated association with no formal principal place of business or transparent leadership structure." (SAC, ¶13). As quoted from NSJP's website, NSJP "seeks to empower, unify, and support student organizers as they push forward demands for Palestinian liberation & self-determination on their campuses." (Dkt. #33-1, Ex. 25). Plaintiff's description of NSJP has otherwise been a moving target. In his first two complaints, Plaintiff verified that American Muslims for Palestine ("AMP") founded NSJP in 2010 and that NSJP was its "agent." (Dkt. #33, ¶14). Those assertions were soundly refuted in the public

---

[2] As of January 2025, the estimated death toll of Palestinians is between "55,298–78,525 people." Raffi Berg, *Gaza war death toll could be significantly higher, researchers say*, BBC News, Jan. 10, 2025 (available at: https://tinyurl.com/3wh4p3c2) (last visited Feb. 22, 2025). Tellingly, Plaintiff describes these mass civilian casualties to be only a "hardship for the Palestinian people living in Gaza." (SAC, ¶34).

[3] NSJP joins the Motion to Strike filed at Dkt. #77 and will not, in this pleading, respond to Plaintiff's absurd and defamatory accusations, such as the claim that NSJP acted as "Hamas's propaganda arm in the United States." Moreover, many of Plaintiff's allegations are completely inscrutable in addition to being preposterous. Counsel is at a total loss to understand what Plaintiff means by equating the April 15, 2024, protest with a "self-defeating effort to extort political change from faraway luminaries." (SAC, ¶1).

[4] "Lawfare" is a tactic involving "the use of the legal systems and institutions to damage or delegitimize an opponent, or to deter an individual's usage of their legal rights. The term may refer to the use of legal systems and principles against an enemy, such as by damaging or delegitimizing them, wasting their time and money (*e.g.*, strategic lawsuits against public participation), or winning a public relations victory." *See* https://en.wikipedia.org/wiki/Lawfare (last visited Feb. 22, 2025).

record, and NSJP was never AMP's "agent."[5] Plaintiff also previously alleged that NSJP was an "agent" of WESPAC (*id.*), which is also wrong as NSJP has never been WESPAC's agent. Now in the SAC, Plaintiff abandons the defunct "agency" theory and tries calling NSJP a "project" of WESPAC, without any explanation of what that means. (Dkt. #69, ¶14).

Equally confounding is Plaintiff's conflation of NSJP and other separate entities that use "Students for Justice in Palestine" in their name. Plaintiff relies extensively on allegations against different Chicago-area campus groups—described as "affiliates" of NSJP—and which he claims "are centrally organized under the umbrella of SJP Chicago." (SAC, ¶13). However, Plaintiff fails to allege a single fact showing an agency relationship between NSJP and SJP Chicago or any of the local SJP chapters mentioned in the SAC. For instance, Plaintiff fails to allege that NSJP formed these organizations, has oversight over them, or that they act on behalf of NSJP. The best Plaintiff can do is vaguely allege that NSJP distributes "tool kits that "inspire action by local chapters and allied groups it does not formally control." (SAC, ¶13). In short, Plaintiff simply invents an organizational structure out of whole cloth to advance his allegations against NSJP.

Plaintiff also lumps NSJP together with co-Defendant JVP when it makes a series of allegations that are later repeated as the core of his vicarious liability causes of action. (SAC, ¶60). Based only on "information and belief," and with no individualized factual allegations, Plaintiff contends that NSJP and JVP "(a) furthered the A15 Action plan with other Defendants and tortious actors involved in this litigation; (b) selected the A15 Action areas for blockade nationwide, including in Chicago; (c) coordinated funding to purchase necessary supplies for the blockade; (d)

---

[5] In a June 24, 2024, response to a Congressional inquiry, AMP, through counsel, emphasized that it did not "found" NSJP and that it and NSJP were and always have been separate entities as they "are neither identical nor interchangeable." A copy of this June 24, 2024, letter is available here: https://tinyurl.com/5h6cc59n (last visited Feb. 22, 2025).

recruited personnel to participate in the blockades; (e) harmonized the overall strategy to choke off key economic centers of gravity in America across the A15 Action operations in various U.S. cities; and (f) actively promoted the bail fund and the O'Hare blockade on social media both during and after the event to incentivize participation in the illegal activity." (SAC, ¶60, citing Hedley Declaration, ¶¶35-37, 75-78). The SAC alleges *nothing* about NSJP's direct involvement in the April 15, 2024, protest.

