IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, *et al.*<br><br>*Defendants.* | Case No. 1:24-cv-8209<br>Hon. Judge Mary L. Rowland |

**<u>DISSENTERS AND INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND MOTION IN JOINDER TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT</u>**

Defendants Dissenters and Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker ("Individual Defendants"), by and through their undersigned counsel, respectfully submit this memorandum in support of their motion to dismiss Plaintiff Christopher Manhart's ("Plaintiff") Second Amended Complaint ("SAC" or "Complaint"), ECF 69, and all claims brought against the Defendants, with prejudice.[1] In support, Dissenters and the Individual Defendants state as follows:

**INTRODUCTION**

Plaintiff alleges that Defendants supported, promoted or participated in an April 15, 2024, protest aimed at calling attention to the United States government's role in funding what the United Nations describes as genocide against the Palestinian people.[2] Protest in the public forum is a time-

---

[1] The Individual Defendants and Dissenters adopt Defendant Jewish Voice for Peace's brief in support of its motion to dismiss in its entirety. ECF 75.

[2] *See, e.g.,* Human Rights Watch, *Israel's Crime of Extermination, Acts of Genocide in Gaza* (Dec. 19, 2024), available here; United Nations, *Gaza: UN Experts Call on International Community to Prevent Genocide Against the Palestinian People* (Nov. 16, 2023), available here; Amnesty Int'l, *'You Feel Like You Are Subhuman' Israel' Genocide Against Palestinians in Gaza* (Dec. 5, 2024), available here.

1

honored tradition—one that is deeply ingrained in and protected by the First Amendment. "From the Boston Tea Party to Mahatma Gandhi's Salt March, and from suffragists' illegally casting their ballots to whites-only lunch counter sit-ins, civil disobedience has often played a crucial role in bending the proverbial arc of the moral universe toward justice."[3] Yet, Plaintiff asks this Court to subvert that storied history and allow him to transmute his travel delay into a broad class action for damages (allegedly in the millions) based on conclusory statements and thin factual allegations. He asserts a private right of action where none exists, likens an hour spent in a traffic jam to inescapable imprisonment, and attests that there is a broad conspiracy at work to deprive him of commonly held rights—based on information and belief alone. His case cannot be permitted to move forward. The Court should dismiss this complaint in its entirety with prejudice.

## FACTUAL BACKGROUND

This case arises from a protest that occurred outside O'Hare International Airport on April 15, 2024. That morning, activists protesting Israel's ongoing genocide in Palestine created a blockade across Interstate 190 leading to the airport. ECF 69 at ¶ 65. Their actions created a traffic jam that lasted approximately two and a half hours before police arrested 40 of the activists from the roadway, including Chehade and Murphy. *Id.* at ¶¶ 66, 77. After the arrests, traffic flow resumed. *Id.* at ¶ 78.

Plaintiff's factual allegations against the Individual Defendants are sparse. Based on "information and belief," Plaintiff alleges that the Individual Defendants helped plan and organize the blockade. *Id.* at ¶ 62. In support, Plaintiff points to articles that label the Individual Defendants as organizers with no further substantiation *(id.* at ¶ 48; ECF 33-1[4] at ¶¶ 49, 57), and LinkedIn

---

[3] *Stanford Encyclopedia of Philosophy*, (March 2021) available here.

[4] ECF 33-1 is Plaintiff's Declaration with numerous exhibits, originally attached to the Complaint and First Amended Complaint. Although not attached to the SAC, the SAC continues to refer to the Declaration.

2

profiles and staff biographies (ECF 33-1 at ¶¶ 50, 57-58), or social media posts that either post-date the protest or make no mention of the Individual Defendants at all (ECF 33-1 at ¶¶ 36, 44-45, 69, 70, 76-77).

