UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, a project of WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; JEWISH VOICE FOR PEACE; TIDES CENTER, d/b/a COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; and SIMONE TUCKER,<br><br>*Defendants*. | Case No. 24:cv-8209<br><br>Honorable Mary M. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**MANHART'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO STRIKE ALLEGATIONS
FROM THE SECOND AMENDED COMPLAINT (ECF 77, 81, 83)**

**INTRODUCTION**

Throughout this case, Defendants have operated under the upside-down philosophy that intentional torts trapping innocents are protected speech; but speech criticizing Hamas, the Defendants, their cause, and their tactics is "dangerous." ECF 77 at 9. The Rule 12(f) motion to strike (ECF 77) is no different, and does not even begin to meet the standard for such an admittedly "disfavor[ed]" motion. *Reimer v. Chase Bank, N.A.*, 275 F.R.D. 492, 494 (N.D. Ill. 2011). Defendants' conduct has been far more scandalous than the Second Amended Complaint ("SAC," ECF 69) alleged. Defendants do not even attempt to show (rather than assert *ipse dixit*) prejudice, but any prejudice is a result of Defendants' own actions, rather than discussion of their context in the SAC. The Court should deny the motion.

**ARGUMENT**

I. **Rule 12(f) Standard.**

Motions to strike are generally disfavored. *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1405-06 (7th Cir. 1991). "The party moving to strike has the burden of showing that the challenged allegations are so unrelated to the plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *E&J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 979, 982 (N.D. Ill. 2003) (citations omitted). Courts "must view the pleading under attack in a light most favorable to the pleader." *Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1035 n.1 (N.D. Ill. 1980). If there is *any* "possible relation" to the controversy, the allegations should not be stricken. *Id.* at 1031. Similarly, a motion should not be granted unless the language is "clearly prejudicial." *Id.*

To begin with, Defendants forfeit making a showing of clear prejudice at this stage of the proceedings. They assert it, but provide no evidence or argument of unfair prejudice. That by itself should end the matter.

But regardless, the complained of allegations have a relation to the controversy at the core of Manhart's SAC (ECF 69)—Defendants' unlawful conduct of blockading O'Hare airport. Any unfair

prejudice that Defendants ultimately might show can be dealt with after discovery with *in limine* motions. Consequently, the Court should deny Defendants' motion.

II. **Manhart's allegations add context to the Defendants' illegal blockade of traffic at O'Hare, and preemptively rebut Defendants' attempt to sidetrack the dispute with red herrings.**

The complaint alleges, including with evidence from the Biden administration Office of the Director of National Intelligence, that the April 15 direct action at issue in this case was directed by the Iranian Republican Guard Corps ("IRGC") on behalf of Hamas in March 2024. SAC ¶¶ 52-53. Defendants find objectionable (ECF 77 at 56, 8) this and other allegations relating to Hamas, Iran, the IRGC, and the geopolitical history of the conflict between Israel and Palestinians and Hamas. But Manhart is not asking the court to litigate the Israel/Hamas conflict. Rather, the allegations related to Hamas, Iran, and IRGC provide necessary context to Defendants' conduct that underpins the SAC's claims. All of the defendants have demanded that Israel not be allowed to try to remove Hamas from power and have engaged in direct actions and intentional torts to punish corporations and nations that have supported that military action. It is not unreasonable to characterize as pro-Hamas an action supported by Hamas that serves Hamas's interests carried out by people and organizations who have spoken out in favor of or in defense of Hamas.

