UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, a project of WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; A JEWISH VOICE FOR PEACE INC.; TIDES CENTER, d/b/a COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; and SIMONE TUCKER,<br><br>*Defendants*. | Case No. 24:cv8209<br><br>Honorable Mary M. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**MANHART'S RESPONSE IN OPPOSITION TO
DEFENDANTS' RULE 11 MOTIONS FOR SANCTIONS (ECF 71 AND ECF 76)**

## INTRODUCTION

Tides, the Individual Defendants, and Dissenters filed two motions seeking Rule 11 sanctions against Manhart and his counsel. ECF 71 & 76. Obtaining Rule 11 sanctions requires an objective component or a subjective component, but the motions satisfy neither. Manhart's omnibus response to the defendants' motions to dismiss (ECF 91) demonstrate that his complaint was thoroughly researched and investigated and that the claims asserted therein are fully supported by existing caselaw or represent solid—and certainly nonfrivolous—arguments for extending existing law. Moreover, Manhart's complaint is a valid effort to seek redress for a legitimate grievance—a class of innocent victims being deprived of their liberty and freedom of mobility by being confined in their vehicle without a reasonable ability to escape because of the unlawful intentional actions of the defendants. The Declaration of Theodore H. Frank, filed as an attachment to this response, further demonstrates good faith. Manhart's complaint ("SAC") is neither baseless nor frivolous.

## ARGUMENT

### I. Rule 11 Standard.

The purpose of Rule 11 is to deter baseless filings. *Royce v. Michael R. Needle, P.C.* 950 F.3d 939, 957 (7th Cir. 2020). The decision to impose Rule 11 sanctions is within the sound discretion of the district court. *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). In evaluating whether Rule 11 is applicable, the district court must ask whether: (1) there was a reasonable inquiry both in terms of fact and law; (2) the pleading is submitted in good faith and not intended to harass; (3) the legal theories asserted are objectively warranted by existing law or a good faith argument for extension or modification of the law; and (4) the complaint is well grounded in fact. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987). Rule 11 "has both a subjective and objective component." *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 931 (7th Cir. 1989) (en banc). The subjective component turns on whether a filing is done in bad faith or for improper purpose, regardless of whether it is "supported by the facts and the law" or properly researched and investigated. *Id.* at 932.

The objective component tests whether the claims are supported by facts and law and properly researched and investigated.

**II.    Plaintiff's claims are neither baseless nor frivolous and have not been lodged for an improper purpose.**

To prevail on their Rule 11 motion, the defendants must demonstrate that the plaintiff's action is "groundless or without foundation." *Casady*, 735 F.3d at 521. This is a high standard for both the objective and subjective components. For example, in *Casady*, an aggrieved mother in a child custody dispute sued Illinois Department of Children and Family Services employees alleging an implausible conspiracy to alter transcripts, losing on summary judgment when discovery did not bear out her claims. But this thin case with little foundation from a *pro se* plaintiff who had engaged in repeated litigation against the DCFS fell short of being deemed sanctionable. *Id.* at 522-23. Accordingly, Rule 11 allegations must satisfy an demanding threshold.

   **A.    Manhart's claims satisfy the objective standard under Rule 11.**

Rule 11 "is principally designed to prevent baseless filings." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002). "[F]or Rule 11 purposes a frivolous argument is simply one that is baseless or made without a reasonable and competent inquiry." *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" or other sanctions. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (reversing grant of fees under 42 U.S.C. § 1988).

There is nothing baseless about Manhart's complaint against Defendants, and the claims have been made after a competent inquiry. (Indeed, Manhart fully expects to prevail on the motions to dismiss.) Even if Manhart's claims are viewed as unique or unorthodox, Rule 11 would not apply if they have been properly researched and investigated, which they have. "Sanctuary as a result of reasonable investigation ensures that counsel may take novel, innovative positions—that Rule 11 does not jeopardize aggressive advocacy or legal evolution." *Mars Steel*, 880 F.2d at 932.

