IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>　*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, A PROJECT OF WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; JEWISH VOICE FOR PEACE; TIDES CENTER, D/B/A COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; AND SIMONE TUCKER,<br><br>　*Defendants*. | No. 1:24-cv-8209<br><br>Hon. Mary L. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**DEFENDANT TIDES CENTER D/B/A COMMUNITY JUSTICE EXCHANGE'S REPLY
IN SUPPORT OF ITS MOTION FOR SANCTIONS
<u>PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

**INTRODUCTION**

Every version of the complaint has sought to frivolously punish Tides Center d/b/a Community Justice Exchange ("CJE"), a nonprofit, for nothing more than its creation of a nationwide bail fund in line with its mission to end incarceration and detention.[1] There are no other allegations regarding CJE, and if CJE had engaged in any other conduct relevant to the claims in this case, the time to identify it was in Plaintiff's opposition briefs. But those briefs fail to do so, showing that the claims against CJE are stretching the law beyond its breaking point. And after three complaints, and oppositions to a motion to dismiss and Motion for Sanctions, Plaintiff still cannot support any legally cognizable claim against CJE and persists with his frivolous claims. It is time for Plaintiff and his counsel to be sanctioned, because *the claims against CJE* manifestly (1) were not the result of a reasonable pre-suit investigation; (2) are not supported by existing law or a nonfrivolous argument for altering existing law; and (3) were brought to harass CJE.

Plaintiff's claims against CJE are not plausible. Plaintiff's assertion that his claims should be allowed to proceed because countless independent individual protesters, not before this Court, were incentivized to protest in Chicago based on CJE's nationwide bail fund requires the Court to make numerous impermissibly speculative leaps, making clear the Second Amended Complaint ("SAC") is frivolous. And Plaintiff's opposition briefs do not demonstrate that Plaintiff has standing to bring his frivolous claims against CJE, nor do they rebut the fatal defects that make the claims against CJE for conspiracy and aiding and abetting negligence and false imprisonment frivolous. And Plaintiff's failure to show how his inflammatory allegations about Hamas and the IRGC in the SAC have any relevance to his claims exposes his and his counsel's improper purpose

---

[1] Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Apr. 28, 2025); *Mussat v. Power Liens, LLC*, 2014 WL 3610991 at *3 (N.D. Ill. Jul. 21, 2014) (noting that courts have the discretion to take judicial notice of the contents of a website).

to punish and harass CJE for its alleged solidarity with Palestine.

## ARGUMENT

I.   **PLAINTIFF'S OPPOSITION FAILS TO DEMONSTRATE THAT THE CLAIMS AGAINST CJE ARE SUPPORTED BY EXISITING LAW OR A NONFRIVOLOUS ARGUMENT FOR ALTERING EXISTING LAW.**

Plaintiff wrongly argues that he satisfies the objective standard under Rule 11(b) because he allegedly "properly researched and investigated" his claims generally (ECF 92, Pl.'s Opp. Mot. Sanctions at 1), but he provides no details in his opposition briefs or self-serving declaration about how he did so with respect to the claims *specifically against CJE* (*see id.*; ECF 92-1, Frank Decl.).[2] If Plaintiff had properly researched and investigated potential claims against CJE, he would have discovered that his claims were frivolous. And Plaintiff and his counsel should be sanctioned because the claims against CJE cross the line of creativity into the realm of frivolousness. *See Tatum v. Meisner,* 2014 WL 6473481, at *4 (W.D. Wis. Nov. 18, 2014) ("While [Plaintiff's] legal theory is certainly novel, it is also frivolous," and thus sanctionable.); *see also Eberhardt v. Walsh,* 122 F.4th 681, 685 (7th Cir. 2024) (holding that plaintiff's legal theories were "not objectively warranted by existing law or a good faith argument for its extension," and thus sanctionable).

