IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, A PROJECT OF WESPAC FOUNDATION, INC.; WESPAC FOUNDATION, INC.; DISSENTERS; JEWISH VOICE FOR PEACE; TIDES CENTER, D/B/A COMMUNITY JUSTICE EXCHANGE; JINAN CHEHADE; SUPERIOR MURPHY; RIFQA FALANEH; AND SIMONE TUCKER,<br><br>*Defendants*. | No. 1:24-cv-8209<br><br>Hon. Mary L. Rowland<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**DEFENDANT TIDES CENTER D/B/A COMMUNITY JUSTICE EXCHANGE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO RULE 12 OF THE <u>FEDERAL RULES OF CIVIL PROCEDURE</u>**

# INTRODUCTION[1]

The Motion to Dismiss demonstrates that the Second Amended Complaint ("SAC") should be dismissed with prejudice. Indeed, every version of Plaintiff's complaint has failed to state any legally cognizable claim against Tides Center d/b/a Community Justice Exchange ("CJE"), a nonprofit that created a nationwide bail fund in line with its mission to end incarceration and detention.[2] After three complaints, there are no allegations in the SAC related to CJE other than its creation of a nationwide bail fund. As a result, Plaintiff's claims against CJE are not plausible and must be dismissed. Plaintiff's assertion that countless independent individuals, not before this Court, were incentivized to protest in Chicago because of CJE's nationwide bail fund is meritless and unsupported by any allegations of fact. And Plaintiff's opposition brief does nothing to demonstrate that Plaintiff has standing to bring his meritless claims against CJE or to rebut the fatal defects that make clear that the claims against CJE for conspiracy and aiding and abetting negligence and false imprisonment are meritless.

# ARGUMENT

## I. PLAINTIFF FAILS TO OVERCOME THE FATAL DEFECTS IN HIS PERSONAL JURISDICTION ARGUMENTS.

Despite Plaintiff's arguments to the contrary (ECF 91, Pl.'s Opp. Mot. Dismiss at 50-51), his failure to plead conspiracy and aiding and abetting liability (*infra* Section III) dooms his arguments regarding personal jurisdiction. "A complaint replete with legal conclusions [that] lacks any basis from which a conspiracy could be inferred" cannot support personal jurisdiction. *Ahmed v. Quinn*, 1997 WL 471335, at *3 (7th Cir. Aug. 13, 1997). Indeed, "[t]he cases are unanimous

---

[1] CJE incorporates by reference the arguments it makes in its Reply in Support of its Motion for Sanctions Pursuant to Rule 11, ECF 95.
[2] Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Apr. 28, 2025); *Mussat v. Power Liens, LLC*, 2014 WL 3610991 at *3 (N.D. Ill. Jul. 21, 2014) (noting that courts have the discretion to take judicial notice of the contents of a website).

that a bare allegation of conspiracy between the defendant and a person within the jurisdiction of the court is not enough." *Stauffacher v. Bennet*, 969 F.2d 455, 460 (7th Cir. 1992) (collecting cases) (superseded on other grounds); *Bernhard v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022) (circumstantial aiding and abetting allegations that fail to connect defendant to the principal are "insufficient" to confer personal jurisdiction). To demonstrate a prima facie case of personal jurisdiction based on conspiracy, plaintiffs must allege some facts from which the court can find a meeting of the minds among the defendants. *Ahmed*, 1997 WL 471335, at *3; *Kunik v. Racine Cnty.*, 946 F.2d 1547, 1580 (7th Cir. 1991). As discussed at length in CJE's opening brief (and *infra* Section III), Plaintiff has failed to allege any facts that would support any plausible conspiracy involving CJE or any plausible tortious conduct that CJE knowingly and substantially assisted. As a result, there is nothing to support personal jurisdiction over CJE in Illinois.

