UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>   *Plaintiff,*<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, *et al.*<br><br>   *Defendants.* | Case No. 1:24-cv-8209<br>Hon. Judge Mary L. Rowland |

**INDIVIDUAL DEFENDANTS' AND DISSENTERS REPLY IN SUPPORT OF**
**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker ("Individual Defendants") and Dissenters, by and through their undersigned counsel, respectfully submit this reply in support of their motion to dismiss Plaintiff Christopher Manhart's ("Plaintiff") second amended complaint with prejudice. In support, Individual Defendants and Dissenters state as follows:

**INTRODUCTION**

Plaintiff spent approximately one hour in a traffic jam before law enforcement cleared the roadway outside of O'Hare. He believes that this inconvenience to his travel schedule entitles him to his cut of a $36 million dollar damages verdict. He asks this Court to allow his case to proceed to a long, costly, and invasive discovery process against four individuals and five organizations, simply based upon trusting his belief that a few social media posts related to the events at O'Hare amounts to a sweeping, transnational conspiracy orchestrated by foreign states.

The Court should not allow his claims to survive this stage of the litigation. The Individual Defendants and Dissenters adopt by reference the arguments laid out in Defendant

1

Jewish Voices for Peace's ("JVP") reply, which provides ample detail as to the defects of Plaintiff's claims. ECF 94. The Individual Defendants and Dissenters provide two additional points for this Court's assessment. First, Plaintiff fails to plead an underlying tort violation. He misrepresents the content of his exhibits and declarations in order to mislead the Court. Second, Plaintiff fails to plausibly allege the existence of a conspiracy. A conspiracy requires an agreement. Nothing of the sort is plausibly alleged. That the Individual Defendants and Dissenters are politically committed to the same broader movement for Palestinian liberation does not mean that they participated in a transnational campaign orchestrated by foreign powers, as he would have this Court believe.

Plaintiff's Second Amended Complaint ("SAC") is his third attempt to fashion his hour spent in traffic into a broad, multi-million dollar class action. After multiple amendments, the fundamental issues remain the same. He has failed to plead any viable intentional tort claim against the Individual Defendants and Dissenters. Without an underlying tort, no conspiracy or aiding and abetting claim can survive. His case should be dismissed with prejudice.

## ARGUMENT

### I. Plaintiff fails to plead any underlying tort violation to sustain the rest of his claims

Plaintiff devotes the bulk of his response to arguing that the Individual Defendants and Dissenters alleged conduct was not protected under the First Amendment. The Court does not need to decide if this is protected conduct, since there is simply no underlying tort violation for which Plaintiff could recover.

For Defendant Falaneh, Plaintiff alleges that she is an attorney working for Palestine Legal out of Chicago and was previously the president of DePaul University's Students for Justice in Palestine chapter. ECF 69 ¶ 20; ECF 33-1 ¶ 50. Plaintiff's sole allegation linking her to

2

this blockade is an Associated Press article that labels her as "one of the organizers." *Id.* ¶ 49 & Ex. 35 at 129; Ex. 42 at 152 (social media post showing that same article with no further information regarding Ms. Falaneh). Falaneh did not adopt this title, nor has Plaintiff presented evidence that she was physically present at the blockade. This is the sum total of the evidence presented against her in this action. It is not enough to make out any claim that she is liable for any tort, and the fact that Plaintiff states it does cannot make it so.

      For Defendant Chehade, Plaintiff alleges that she is an attorney in Chicago at the Muslim Legal Fund who has held leadership roles in local chapters of Students for Justice in Palestine. ECF 69 ¶ 18; ECF 33-1 ¶ 51. Plaintiff states that Chehade was a part of the "sleeping dragon" blockade. ECF 69 ¶¶ 3, 70. In support, he cites third-party social media posts that do not picture Chehade. ECF 33-1 ¶¶ 36, 44-45, 56, 76-77 & Ex. 37. Beyond that, he relies on the fact of her arrest at O'Hare and irrelevant references to an event on March 11 that appears nowhere in his SAC, referencing videos allegedly posted by Chehade that are not a part of any filing. Like Falaneh, this is not enough to plausibly allege that she is liable for any tort.