## II.     LEGAL STANDARDS

Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) compels dismissal where a plaintiff fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, a plaintiff who offers "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" fails to plead sufficient factual content to state a claim. *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

Conclusory legal conclusions masquerading as factual allegations need not be accepted as true. A complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" and cannot merely "tende[r] naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678; *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019). Allegations that do not "raise a right to relief above the speculative level" also fail. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018).

Complaints that rest on group pleadings fail to provide sufficient notice to each defendant of the allegations made against them. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Rule 12(b)(2) authorizes dismissal a complaint when personal jurisdiction over a defendant is absent. While personal jurisdictional facts need not be specifically alleged in a complaint, once a Rule 12(b)(2) motion is made, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quote omitted). The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). Courts must determine whether the plaintiff has adequately alleged that a defendant has "certain minimum contacts" with Illinois, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 66 S. Ct. 154, 158 (1945) (citation and quotation omitted). Federal courts follow state law when determining issues of jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). Illinois law tracks federal law on jurisdiction issues. *In re Hair Relaxer Marketing Sales Pracs. & Products Liability Litigation*, 702 F. Supp. 3d 692, 708 (N.D. Ill. 2023). Personal jurisdiction can only be established by demonstrating the existence of either general jurisdiction or specific jurisdiction over a non-resident defendant. *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction permits a court to hear all claims against the non-resident defendant "essentially at home in the forum State" whereas specific jurisdiction over a defendant is limited to claims connected to the non-resident defendant's activities in the forum. *Id.*

### III. ARGUMENT

#### A. NSJP Adopts the Arguments for Dismissal Raised by Other Defendants

Other Defendants have moved to dismiss the claims raised in the SAC. NSJP adopts those motions and the relief sought therein. Specifically, NSJP adopts the following:

- Plaintiff has brought a "SLAPP" suit that should be dismissed pursuant to the Illinois Citizen Participation Act (JVP, Dkt. #75, pp. 4-17);
- Plaintiff fails to state a claim for false imprisonment (Count 1) (JVP, Dkt. #75, pp. 18-20), (Tides, Dkt. #74, p. 12);
- Plaintiff fails to state a claim for common law tort-intentional breach of duty (Count 2) (JVP, Dkt. #75, pp. 20-26), (Tides, Dkt. #74, p. 11);
- Plaintiff fails to state claims based on in-concert liability, conspiracy, and aiding-and-abetting (Counts 3, 4, 5, 6, 7, 8) (JVP, Dkt. #75, pp. 26-28), (Tides, Dkt. #74, pp. 9-10);
- Plaintiff lacks Article III standing (Tides, Dkt. #74, pp. 6-8).

NSJP reserves the right to adopt any additional arguments raised in co-Defendants' motions to dismiss. Further, while the Court should not reach questions of class certification and Plaintiff's demands for relief, NSJP expressly reserves the right to challenge both particularly because Plaintiff asks this Court to issue an unlawful order by enjoining First Amendment activity.

### B. Plaintiff Fails to Allege Sufficient Facts to Show that NSJP Had Any Role in the April 15th Protest and Relies on Impermissible Group Pleading, Which Compels Dismissal Under Rule 12(b)(6).

Plaintiff fails to allege *any* conduct by NSJP that directly or indirectly caused his claimed injuries. Plaintiff does not and cannot plausibly allege that NSJP was even present at the April 15, 2024, protest, because it was not. He still alleges that "NSJP was instrumental in coordinating the national A15 Action plan and the plans specific to the Chicago area" (SAC, ¶59) but offers nothing other than that bald conclusion. Scouring the SAC for more, it appears that Plaintiff relies on the claim that Defendants "all posted original content and video from the event." (SAC, ¶74). But he cites an exhibit that does not involve any NSJP social media post.[6] Even if *post hoc* posting video of the protest could plausibly allege grounds for liability (and it is not), Plaintiff's own exhibits attached to its own layer's declaration show that its contention that NSJP posted videos is false.