Plaintiff describes Defendant Dissenters as a tax-exempt organization whose mission is "leading a new generation of young people to reclaim our resources from the war industry, reinvest in life-giving services, and repair collaborative relationships with the earth and people around the world." ECF 69 at ¶ 15. Plaintiff does not identify any Dissenters agent(s) who participated in the events of April 15, 2024. Instead, Plaintiff posits against Dissenters conclusory, boilerplate allegations that only tenuously connect the organization to the April 15 action. Plaintiff asserts with no foundation or explanation that Dissenters is "aware" that other Organizational Defendants have, in the past, been involved with violent and unlawful protests. *Id.* at ¶ 43. Notably, Plaintiff makes no specific allegation regarding *any* Defendant engaging in *an*y act of violence. Plaintiff makes a cursory allegation that Dissenters were "involved" in planning the April 15 action, "helped organize" the action and "helped select O'Hare Airport as a target." *Id.* at ¶ 61. However, Plaintiff's support for the contention that Dissenters helped choose the airport as a protest location is an article cited in a declaration that makes no mention of Dissenters at all. *Id.*; ECF 33-1 at ¶ 49. Plaintiff also alleges that Dissenters made social media posts about the April 15 action. *Id.* at ¶¶ 72-74. Based on these social media posts, Plaintiff alleges a "suggestion" that Dissenters had agents at the April 15 action. *Id.* at ¶ 74.

Plaintiff states that he was one of the travelers en route to O'Hare that morning. *Id.* at ¶ 76. He alleges that he was "frozen on the highway" for a little over an hour. *Id.* Other travelers exited their vehicles and walked the remaining distance to their terminals to catch their flights. *Id.* at ¶ 75. Plaintiff, in contrast, waited for the blockade to clear. *Id.* at ¶ 76. Because he waited, he missed his flight. *Id.* at ¶ 79. He "los[t] … time having to rearrange travel plans," but he was able to re-book his

flight and arrived at his destination that same day. *Id.* at ¶¶ 79, 116. Almost half a year after the protest, Plaintiff, by and through his counsel, filed this suit on behalf of a broad "class" of persons[5] involved in this traffic jam. *Id.* at ¶ 80. He has sued four individuals and five organizations *Id.* at ¶¶ 12-21.[6]

Based on these meager facts, Plaintiff attempts to hold the Individual Defendants liable for False Imprisonment (Count I), Violations of the Illinois Vehicle Code (Count II) and related conspiracy counts. Plaintiff alleges six counts against Dissenters, all of which are derivative of Counts I and II: Highway Obstruction In-Concert (Count III), False Imprisonment In-Concert (Count IV), Conspiracy to Obstruct Highways (Count V), Conspiracy to Commit False Imprisonment (Count VI), Aiding and Abetting Obstructing a Highway (Count VII), and Aiding and Abetting False Imprisonment (Count VIII). Each count alleged against these Defendants should be dismissed with prejudice.

## ARGUMENT

### I. This Is an Improper SLAPP Suit

The Individual Defendants and Dissenters incorporate by reference Defendant Jewish Voices for Peace's ("JVP") argument that this is a frivolous and abusive SLAPP action designed to target and chill pro-Palestine advocacy. ECF 75 at p. 4-17. Likewise, the Individual Defendants and Dissenters incorporate by reference the arguments outlined in their own motion for sanctions,

---

[5] Plaintiff has filed as a putative class action but has not at this time filed a Motion for Class Certification. Defendants oppose the certification of any class and request a briefing schedule on this issue at the appropriate time should this case proceed.

[6] As explained in the accompanying Defendants' Motion to Strike the bulk of the complaint is devoted to Plaintiff's revisionist history of the occupation of and forcible displacement of Palestinians from their land, ECF 69 at ¶¶ 22-28, the events of October 7, 2023, *id.* at ¶¶ 29-40, his personal opinion of the Palestine solidarity movement, *id.* at ¶¶ 1-4, 7, 22, and his false conspiracy theory that Hamas and the Iranian Revolutionary Guard Corps masterminded the events at O'Hare. *See, e.g., id.* at ¶¶ 2, 26, 30, 33, 37, 52-53, 55.

which highlight how the plain language of Plaintiff's complaint and accompanying declaration and media statements demonstrate the impropriety of this suit.

## II. Plaintiff Fails to State Any Claim Upon Which Relief Can Be Granted

### A. Plaintiff's Factual Allegations Are Too Threadbare and Cursory to Proceed

The operative complaint is Plaintiff's third attempt to allege tort claims against these Defendants. Even after three tries, Plaintiff's allegations remain threadbare, conclusory and implausible. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice... [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).