    A. **Identifying Defendants' actions in support of Hamas as actions in support of Hamas is not grounds to strike.**

Defendants move to strike the allegations related to Hamas, Iran, and geopolitical issues because they claim (ECF 77 at 2, 6) Manhart is attempting to silence them and their pro-Hamas, anti-Zionist message. This is a *non sequitur*. Defendants can use speech to promote their message; words in a complaint cannot stop them—and has not stopped them—from doing so. For example, after the complaint was filed in September, defendant Falaneh proudly celebrated the anniversary of October 7 in a post on X calling for "many more" massacres, just as she celebrated the massacre and mocked an 85-year-old hostage on the day of the attack.[1] But the First Amendment does not protect Defendants'

---

[1] *See* https://archive.ph/ragcM; https://archive.ph/1dJWL; https://archive.ph/82yuR (each last accessed Mar. 26, 2025). The SAC does not mention these particular pieces of evidence of explicit

tortious *conduct* on April 15, 2024. Moreover, nowhere does the SAC seek to restrain Defendants from engaging in lawful First Amendment activity. Falaneh and Chehade and any other defendant are free to continue celebrating the murder and kidnapping of Jews, Arabs, and foreigners li[2]

Defendants further assert (ECF 77 at 7-8) that the allegations sought to be stricken create "a significant risk of harm" for Defendants because of potential "doxxing." As an initial matter, Defendants have no legal entitlement to anonymity—indeed, it would violate the Federal Rules if

---

support of Hamas, but Manhart would be happy to amend the complaint to add this and other evidence of Defendants' support for Hamas, to the extent Defendants are asserting Manhart has not included enough information in his complaint tying their actions to support of Hamas. NSJP's "toolkit," a slick publication released Sunday, October 8, 2023, to coordinate their chapters' response to October 7, has a Hamas terrorist on a hang-glider on its cover and celebrates the massacre. Chehade proudly posts on Instagram her October 11 rant to the Chicago City Council, asserting that Hamas had the "legal right" to massacre civilians and only the "Zionist-controlled media machine" claimed otherwise. A new federal complaint, signed by the eighth-largest law firm in the United States, credibly alleges NSJP and JVP act in coordination with Hamas in violation of the Antiterrorism Act. *Haggai v. Kiswani*, No. 25-cv-2400 (S.D.N.Y. Mar. 24, 2025).

[2] It's ironic that Defendants imply they have nothing to do with Hamas, and then complain (ECF 77 at 7) that Manhart's counsel's labeling of Hamas (not "Palestinians," but Hamas) as "barbarians" demonstrates the need for a motion to strike. It is the Defendants' motion that improperly conflates Hamas with all Palestinians by misquoting Manhart's counsel. Manhart's counsel views Defendants' support for keeping in power the tyrannical Hamas—which summarily executes political opponents, steals and resells humanitarian aid to line its officials' pockets at the expense of its people, and forces its citizens to act as involuntary human shields while hiding in tunnels built with foreign-aid money intended for infrastructure—as distinctly anti-Palestinian. Frank Decl. ¶ 22 (filed March 28, 2025).

Defendants' footnote 4 further misrepresents Manhart's counsel's statement in a second dimension. The Bluhm Legal Clinic tells prospective clients seeking representation that it represents only juvenile criminal defendants; convicted criminals claiming innocence; investors in disputes with broker-dealers; and small businesses and non-profits seeking "start-up services." So how did Northwestern Law's donors' and students' money get devoted to defense of a mass tort that victimized thousands of innocents in the name of keeping a terrorist organization in power? Attorneys are certainly entitled to represent whomever they want; the most despicable defendant is entitled to a legal defense; and Manhart's counsel has never suggested otherwise and has said as much in interviews. But it is, at a minimum, questionable whether an attorney is entitled to use other people's money to engage in a representation at least arguably outside the scope of what their nonprofit states their mission is when soliciting the funds. Fank Decl. ¶ 24.

Neither this nor Manhart's counsel's opinion of Hamas are things Manhart wishes to litigate in this Court—but Defendants try to muddy the water with these irrelevant issues to falsely smear his counsel.