1. **Plaintiff's false imprisonment claim is neither baseless nor frivolous.**

Manhart was stuck in traffic and had his freedom of movement restrained by the collective and collusive actions of the defendants. Manhart's false imprisonment claim is supported by existing authority. ECF 91 Section III. "While a court must not sanction a party for a reasonable misconstruction of case law, a party is not entitled to deliberately ignore or misstate case law that is unfavorable to its position." *Teamsters Local No. 579 v. B&M Transit, Inc.*, 882 F.2d 274, 280 (7th Cir. 1989). In this instance, it has been the defendants, not Manhart, that have ignored or misstated the law. Tides and the other defendants repeatedly have asserted that the false imprisonment claim is frivolous, citing Restatement (Second) Torts § 36, comment *d*, as authority that blocking a highway does not result in liability for false imprisonment. ECF 72 at 12, and ECF 76 at 6. They have done so even after Plaintiff specifically referenced *Robinson v. Miller*, 1985 Ill. App. LEXIS 2179 (Ill. Ct. App., May 14, 1985) (filed as ECF 65-1), a case in which the majority implicitly rejected comment *d* raised by the dissent. ECF 65 ¶ 2. Moreover, comment *d* by its own terms only applies to a scenario where the plaintiff has *other* freedom of movement. ECF 91 Section III. None of the Defendants made any effort to address *Robinson v. Miller* in their respective motions to dismiss, even after it was brought to their attention weeks before the deadline for filing motions. And both Rule 11 motions again deliberately ignore case law by relying on Restatement (Second) Torts § 36, comment *d* to argue that Manhart's false imprisonment claim is baseless. Moreover, Dissenters and the Individual Defendants mischaracterize Plaintiff's false imprisonment claim, stating that the purpose of the A15action was not to restrain, but rather only to disrupt major economic centers. ECF 76 at 6. Not so. Plaintiff alleges that defendants engaged in a blockade, and that was the stated purpose of A15action. SAC ¶¶ 54, 56-57. The Oxford English Dictionary defines blockade as "an act or means of sealing off a place to prevent goods or people from entering or leaving." Oxford English Dictionary, www.oed.com/search/dictionary/?scope=Entries&q=blockade. That aligns with false imprisonment.

Individual Defendants assert (ECF 76 at 6) there was no false imprisonment because "Plaintiff was not restrained," but that simply isn't so. The complaint alleges such restraint within the

Restatement's definition. As Manhart documented, a "known means to escape" does not save a defendant unless the escape is *reasonable*. ECF 91 Section III (citing Restatement (Second) Torts § 26, comment *a*). The SAC alleges (¶¶ 6, 75-76) that it was illegal for Manhart and other drivers to abandon their vehicles on the highway, and defendants never address this in their Rule 12 or Rule 11 motions.

Moreover, Manhart's concrete injury—loss of liberty and freedom of locomotion—amply supports Article III standing as Manhart's omnibus response explains in detail. ECF 91 Section I.A. And that injury is traceable to the defendants, including Tides/CJE, because the O'Hare blockade was an overt act of the A15action conspiracy, which Tides/CJE willingly and enthusiastically joined. *Id.* Sections I.B, V, V.F.

### 2. Manhart's statutory highway obstruction claim is supported by Illinois precedent.

Similarly, the Rule 11 motions incorrectly state that the Illinois Vehicle Code does not provide the basis for private torts. The Defendants misstate the law. ECF 76 at 7; ECF 74 at 11. The Defendants misleadingly cite a district court case stating that the Code "does not provide for a private right of action." ECF 74 at 11; ECF at 7 (both citing *Priddle v. Dean Malanis and Great Lakes Service II, Inc.*, 2017 U.S. Dist. LEXIS at *10, 2017 WL 372302 at *4 (N.D. Ill. Jan. 25, 2017)). But as explained in the omnibus response (ECF 91 Section IV.B), the Defendants are wrong: the Illinois Vehicle Code consists of 20 Chapters, and *Priddle* is discussing unrelated chapters 18c and 18d. More importantly, Manhart does not bring a cause of action under the Vehicle Code at all, but cites the violation as *prima facie* evidence of negligence—Manhart's cause of action. *Id.* Section IV.A.