   A.   **Plaintiff Fails To Demonstrate That He Has Article III Standing.**

Plaintiff attempts to get around the Article III standing requirement (ECF 91, Pl.'s Opp. Mot. Dismiss at 8-12), but the SAC's allegations present, at worst, amorphous harm in the form of harassment, annoyance, and a general loss of time (ECF 69, SAC ¶ 116), which are not sufficient to establish Article III standing. Plaintiff tries to distinguish *Keller v. Lvnv Funding, LLC*, 2022 WL 7501335, at *1 (N.D. Ill. Oct. 13, 2022), but the reasoning in *Keller* rests squarely on the fact

---

[2] Plaintiff improperly lumps CJE into allegations about other defendants. However, where "allegations are based solely on undifferentiated allegations of 'defendants,' such that the complaint is based only on a theory of collective responsibility, then it must be dismissed. And including a claim of conspiracy does not cure this defect." *Harris v. Rockford Police Dep't*, 2021 WL 1885979, at *1 (N.D. Ill. May 10, 2021).

that the complaint, like the SAC, "mention[ed] harm only in the form of harassment and annoyance and a general loss of 'time and money.'" And the court expressly found that "'[a]nnoyance, indignation, stress, . . . are not concrete injuries.' . . . [And, although t]he loss of time and money might be enough to establish Article III standing, [that is] *only when accompanied by specific allegations of tangible harm.*" *Id.* at 2 (emphasis added). Here, after three complaints and two opposition briefs, Plaintiff still fails to allege any concrete injury to support Article III standing.

Moreover, Plaintiff's alleged injuries are in no way plausibly or fairly traceable to CJE's establishment of a nationwide bail fund in line with its mission.[3] To establish standing as to CJE, the traceability requirement requires that Plaintiff plausibly allege a "line of causation" to *CJE's* conduct (not the conduct of other defendants) that is not "too speculative or attenuated." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). "Courts find a lack of traceability when a plaintiff sues a defendant about a decision made by someone else." *Haymarket DuPage, LLC v. Vill. of Itasca*, 2024 WL 809110, at *13-15 (N.D. Ill. Feb. 27, 2024).

In *Haymarket*, the court found that the denial of plaintiff's applications to build a substance abuse treatment center was "not fairly traceable to the conduct" of two defendants, because they were merely "voices in a chorus of opposition to the proposal" and worked with the village board to deny plaintiff's application but "were not [and did not control] the decisionmakers." *Id* at *13. And, in cases similar to *Haymarket* (like here), courts routinely find a lack of traceability when the defendant is being sued for the actions of independent third parties. *Id.* at *13-15 (collecting cases). Similarly, in *Little v. KPMG LLP*, the Fifth Circuit affirmed dismissal of a complaint against

---

[3] Plaintiff also fails to support his Article III standing argument as to his claims against CJE premised on the actions of any of CJE's purported co-conspirators because, as discussed below (*infra* Section I.B.1), Plaintiff's conspiracy claims against CJE are frivolous. *See Hope, Inc. v. DuPage Cnty. Ill.*, 738 F.2d 797, 808 (7th Cir. 1984) (refusing to allow "plaintiffs to establish standing by simply including in their complaint a bald and unsubstantiated assertion of conspiracy which finds no basis in concrete fact").

KPMG by a competitor because it depended on speculation about actions of "third parties not before the court." 575 F.3d 533, 540–41 (5th Cir. 2009). The court found that the complaint's allegation *"*[t]hat KPMG's Texas clients would have sought to replace KPMG require[d] speculation," and any alleged injury based on the complaint's allegations was "too conjectural or hypothetical to confer standing." *Id.*

Here, similar to *Little* and *Haymarket*, the line of causation Plaintiff asks this Court to draw between CJE's establishment of a nationwide bail fund in line with its mission and Plaintiff's alleged harm of being stuck in traffic in Chicago (ECF 91, Pl.'s Opp. Mot. Dismiss at 11) is frivolous. Indeed, it requires the Court to make too many impermissibly speculative leaps regarding the decisions of countless independent third parties to conclude that any individual protestor's decision to participate in the protest in Chicago was influenced by the creation of CJE's nationwide bail fund. For example, the Court would have to speculate that each individual would have: (1) not only known about the existence of the bail fund, but also how much was in the bail fund; (2) known that once they applied, there would still be funds available; (3) known that they would have been approved once they applied; (4) not known that there is no cash bail in Illinois; (5) not accepted representation by the Cook County public defender's office; (6) not have paid for their own lawyer; (7) not sought pro bono assistance; and (8) had the slightest concern about a federal prosecution or the nonexistent federal cash bail system. Plaintiff does not cite any facts to support any of these speculative leaps, so there are no facts to satisfy even a relaxed plausibility standard for the claims against CJE. Courts should dismiss claims with prejudice where, as here, the complaint fails to support a plausible claim on its face. *See Bakker v. Mokena Fire Prot. Dist.*, 2020 WL 1139262, at *4 (N.D. Ill. Mar. 9, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. Plaintiff Fails To Rebut That His Claims Against CJE Are Sanctionable.