Further, Illinois federal and state courts have long criticized conspiracy liability as the basis for personal jurisdiction over concerns that it does not comply with the federal minimum contacts requirement. *See, e.g.*, *Cebulske v. Johnson & Johnson*, 2015 WL 1403148, at *3-4 (S.D. Ill. Mar. 25, 2015) (noting that courts "are moving away from [conspiracy] theory as a basis for establishing personal jurisdiction") (collecting cases); *see also Green v. Advance Ross Elecs. Corp.*, 427 N.E.2d 1203, 1208 (Ill. 1981) ("The idea of jurisdiction based on the acts of co-conspirators has been questioned."); *Knaus v. Guidry*, 906 N.E.2d 644, 659-61 (Ill. App. 2009) ("[O]ur supreme court has indicated a hesitancy to approve the conspiracy theory of jurisdiction."); *Ploense v. Electrolux Home Prods., Inc.*, 882 N.E.2d 653, 667 (Ill. App. 2007) (holding that conspiracy claims may not comply with the federal minimum contacts requirement). And the Seventh Circuit has questioned the legitimacy of the use of a conspiracy claim as the basis for establishing personal jurisdiction by declaring that it "may not be valid in Illinois." *Smith v. Jefferson Cnty. Bd. of Edu.*, 378 Fed.

Appx. 582, 585-86 (7th Cir. 2010) (holding that more than a simple allegation of conspiracy is required to establish jurisdiction over a non-resident defendant).

In *Cebulske*, the court rejected plaintiff's theory of personal jurisdiction because it rested entirely on the allegation that the defendant "conspired" with co-defendants and made "no claims as to [defendant's] individual conduct in Illinois." 2015 WL 1403148, at *3. Similarly, in *Hang Glide USA, LLC v. Coastal Aviation Maint., LLC*, the court refused to extend personal jurisdiction based on a conspiracy claim and noted that recent cases had "dashed cold water on the prospect." 2017 WL 1430617, at *3 (N.D. Ill. Apr. 18, 2017) (citing *Cebulske*, 378 Fed. Appx. at 585-86).[3]

This Court should flatly reject Plaintiff's attempt to use a conspiracy claim to assert personal jurisdiction over CJE, especially one that alleges no conduct in Illinois by CJE. (*See* ECF 91, Pl.'s Opp. Mot. Dismiss at 50-51.) As Plaintiff's own case also demonstrates, personal jurisdiction requires conduct in or directed specifically to Illinois.[4]

## II. PLAINTIFF FAILS TO DEMONSTRATE THAT HE HAS ARTICLE III STANDING.

And, even if Plaintiff could get around the lack of personal jurisdiction, he cannot get around his lack of standing. Plaintiff attempts to assert Article III standing (ECF 91, Pl.'s Opp. Mot. Dismiss at 8-12), but the SAC's allegations present, at worst, amorphous harm in the form

---

[3] Plaintiff's reliance on *Textor v. Bd. of Regents*, 711 F.2d 1387, 1392-93 (7th Cir. 1983), and *Zivitz v. Greenberg*, 1999 WL 984397, at *5 (N.D. Ill. Oct. 25, 1999), is misplaced. Since these more than 25-year-old cases were decided, the Seventh Circuit, Northern District of Illinois, and Illinois Supreme Court have questioned the viability of the conspiracy theory of personal jurisdiction. (*See infra* pp. 2-3.)

[4] *Compare Am. Bridal & Prom Indus. Ass'n v. The P'ships & Uninc. Ass'ns*, 192 F. Supp. 3d 924, 932 (N.D. Ill. 2016) (declining to exercise personal jurisdiction over out of state defendant because a website posting cannot confer personal jurisdiction where the complaint "provided no facts that show that . . . defendant[] . . . aimed any action at Illinois") and *Morton Grove Pharma., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 485 F. Supp. 2d 944, 948 (N.D. Ill. 2007) (declining to exercise personal jurisdiction over out of state defendant because a general online solicitation of donations is not a sufficient basis for extending personal jurisdiction when there is no conduct alleged to have occurred in Illinois), *with Tamburo v. Dworkin*, 601 F.3d 693, 679 (7th Cir. 2010) (out-of-state defendants' online activities were sufficient to support personal jurisdiction because they directly targeted the plaintiff's Illinois business) (cited at ECF 91, Pl.'s Opp. Mot. Dismiss at 50).

of harassment, annoyance, and a general loss of time (ECF 69, SAC ¶ 116), which are not sufficient to establish Article III standing. Plaintiff tries to distinguish *Keller v. Lvnv Funding, LLC*, 2022 WL 7501335, at *1 (N.D. Ill. Oct. 13, 2022), but the reasoning in *Keller* rests squarely on the fact that the complaint, like the SAC, "mention[ed] harm only in the form of harassment and annoyance and a general loss of 'time and money.'" And the court expressly found that "'[a]nnoyance, indignation, stress, . . . are not concrete injuries.' . . . [And, although t]he loss of time and money might be enough to establish Article III standing, [that is] *only when accompanied by specific allegations of tangible harm*." *Id.* at 2 (emphasis added). Here, Plaintiff simply fails to allege any concrete injury to support Article III standing.