      For Defendant Murphy, Plaintiff alleges that she is employed by a non-party and a board member of a non-party non-profit. ECF 69 ¶ 19. Plaintiff relies on the fact of her arrest at the blockade, third-party social media posts that do not picture her in the "sleeping dragon" formation, and appearance in a video that shows her off the highway and away from the formation. ECF 33-1 ¶¶ 36, 44-45, 56, 69, 70, 76-77. There is no allegation that Murphy was involved in any conduct related to Plaintiff or the alleged tort claims. This cannot support a viable tort claim in this allegedly multi-million dollar damages suit.

      For Defendant Tucker, Plaintiff alleges that she is employed as an organizer for JVP. ECF 69 ¶ 16; ECF 33-1 ¶ 58. Plaintiff speculates that JVP offered her this position by "reward[ing]

3

[her] work on the blockade with paid employment" and offers nothing to substantiate that claim. He alleges that she helped organize the blockade based upon third-party social media posts that do not picture her in the "sleeping dragon" formation, news media, or the fact of her arrest at O'Hare. Like Falaneh, that news outlets decide that she is an organizer of the action is not enough to justify her liability in a broad conspiracy for tort violations. ECF 33-1 ¶ 49. It is not enough to support a viable tort claim.

For Dissenters, Plaintiff alleges that Dissenters planned and executed both this event and other actions in Chicago. Plaintiff asserts without providing a shred of evidence that Dissenters planned, funded, and executed this action, though his evidence in support of this contention provides nothing to substantiate that fact. ECF 69 ¶¶ 48 n.24 (citing social media post by non-party account), 60 (discussing Plaintiff's theory as to the general goals of the A15 action), 61 (conclusory allegation that Dissenters was instrumental in planning this action); ECF 33-1 ¶ 48 (citing social media posts by Dissenters from multiple days after the O'Hare event). He asserts that Dissenters was incentivized to participate in the blockade based on the promise of a bail fund provided by Tides, but provides nothing beyond his bare belief to substantiate that point. ECF 69 ¶ 63.

What little support he does offer is social media posts. These posts are insufficient to make out a plausible allegation that Dissenters was involved in the funding and planning of a conspiracy. These posts either originate from third-party accounts, make no mention of Dissenters, and/or were posted multiple days after the events at O'Hare. ECF 33-1 ¶¶ 34 (citing posts from the A15 Action account), 36 (citing social media post from multiple months after the action), 37 (citing posts from the A15 Action account), 46 (citing posts from the SJP account), Ex. 42 (citing post by JVP), Ex. 24 (citing post from third-party account), Ex. 48 (citing post

4

from after the action stating that protestors had been released from police custody), Ex. 51 (citing post from third-party USCPR), Ex. 52 (citing post from third-party Red Horn Woman). The few posts he offers make no claim that Dissenters planned or executed this action. If anything, they provide reporting by an organization that cares about this cause on the events taking place at O'Hare. *Id.* Exs. 20, 32-34, 49. Plaintiff claims that each of these posts was done "in collaboration" with other defendants or non-parties, but his belief as to that fact does not guarantee its reality. To him, posting on social media alone is enough to implicate Dissenters and the other organizational defendants in a broad, allegedly complex, multinational conspiracy orchestrated by foreign governments. That is false. A pleading must proffer more than "mere conjecture" to allow his claim to survive. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do …").

Plaintiff likewise asserts that Dissenters has a "history" of blockades that then proves that Dissenters was involved in this conspiracy. *Id.* ¶¶ 66, 69, 72. But these references to other events, on other dates, in other locales, and involving other parties does nothing to plausibly allege that Dissenters was involved in coordinating this particular event.

Fundamentally, Plaintiff's allegations cannot sustain his theory that the Individual Defendants and Dissenters broad, multinational conspiracy orchestrated by foreign states based on a handful of social media posts and news reports.