---

[6] Plaintiff admits that NSJP and SJP Chicago have separate social media accounts, which reflects that they are separate entities. (Dkt. #33-1, ¶41, 43 (noting that NSJP's Instagram account is www.instagram.com/nationalsjp/ whereas SJP Chicago's account is www.instagram.com/sjpchicago/).

7

Plaintiff's other allegations against NSJP are often misleading at best, and invariably have nothing to do with the April 15, 2024, protest. For example, Plaintiff generally alleges that NSJP organized protests "beyond college campuses, expanding their operations into American cities." (SAC, ¶41). In support, Plaintiff cites an article by the International Action Center. But that article does not even mention NSJP. (*Id.*, fn. 15). Plaintiff further contends that NSJP "organized a national 'Day of Resistance'" on October 12, 2023, but fails to explain what "organizing" means or how that event is relevant to the April 15, 2024, protest. (SAC, ¶40). Plaintiff also alleges that NSJP provided publicity for a protest on January 6, 2024. But the social media post he cites is by SJP Chicago, a separate entity altogether, and, in any event, there is no connection with the April 15, 2024, other than Plaintiff's wishful speculation. (SAC, ¶47, fn. 22).

Likewise, Plaintiff relies on the October 2023 "toolkit" that was produced months before the April 15, 2024, protest. (SAC, ¶¶38-39). But he does not say how it is even remotely plausible that this "toolkit" had *any role* in the April 15, 2024, protest. It is pure speculation to contend otherwise. There are no allegations, for instance, that a protestor cited the toolkit as the reason they were on the expressway or that they were protesting *because of* any guidance, instruction, or direction of NSJP. That NSJP allegedly produced a document in October 2023, months before the April 2024, protest and without any connection to the event, is inadequate to state a claim against NSJP. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (*Twombly* and *Iqbal* require the plaintiff to provide some specific facts to support legal claims). The Court "need not accept as true statements of law or unsupported conclusory factual allegations" such as those made against NSJP. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

Plaintiff's allegations against NSJP additionally fail because they are group pleadings. Group pleading is improper because by lumping defendants together as Plaintiff did here, he has

8

failed to provide each defendant with adequate notice of the allegations against them. *See Knight*, 725 F.3d at 818 (emphasis in original) ("The Rules of Civil Procedure set up a system of notice pleading. Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").

As noted above, Plaintiff's allegations lump NSJP together with other Defendants, namely JVP. Plaintiff makes the generalized assertion "on information and belief" that multiple defendants "selected the A15 Action areas for blockade nationwide," "coordinated funding to purchase necessary supplies," "recruited personnel to participate," and "harmonized the overall strategy" of the A15 actions (SAC ¶60). Yet, those vague and amorphous group pleading allegations are not supported by a single fact alleged against NSJP. Plaintiff does not and cannot allege that NSJP contributed a dime to the April 15, 2024, protest. Plaintiff fails to allege who chose the location of the Chicago action; how funding was coordinated and by whom; what supplies were purchased and by whom; what funds were raised and from whom; which personnel were recruited by which defendant and how; nor even what is meant by the term "harmonized," much less how such "harmonization" makes Plaintiff's claims against NSJP plausible. In short, Plaintiff's group-pleading tactic deprives NSJP of fair notice to identify the actual claims made against it. *Knight*, 725 F.3d at 818. As a consequence, his allegations are nothing more than "labels and conclusion" and "formulaic recitation[s] of the elements of a cause of action" that fail to provide requisite notice. *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019).