As summarized above, Plaintiff alleges that the Individual Defendants were present at the April 15 protest and that they "rushed" the road to the airport. ECF 69 at ¶ 70. Plaintiff does not allege that these specific Individual Defendants took *any* overt action to harm the Plaintiff during the event. The complaint also concludes—with no explanation or detail—that the Individual Defendants "helped plan and organize" the protest. *Id.* at ¶ 62.

The only plausible reading of these allegations is that Plaintiff aims to hold the Individual Defendants liable for their mere alleged presence at and alleged support of the April 15 protest action. The complaint does not allege whether any of the Individual Defendants physically blocked any road.[7] It does not locate the Defendants in any particular position vis-à-vis the Plaintiff. It does not describe with any detail what the Defendants actually did when they attended the protest. Were

---

[7] As explained below, even if this allegation was included it would not save Plaintiff's complaint because Plaintiff has not alleged that there was any actual or apparent physical barrier or use or threat of force that confined him anywhere. On the contrary, Plaintiff alleged that other individuals chose to get out of their cars and walk to the airport. ECF. 69 at ¶ 75.

5

they present as legal observers? Were they present as members of the informal media? What actions did the Defendants undertake to plan and organize the protest? The complaint is completely silent on these crucial details, let alone how the Individual Defendants' acts harmed Plaintiff. The only clear fact Plaintiff alleges against the Individual Defendants is that they attended the action in question.[8] But Defendants' mere attendance does not give rise to any liability. The United States Supreme Court has made it clear that mere attendance and participation during a protest action is an insufficient predicate on which to impose liability. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) (holding that "civil liability may not be imposed merely because an individual belonged to a group, some members of which committed" unlawful acts).

Similarly, as to Dissenters, the complaint contains the conclusory allegation that Dissenters "helped organize" the protest and then posted information about the protest on the organization's social media accounts. ECF 69 at ¶¶ 61, 72-74. But the complaint does not specify what specific actions Dissenters took towards "organizing" a traffic blockade. Instead, it proffers a conclusory, inappropriate group pleading,[9] asserting that Dissenters and other Organizational Defendants collectively promoted the protest, raised funds, organized personnel, created a bail fund, selected a location, and "amplif[ied] the blockade's desired propaganda" through social media. *Id.* at ¶¶ 104,

---

[8] Plaintiff alleges that the Chicago Police Department arrested Defendants Chehade and Murphy for "blockading traffic," but the Complaint fails to allege what Chehade and Murphy did, the specific charges, where they were positioned during the protest, and how their individual actions adversely affected the Plaintiff. ECF 69 at ¶ 77. Moreover, the fact that Defendants Tucker and Falaneh were not among those arrested undermines Plaintiff's allegation that the Individual Defendants were present on the roadway. Plaintiff's targeting of these four individuals reveals the harassing and oppressive purpose of bringing this lawsuit, as argued in these Defendants' motion to strike and motion for sanctions, as well as JVP's motion to dismiss.

[9] Plaintiff alleges against the Defendants (via conspiracy, et al.) an intentional tort of inter alia, false imprisonment. "Intentional torts [] generally require that the actor intend the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 58 (1998). Group pleading, in which a plaintiff refers to a collective group of defendants as opposed to specifically identifying individual action, can run afoul of these pleading requirements necessary for an intentional tort. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed.").

112, 134, 141. Nor does the complaint establish the relationship between Dissenters and the other Defendants, simply offering the legal conclusion that they "knowingly and voluntarily agreed" to block traffic on I-90. *Id.* at ¶¶ 119, 126. The SAC contains no specifics as to the agreement or the acts in furtherance of the agreement allegedly committed by each Defendant, both of which are required for the conspiracy claim. *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 988 (N.D. Ill. 2009). The Complaint does not allege that any of Dissenters' members were present at the blockade. Plaintiff baldly asserts, without factual support, that because Dissenters posted "original content and video from the event," the organization's agents were present. *Id.* at ¶ 74. Social media content does not necessitate one's presence, and presence at a protest and media posts about a protest (quintessential First Amendment activity) do not create liability. *See* JVP's Motion to Dismiss, ECF 75 at p. 8.