Manhart did not identify adult defendants being sued. Fed. R. Civ. Proc. 10(a). "Someone charged with a felony may be shunned or encounter trouble finding a job, but a court would not call that 'retaliation' that justifies anonymity." *Doe v. Trustees of Indiana U.*, 101 F.4th 485, 491 (7th Cir. 2024); *id.* at 492 ("embarrassment does not justify anonymity"). But even on its own terms, the assertion is patently false. Three of the four individual defendants, Chehade, Falaneh, and Tucker, all publicly identified themselves as participants or organizers of the O'Hare blockade. SAC ¶¶ 18, 20, 21, 62, 68, 70, 77; ECF 33-1 ¶¶ 49, 51, 57 & Exhibits 35, 37, 43. Two were publicly arrested and charged with crimes relating to the April 15 blockade. SAC ¶¶ 62, 77. Moreover, Chehade and Falaneh have been very public in their advocacy both before and after the O'Hare blockade. SAC ¶¶ 18, 48; ECF 33-1 ¶¶ 50-51 & Exhibits 36 and 38. And the fourth individual defendant, Murphy, is prominently featured narrating a video of the blockade in real-time on the morning of April 15, 2024, which was then broadcast far and wide on several of the Defendants' and the A15action social media accounts. SAC ¶ 19; ECF 331 ¶ 69 & Exhibit 20. All four individual defendants have publicly signed a press release about this lawsuit, and at least two have published social media posts about it. Chehade has engaged in meritless federal litigation in her own name against a former employer over her advocacy without seeking anonymity, even appearing on local and national television to promote it. Even if so-called "doxxing" of an intentional tortfeasor was impermissible (and the motion cites no authority that it is), the individual defendants have "doxed" themselves. Defendants' remedy against the consequence of identification is to seek an evidentiary hearing for pseudonymity here under the standards outlined in *Doe*, rather than to strike allegations relating to the Manhart's complaint—though of course they have already doomed such a motion when they issued a press release in their own names.

Similarly, all of the organizational defendants have repeatedly and proudly proclaimed their solidarity with the anti-Israel cause before and especially after the October 7, 2023, attack on Israel from Gaza. SAC ¶¶ 13-16, 43-48. Such public advocacy has continued well after the O'Hare blockade and even after Manhart filed his initial complaint. Defendant Dissenters issued a press release asserting the free-speech right to block roads.

Accordingly, any alleged fear of "doxxing" or potential harm is self-inflicted. Manhart's complaint has been on the books for half a year, and none of the Defendants identify a single piece of evidence demonstrating "significant risk of harm" independently caused by Manhart's allegations, rather than by their own conduct.[3]

Defendants' behavior has been far more scandalous than the SAC alleges. They have nothing to complain about when the SAC includes context about the origins of their intentional tort against thousands of innocent Americans.

### B. The motion should be denied because Manhart's allegations regarding Hamas, Iran, and geopolitical issues add context to the claims in the SAC.

Providing context for a pleading's allegations has been grounds to deny motions to strike in this district in other cases. *Brown v. ABM Indus.*, 2015 U.S. Dist. LEXIS 160488, at * 17, 2015 WL 7731946 (N.D. Ill. Dec. 1, 2015); *Geary v. Maryville Acad.*, 2012 U.S. Dist. LEXIS 82850 at *7, 2012 WL 2129228 (N.D. Ill. June 12, 2012). Several of the allegations the motion targets relate to co-Defendant National Students for Justice in Palestine ("NSJP" or "SJP"). Those allegations include relevant facts regarding NSJP's relationship with its fiscal sponsor, co-defendant WESPAC

---

[3] The closest thing the motion alleges (ECF 77 at 7 n.3) is that the *Washington Free Beacon*, a political journalism publication dating from 2012, "published a photo of defense counsel's minor child." The article reprinted an April 28, 2024, social media post written by defense counsel publicly posting photos of her family and supporting an illegal encampment harassing and intimidating Jews at Northwestern. *Cf.* ADL (Midwest) *et al.*, *ADL, StandWithUs and Brandeis Center Call for the Resignation of Northwestern University President Michael Schill* (Apr. 30, 2024) (criticizing university administration for agreeing to permit encampment to harass and intimidate Jews without consequence). The complained-of news story is part of a series of original reporting the *Free Beacon* has done about anti-Semitic bias on college campuses. *E.g.*, Danielle Douglas-Gabriel, *Columbia deans involved in texts evoking 'antisemitic tropes' resign*, Wash. Post (Aug. 8, 2024) (crediting *Free Beacon* for exposé). (The social media post the *Free Beacon* published seems to have been deleted at some point after the Department of Education announced February 3 that it was investigating Northwestern University for its lack of response to "widespread antisemitic harassment.")