Section IV of the omnibus response adequately demonstrates that the statutory cause of action alleged in the complaint was thoroughly researched and investigated and is a claim supported by existing case law.

      **3.    Plaintiff's conspiracy, aiding and abetting and in-concert liability claims are all supported by existing case law.**

            **i.    Tides/CJE's claims regarding the bail and legal defense fund are flawed and factually inaccurate.**

Likewise, Manhart's conspiracy, aiding and abetting and in-concert claims are both legally and factually supported as explained in detail in the omnibus response to Defendants' motions to dismiss. ECF 91 Sections V, V.F. Tides/CJE asserts (ECF 72 at 9) that Manhart did not allege CJE entered into an agreement to commit a tort. This is wrong. The SAC alleges (¶¶ 54, 56-57) that Tides/CJE willingly and knowingly joined the A15action conspiracy, the stated purpose of which was to engage in unlawful blockades. And Plaintiff's omnibus response demonstrates that a bail and legal defense fund established to cover specific future crimes falls within the contours of Illinois conspiracy or aiding and abetting law. ECF 91 Sections V, V.F.

Tides/CJE also argues that the bail fund could not possibly be construed as substantial assistance because bail has been eliminated in Illinois and that those arrested at O'Hare would not need paid legal assistance because of the existence of the Cook County Public Defender's office. Leave aside that *every* American jurisdiction offers public defense, and that the bail fund was surely offering something beyond that. ECF 33-1 Ex. 13 ("bail, legal defense, *and support for defendants*" (emphasis added)). As the Second Amended Complaint alleges (¶¶ 3, 63-64), there was the possibility of federal criminal charges, and federal bail still exists as a condition of pre-trial release, even in Illinois. ECF 91 Sections I.B, V.F.

Tides/CJE persists in ignoring relevant case law. In its Rule 11 and Rule 12 motions, Tides dismissively contests (ECF 72 at 10) that the defendants are potentially subject to federal prosecution. Tides knows this is false. Manhart's Counsel informed Tides's counsel in 2023 that the Defendants were potentially subject to federal criminal prosecution and specifically noted 18 U.S.C. § 241 and *United States v. Guest*, a Supreme Court case directly on point. 383 U.S. 745, 760 (1966) ("[I]f the predominant purpose of the conspiracy is to impede or prevent the exercise of the right of interstate travel … then, whether or not motivated by racial discrimination, the conspiracy becomes a proper

object of the federal law [18 U.S.C. § 241]."); *see also* Samantha Trepel, Special Litig. Counsel, Criminal Section, Civil Rights Division, *Prosecuting Color-of-Law Civil Rights Violations: A Legal Overview*, 70 DOJ J. of Fed. L. & Prac., 21, 32 n.54 (Mar. 2022) ("Section 241 can also be used to prosecute private individuals for conspiring to violate rights protected from interference by private—rather than state—actors. These rights commonly include … traveling."); *see also* ECF 91 Sections I.B and V.F. (noting Trump executive orders and op-eds calling for such federal prosecutions). Counsel for Tides has chosen to ignore this precedent and instead makes a baseless Rule 11 motion on a premise they know is wrong.

### ii. Plaintiff's complaint contains sufficient factual allegations to support aiding and abetting and in-concert liability against Dissenters and Individual Defendants.

Contrary to Dissenters and the Individual Defendants (ECF 76 at 9), the SAC does tie them to the conspiracy and sufficiently alleges collaboration. According to the reasoning of Dissenters and the Individual Defendants, one would have to infer that the individual defendants and other blockaders decided to independently to travel to O'Hare on the morning of April 15, 2024, convene at the same strategic location along I-190 and then chain themselves together with PVC piping to block traffic into O'Hare—and only coincidentally on the same day that Iran and the "coordinated" A15action called for a blockade of choke points. By contrast, Plaintiff's complaint would have the court infer that this was a coordinated event, well planned and executed, supported by the admission of Falaneh that she was one of the organizers of the blockade. ECF 33-1, ¶ 49, Exhibit 35. The latter inference is reasonable, the former is not. ECF 91 Sections V.A., V.E.