#### 1. CJE established that the conspiracy claims are frivolous.

Plaintiff originally asserted a claim for conspiracy to violate the Illinois Vehicle Code (*see* ECF 1, Compl. ¶¶ 90-93, 132; ECF 33, First Am. Compl. ¶¶ 89-92, 126) but has now pivoted, saying that his claim in the SAC is now really for conspiracy to commit a "common-law tort for foreseeable injury caused by intentional breach of duty" (ECF 69, SAC ¶¶ 97-100, 122), and arguing that this "common law tort" is in fact a negligence claim (ECF 91, Pl.'s Opp. Mot. Dismiss at 29 n.9). But even that argument fails to rebut that his conspiracy claim is frivolous because, as CJE explained in its opening brief (ECF 72, CJE's Mem. Supp. Mot. Sanctions at 9 n.5), there is no such claim as conspiracy to commit negligence. *See Rogers v. Furlow*, 699 F. Supp. 672, 675 (N.D. Ill. 1988). Even apart from this, the conspiracy claims against CJE are frivolous.

CJE established that Plaintiff's conspiracy claims against CJE are sanctionable because he fails to allege any facts that support his conclusion that *CJE* entered into *any* agreement to commit tortious conduct. *First*, Plaintiff argues only that CJE "*conspired to support* Defendants' scheme" (ECF 69, SAC ¶¶ 120, 127), but that is a mere conclusion the Court need not accept because it is not supported by any facts.[4] And the fact that a nonprofit set up a nationwide bail fund, standing alone, does not (and cannot) establish an agreement to commit or support tortious conduct; the SAC contains no facts to support any inference that CJE agreed to commit or support tortious conduct. And "without any detail to flesh out [the] conclusory assertion" that there was "an agreement between two or more persons," the claim "lacks plausibility."[5]

---

[4] *Lanahan v. County of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) ("We are not obligated to accept 'sheer speculation, bald assertions, and unsupported conclusory statements' on a motion to dismiss."); *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996) (same).
[5] *Ma v. CVS Pharma., Inc.*, 833 Fed. Appx. 10, 14 (7th Cir. 2020); *see also Richard v. Swiekatowski*, 2022 WL 17091866, at *3 (7th Cir. Nov. 21, 2022) (plaintiff "did not overcome [the] problem with his conclusory

*Second*, Plaintiff's only allegations regarding CJE in the SAC are that it created, advertised, and managed a nationwide bail fund (*see generally* ECF 69, SAC), which do not support any conclusion that CJE entered into an agreement to further the alleged conspiracy as defined by Plaintiff—"to unlawfully block[] I-190's offramp into O'Hare" or "to falsely imprison unsuspecting motorists." (*Id.* ¶¶ 6, 126.) Plaintiff has not alleged a single fact regarding CJE having anything to do with organizing or participating in blocking traffic on I-190. (*See generally id.*) And soliciting funds for a nationwide bail fund does nothing to further the objectives of the alleged conspiracy in Chicago without, again, requiring the Court to make numerous impermissibly speculative leaps. *See LoggerHead Tools, LLC v. Sears Hldg. Corp.*, 19 F. Supp. 3d 775, 783 (N.D. Ill. 2013); *Ollie v. Bludworth*, 2013 WL 2045310, at *2 (S.D. Ill. May 14, 2013); *supra* p. 4. In *LoggerHead*, 19 F. Supp. 3d at 783, the court dismissed an in-concert claim because, like Plaintiff here, the plaintiff's allegations were conclusory and lacked factual support. Likewise, in *Ollie*, 2013 WL 2045310 at * 2, the court rejected the plaintiff's conspiracy claims because his theory lacked factual support and required too many unreasonable inferences.