Moreover, Plaintiff's alleged injuries are in no way plausibly or fairly traceable to CJE's establishment of a nationwide bail fund in line with its mission.[5] To establish standing as to CJE, the traceability requirement requires that Plaintiff plausibly allege a "line of causation" to *CJE's* conduct (not the conduct of other defendants) that is not "too speculative or attenuated." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024). "Courts find a lack of traceability when a plaintiff sues a defendant about a decision made by someone else." *Haymarket DuPage, LLC v. Vill. of Itasca*, 2024 WL 809110, at *13-15 (N.D. Ill. Feb. 27, 2024).

In *Haymarket*, the court found that the denial of plaintiff's applications to build a substance abuse treatment center was "not fairly traceable to the conduct" of two defendants, because they were merely "voices in a chorus of opposition to the proposal" and worked with the village board to deny plaintiff's application but "were not [and did not control] the decisionmakers." *Id.* at *13.

---

[5] Plaintiff also fails to support his Article III standing argument as to his claims against CJE premised on the actions of any of CJE's purported co-conspirators because, as discussed below (*infra* Section III), Plaintiff's conspiracy claims against CJE are meritless. *See Hope, Inc. v. DuPage Cnty. Ill.*, 738 F.2d 797, 808 (7th Cir. 1984) (refusing to allow "plaintiffs to establish standing by simply including in their complaint a bald and unsubstantiated assertion of conspiracy which finds no basis in concrete fact").

And, in cases similar to *Haymarket* (like here), courts routinely find a lack of traceability when the defendant is being sued for the actions of independent third parties. *Id.* at *13-15 (collecting cases). Similarly, in *Little v. KPMG LLP*, the Fifth Circuit affirmed dismissal of a complaint against KPMG by a competitor because it depended on speculation about actions of "third parties not before the court." 575 F.3d 533, 540–41 (5th Cir. 2009). The court found that the complaint's allegation *"*[t]hat KPMG's Texas clients would have sought to replace KPMG require[d] speculation," and any alleged injury based on the complaint's allegations was "too conjectural or hypothetical to confer standing." *Id.*

Here, similar to *Little* and *Haymarket*, the line of causation Plaintiff asks this Court to draw between CJE's establishment of a nationwide bail fund in line with its mission and Plaintiff's alleged harm of being stuck in traffic in Chicago (ECF 91, Pl.'s Opp. Mot. Dismiss at 11) is meritless. Indeed, it requires the Court to make too many impermissibly speculative leaps regarding the decisions of countless independent third parties to conclude that any individual protestor's decision to participate in the protest in Chicago was influenced by the creation of CJE's nationwide bail fund. For example, the Court would have to speculate that each individual would have: (1) not only known about the existence of the bail fund, but also how much was in the bail fund; (2) known that once they applied, there would still be funds available; (3) known that they would have been approved once they applied; (4) not known that there is no cash bail in Illinois; (5) not accepted representation by the Cook County public defender's office; (6) not have paid for their own lawyer; (7) not sought pro bono assistance; and (8) had the slightest concern about a federal prosecution or the nonexistent federal cash bail system. Plaintiff does not cite any facts to support any of these speculative leaps, so there are no facts to satisfy even a relaxed plausibility standard for the claims against CJE. Courts should dismiss claims with prejudice where, as here,

5

the complaint fails to support a plausible claim on its face. *See Bakker v. Mokena Fire Prot. Dist.*, 2020 WL 1139262, at *4 (N.D. Ill. Mar. 9, 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. PLAINTIFF FAILS TO REBUT THAT HE FAILS TO STATE A CLAIM.

### A. CJE Established That The Conspiracy Claims Are Meritless.

Plaintiff explains in his response that his "common law tort" claim is a negligence claim. (ECF 91, Pl.'s Opp. Mot. Dismiss at 29 n.9.) This highlights the claim's meritless nature because, as CJE previously explained (ECF 72, CJE's Mem Supp. Mot. Sanctions at 9 n.5), there is no claim for conspiracy to commit negligence. *See Rogers v. Furlow*, 699 F. Supp. 672, 675 (N.D. Ill. 1988). Even apart from this, the conspiracy claims against CJE are meritless.