II. **Plaintiff fails to plead the existence of an agreement, which is fatal to his conspiracy claim**

Even if Plaintiff plausibly alleged the existence of an underlying tort claim, his attendant conspiracy, aiding and abetting, and in-concert liability claims would still fail. He does not plausibly allege the existence of an explicit or implicit agreement between the Individual Defendants, Dissenters, and the other parties to serve as domestic agents of a broad, transnational effort orchestrated by foreign powers. If anything, the sum total of his factual allegations amount to the accusation that the Individual Defendants and Dissenters care about Palestinian self-determination. That is not enough to survive a motion to dismiss, and it is not enough to warrant prolonging this lawsuit into a lengthy, costly, and invasive discovery process.

Conspiracy and aiding and abetting each require some proof of concerted action—an agreement, *Sanchez & Daniels v. Koresko & Assocs.*, 2006 WL 3253604, at *6 (N.D. Ill. 2006), a scheme, *Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987). Crucially, each demands knowing and voluntary participation in the arrangement. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994) (conspiracy); *Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016) (aiding and abetting). A plaintiff seeking to survive a motion to dismiss "must allege specific facts from which the existence of a conspiracy may properly be inferred." *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 242 (Ill. App. Ct. 2007); *Wolf v. Liberis*, 505 N.E.2d 1202, 1208 (Ill. App. Ct. 1987) (same requirement for aiding and abetting). Conclusory allegations are not enough.

Yet, Plaintiff asserts that it is "without question that up to forty co-conspirators committed overt unlawful acts in furtherance of the conspiracy[.]" ECF 91 at 33. In the SAC, that irrefutable proof amounts to the following discussed in the foregoing section: social media posts from after the blockade began, third-party news reports that label Individual Defendants as organizers of this event, and his wholehearted but uncorroborated belief that behind the veil of a

6

website lurked a broad, transnational effort masterminding the alleged actions of these particular Defendants. It is a theory. But it is not a plausible one which this Court is compelled to allow to proceed to discovery. *Twombly*, 550 U.S. at 557 ("An allegation of parallel conduct is thus much like a naked assertion of conspiracy …").

That is all. If he has advanced any argument at all, it is that the Individual Defendants and Dissenters each care about the Palestinian cause. But that is not enough to make out a conspiracy or aiding and abetting claim seeking a multi-million dollar payout. Plaintiff's own response underscores this point. He refutes JVP's allegation that this lawsuit is a part of a coordinated, nationwide strategy to inundate Palestine solidarity activists with expensive, time-consuming litigation by stating that the fact "[t]hat other victims have also filed suit against similar actors shows only a pattern of tortious conduct by the defendants." ECF 91 at 18 n.6. Plaintiff cannot have it both ways—alleging a broad, transnational conspiracy based on social media posts and his own beliefs, while denying that it is mere coincidence that these types of lawsuits are popping up nationwide when Plaintiff's counsel takes credit for crafting these legal theories. *See Faoro v. Jewish Voice for Peace, Inc., et al.*, No. 25-cv-00289 (D.D.C.) (Plaintiff's counsel's other lawsuit advanced against alleged participants of a blockade outside D.C.); ECF 92-1 ¶¶ 12, 16-19 (detailing Plaintiff's counsel's efforts over the years to advance the legal theories in this lawsuit, including multiple efforts to recruit class representatives).

## CONCLUSION

For the foregoing reasons, Defendants Jinan Chehade, Superior Murphy, Rifqa Falaneh, Simone Tucker, and Dissenters respectfully request that this Court enter an order dismissing Plaintiff Christopher Manhart's Second Amended Complaint in its entirety, with prejudice.

[SIGNATURE BLOCKS ON FOLLOWING PAGE]

| | |
|---|---|
| Dated: April 28, 2025 | Respectfully, |

Sheila A. Bedi
Community Justice & Civil Rights Clinic
375 E. Chicago Ave.
Chicago, IL 60611
(312) 503-2492
sheila.bedi@law.northwestern.edu
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Faleneh, Simone Tucker, and Dissenters*

M. Porter
PO Box 330059
Brooklyn, NY 11233
(872) 246-3379
port.cjm@gmail.com
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Faleneh, Simone Tucker, and Dissenters*

Amanda S. Yarusso
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 510-6198
amanda.yarusso@gmail.com
*Attorney for Defendants Jinan Chehade, Superior Murphy, Rifqah Faleneh, and Simone Tucker*