### C. Plaintiff Improperly Conflates NSJP with Independent and Separate Entities, Specifically SJP Chicago

In addition to the impermissible group pleading, Plaintiff tries to compensate for his inability to plausibly allege NSJP's involvement in the April 15 protest by conflating NSJP with SJP Chicago and simply asserting that being "affiliates" is sufficient to make NSJP liable for the

acts of SJP Chicago.[7] At the very minimum, to state a claim against NSJP based on the conduct of SJP Chicago, Plaintiff must allege that SJP Chicago acted as NSJP's agent or at its direction. *See Bogenberger v. Pi Kappa Alpha Corp.*, 104 N.E.3d 1110, 1119 (Ill. 2018) (describing elements to establish agency relationship). Plaintiff does not do so, nor can he. Rather, Plaintiff's own allegations and exhibits show NSJP and SJP Chicago are separate and independent entities.[8]

First, Plaintiff clearly states that NSJP is "an unincorporated association with no formal principal place of business or transparent leadership structure," (SAC ¶13), and the declaration submitted by Plaintiff's attorney, Mr. Hedley, states: "National Students for Justice in Palestine ("NSJP" of "SJP") is a student organization that according to its website, nationalsjp.org/about, states that its purpose is "to empower, unify, and support student organizers as they push forward the demands for Palestinian Liberation & self- determination on their campuses." (Exhibit 25)." Dkt. #33-1, ¶38. Throughout the SAC and Mr. Hedley's declaration, however, Plaintiff interchanges "NSJP" with a "SJP", in an apparent attempt to obscure the very real distinction between the specific entity NSJP and wholly independent local organizations, which often operate under the generic label "SJP" followed by their school. *See e.g.*, Dkt. #33-1, ¶¶41-42, 44.

For example, Mr. Hedley declares that "SJP has multiple chapters at college campuses across the United States. It has one or more Chicago affiliates." *Id.* at ¶42. This representation is based on Exhibit 30, which does not state that these distinct local organizations are "chapters" of NSJP, but instead clearly describes NSJP's role as that of "supporting more than 350 Palestine solidarity organizations" across the country. Dkt. #33-1, Exhibit 30. Expressing solidarity with

---

[7] NSJP does not suggest that SJP Chicago played any role in the April 15 protest nor could ever be held liable based on Plaintiff's asserted theories.

[8] The Court may consider exhibits attached to a complaint when ruling on a Rule 12(b)(6) motion. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

10

independent organizations that hold similar beliefs is a far cry from directing and controlling their activities. Moreover, Plaintiff's own exhibits show that the first Students for Justice in Palestine chapter was formed *before* NSJP even existed: "[n]early two decades after the formation of the first Students for Justice in Palestine, the movement for Palestine has taken colleges and universities across North America by storm." Dkt. #33-1, Exhibit 25 (screenshot of NSJP website).

Plaintiff points to no statement from SJP Chicago or any other SJP chapter supporting its theory that NSJP controls and directs the independent local student chapters. Nor could he, as the chapters are autonomous and ultimately independent from NSJP. To further illustrate this point, counsel highlights a federal lawsuit filed by the ACLU on behalf of the SJP chapter at the University of Florida against various public officials in Florida. The SJP chapter in that case challenged an order deactivating it due to the October 2023 "toolkit" that Plaintiff cites in the SAC. *See Students for Justice in Palestine at the University of Florida v. Raymond Rodrigues, et al.*, Case No. 23-cv-275 (N.D. Fl.).[9] The Florida SJP chapter challenged its deactivation by asserting it was "affiliated with, but fully autonomous from, both NSJP and other SJP chapters around the country." (SJP Florida Complaint, ¶46). Ultimately, the Florida SJP chapter was not deactivated *because* it was fully autonomous from NSJP. *See* Order, Case No. 23-cv-275, Dkt. #50, pp. 14-15.[10] The district court specifically referenced that the notion that the Florida SJP chapter, "is under the 'headship' or control of the national SJP organization—is <u>false</u>." *Id.*, p. 14 (emphasis added). That conclusion is fully applicable here with respect to the autonomous SJP Chicago. Put simply, Plaintiff's attempt to rope-in NSJP by treating it as interchangeable with SJP Chicago rests on

---

[9] The complaint is also available at: https://tinyurl.com/6byp87un (last visited Feb. 23, 2025) ("SJP Florida Complaint").