These threadbare allegations against Dissenters and the Individual Defendants lack the detail required even at the pleading stage. In *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, 15 F.4th 831 (7th Cir. 2021), the Seventh Circuit explained that complaints repeatedly riddled with conclusory phrases are doomed. In that case, the plaintiff alleged a conspiracy claim. The Seventh Circuit affirmed dismissal, writing that the complaint was replete with "conclusory allegations—that the Board 'agreed,' 'conspired,' 'colluded,' or 'induced' agreement, conspiracy, or collusion. Repetition cannot substitute for factual allegations. Once we filter . . . legal conclusions, not nearly enough is left on the factual front for the amended complaint to survive dismissal." *Id.* at 834.

The same is true here. Plaintiff lumps Dissenters with all the other Organizational Defendants and claims they conspired to support the protest. There is no specificity as to which Defendant did what in support of the protest or how this support constitutes a conspiracy to commit the specious torts Plaintiff's complaint relies on. On this basis alone, Plaintiff's (third)

7

Complaint must be dismissed with prejudice. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must provide specific allegations that give rise to a plausible right to relief—not one that is merely "conceivable" or speculative.); *Michigan v. U.S. Army Corps of Eng'rs*, 758 F.3d 892 (7th Cir. 2014); *Vodak v. City of Chicago*, 624 F. Supp. 2d 933, 969-70 (N.D. Ill. 2009), *rev'd*, 639 F.3d 738 (7th Cir. 2011) (dismissing counter-claim against protesters because allegations contained no "evidence of specific behavior leading to specific damage. Strict liability is generally disfavored, especially when First Amendment concerns are implicated."); *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995) ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."); *Cushing v. City of Chicago*, 3 F.3d 1156, 1167 (7th Cir. 1993) (same).

### B. Plaintiff's False Imprisonment Claim Fails

Plaintiff claims that his hour spent in a traffic jam is akin to imprisonment. This is a gross exaggeration that endeavors to contort his travel delay into a broad class action. The Individual Defendants and Dissenters incorporate Defendant JVP's argument on this count in its entirety. ECF 75 at p. 18-20.

Here, Plaintiff spent just over an hour on the highway outside of O'Hare. ECF 69 at ¶¶ 76-78. He believed that he was "frozen" on the highway and "too far away from the blockade to simply get out of his car and walk to the airport," so he chose to stay and wait out the event. *Id.* at ¶ 76. He asserts that he was "trapped," yet his subjective beliefs do not make it so. *Id.* As his allegation provides, "[s]everal passengers exited stopped ride-share vehicles or taxis and walked the long distance to the terminals." *Id.* at ¶ 75. The social media posts and articles cited in support of his complaint repeat this reality.[10] Plaintiff could have done just the same, but he voluntarily chose to

---

[10] See ECF 33-1, Ex. 20 at ¶ 82 ("I was there! We were trying to get to the airport and very happily made the walk. Great way to talk to the kids more about Gaza."), *id.* at ¶ 85 ("Travelers are walking to their gates as

8

remain in-place and wait. It is not enough that the Plaintiff felt "compelled" to remain in a location. The law is clear that when an individual had the same options and freedom of movement that were before Plaintiff, there is no claim for false imprisonment. A traffic jam cannot be retrofitted into a false imprisonment claim. This claim against the Individual Defendants must be dismissed.

### C. Plaintiff's "Foreseeable Injury" Claim Fails

Plaintiff claims that the Individual Defendants are liable for a common-law tort of "foreseeable injury caused by intentional breach of duty" because the Illinois Vehicle Code created a legal duty to not obstruct a highway. There is no statutory or implied right of action for an individual to enforce a provision of the Illinois Vehicle Code, and there is no independent common law tort under Illinois law for a "foreseeable injury caused by intentional breach of duty." This count should be dismissed against the Individual Defendants. The Individual Defendants and Dissenters incorporate Defendant JVP's argument on this count in its entirety. ECF 75 at p. 20-26.