But the *Free Beacon*'s story never discusses any of the SAC allegations Defendants wish to strike; it was the Defendants' own public words and actions that exposed them to criticism.

The motion asserts a risk of death threats, but identifies none aimed at defendants relating to this case. The only death threats Manhart is aware of is defendant Falaneh's March 18, 2025 social-media post wishing for death and suffering to "every zionist perpetrator"; this is of no small concern, as she has attributed the lawsuit here in a February 26 post as the responsibility of "Zionists."

Foundation. SAC ¶¶ 13, 43. More significantly, those allegations concern NSJP's role as a primary outlet for Hamas and Iranian propaganda in the United States, and that NSJP acts as Hamas's cat's paw to facilitate "direct action" and other disruptive activity in the United States. SAC ¶¶ 37-40. The allegations support Manhart's claims that the O'Hare blockade was not a spontaneous, local action, but rather was part of a well-planned, larger conspiracy to punish the West on behalf of Iran and Hamas, and disrupt the economy, with special attention paid to companies like Boeing Corporation because it supplies weapons to Israel. SAC ¶¶ 52-61. Inclusion of these pertinent details will neither delay the litigation, nor require the Court to resolve thorny geopolitical questions. They simply add important background and context to Manhart's underlying claims regarding Defendants' conduct on April 15, 2024.

This background and context will be especially important at trial if Defendants carry through on their threat to Manhart's counsel to attempt to introduce "expert" evidence on the history of civil disobedience in political movements—something we've already seen a hint of as some Defendants attempt to besmirch the name of Martin Luther King, Jr., by cloaking themselves in his legacy. ECF 82 at 2. Manhart believes such evidence is irrelevant or should be excluded under Rule 403, but if Defendants are going to claim that they're following in the footsteps of the civil rights movement, a jury should be allowed to hear that their cause is not the cause of desegregating lunch counters, but one at the urging of America's enemies on behalf of the massacre of Jews and keeping in power a brutal terrorist government that oppresses and commits war crimes against its own people. And one that has had the effect of bolstering Hamas, extending the war, and causing more Palestinian and Israeli deaths. SAC ¶ 2; Graeme Wood, *Hamas's Strategy Relies on Outrage*, The Atlantic (Oct. 7, 2024); Charles Lane, *If Hamas really cared about Palestinian lives, it would surrender*, Wash. Post (Nov. 15, 2023).

If discovery determines Iran or Hamas did not promote these actions, or that Defendants were unaware that they were carrying out the IRGC's preferred strategy, an *in limine* motion to exclude all evidence of geopolitical issues and political motivations of the defendants and the history of civil disobedience movements under Rules 402 or 403 might be appropriate and would be the way to

address alleged prejudice. But as of now, the Defendants have not disclaimed their stated desire to Manhart's counsel to turn the trial into a circus regarding the justice of civil disobedience.

        C.        **Cases Defendants cite do not save their motion.**

The cases Defendants rely upon are distinguishable because the allegations courts struck either added no context to the underlying claims, or were wholly unrelated to the claims before the court. In *Heller Financial*, the defendant's affirmative defenses had been stricken by the district court, yet the defendant continued to press those rejected claims at summary judgment. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294-95 (7th Cir. 1989). Similarly, in *Wei Liang*, the district court struck several allegations from an amended complaint that were based on previously dismissed claims. *Wei Liang v. Frontline Asset Strategies, LLC*, 2017 U.S. Dist. LEXIS 57181, 2017 WL 1365604 at *2 (N.D. Ill. Apr. 14, 2017). But here, the merits of Manhart's claims have not even been addressed.