Moreover, the SAC contains sufficient allegations showing that the defendants worked collaboratively to commit tortious acts. Exhibit 20 of the Hedley Declaration contains a series of Instagram posts, all done in collaboration with the @a15actions Instagram account. One of the posts in Exhibit 20 is a video of defendant Superior Murphy at the blockade, with Murphy providing a play-by-play of what was transpiring at the blockade. ECF 33-1 Ex. 20 at 84. The text accompanying the post is from the Instagram account @chicagodissenters stating "Chicagoans are currently blocking

the entrance to O'Hare International Airport." The reasonable inference to be drawn from this is that an agent or agents of Dissenters were present at the blockade, preparing and posting real-time video in support of the blockade—not post-hoc. Another Instagram post was by @chicagodissenters and @a15actions showing a video of the handful of travelers close enough to exit their ride-share vehicles and begin the long trek to the terminal. *Id.* at 85. The text accompanying the post states "HAPPENING NOW Travelers are walking to their gates as drivers are prevented from entering the drop off site." The final post is a similar real-time post accompanied by additional "HAPPENING NOW" text. *Id.* at 86; *see also* ECF 33-1, Exhibits 32 & 33. Finally, Exhibit 34 is an April 16, 2024 post from Dissenters, in collaboration with other Instagram accounts including the @a15action account, explaining why O'Hare and Boeing were selected as targets of the blockade. From this it is more than reasonable to infer that Dissenters collaborated with others in the planning and execution of the O'Hare blockade, and that the Individual Defendants organized and actively participated in the A15action conspiracy and resulting O'Hare blockade. ECF 91 Sections V.A, V.E. Furthermore, Dissenters previously promoted and participated in a coordinated blockade of roads. SAC ¶ 48.

Accordingly, Manhart's claims meet the objective prong of the Rule 11 inquiry. The false imprisonment, highway obstruction, conspiracy, aiding and abetting, and in-concert claims all have been thoroughly researched and investigated. All the claims are supported by existing cases, authorities, and factual allegations. Of the opposing sides in this case, only one can be credibly accused of not thoroughly researching and investigating claims made in filings with the Court and it is not Manhart.

      **B.    Manhart's claims were not initiated for an improper purpose and the SAC thus satisfies the subjective standard under Rule 11.**

The SAC also satisfies the subjective prong of Rule 11, which assesses whether a claim is made for an improper purpose like harassment. Tides argues that Manhart's complaint was filed for such an improper purpose. The cases in which a litigant has been found to violate the subjective prong of Rule 11 typically involve asserted claims that are baseless and frivolous and part of a pattern of repeated litigiousness. Indeed, both cases cited by Tides concern plaintiffs who pursued multiple

baseless or frivolous claims against defendants over the course of several years. *See Eberhardt v. Walsh*, 122 F.4th 681, 685-87 (7th Cir. 2024) (affirming Rule 11 sanctions against plaintiff who had history of litigation against defendant and excessive motion filing that "screamed bad baith"); *Walton v. First Merch. Bank*, 2022 U.S. App. LEXIS 24716 at *2-*3 (7th Cir. Sept. 1, 2022) (noting repetitive baseless lawsuits by plaintiff against defendant). No such history exists here.

Tides also takes issue with the allegedly inflammatory allegations in the SAC that reference Hamas and the IRGC, arguing that such allegations are designed to jeopardize Tides's 501(c)(3) tax-exempt status and to prohibit First Amendment activity. That is incorrect. The First Amendment only extends to those who "engage in peaceful nontrespassory picketing which does not deprive others of their personal liberty." *United States v. Wilson*, 154 F.3d 658, 663 (7th Cir. 1998); *see also Cox v. Louisiana*, 379 U.S. 536, 555 (1965) ("A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations."). Nowhere does the SAC seek to enjoin any defendants from engaging in protected First Amendment activity. ECF 91 Section II.A.1. Tides's 501(c)(3) tax-exempt status is jeopardized not by allegations in a complaint, but by Tides's own actions promoting illegal conduct.