*Third*, the SAC does not support any inference that CJE created the bail fund for any purpose other than fulfilling its mission to end detention and incarceration. Had Plaintiff conducted a proper pre-suit investigation, he would have learned that CJE is a nonprofit organization that experiments with ways to end all forms of incarceration and detention, and the nationwide bail fund was in line with its mission—not a conspiratorial act.[6] In fact, CJE hosts the National Bail Fund Network, and its website contains links to over 90 bail funds.[7] Plaintiff's attempt to assign

---

assertion of conspiracy" because he failed "to allege facts plausibly suggesting an agreement among the defendants.").

[6] *See* Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Apr. 28, 2025).

[7] Community Justice Exchange, *National Bail Fund Network*, https://www.communityjusticeexchange.org/en/nbfn-directory (last visited Apr. 28, 2025).

conspiracy liability to a nonprofit that is fulfilling its legal mission is sanctionable.[8]

*Fourth*, there are no allegations that would support any inference that CJE's nationwide bail fund "incentivized [countless individual independent protestors'] participation in blockading I-190 into O'Hare Airport." (*See supra* p. 4; ECF 69, SAC ¶¶ 120, 127; *see also id.* ¶¶ 63-64.) And even if the Court could get beyond the many conjectural and speculative leaps that Plaintiff needs to support his conclusion that a nationwide bail fund somehow incentivized countless individuals to participate in the protest in Chicago, that is not sufficient to establish conspiracy liability because the bail fund is in line with CJE's mission. *In re Hearthside Banking Co., Inc.*, 402 B.R. 233, 251-52 (N.D. Ill. 2009) ("A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable for civil conspiracy.").

*Fifth*, although Plaintiff tries to make a distinction between setting up a nationwide bail fund after an event and before an event (ECF 91, Pl.'s Opp. Mot. Dismiss at 45-46), there is no such distinction. Soliciting funds for a nationwide bail fund, even if in advance of an event where arrests may occur, inherently alone cannot qualify for conspiracy liability. *See United States v. McKinney*, 954 F.2d 471, 475 (7th Cir. 1992) (acts that do "not contribute to accomplishing the charged conspiracy's goal" are "not a valid basis for a conspiracy"). Indeed, Plaintiff alleges only that CJE *solicited* funds, not that it actually contributed or distributed funds in Chicago. The mere legal *solicitation* of funds nationwide—a First Amendment-protected activity—for a bail fund "did not contribute to accomplishing the charged conspiracy's goal" as conclusorily described by Plaintiff. *See id.* at 475. The SAC presents no fact showing that the Chicago protest would not have proceeded exactly as it did if there was no bail fund. And, there are no allegations showing

---

[8] *Walton v. First Merchs. Bank Corp.*, 2022 WL 480039, at *6 (S.D. Ind. Feb. 14, 2022), *aff'd*, 2022 WL 3999965 (7th Cir. 2022) (affirming sanctions where "frivolous claims [were] utterly devoid of any factual or legal merit").

that CJE engaged in or supported any tortious conduct in any other way.

Plaintiff argues that "[a]greements to pay bail and legal expenses have long been a feature of conspiracies" (ECF 91, Pl.'s Opp. Mot. Dismiss at 45), but the cases he cites bear no resemblance to the conduct he alleges about CJE in the SAC. Indeed, all of the cases Plaintiff cites—*United States v. Applins*, 637 F.3d 59, 78 (2d Cir. 2011), *United States v. Gonzalez*, 2018 WL 6834315, at *13 (D. Nev. Dec. 28, 2018), and *United States v. Hodge*, 548 F.2d 1347, 1354-55 (9th Cir. 1977)—involve active participants in broad criminal conspiracies who had direct agreements with specific individuals to pay their bail and legal fees to induce them to commit crimes. Here, CJE, simply solicited funds for a nationwide bail fund in line with its mission, and Plaintiff does not allege that CJE made any agreement with any individual protestor to guarantee the payment of their bail or legal fees to induce them to block I-190. CJE's alleged conduct here does not and cannot serve as a basis for conspiracy liability, and there is no non-conclusory allegation that anyone participated in the Chicago protest because of CJE's solicitation for contributions to a bail fund.[9] (*See generally* ECF 69, SAC.)