CJE established that Plaintiff fails to allege any facts that support his conclusion that CJE entered into *any* agreement to commit tortious conduct. *First*, Plaintiff argues only that CJE "*conspired to support* Defendants' scheme" (ECF 69, SAC ¶¶ 120, 127), but that is a mere conclusion the Court need not accept because it is not supported by any facts.[6] And the fact that a nonprofit has set up a nationwide bail fund, standing alone, does not (and cannot) establish the fact of an agreement to commit or support tortious conduct; the SAC contains no facts to support any inference that CJE agreed to commit or support tortious conduct. And "without any detail to flesh out [the] conclusory assertion" that there was "an agreement between two or more persons," the claim "lacks plausibility." *Ma v. CVS Pharma., Inc.*, 833 Fed. Appx. 10, 14 (7th Cir. 2020).

*Second*, Plaintiff's only allegations regarding CJE in the SAC are that it created, advertised, and managed a nationwide bail fund (*see generally* ECF 69, SAC), which do not support any conclusion that CJE entered into an agreement to further the alleged conspiracy as defined by

---

[6] *See Lanahan v. County of Cook*, 41 F.4th 854, 862 (7th Cir. 2022); *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996).

Plaintiff—"to unlawfully block[] I-190's offramp into O'Hare" or "to falsely imprison unsuspecting motorists." (*Id.* ¶¶ 6, 126.) Plaintiff has not alleged a single fact regarding CJE having anything to do with organizing or participating in blocking traffic on I-190. (*See generally id.*) And soliciting funds for a nationwide bail fund did not further the objectives of the alleged conspiracy in Chicago without requiring the Court to make numerous impermissibly speculative leaps. *See LoggerHead Tools, LLC v. Sears Hldg. Corp.*, 19 F. Supp. 3d 775, 783 (N.D. Ill. 2013); *Ollie v. Bludworth*, 2013 WL 2045310, at *2 (S.D. Ill. May 14, 2013); *supra* p. 4-5.

*Third*, the SAC does not support any inference that CJE created the bail fund for any purpose other than fulfilling its mission to end detention and incarceration. Had Plaintiff conducted a proper pre-suit investigation, he would have learned that CJE is a nonprofit organization that experiments with ways to end all forms of incarceration and detention, and the nationwide bail fund was in line with its mission—not a conspiratorial act.[7] In fact, CJE hosts the National Bail Fund Network, and its website contains links to over 90 bail funds.[8] Plaintiff's attempt to assign conspiracy liability to a nonprofit that is fulfilling its legal mission is unsupportable.

*Fourth*, there are no allegations that would support any inference that CJE's nationwide bail fund "incentivized [countless individual independent protestors'] participation in blockading I-190 into O'Hare Airport." (*See supra* pp. 4-5; ECF 69, SAC ¶¶ 120, 127; *see also id.* ¶¶ 63-64.) And even if the Court could get beyond the many conjectural and speculative leaps that Plaintiff needs to support his conclusion that a nationwide bail fund somehow incentivized countless individuals to participate in the protest in Chicago, that is not sufficient to establish conspiracy liability because the bail fund is in line with CJE's mission. *See In re Hearthside Banking Co.,*

---

[7] Community Justice Exchange, *About Us*, https://www.communityjusticeexchange.org/en/about-us (last visited Apr. 28, 2025).
[8] Community Justice Exchange, *National Bail Fund Network*, https://www.communityjusticeexchange.org/en/nbfn-directory (last visited Apr. 28, 2025).

7

*Inc.*, 402 B.R. 233, 251-52 (N.D. Ill. 2009).

*Fifth*, although Plaintiff tries to make a distinction between setting up a nationwide bail fund after an event and before an event (ECF 91, Pl.'s Opp. Mot. Dismiss at 45-46), there is no such distinction. Soliciting funds for a nationwide bail fund, even if in advance of an event where arrests may occur, inherently alone cannot qualify for conspiracy liability. *See United States v. McKinney*, 954 F.2d 471, 475 (7th Cir. 1992) (acts that do "not contribute to accomplishing the charged conspiracy's goal" are "not a valid basis for a conspiracy"). Indeed, Plaintiff alleges only that CJE *solicited* funds, not that it actually contributed or distributed funds in Chicago. The mere legal *solicitation* of funds nationwide—a First Amendment-protected activity—for a bail fund "did not contribute to accomplishing the charged conspiracy's goal" as conclusorily described by Plaintiff. *See id.* at 475. The SAC presents no fact showing that the Chicago protest would not have proceeded exactly as it did if there was no bail fund. And, there are no allegations showing that CJE engaged in or supported any tortious conduct in any other way.