[10] The District Court's order is available at: https://tinyurl.com/musep9pc (last visited Feb. 23, 2025).

11

speculations and assumptions that are nothing more than "naked assertions devoid of factual support" and are insufficient to state a claim against NSJP. *Iqbal*, 556 U.S. at 678.

### D. Plaintiff Fails to Plead Any Vicarious Liability Claim Against NSJP

As argued in JVP's Motion to Dismiss and incorporated fully herein, Plaintiff's causes of action for conspiracy, aiding-and-abetting, and in-concert liability all require Plaintiff to allege specific facts that plausibly show underlying tortious conduct. Plaintiff has failed to do so, which compels dismissal of all derivative-liability claims alleged in Counts 3, 4, 5, 6, 7, and 8.

Plaintiff's theories of derivative liability fail against NSJP for additional reasons. Plaintiff claims that defendants conspired to obstruct highways and conspired to commit false imprisonment. (Counts 5 and 6). To state a claim for "conspiracy," Plaintiff must allege an agreement between two or more parties. *See McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). Yet, Plaintiff's allegations that NSJP and other entity Defendants "agreed" to do anything are just bald conclusions bereft of any factual allegations. *See*, *e.g.*, SAC ¶119, 126. *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 242 (Ill. App. Ct. 2007). Citing an "agreement" is nothing more than offering a bare assertion that is just a "formulaic recitation of a cause of action's elements," as was the case with the "conspiracy" allegations in *Twombly* itself. *Twombly*, 550 U.S. at 548, 556-57.

Importantly, there are no allegations that NSJP worked together with any other entity to organize the April 15, 2024, protest. Simply alleging shared political or philosophical beliefs, expressed through social media posts, does not make various entities conspirators in a course of tortious activity. *McClure*, 720 N.E.2d at 259. The group pleading tactic also dooms the conspiracy count because that claim requires alleging that a "particular defendant joined the conspiracy and knew of its scope" instead of relying on collective pleading. *Knight*, 725 F.3d at 818.

12

Plaintiff also relies on aiding-and-abetting and in-concert liability theories for the highway obstruction and false imprisonment causes of action (Counts 3, 4, 7, and 8). To state a claim based on those theories, Plaintiff must adequately allege that NSJP *substantially* assisted the individual defendants in their tortious conduct. Here, Plaintiff fails to allege any assistance whatsoever by NSJP to the specific protest that allegedly caused his injuries, much less the level of "substantial" assistance that is required for derivative liability. *Kohn v. Laidlaw Transit, Inc.*, 808 N.E.2d 564, 575 (Ill. App. Ct. 2004). Plaintiff's claims that NSJP was somehow involved in providing funds, recruiting protestors, or selecting the protest site are based on misattributed social media posts and conclusory group pleading tactics that fail to establish vicarious liability for the same reasons that they fail to show direct involvement. Even if Plaintiff could point to social media posts by NSJP itself, it is implausible to contend that *post hoc* posts, the equivalent of a "retweet" or "tag," substantially assisted the commission of a tort, much less contributed to Plaintiff's damages. Even more implausible is any connection between the October 2023 "toolkit" and a specific protest six months later. Plaintiff's conclusory allegations require the Court to make giant leaps to jump from accepting the proposition of Defendants' generalized support for Pro-Palestinian views to finding that Defendants recruited others, provided funds, selected the site, and participated in the specific April 15, 2025, protest. The pure speculation required to make those leaps asks far too much of the Court, even at this pleading stage. *Yeftich*, 722 F.3d at 915 (courts "need not accept as true statements of law or unsupported conclusory factual allegations").