### D. Plaintiff's Conspiracy Claim Fails

Plaintiff asserts that the Individual Defendants were engaged in a broad conspiracy alongside the Organizational Defendants, including Dissenters, to obstruct a highway and falsely imprison him outside O'Hare. Yet, Plaintiff provides no evidence to plausibly allege that the Individual Defendants or Dissenters (or the other Organizational Defendants) engaged in concerted action for an unlawful purpose. The Individual Defendants and Dissenters incorporate Defendant JVP's argument on this count in its entirety. ECF 75 at p. 26-28.

As a preliminary matter, any conspiracy claim relies on an underlying tort violation. *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3253604, at *6 (N.D. Ill. 2006) ("A party cannot be liable

---

drivers are prevented from entering the drop-off site for all domestic terminates …"); *id.*, Ex. 35 at ¶ 127 ("A passenger walks on the highway as he carries his luggage …"), at ¶ 129 (providing account of one traveler who abandoned "her and her husband's car" and walked "more than a mile" to reach her gate on-time); *id.*, Ex. 43 at ¶ 155 (providing accounts of two travelers who walked to their terminals).

9

for conspiracy absent a tortious or unlawful act, committed in pursuit of an agreement, that would create liability."); *Chadha v. N. Park Elementary Sch. Ass'n*, 123 N.E.3d 519, 538 (Ill. App. Ct. 2018). Because the underlying tort claims fail, any attendant conspiracy claims should be dismissed.

Even if the tort claims survived, the conspiracy claims would still fail. Civil conspiracy requires a showing of "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 571 (Ill. 1998)). Crucially, the plaintiff must allege "an agreement and a tortious act committed in furtherance of that agreement." *Id.* With an intentional tort, there must be some proof that the defendant "knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "Accidental, inadvertent, or negligent participation in a common scheme does not amount to conspiracy." *McClure*, 720 N.E.2d at 258. "Mere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *Id.* "If a civil conspiracy is shown by circumstantial evidence, however, that evidence must be clear and convincing." *Id.*

Here, there are no allegations that could be supported by clear and convincing evidence that the Individual Defendants knowingly and voluntarily participated in a common scheme alongside the Organizational Defendants. Plaintiff argues that the Individual Defendants were a part of a grand conspiracy based on "information and belief," and little more. ECF 69 at ¶ 62. None of the allegations refer to even circumstantial evidence that the Individual Defendants and Dissenters worked alongside the other Organizational Defendants to coordinate this event. *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 242 (Ill. App. Ct. 2007) (stating that a plaintiff seeking to survive a motion to dismiss must do more than conclude "that there was a conspiracy" and "must allege

10

specific facts from which the existence of a conspiracy may properly be inferred"). Instead, all that Plaintiff provides is his belief that Hamas and the Iranian Revolutionary Guard Corps masterminded this blockade through a broad network of covert online accounts. ECF 69 at ¶¶ 55-64. That does not link the Individual Defendants or Dissenters to any conspiracy, and it certainly does not provide a plausible claim that they accepted and furthered any conspiracy. As a result, these claims must be dismissed.

### E. Plaintiff's Aiding and Abetting and In-Concert Claims Fail

Plaintiff claims that there was some agreement between the Individual Defendants and the Organizational Defendants, including Dissenters, to engage in concerted action for an unlawful purpose. Again, Plaintiff provides no evidence to plausibly allege the existence of any such agreement. The Individual Defendants and Dissenters incorporate Defendant JVP's argument on this count in its entirety. ECF 75 at p. 26-28. As a preliminary matter, any aiding and abetting and in-concert claims rely on an underlying tort violation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006); *Chadha*, 123 N.E.3d at 538. Because the underlying tort claims fail, any attendant aiding and abetting and in-concert claims should be dismissed.