*VPHI, Inc. v. Nat'l Educ. Training Grp.*, a case Defendants cite, favors Manhart. There, the district court stated that "immaterial matter" that should be stricken is matter "which has *no relationship* to the cause of action pled" and has "*no possible bearing* on the issues at trial." 1995 U.S. Dist. LEXIS 1365 at *9, 1995 WL 51405 (N.D. Ill. Jan. 20, 1995) (emphasis added). The court denied the motion to strike and noted that the defendant was not prejudiced by the allegations because it could simply admit or deny the allegations or move to dismiss the allegations that did not state a valid claim. Thus, there was no need to strike the allegations. *Id.* at *11-*14. The same is true here. And in *Cumis Ins. Soc'y v. Peters*, another case Defendants cite, the district court denied a motion to strike allegations "relate[d] to the conduct" of the defendants that was core to the plaintiff's claim of a breach of fiduciary duty. 983 F. Supp. 787, 799 (N.D. Ill. 1997). The allegations targeted for striking here, however, relate to Defendants' conduct as participants in the A15action conspiracy to blockade "economic choke points." Thus, they have relevance.

In *United States v. Am. Bank of Okla.*, a district court struck references to the horrific Tulsa Race Riot of 1921 as part of a redlining complaint against a bank founded in 1998, 77 years later. 2023 WL 6393177, 2023 U.S. Dist. LEXIS 176703 at *5 (N.D. Okla. Oct. 3, 2023). The district court emphasized

that the riot allegations were not essential to claims in the complaint, and there would be no proof regarding the riot allegations offered at any trial. *Id.* at *8. Defendants' reliance on this case does not help them here, where Manhart has credibly alleged a nexus between Hamas's and Iran's strategy and the A15action conspiracy in which Defendants participated. Moreover, Manhart intends to explore in discovery and present evidence at trial regarding the ties between the Defendants and any foreign influence. Indeed, such evidence may very well be a central feature related to the A15action conspiracy. Accordingly, the allegations targeted by Defendants' motion provide necessary context regarding Defendants' shared motivations to participate in the A15action conspiracy and the O'Hare blockade and thus should not be stricken because they have a possible bearing on the claims alleged in the SAC.

## CONCLUSION

For these reasons, Defendants' motion to strike is meritless and should be denied.


Dated: March 28, 2025　　　　　　　　/s/ *Neville S. Hedley*
　　　　　　　　　　　　　　　　　　Theodore H. Frank (IL Bar. No. 6224948)
　　　　　　　　　　　　　　　　　　Neville S. Hedley (IL Bar No. 6237279)
　　　　　　　　　　　　　　　　　　HAMILTON LINCOLN LAW INSTITUTE
　　　　　　　　　　　　　　　　　　1629 K Street, NW, Suite 300
　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　Telephone: (312) 342-6008
　　　　　　　　　　　　　　　　　　Email: ted.frank@hlli.org
　　　　　　　　　　　　　　　　　　Email: ned.hedley@hlli.org

　　　　　　　　　　　　　　　　　　M. Frank Bednarz (IL Bar No. 6299073)
　　　　　　　　　　　　　　　　　　HAMILTON LINCOLN LAW INSTITUTE
　　　　　　　　　　　　　　　　　　1440 W. Taylor Street #1487
　　　　　　　　　　　　　　　　　　Chicago, IL 60607
　　　　　　　　　　　　　　　　　　Telephone: (801) 706-2690
　　　　　　　　　　　　　　　　　　Email: frank.bednarz@hlli.org

　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*

## Certificate of Service

The undersigned certifies he electronically filed the foregoing Response via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

Dated: March 28, 2025

/s/ <u>Neville Hedley</u>