But even if one assumes for the sake of argument that the allegations Tides and the other defendants complain of are inflammatory and irrelevant, or that mixed motives are driving the lawsuit, that still would not be a basis for Rule 11 sanctions. In *Mullen v. Butler*, the Court affirmed the denial of Rule 11 sanctions. 91 F.4th 1243, 1246 (7th Cir. 2024). There the party seeking sanctions, like the Defendants here, took issue with allegedly irrelevant, extraneous and offensive accusations in the complaint. Likewise, they also asserted that the plaintiff initiated the action for the improper purpose of driving the defendants out of business. *Id.* at 1250, 1254-55. The Court agreed with the district court that the arguably offensive allegations were sufficiently accurate and supported by the record. *Id.* at 1254-55. The Court also agreed that "if [plaintiff's] claims are supported by a good-faith belief in their merits, a parallel reason does not violate Rule 11." *Id.* at 1250. Here, the ties of Hamas and Iran to economic blockades and disruptions are supported by a release by the Office of the Director of National Intelligence cited in the SAC. SAC ¶ 37, n.12. And as explained above in Section I.A.,

Manhart's claims are well researched and investigated, and "supported by a good-faith belief in their merits."

Defendants complain that the complaint alleges that intentionally tortious behavior should be punished (ECF 82 at 2) and that Manhart's counsel called Hamas "barbarians." ECF 77 at 7. But the first is just a sound public-policy argument and the second is an objectively correct description. At worst, they are protected opinion well within mainstream thought, rather than evidence of an "improper purpose." Manhart's counsel has also publicly said

> People have the right to complain that [America is] not doing enough to support Hamas terrorists. But what they don't have is the right to break the law and block roads.[1]

Accordingly, the SAC satisfies the subjective prong of Rule 11 and has not been initiated for an improper purpose. The victims of their intentional torts have the right of civil redress, and there is nothing improper to bring a civil complaint seeking such redress. And the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). Accordingly, the SAC satisfies the subjective prong of Rule 11 and has not been initiated for an improper purpose.

### C. Plaintiff's complaint was brought in good faith and represents a valid, non-frivolous effort to combat "direct action" incidents that harm innocent individuals.

Contrary to the assertions in Defendants' motions to dismiss and the Rule 11 motions, Manhart's counsel is not interested in preventing Defendants from engaging in protected First Amendment activities or jeopardizing their tax-exempt status. Indeed, Manhart's counsel has a robust reputation for being stalwart defenders of First Amendment freedoms. Frank Decl. ¶ 6. One of Manhart's attorneys has also been an outspoken critic of frivolous and abusive litigation and has assiduously avoided pursuing matters that have a hint of frivolity. Frank Decl. ¶¶ 14-15. But Manhart's counsel also has a successful history of pursuing precedent-setting litigation involving areas that have

---

[1] https://x.com/HamLincLaw/status/1899444264653688849.

been overlooked or ignored by more traditional law firms, both private and public interest. Frank Decl. ¶¶ 7-11. Rule 11 is not intended "to chill an attorney's enthusiasm or creativity in pursuing new and unusual legal theories." *Land v. Chicago Truck Drivers, Helpers & Warehouse Workers Health & Welfare Fund*, 25 F.3d 508, 517 (7th Cir. 1994). And one such area that Manhart's counsel has been exploring long before the October 7, 2023 Hamas attack on Israel, is combating illegal "direct actions" that deprive innocent citizens of their liberty and jeopardize public safety, particularly in jurisdictions in which the law enforcement response is minimal or non-existent. Frank Decl. ¶ 16. Accordingly, Defendants have not been singled out for any perceived pro-Hamas message. Rather, they are named as Defendants in the case for their conduct, and this would have been true had they blockaded the interstate to protest climate change, economic globalization, the 2020 election results, or the McCaskey family's mismanagement of the Chicago Bears. Frank Decl. ¶¶ 15-19. Accordingly, Manhart's complaint represents a legitimate, good-faith effort to use civil tort law to hold accountable individuals and organizations that engage in such unlawful and tortious "direct actions" that unfairly deprive citizens of their liberty and put the public at risk.