*Lastly*, Plaintiff asserts without factual support that CJE created the bail fund to get protesters back on the streets more quickly to engage in similar protests. (*Id.* ¶ 63.) This is a frivolous conclusory statement that the Court need not accept. *Gunawardana v. Am. Veterinary*

---

[9] Plaintiff's reliance on *C&K Coal Co. v. United Mine Workers*, 704 F.2d 690, 696 (3d Cir. 1983) and *Array Techs., Inc. v. Mitchell*, 305 F. Supp. 3d 1256, 1274 (D.N.M. 2018) (ECF 91, Pl.'s Opp. Mot. Dismiss at 46), is misplaced. In *C&K Coal*, the district court specifically found, and the Third Circuit affirmed, that the allegations regarding the legal defense fund *did not* subject the defendants to conspiracy liability. 704 F.2d at 696. Instead, the court found that the defendants violated provisions of the National Labor Management Relations Act. *Id.* In *Array Techs.*, the defendant directly induced a competitor's employee to breach his fiduciary duties by promising to pay the employee's legal expenses. 305 F. Supp. 3d at 1274. Here, there is no link between CJE and any Chicago protestor. It is frivolous to seek conspiracy liability without any direct promise to actually pay any specific Chicago protestor's bail or legal fees, or any other individual who participated in the more than 80 protests across the country, for the purpose of inducing them to commit a crime. (*See supra* p. 4.)

*Med. Ass'n*, 515 F. Supp. 3d 892, 911 (S.D. Ill. 2021), *aff'd*, 2021 WL 4951697 (7th Cir. Oct. 25, 2021). The SAC does not even allege that there were any subsequent similar protests planned.

> **2. CJE established that Plaintiff's aiding and abetting claims are frivolous.**
>
> **a. Plaintiff fails to rebut that CJE did not engage or seek to engage in tortious activity.**

Plaintiff's opposition does not demonstrate how the SAC satisfies the requirement that a defendant be "aware of his role as part of the overall or tortious activity at the time that he provides the assistance." *Bank of America, N.A. v. Knight,* 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012). The SAC alleges that "A15 Action's stated goal was to block 'the arteries of capitalism and jam[] the wheels of production,'" and "'to identify and blockade major choke points in the economy … with the aim of causing the most economic impact.'" (ECF 69, SAC ¶ 54.) However, the SAC does not allege that CJE engaged in any direct communications with any of the countless independent individual Chicago protestors. Indeed, the SAC does not allege that CJE did anything other than create a nationwide bail fund. The SAC is "wholly devoid of any factual allegations that plausibly suggest that [CJE] was regularly aware of its role in the alleged tortious activity and knowingly and substantially assisted" that alleged tortious activity. *Bank of America,* 875 F. Supp. 2d at 849.

> **b. Plaintiff fails to rebut that CJE did not knowingly or substantially assist any tort.**

Plaintiff's argument that he satisfies the third element—knowing and substantial assistance—is frivolous.[10] Contrary to Plaintiff's suggestion (ECF 91, Pl.'s Opp. Mot. Dismiss at 48), the solicitation of funds for a nationwide bail fund could not have *substantially* assisted the Chicago protesters. (*See supra* p. 4.) All Plaintiff alleges CJE did was *solicit* contributions for a

---

[10] Aiding and abetting liability requires actual knowledge, constructive knowledge is not sufficient under Illinois law. *See Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986); *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 724 (N.D. Ill. 2015).

9

nationwide bail fund—a First Amendment-protected activity. Plaintiff alleges *no* facts regarding knowing or substantial assistance of the blocking of traffic. Indeed, Plaintiff does not allege that CJE (1) distributed *any* funds to anyone in Chicago, (2) guaranteed the bail and legal expenses of anyone in Chicago, (3) had knowledge of the identity of or communicated with anyone in Chicago, or (4) received applications from or approved applications for anyone in Chicago.

Having failed to allege facts to show substantial assistance, Plaintiff nonetheless argues that the question of substantial assistance is one for the jury (ECF 91, Pl.'s Opp. Mot. Dismiss at 48). But courts routinely dismiss aiding and abetting claims where, like here, substantial assistance allegations are deficient. *See, e.g.*, *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 828-29 (N.D. Ill. 2023) (dismissing aiding and abetting claim where plaintiff failed to sufficiently allege substantial assistance); *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 725 (N.D. Ill. 2015) (same); *Abrams v. McGuireWoods LLP*, 518 B.R. 491, 503-504 (N.D. Ind. 2014) (same).