*Sixth*, although Plaintiff argues that "[a]greements to pay bail and legal expenses have long been a feature of conspiracies" (ECF 91, Pl.'s Opp. Mot. Dismiss at 45), but the cases he cites bear no resemblance to the conduct he alleges about CJE in the SAC. Indeed, all of the cases Plaintiff cites—*United States v. Applins*, 637 F.3d 59, 78 (2d Cir. 2011), *United States v. Gonzalez*, 2018 WL 6834315, at *13 (D. Nev. Dec. 28, 2018), and *United States v. Hodge*, 548 F.2d 1347, 1354-55 (9th Cir. 1977)— involve active participants in broad criminal conspiracies who had direct agreements with specific individuals to pay their bail and legal fees to induce them to commit crimes. Here, CJE simply solicited funds for a nationwide bail fund in line with its mission, and Plaintiff does not allege that CJE made any agreement with any protestor to guarantee the payment

of their bail or legal fees to induce them to block I-190.[9] (*See generally* ECF 69, SAC.)

*Lastly*, Plaintiff asserts without factual support that CJE created the bail fund to get protesters back on the streets more quickly to engage in similar protests. (*Id.* ¶ 63.) This is a conclusory statement that the Court need not accept. *Gunawardana v. Am. Veterinary Med. Ass'n*, 515 F. Supp. 3d 892, 911 (S.D. Ill. 2021), *aff'd*, 2021 WL 4951697 (7th Cir. Oct. 25, 2021). The SAC does not even allege that there were any subsequent similar protests planned.

### B.  CJE Established That Plaintiff's Aiding And Abetting Claims Are Meritless.

#### 1.  Plaintiff fails to rebut that CJE did not engage nor seek to engage in tortious activity.

Plaintiff's opposition does not demonstrate how the SAC satisfies the requirement that a defendant be "aware of his role as part of the overall or tortious activity at the time that he provides the assistance." *Bank of America, N.A. v. Knight,* 875 F. Supp. 2d 837, 849 (N.D. Ill. 2012). The SAC alleges that "A15 Action's stated goal was to block 'the arteries of capitalism and jam[] the wheels of production,'" and "'to identify and blockade major choke points in the economy … with the aim of causing the most economic impact.'" (ECF 69, SAC ¶ 54.) However, the SAC does not allege that CJE engaged in any direct communications with any of the countless independent individual Chicago protestors. Indeed, the SAC does not allege that CJE did anything other than create a nationwide bail fund. The SAC is "wholly devoid of any factual allegations that plausibly

---

[9] Plaintiff's reliance on *C&K Coal Co. v. United Mine Workers*, 704 F.2d 690, 696 (3d Cir. 1983) and *Array Techs., Inc. v. Mitchell*, 305 F. Supp. 3d 1256, 1274 (D.N.M. 2018) (ECF 91, Pl.'s Opp. Mot. Dismiss at 46), is misplaced. In *C&K Coal*, the district court specifically found, and the Third Circuit affirmed, that the allegations regarding the legal defense fund *did not* subject the defendants to conspiracy liability. 704 F.2d at 696. Instead, the court found that the defendants violated provisions of the National Labor Management Relations Act. *Id.* In *Array Techs.*, the defendant directly induced a competitor's employee to breach his fiduciary duties by promising to pay the employee's legal expenses. 305 F. Supp. 3d at 1274. Here, there is no link between CJE and any Chicago protestor. It is meritless to seek conspiracy liability without any direct promise to actually pay any specific Chicago protestor's bail or legal fees, or any other individual who participated in the more than 80 protests across the country, to induce them to commit a crime. (*See supra* pp. 4-5.)

suggest that [CJE] was regularly aware of its role in the alleged tortious activity and knowingly and substantially assisted" that alleged tortious activity. *Bank of America,* 875 F. Supp. 2d at 849.