### E. Plaintiff Fails to Allege Jurisdiction over NSJP, Which Compels Dismissal under Rule 12(b)(2)

Plaintiff's claims against NSJP must be dismissed under Rule 12(b)(2), even if they could survive the Rule 12(b)(6) motions. As discussed above, Plaintiff fails to allege that NSJP was directly involved in the protest on April 15, 2024. The jurisdictional theory appears to rest on the

13

incorrect assumption that NSJP is synonymous with SJP Chicago. NSJP's total lack of involvement and Plaintiff's failure to allege any other sufficient connections to Illinois compel dismissal under Rule 12(b)(2) for lack of jurisdiction.

General jurisdiction is absent. Plaintiff does not allege that NSJP has actual contacts with Illinois, let alone contacts that are "substantial" or "continuous." Instead, Plaintiff alleges that NSJP is an "an unincorporated association with no formal principal place of business or transparent leadership structure." (SAC, ¶13). Plaintiff alleges that NSJP has "affiliates" in Chicago, implying that such "affiliation" is a basis for jurisdiction. But again, the use of the term "affiliates" is deceiving and does not show any meaningful organizational relationship such that the mere existence of an SJP chapter at DePaul or Northwestern means that NSJP can be sued in this District. Moreover, jurisdiction would not be proper *even if* there was such an organizational relationship.

Generally, this Court may not exercise general jurisdiction over corporate entities based merely upon the actions of an affiliate or subsidiary in the forum. Rather, the court must find that an exception to this general rule applies. The parent corporation must do more than just "control, direct, and supervise [the subsidiary] to some extent." *Wells Fargo Bank, N.A. v. RLJ Lodging Trust*, 2013 WL 5753805, *9 (N.D. Ill. Oct. 23, 2013) (citing *Alderson v. S. Co.*, 747 N.E.2d 926, 944 (2001)). A court considers factors including "the parent exercising significant control over the subsidiary, commonality of directors or employees between the parent and the subsidiary, the parent funding the subsidiary's activities, and the parent holding the subsidiary out as its agent." *Id.*, at *10. Plaintiffs have not made such allegations to even plausibly establish jurisdiction over NSJP based on the activities of Chicago SJP or other independent Illinois-based organizations. This is important because it is acts of the defendant "that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." *Purdue Research Foundation v. Sanofi-*

*Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003).

Specific jurisdiction is also lacking. The specific jurisdiction inquiry is "defendant-focused," with an emphasis "on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (citation omitted). The Illinois long-arm statute provides for specific jurisdiction in several enumerated instances, including "[t]he commission of a tortious act within this State" out of which a plaintiff's claim arises.. *See* 735 ILCS 5/2-209(a)(2). As discussed above, Plaintiff does not allege that NSJP committed any tort in Illinois. There is also no non-speculative link between NSJP's production of a "toolkit" in October 2023 and the very specific April 15, 2024, protest. Nor can social media posts made to the online public in general support specific jurisdiction. While Plaintiff's exhibits focus on social media posts made by SJP Chicago and *not* NSJP, the proposition that posting an Instagram story would subject one to nationwide jurisdiction has been soundly rejected. *See, e.g., Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1097 (9th Cir. 2023) ("We certainly do not suggest that a company like Impossible X could be subject to specific jurisdiction in all fifty states … merely because its social media self- promotion is beamed out through nationwide online marketing efforts."). Plaintiff cannot plausibly allege that NSJP engaged in any tortious conduct sufficient to bring it within reach of Illinois' long arm statute. In sum, there is no basis to find that there is jurisdiction over NSJP and the SAC must therefore dismissed under Rule 12(b)(2).

## IV.     CONCLUSION

For the foregoing reasons, Defendant NSJP respectfully requests that the Court grant its motion filed pursuant to the Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) and dismiss Plaintiff's First Amended Complaint in its entirety as against NSJP, with prejudice, and grant such additional relief to NSJP as the Court may deem just and proper.

15

        Respectfully submitted,

        /s/ Joshua G. Herman
        **JOSHUA G. HERMAN**

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
Tel: (312) 909-0434
jherman@joshhermanlaw.com

**COLLIN POIROT (NY 5673405)**
2603 Oak Lawn, Suite 300
Dallas TX  75219
(214) 392-2281
cpoirot.law@gmail.com