Even if the tort claims survived, the aiding and abetting claim still fails. To state a claim for aiding and abetting, the plaintiff must allege:

> (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be generally aware of his role as part of the overall or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

*Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987). The in-concert claim requires very similar elements. Thus, the same fatal flaws that undermine Plaintiff's conspiracy claims plague his aiding and abetting and in-concert claims. The allegations within the complaint do not plausibly allege that any of the Individual Defendants or Dissenters (by any agent) were aware of their role in a tortious

11

scheme or that they knowingly and substantially assisted in executing that scheme. Conclusory allegations are insufficient to maintain an aiding and abetting claim. *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 785 (N.D. Ill. 2013), *aff'd sub nom. Loggerhead Tools, LLC v. Sears Holdings Corp.*, 784 F. App'x 785 (Fed. Cir. 2019) (dismissing aiding and abetting claim where plaintiff provided only conclusory statements in support of defendant's alleged involvement in underlying tort claim); *Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016) (dismissing aiding and abetting claim with prejudice for failing to allege that defendant had actual knowledge of the scheme). Therefore, the aiding and abetting and in-concert claims should be dismissed.

### F. Dissenters Cannot be Held Liable for its Social Media Posts

The bulk of Plaintiff's allegations against Dissenters focus on social media posts allegedly made related to the events of April 15, 2024, including "original content and video from the event." ECF 69 at ¶¶ 73-74. The Plaintiff attempts to castigate Dissenters and other Defendants for what the organizations *did not* say, alleging that "[n]one of the Defendants disclaimed the tactics used to injure innocent citizens." *Id.* at ¶ 73.[11]

Dissenters cannot be held liable for merely posting messages that were perceived to be supportive of the April 15 action—this is true even if at certain moments some people involved in the action violated traffic laws. Dissenters' social media posts expressing solidarity with the April 15 action or informing others about the events are protected by the First Amendment and cannot give rise to tort liability. *See Packingham v. North Carolina*, 582 U.S. 98, 107 (explaining that social media is often the "principal source[ ] for ... speaking and listening in the modern public square"); *Reno v. Am. C.L. Union*, 521 U.S. 844, 870 (1997) (There is no basis for "qualifying the level of First Amendment

---

[11] "Innocent civilians" is just one of many instances of Plaintiff's use of loaded language, language that Plaintiff never substantiates. It defies credulity that Plaintiff determined that all people affected by protest related traffic were U.S. citizens.

12

scrutiny that should be applied to" speech on the internet). Dissenters' speech here is "constitutionally protected and beyond the reach of a damages award." *Claiborne Hardware,* 458 U.S. 886 at 926.

In *Claiborne Hardware*, the NAACP launched a boycott of white merchants in a community that refused to implement demands for racial equity and integration. The merchants alleged that boycott participants used violence and threats to induce participation and sued the NAACP alleging *inter alia*, violations of state tort law. The Court dismissed the merchants' claims holding that because there was no evidence that the NAACP ratified unlawful conduct, it could not be held liable for boycott-related harms. The Court warned that the merchants' attempt to saddle the NAACP with liability because some boycott participants may have violated the law would violate the "fragile" First Amendment right of political association by "adding the additional threat of destruction by lawsuit." *Id.* at 932. There, the Court said the quiet part out loud—the *Claiborne Hardware* plaintiffs weren't just trying to recoup income lost to a boycott; they were also trying to destroy the NAACP through litigation. Fifty-six years later, the *Manhart* Plaintiff lifted this lawsuit from the segregationists' failed playbook and similarly attempts to destroy Dissenters. Like the Supreme Court protected the First Amendment rights of the NAACP against those who would destroy it, so too must this Court protect Dissenters. The Plaintiff's claims against Dissenters must therefore be dismissed with prejudice. *See Snyder v. Phelps*, 562 U.S. 443 (2011) (holding that the First Amendment shielded picketers speaking on a matter of public concern on public property from liability for claims of intentional infliction of emotional distress, intrusion upon seclusion, and civil conspiracy); *Thornhill v. Alabama*, 310 U.S. 88, 101–102 (1940) ("The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without . . . fear of subsequent punishment...."); *see also Nat'l Org. For Women, Inc. v. Scheidler*, 267 F.3d 687, 703 (7th Cir. 2001), *rev'd on other grounds*, 537 U.S. 393 (2003) ("In order for the

13

defendants to be held responsible for acts committed by other members of PLAN during PLAN-organized events, . . .plaintiffs [must show] that PLAN itself, and not merely isolated members, intended that the illegal acts occur, that the defendants were aware of PLAN's illegal aims, and that the defendants held a specific intent to further those aims through their association with PLAN.").