### III.     The Rule 11 motions are baseless and frivolous.

The Defendants pursued baseless and frivolous Rule 11 motions even after Manhart drew their attention to legal authority supporting Plaintiff's complaint and arguments and contradicting the accusations leveled by Defendants in either their Rule 11 motions of motions to dismiss, including in amendments to his complaint. The Rule 11 motions represent a glaring lack of due diligence and investigation on the part of the Defendants.

The Defendants repeatedly rely up Restatement (Second) Torts § 36, comment *d*, in arguing that Manhart's false imprisonment claim was baseless or frivolous. ECF 72 at 12; ECF 74 at 12; ECF 75 at 19; and ECF 76 at 6. And they do so even after Plaintiff shared a case in which the Illinois Appellate Court rejected the premise of comment d on facts far less egregious than what Manhart alleged in the SAC. Defendants made no effort to address this case, either in motions to dismiss or in the Rule 11 motions. That lack of due diligence is inexcusable. And so is the repetition of the absurd

claim (ECF 72at 13; ECF 74 at 12; ECF 75 at 18-19; ECF 82 at 8-9) that Manhart was not "restrained" because he could have illegally abandoned his vehicle on the interstate.

Likewise, Tides/CJE has persisted in being dismissive that the Defendants' conduct of April 15, 2024 exposes them to potential federal prosecution. Consequently, CJE continues to make the flawed legal argument that the bail and legal defense fund could not have amounted to substantial assistance because Illinois as eliminated cash bail and public defenders are free of cost in Cook County. And CJE has done so even after Manhart's counsel long ago flagged for it the relevant federal criminal statute and a case directly on-point—18 U.S.C. § 241 and *United States v. Guest*.

The Defendants' motions to dismiss are replete with examples of their misstatements of law, lack of due diligence, and thorough research; the same problems extend to the Rule 11 motions. CJE cites the *Priddle* case in its motion to dismiss (ECF 74 at 11), and then repeats the same argument in its Rule 11 motion (ECF 72 at 11-12) that the Illinois Vehicle Code does not provide for a private right of action. Dissenters and the Individual Defendants also mistakenly rely on *Priddle* in their Rule 11 motion. ECF 76 at 6. But even the most rudimentary legal research would have revealed that *Priddle* dealt with a completely unrelated Chapter of the Illinois Vehicle Code (ECF 91 Section IV), and that there are multiple examples of private tort actions grounded in the Rules of the Road Chapter in which the Highway Obstruction statute is located. And they completely ignore that Manhart's Count II is based on the common-law breach of duty, rather than an implied right of action.

Accordingly, the Defendants' Rule 11 motions violate Rule 11(b); the Court has the authority to *sua sponte* issue an order to show cause why the Defendants who brought these motions should not be sanctioned. Manhart's complaint is not only not frivolous, but legally correct.

## CONCLUSION

For the foregoing reasons, the Rule 11 motions are without merit and should be denied.

Dated: March 28, 2025         /s/ *Theodore H. Frank*
                              Theodore H. Frank (IL Bar. No. 6224948)
                              Neville S. Hedley (IL Bar No. 6237279)
                              HAMILTON LINCOLN LAW INSTITUTE
                              1629 K Street, NW, Suite 300
                              Washington, DC 20006
                              Telephone: (703) 203-3848
                              Email: ted.frank@hlli.org
                              Email: ned.hedley@hlli.org

                              M. Frank Bednarz (IL Bar No. 6299073)
                              HAMILTON LINCOLN LAW INSTITUTE
                              1440 W. Taylor Street #1487
                              Chicago, IL 60607
                              Telephone: (801) 706-2690
                              Email: frank.bednarz@hlli.org

                              *Attorneys for Plaintiff*

**Certificate of Service**

The undersigned certifies he electronically filed the foregoing Response via the ECF system for the Northern District of Illinois, thus effecting service on all attorneys registered for electronic filing.

Dated: March 28, 2025

/s/ *Theodore H. Frank*