In *FTC*, 664 F. Supp. 3d at 828-29, the court dismissed the plaintiff's claims alleging that Walmart substantially assisted fraud by knowingly processing fraudulent transactions, because "the complaint [did not] connect Walmart's general awareness of red flags and fraud with its specific knowledge about the vast majority of money transfers at issue . . . , such that processing those transactions became something other than routine." Here, the SAC does not connect CJE's general awareness of the A15 Action with any specific knowledge of the blockading of I-190 or anything other than general knowledge of the more than 80 protests scheduled for April 15, 2024. Similar to *FTC*, there is nothing that supports any inference other than the reality that CJE's actions were routine and in line with its general mission of eliminating detention and incarceration.

Plaintiff also argues that there was substantial assistance because although there is no cash bail in Illinois, there is a possibility of "the imposition of bail" in the federal criminal justice

10

system. (ECF 91, Pl.'s Opp. Mot. Dismiss at 49-50.) But Plaintiff's argument does not address the core flaw—CJE's creation of a nationwide bail fund did not substantially assist any individual independent protester in Chicago. And Plaintiff's argument requires too many impermissibly speculative leaps, none of which are plausible.[11] The idea that peaceful protestors would believe that even though Illinois has no cash bail, they would somehow be at risk of federal prosecution and subject to the nonexistent federal cash bail system[12] for blocking a public highway is frivolous. There is simply nothing that would support Plaintiff's argument, and this sort of frivolous argument warrants sanctions. *Burda v. M. Ecker Co.*, 2 F.3d 769, 777 (7th Cir. 1993) (affirming sanctions award where "[p]laintiff's position was not supported by any colorable legal argument").

### 3. Plaintiff fails to demonstrate that the underlying tort claims are not frivolous.

#### a. Plaintiff fails to rebut that his negligence claim (Count II) is sanctionable.

None of Plaintiff's arguments about his negligence claim against CJE rebut that it is sanctionable. Plaintiff wrongly claims that "[t]he Defendants misstate the law" on private rights of action under the Illinois Vehicle Code (the "Code"). (ECF 92, Pl.'s Opp. Mot. Sanctions at 4.) But Plaintiff fails to identify *any* chapter in the Code that provides for a private right of action (*id.*), because there is none. (ECF 72, CJE's Mem. Supp. Mot. Sanctions at 11).

Plaintiff also argues that the violation of a statute—in this case the Code—is prima facie evidence of negligence and creates a cause of action where the violation directly and proximately injures the plaintiff. (ECF 91, Pl.'s Opp. Motion Dismiss at 26-28.) However, "ordinances relating

---

[11] Indeed, Plaintiff relies on *United States v. Guest*, 383 U.S. 745, 760 (1966), but it is inapposite. There, members of the Ku Klux Clan were prosecuted under 18 U.S.C. § 241 for conspiring to deprive Black Americans of their rights by "shooting," "beating," and "killing" them in disguise on the highway, which impeded them from interstate travel. The suggestion by Plaintiff and his counsel that this same statute would be used to prosecute peaceful protesters that injured no one is nothing short of frivolous.

[12] *See* Didwania, *Discretion and Disparity in Federal Detention*, 115 Nw. U. L. Rev. 1261, 1268 (2021).

11

to the public right of an unobstructed passage on a public highway" cannot be used to "impose liability" because any "duty imposed" by the ordinance "is plainly for the benefit only of the public at large," and "a violation of the [ordinance] is of no evidential value upon the question of negligence" in that circumstance. *Nichols by Nichols v. Sitko*, 510 N.E.2d 971, 974 (Ill. App. 1987). And even if Plaintiff could conjure up a basis to impose negligence liability, Plaintiff's claim would still be frivolous because the injuries he purportedly suffered—missing a meeting and networking session, anxiety, and lost time—are not the types of injuries the Code was designed to protect. *See Miller v. Highway Comm'r of N. Otter Tp. Rd. Dist.*, 801 N.E.2d 599, 610–11 (Ill. App. 2003) (affirming dismissal because harm targeted by ordinance was not the injury suffered); *Gouge v. Cent. Ill. Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991) (same). Here, Plaintiff's articulation of his injuries in his brief—loss of liberty and freedom of movement, and emotional distress—also do not fit the Code's public safety purpose.[13]