### 2. Plaintiff fails to rebut that CJE did not knowingly or substantially assist any tort.

Plaintiff's argument that he satisfies the third element—knowing and substantial assistance—is meritless.[10] Contrary to Plaintiff's suggestion (ECF 91, Pl.'s Opp. Mot. Dismiss at 48), the solicitation of funds for a nationwide bail fund could not have *substantially* assisted the Chicago protesters. (*See supra* pp. 4-5.) All Plaintiff alleges CJE did was to *solicit* contributions for a nationwide bail fund—a First Amendment-protected activity. Plaintiff alleges *no* facts regarding knowing or substantial assistance of the blocking of traffic. Indeed, Plaintiff does not allege that CJE (1) distributed *any* funds to anyone in Chicago, (2) guaranteed the bail and legal expenses of anyone in Chicago, (3) had knowledge of the identity of or communicated with anyone in Chicago, or (4) received applications from or approved applications for anyone in Chicago.

Having failed to allege facts to show substantial assistance, Plaintiff nonetheless argues that the question of substantial assistance is one for the jury (ECF 91, Pl.'s Opp. Mot. Dismiss at 48). But courts routinely dismiss aiding and abetting claims where, like here, substantial assistance allegations are deficient. *See, e.g.*, *FTC v. Walmart Inc.*, 664 F. Supp. 3d 808, 828-29 (N.D. Ill. 2023) (dismissing aiding and abetting claim where plaintiff failed to sufficiently allege substantial assistance); *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 725 (N.D. Ill. 2015) (same).

In *FTC*, 664 F. Supp. 3d at 828-29, the court dismissed the plaintiff's claims alleging that Walmart substantially assisted fraud by knowingly processing fraudulent transactions, because

---

[10] Aiding and abetting liability requires actual knowledge, constructive knowledge is not sufficient under Illinois law. *See Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986); *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 724 (N.D. Ill. 2015).

"the complaint [did not] connect Walmart's general awareness of red flags and fraud with its specific knowledge about the vast majority of money transfers at issue in this case, such that processing those transactions became something other than routine." Here, the SAC does not connect CJE's general awareness of the A15 Action with any specific knowledge of the blockading of I-190 or any knowledge other than general knowledge of the more than 80 protests that were to take place on April 15, 2024. Similar to *FTC*, there is nothing that supports any inference other than the reality that CJE's actions were routine and in line with its general mission.

Plaintiff also argues that there was substantial assistance because although there is no cash bail in Illinois, there is a possibility of "the imposition of bail" in the federal criminal justice system. (ECF 91, Pl.'s Opp. Mot. Dismiss at 49-50.) But Plaintiff's argument does not address the core flaw—CJE's creation of a nationwide bail fund did not substantially assist any individual independent protester in Chicago. Plaintiff's argument requires too many impermissibly speculative and conjectural leaps, none of which are plausible.[11] The idea that peaceful protestors would believe that even though Illinois has no cash bail, they would somehow be at risk of federal prosecution and subject to the nonexistent federal cash bail system[12] for blocking a public highway is meritless. There is simply nothing that would support Plaintiff's argument.

> **C.  Plaintiff Fails To Demonstrate That The Underlying Tort Claims Are Not Meritless.**
>
> > **1.  Plaintiff fails to rebut that his negligence claim (Count II) is meritless.**

None of Plaintiff's arguments rebut the meritless nature of Count II. Plaintiff wrongly

---

[11] Indeed, Plaintiff relies on *United States v. Guest*, 383 U.S. 745, 760 (1966), but it is inapposite. There, members of the Ku Klux Clan were prosecuted under 18 U.S.C. § 241 for conspiring to deprive Black Americans of their rights by "shooting," "beating," and "killing" them in disguise on the highway, which impeded them from interstate travel. The suggestion by Plaintiff and his counsel that this same statute would be used to prosecute peaceful protesters that injured no one is meritless.

[12] *See* Didwania, *Discretion and Disparity in Federal Detention*, 115 Nw. U. L. Rev. 1261, 1268 (2021).

claims that "[t]he Defendants misstate the law" on private rights of action under the Illinois Vehicle Code (the "Code"). (ECF 92, Pl.'s Opp. Mot. Sanctions at 4.) But Plaintiff fails to identify *any* chapter in the Code that provides for a private right of action, (*see id.*; ECF 91, Pl.'s Opp. Mot. Dismiss at 26-32), because there is none (ECF 72, CJE's Mem. Supp. Mot. Sanctions at 11).