Other than Dissenters' social media posts "advertising" the protest beforehand and "amplifying" the message afterwards (ECF 69 at ¶¶ 72-74, 104), the only other acts alleged against Dissenters are part of a list of things alleged collectively against all the Organizational Defendants. *Id.* at ¶ 104. Yet these other acts (raising funds, creating a bail fund) are attributed to other Defendants, not Dissenters, elsewhere in the Complaint. *Id.* at ¶¶ 60, 106, 120. Plaintiff's only allegations specifying Dissenters' involvement are Dissenters' social media posts, speech that is clearly protected and not a basis for liability. *See* ECF 75 at p. 8-10, 27-29.

### III. Plaintiff's Claims Should Be Dismissed with Prejudice

Plaintiff has been allowed sufficient opportunity to amend his pleadings to provide factual allegations that plausibly allege his proffered claims. He has failed to correct the errors in his pleadings, and his complaint should be dismissed with prejudice. The Individual Defendants and Dissenters incorporate Defendant JVP's argument on this count in its entirety. ECF 75 at p. 30.

Although dismissal with leave to re-plead is ordinarily the standard approach, the Seventh Circuit has made clear "that dismissal with prejudice is proper if 'the plaintiff has demonstrated [their] inability to file a lucid complaint.'" *Crenshaw v. Antokol*, 206 F. App'x 560, 564 (7th Cir. 2006) (quoting *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006)). Filing an amended complaint that "does little if anything to rectify the Rule 8 deficiencies" is grounds for dismissal with prejudice. *Id.*; *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); *see also Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (stating that where "the plaintiff has repeatedly failed to remedy the same deficiency, the district court [does] not abuse

14

its discretion by dismissing the claim with prejudice."); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir.1999) (same). A litigant cannot repeatedly file amendments "without advancing new substantive facts sufficient to withstand a motion to dismiss." *Naperville Smart Meter Awareness v. City of Naperville*, 114 F. Supp. 3d 606, 614 (N.D. Ill. 2015), *aff'd*, 900 F.3d 521 (7th Cir. 2018). "Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment …." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015).

Plaintiff has filed multiple amendments at this juncture. With each iteration, he provided no new details to cure the pleading deficiencies within his claims. Fundamentally, Plaintiff relies on the same essential torts so that none of the proposed amendments fix Plaintiff's complaint containing legally meritless claims. The amendments also fail to provide any new factual allegations to support a private right of action to enforce the Illinois Vehicle Code, to articulate how Plaintiff was truly imprisoned within his vehicle, or to support the plausible existence of a broad conspiracy or agreement. Another bite of the apple will not correct for these repeated errors. As a result, Plaintiff's claims against Dissenters and the Individual Defendants should be dismissed with prejudice.

## CONCLUSION

Plaintiff has had repeated opportunities to amend his complaint. Each time he has failed to provide the factual allegations necessary to plausibly allege any valid claim. For the foregoing reasons, Defendants Dissenters, Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker respectfully request that this Court enter an order dismissing Plaintiff Christopher Manhart's claims against them, with prejudice, and award attorneys' fees and costs pursuant to the Illinois Citizen Participation Act.

**Dated**: February 25, 2025                Respectfully,

Sheila A. Bedi  
Community Justice/Civil Rights Clinic  
375 E. Chicago Ave.  
Chicago, IL 60611  
(312) 503-2492  
sheila.bedi@law.northwestern.edu

Megan Porter  
PO Box 408246  
Chicago, IL 60607  
(872) 246-3379  
port.cjm@gmail.com  
*Attorneys for Defendants Jinan Chehade, Superior Murphy, Rifqah Faleneh, Simone Tucker, and Dissenters*

Amanda S. Yarusso  
1180 N. Milwaukee Ave.  
Chicago, IL 60642  
(773) 510-6198  
amanda.yarusso@gmail.com  
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Faleneh, and Simone Tucker*

16