Plaintiff alternatively argues that the Court can imply a cause of action under the Code (ECF 91, Pl.'s Opp. Mot. Dismiss at 28), but paradoxically, acknowledges that he "***does not plead an implied cause of action***," *id.* at 27 (emphasis in original). It "is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). And even if Plaintiff had plead an implied cause of action in the SAC, such a cause of action would also be frivolous as Plaintiff does not satisfy any of the elements for an implied cause of action. *See McCarthy v. Kunicki*, 823 N.E.2d 1088,

---

[13] The cases Plaintiff cites prove that the Code's purpose is to protect against physical harm as they all involve some kind of physical safety issue. *See, e.g.*, *Scott v. Aldi, Inc.*, 703 N.E.2d 526, 529-30 (Ill. App. 1998) (personal injury action); *Schultz v. Siddens*, 548 N.E.2d 87, 89 (Ill. App. 1989) (same); *Harper v. Epstein*, 306 N.E.2d 690, 692 (Ill. App. Ct. 1974) (same); *Kacena v. George W. Bowers Co.*, 211 N.E.2d 563, 567 (Ill. App. 1965) (same). Plaintiff cites no precedent where a court permitted a common law negligence claim to proceed based on the violation of the Code where the injuries were not physical, and there is no nonfrivolous argument for extending the law given the purpose of the Code.

1097 (Ill. App. 2005). *First*, Plaintiff's "injury"—anxiety from being stuck in traffic and missing a meeting from being delayed—is not one the statute was designed to prevent.[14] *See id.*; *supra* p. 12; *see also Passarella v. NFI Interactive Logistics, LLC*, 2015 WL 4148674, at *8 (N.D. Ill. July 9, 2015). *Second*, a private right of action is not consistent with the underlying purpose of the Code to protect human life. And awarding nominal damages to private parties who get stuck in traffic does not achieve the Code's goal. *Lastly*, an implied private right of action is not necessary to provide an adequate remedy under the Code as violations of the Code are already traditionally prosecuted by the State's Attorney. *See* 625 ILCS § 5/16-102.

      **b.**      **Plaintiff fails to rebut that his false imprisonment claim (Count I) is frivolous.**

Plaintiff's opposition fails to rebut that Count I is frivolous. *First*, Plaintiff's reliance on the 40-year-old opinion in *Robinson v. Miller*, 1985 Ill. App. LEXIS 2179 (Ill. App. May 14, 1985) does not support his claim because it is an "*unpublished* Illinois Appellate Court opinion, so it cannot be cited as precedent under Illinois Supreme Court Rule 23(e)." *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2020 WL 1330654, at *3 (N.D. Ill. Mar. 22, 2020) (emphasis in original). Notwithstanding, *Robinson* is distinguishable. There, the defendants repeatedly blocked the only road accessing the plaintiffs' property, thereby sealing the plaintiffs in. 1985 Ill. App. LEXIS 2179 at *8-9. Here, Plaintiff admittedly was on a public highway and could leave his vehicle and walk in any direction. (*See* ECF 91, Pl.'s Opp. Mot. Dismiss at 23-24.)

*Second*, Plaintiff misleadingly cites only a selective portion of Restatement (Second) Torts

---

[14] Plaintiff argues that blockades create a risk to the public by preventing emergency vehicles from passing, but highways like I-190 have emergency lanes, and emergency vehicles frequently arrive to the scenes of accidents on highways when traffic is at a standstill due to the accidents. *See* 625 ILCS 5/11-709.1(b) (permitting emergency vehicles to drive in the shoulder lane). In any event, even if true, Plaintiff's alleged injuries have nothing to do with the prevention of emergency vehicles from passing, and he has not established how *his* alleged injuries—in contrast with an amorphous risk of harm to the public—fall within the injuries the Code was designed to protect.

13

§ 36, *comment a* (ECF 91, Pl.'s Opp. Mot. Dismiss at 24), and fails to reveal that *comment a* also provides that "it is unreasonable for one whom the actor intends to imprison to refuse to utilize a means of escape of which he is himself aware merely because it entails a slight inconvenience or requires him to commit a technical invasion of another's possessory interest . . . which subjects him at most to the risk of an action for nominal damages." Plaintiff's false imprisonment claim falls squarely within this additional language, which makes clear that Plaintiff's numerous "means of escape," even if unlawful, preclude his false imprisonment claim.