Plaintiff also argues that the violation of the Code is prima facie evidence of negligence. (ECF 91, Pl.'s Opp. Motion Dismiss at 26-28.) However, "ordinances relating to the public right of an unobstructed passage on a public highway" cannot be used to "impose liability" because any "duty imposed" by the ordinance "is plainly for the benefit only of the public at large," and "a violation of the [ordinance] is of no evidential value upon the question of negligence" in that circumstance. *Nichols by Nichols v. Sitko*, 510 N.E.2d 971, 974 (Ill. App. 1987). And even if Plaintiff could conjure up a basis to impose negligence liability, Plaintiff's claim would still be meritless because the injuries he purportedly suffered—missing a meeting and networking session, anxiety, and lost time—are not the types of injuries the Code was designed to protect. *See Miller v. Highway Comm'r of N. Otter Tp. Rd. Dist.*, 801 N.E.2d 599, 610–11 (Ill. App. 2003); *Gouge v. Cent. Ill. Pub. Serv. Co.*, 582 N.E.2d 108, 112 (Ill. 1991). Here, Plaintiff's articulation of his injury in his brief—loss of liberty and freedom of movement, and emotional distress—also does not fit the Code's public safety purpose.[13]

Plaintiff alternatively argues that the Court can imply a cause of action under the Code (ECF 91, Pl.'s Opp. Mot. Dismiss at 28), but paradoxically, Plaintiff acknowledges that he "***does not plead an implied cause of action***," *id.* at 27 (emphasis in original). It "is axiomatic that [a]

---

[13] The cases Plaintiff cites prove that the Code's purpose is to protect against physical harm as they all involve some kind of physical safety issue. *See, e.g.*, *Scott v. Aldi, Inc.,* 703 N.E.2d 526, 529-30 (Ill. App. 1998) (personal injury action); *Schultz v. Siddens*, 548 N.E.2d 87, 89 (Ill. App. 1989) (same); *Harper v. Epstein*, 306 N.E.2d 690, 692 (Ill. App. Ct. 1974) (same); *Kacena v. George W. Bowers Co.,* 211 N.E.2d 563, 567 (Ill. App. 1965) (same). Plaintiff cites no precedent where a court permitted a negligence claim to proceed based on the violation of the Code where the injuries were not physical.

complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). And even if Plaintiff had plead an implied cause of action, it would also be meritless as Plaintiff does not satisfy any of the elements for an implied cause of action. *See McCarthy v. Kunicki*, 823 N.E.2d 1088, 1097 (Ill. App. 2005). *First*, Plaintiff's "injury"—anxiety from being stuck in traffic and missing a meeting from being delayed—is not one the statute was designed to prevent.[14] *See id.*; *supra* p. 12; *see also Passarella v. NFI Interactive Logistics, LLC*, 2015 WL 4148674, at *8 (N.D. Ill. July 9, 2015). *Second*, a private right of action is not consistent with the purpose of the Code to protect life. And awarding nominal damages to private parties who get stuck in traffic does not achieve the Code's goal. *Lastly*, an implied private right of action is not necessary to provide an adequate remedy as Code violations are already traditionally prosecuted by the State's Attorney. *See* 625 ILCS § 5/16-102.

### 2. Plaintiff fails to rebut that his false imprisonment claim (Count I) is meritless.

Plaintiff's opposition fails to rebut that Count I is meritless. *First*, Plaintiff's reliance on the 40-year-old opinion in *Robinson v. Miller*, 1985 Ill. App. LEXIS 2179 (Ill. App. May 14, 1985) does not support his claim because it is an "*unpublished* Illinois Appellate Court opinion, so it cannot be cited as precedent under Illinois Supreme Court Rule 23(e)." *Cary v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 2020 WL 1330654, at *3 (N.D. Ill. Mar. 22, 2020) (emphasis in original). Notwithstanding, *Robinson* is distinguishable. There, the defendants repeatedly blocked the only road accessing the plaintiffs' property, thereby sealing the plaintiffs in. 1985 Ill. App. LEXIS 2179

---

[14] Plaintiff argues that blockades create a risk to the public by preventing emergency vehicles from passing, but highways like I-190 have emergency lanes, and emergency vehicles frequently access highways when traffic is at a standstill due to the accidents. *See* 625 ILCS 5/11-709.1(b). In any event, even if true, Plaintiff's alleged injuries have nothing to do with the prevention of emergency vehicles from passing, and he has not established how *his* alleged injuries —in contrast with an amorphous risk of harm to the public— fall within the injuries the Code was designed to protect.