*Lastly*, Plaintiff cannot plausibly dispute that Restatement (Second) Torts § 36, which drove the opinion in *Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018), and which Illinois courts have adopted (*see Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir. 1992) (citing Restatement definition of closed confinement); *Morris v. Faulkner*, 361 N.E.2d 112, 114 (Ill. App. Ct. 5th 1977) (same)), requires "fixed" and "complete" boundaries. Like here, "one does not become liable for false imprisonment by intentionally preventing another from going in a particular direction in which he has a right or privilege to go." *Gable*, 338 F. Supp. 3d at 957.

## II. PLAINTIFF FAILS TO PLAUSIBLY REBUT THAT THE SAC WAS FILED AGAINST CJE FOR AN IMPROPER PURPOSE.

CJE demonstrated that the facts about Hamas and the IRGC in the SAC could only have been included to improperly suggest that CJE supported terrorism, rather than having any legitimate relevance to Plaintiff's claims. (ECF 72, CJE's Mem. Supp. Mot. Sanctions at 14-15.) Tellingly, Plaintiff's response fails to present *any* argument as to how his allegations have *any* legal materiality to his claims against CJE, much less show how they support his claims.[15] He cannot, because there is no legitimate reason to level those allegations against CJE. Plaintiff's

---

[15] Plaintiff even admits that his "claim isn't that Defendants' support of Hamas is actionable." (ECF 91, Pl.'s Opp. Mot. Dismiss at 16 n.4.)

inability to provide any legal justification for the graphic and prejudicial allegations itself shows that he and his lawyer had an improper purpose in suing CJE in the first instance. In light of the current debate in Congress around legislation that would grant the Treasury Department the authority to more easily strip organizations of their 501(c)(3) status if it deems that they are linked to terrorist organizations, Plaintiff's motive to harass and punish CJE is clear.[16]

Plaintiff and his counsel respond to CJE's demonstration of their improper purpose principally by attaching a self-serving declaration in which Plaintiff's counsel asserts that he would never bring a losing case (*see, e.g.*, ECF 92-1, Frank Decl. ¶ 8), but Plaintiff fails to set forth any factual or legal investigation that could even remotely provide a good faith justification for the claims he asserted against CJE.[17]

## CONCLUSION

CJE respectfully requests that this Court enter an order (1) sanctioning Plaintiff and his counsel; (2) awarding Defendant CJE reasonable attorneys' fees and costs incurred in connection with this action; (3) dismissing the SAC with prejudice against CJE; and (4) ordering any other sanctions or relief that the Court deems proper.[18]

---

[16] Plaintiff's reliance on *Mullen v. Butler*, is unavailing. There, the Seventh Circuit affirmed the denial of sanctions largely because it concluded that the plaintiff's allegations were in fact relevant to the plaintiff's claims. 91 F.4th 1243, 1249 (7th Cir. 2024).

[17] Plaintiff also argues that "[t]he cases in which a litigant has been found to violate the subjective prong of Rule 11 typically involve asserted claims that are baseless and frivolous and part of a pattern of repeated litigiousness." (ECF 92, Pl.'s Opp. Mot. Sanctions at 7.) That is the case here—Plaintiff ignores that this is now the third version of the complaint. And despite being presented with clear authority that his claims are frivolous as to CJE, Plaintiff and his counsel have persisted with this lawsuit. Similar to *Burda*, 2 F.3d 769, *Walton*, 2022 WL 480039, at *6, and *Eberhardt*, 2022 WL 22896754, at * 6, sanctions are warranted.

[18] Plaintiff also admits that "the court can correctly hold it does not currently have jurisdiction to order injunctive relief," (ECF 91, Pl.'s Opp. Mot. Dismiss at 13), which is an admission that the request for injunctive relief was baseless from the start.

Dated: April 28, 2025

Respectfully submitted,

*/s/ Precious S. Jacobs-Perry*
Precious S. Jacobs-Perry (ARDC No. 6300096)
Ali I. Alsarraf (ARDC No. 6339931)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
pjacobs-perry@jenner.com
aalsarraf@jenner.com

*Counsel for Defendant Tides Center d/b/a Community Justice Exchange*