13

at *8-9. Here, Plaintiff admittedly was on a public highway and could leave his vehicle and walk in any direction. (*See* ECF 91, Pl.'s Opp. Mot. Dismiss at 23-24.)

*Second*, Plaintiff misleadingly cites only a selective portion of Restatement (Second) Torts § 36, *comment a* (ECF 91, Pl.'s Opp. Mot. Dismiss at 24), and fails to reveal that *comment a* also provides that "it is unreasonable for one whom the actor intends to imprison to refuse to utilize a means of escape of which he is himself aware merely because it entails a slight inconvenience or requires him to commit a technical invasion of another's possessory interest . . . which subjects him at most to the risk of an action for nominal damages." Plaintiff's false imprisonment claim falls squarely within this additional language, which makes clear that Plaintiff's numerous "means of escape," even if unlawful, preclude his false imprisonment claim.

*Lastly*, Plaintiff cannot plausibly dispute that Restatement (Second) Torts § 36, which drove the opinion in *Gable v. Universal Acceptance Corp.*, 338 F. Supp. 3d 943, 957 (E.D. Wis. 2018), and which Illinois courts have adopted (*see Albright v. Oliver*, 975 F.2d 343, 346 (7th Cir. 1992) (citing Restatement definition of closed confinement); *Morris v. Faulkner*, 361 N.E.2d 112, 114 (Ill. App. Ct. 5th 1977) (same)), requires "fixed" and "complete" boundaries. Like here, "one does not become liable for false imprisonment by intentionally preventing another from going in a particular direction in which he has a right or privilege to go." *Gable*, 338 F. Supp. 3d at 957.

## IV. THE SAC SHOULD BE DISMISSED WITH PREJUDICE.

This Court should dismiss the case against CJE with prejudice. In response to two separate communications from CJE regarding the meritless nature of Plaintiff's claims against CJE, Plaintiff has amended the complaint twice. And district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015); *Standard v. Nygren*, 658 F.3d 792,

801-02 (7th Cir. 2011) ("[T]he district court was well within its discretion in refusing to accept [plaintiff]'s proposed second amended complaint and dismiss the case with prejudice."). This case is ripe for dismissal with prejudice of all claims against CJE. *First*, for the reasons stated in the briefing on CJE's Motion for Rule 11 Sanctions (ECF 72, CJE's Mem. Supp. Mot. Sanctions at 13-15; ECF 95, CJE's Reply Supp. Mot. Sanctions at 14-15), Plaintiff has an improper purpose in asserting claims against CJE. *Second*, CJE would be prejudiced by giving Plaintiff yet "another bite[] at the apple," *Standard*, 658 F.3d at 801, as Plaintiff has demonstrated a repeated failure to allege any facts that would plausibly allege a claim against CJE (*compare* ECF 69, SAC, *with* ECF 33, First Am. Compl., and ECF 1, Compl.). *Foman v. Davis*, 371 U.S. 178, 182 (1962) (repeated failure to cure deficiencies is a sufficient basis to deny leave to amend). Lastly, any amendment would be futile because there is no claim for holding a nonprofit simply fulfilling its legal mission liable for the alleged tortious conduct of countless independent individuals. Plaintiff has failed to demonstrate how an amendment would change that. Indeed, Plaintiff did not add any new allegations regarding CJE in the First or Second Amended Complaint; he has only sought to contort the claims and law, but those efforts have already proved meritless.

## CONCLUSION

CJE respectfully requests that this Court enter an order dismissing the SAC with prejudice against CJE and ordering any other proper relief.[15]

Dated: April 28, 2025

Respectfully submitted,

*/s/ Precious S. Jacobs-Perry*
Precious S. Jacobs-Perry (ARDC No. 6300096)
Ali I. Alsarraf (ARDC No. 6339931)
JENNER & BLOCK LLP

---

[15] Plaintiff also admits that "the court can correctly hold it does not currently have jurisdiction to order injunctive relief." (ECF 91, Pl.'s Opp. Mot. Dismiss at 13.)

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
pjacobs-perry@jenner.com
aalsarraf@jenner.com

*Counsel for Defendant Tides Center d/b/a Community Justice Exchange*