IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER MANHART, *individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, a project of WESPAC FOUNDATION, INC.; *et al.*<br><br>*Defendants*. | Case No. 1:24-cv-8209<br><br>Hon. Mary L. Rowland |

**DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S
REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

National Students for Justice in Palestine ("NSJP") moved to dismiss Plaintiff Christopher Manhart's ("Plaintiff") inflammatory and blunderbuss Second Amended Complaint ("SAC") for its fundamental failure to adequately allege any claim against NSJP and on the grounds that Plaintiff failed to demonstrate personal jurisdiction over NSJP. (Dkt. #80). In that Motion to Dismiss, NSJP highlighted Plaintiff's improper reliance on group pleading tactics to try and compensate for his inability to raise non-conclusory and non-speculative allegations against NSJP individually. Rather than show the Court why his claims against NSJP should not be dismissed, Plaintiff's Response just makes matters worse by adding more uncertainty and confusion that further renders his claims against NSJP even more attenuated and implausible.

For instance, when confronted with NSJP's basic point that SJP Chicago is a separate and distinct entity from NSJP, Plaintiff simply responds that it is "reasonable to infer that NSJP is legally indistinguishable from its chapters including SJP Chicago" as it "holds itself out as an unincorporated association with a unity of purpose and mission." (Dkt. #91, p. 38, *id.* footnote 10).

1

This "legally indistinguishable" theory of liability is new and, quite frankly, inscrutable. It is apparently predicated on Plaintiff's proffered amorphous "unity of purpose and mission" standard, which only exacerbates the inherent implausibility of Plaintiff's claims against NSJP.

The sole basis Plaintiff offers in support of this incredible logical leap and new legal theory is the allegation that NSJP circulated a Toolkit among various other independent campus SJP chapters. (Dkt. #91, p. 38). If preparing an advocacy piece with recommendations for sympathetic, yet, distinct organizations and individuals could somehow give rise to a plausible inference that the entire audience becomes a "legally indistinguishable" entity, then same conclusion would attach any time a legal service provider circulates a practice advisory, or an advocacy group circulates a newsletter that includes a call to action around a particular issue. Both the author and the recipients would be "plausibly legally indistinct." Fortunately, the legal conclusion Plaintiff advances does not and cannot flow from such an innocuous factual assertion.

Even more confounding is that Plaintiff claims that NSJP is "legally indistinguishable" from the very same pro-Palestinian groups that, at the same time, Plaintiff acknowledges NSJP "*does not formally control.*" (SAC, ¶13). Plaintiff further argues that NSJP is also "legally indistinguishable" from WESPAC because it is its "project." (Dkt. #91, p. 52).[1] Thus, according to Plaintiff, NSJP is both structureless and "without an independent corporate structure" (SAC, ¶146), yet at the same time omnipresent and "legally indistinguishable" from every pro-Palestinian student group and from WESPAC to boot. The Court should reject these amorphous formulations. They are devoid of specific factual allegations and thus fail to rise above the speculative and

---

[1] Prior to this most recent metamorphosis in Plaintiff's allegations, in the First Amended Complaint, he alleged that NSJP was an "agent of WESPAC." (Dkt. #33, ¶17). Adding to the confusing formulation, Plaintiff also alleged that NSJP was an "agent" of American Muslims for Palestine, which it has since dismissed. (Dkt. #33, ¶14). Now he alleges that NSJP was a "project of WESPAC" (Dkt. #69, ¶14) and argues the two are "legally indistinguishable." Trying to track these shifting theories leaves one with the distinct feeling of attempting to respond to spaghetti thrown against the wall.

implausible, including with respect to the attempt to make NSJP "legally indistinguishable" from WESPAC.[2] It is impossible to defend against such incoherent allegations that, in essence, seek to hold Plaintiff liable for the entirety of a student movement that supports Palestinian rights and opposes genocide and to also make WESPAC responsible for the same.

Plaintiff's remaining arguments against NSJP are also irremediably flawed, fail to provide adequate notice, and are inherently implausible. Plaintiff hinges NSJP's liability entirely upon impermissible group pleadings and blatant misattribution of social media posts made by other entities. (Dkt. #91, p.5). Plaintiff can only speculate that NSJP had anything to do with April 15, 2024, protest on I-190, and points to nothing to bolster those assumptions. The Response only reinforces these incurable pleading flaws, highlights for the Court how Plaintiff fails to state any cause of action against NSJP, and emphasizes why the SAC should be dismissed with prejudice.[3]

I.     <u>ARGUMENT</u>

    A. **NSJP Continues to Adopt Co-Defendants' Arguments**

In its Motion to Dismiss, NSJP adopted arguments raised by co-defendants. (*See* Dkt. #80, p. 7, identifying adopted arguments made in co-defendants' briefs). NSJP continues to adopt all arguments raised by its co-defendants in their respective Reply briefs filed in support of their opening motions. In short, Plaintiff's SLAPP suit pleads no viable substantive cause of action against any Defendant, and, therefore, Plaintiff cannot state a claim of vicarious liability against NSJP. Additionally, Plaintiff lacks Article III standing to recover based on his alleged injuries, which are not traceable to any of the Defendants' alleged conduct, particularly NSJP.

---

[2] NSJP fully supports WESPAC's arguments regarding the limits of fiscal sponsorship relationships set forth in its Motion to Dismiss in opposition to Plaintiff's misguided effort to construct a "duty" that WESPAC had over NSJP, which is legally incorrect.

[3] Should any claim against NSJP survive dismissal, NSJP preserves all challenges to the class allegations, including jurisdictional issues implicated by the claimed amount in controversy.

### B. Plaintiff Continues to Mistakenly Conflate NSJP with Other Separate Entities to Side-Step his Failure to Plausibly Plead Under Rule 12(b)(6).

NSJP has already highlighted how Plaintiff fails to state a claim against it because his allegations and exhibits focused on an entirely separate and independent entity, namely SJP Chicago, which it improperly conflates with NSJP. (Dkt. #80, pp. 9-12). NSJP also flagged how Plaintiff did not allege that SJP Chicago was an agent of NSJP and failed to allege that NSJP controlled or directed SJP Chicago or any other entity. (Dkt. #80, p. 10). As such, NSJP argued that Plaintiff failed to state any claim because his exhibits and allegations point only at SJP Chicago, do not identify any wrong committed by NSJP, and make any claim for relief against NSJP entirely implausible. Rather, Plaintiff's claims merely seek to punish NSJP because it, as stated on its website, supports "Palestine solidarity organizations" and broadly aims to develop a student movement that empowers student groups to advocate for Palestinian liberation. (Dkt. #33-1, Ex. 25, 30 (reflecting various screenshots of NSJP website)).

In Response, Plaintiff maintains that NSJP is interchangeable with SJP Chicago. But he rejects an agency theory to support his claim.[4] Nor does he point to any evidence showing that NSJP directs or controls SJP Chicago. Instead, as referenced above, Plaintiff relies on a vague and limitless construction whereby NSJP is "legally indistinguishable" from any entity, including SJP Chicago, that shares a similar "unity of purpose and mission." Plaintiff does not define what "unity of purpose and mission" means, but context suggests that his theory extends to anyone that expresses solidarity with Palestinians, values their human rights, and opposes their mass murder.

---

[4] While Plaintiff concedes that he is not proceeding on an agency theory, at the same time he suggests that issues of agency should not be determined at a motion to dismiss stage. (Dkt. #91, p. 38, footnote 10). In light of Plaintiff's disavowal of its agency theory, should the case proceed beyond the pleadings, Plaintiff should be held to its position and any future attempts to raise an agency argument should be deemed waived. *Markovic v. TRU Funding LLC*, No. 21-cv-06628, 2023 U.S. Dist. LEXIS 49398, at *15 (N.D. Ill. Mar. 23, 2023) (Rowland, J.) (plaintiff's underdeveloped response to a defendant's arguments to constitute waiver).

Indeed, relying solely on NSJP's aspirational statements from its website supporting "Palestinian solidarity organizations" and stating that "organizational cohesion and a shared political framework" is "vital to building and sustaining the Palestine solidarity movement on campus" (Dkt. #33-1, Ex. 25, 30), Plaintiff makes the following leap: "NSJP, through its organizationally unified affiliate SJPChicago, participated in the planning, promoting and execution of the O'Hare blockade, as well as other blockades and disruptions in and around Chicago." (Dkt. #91, p. 5). Thus, Plaintiff's argument boils down to this: because NSJP is committed to Palestinian rights and supports student groups aligned with that same goal, NSJP is therefore "indistinguishable" from those campus groups and activists. Plaintiff's tortured reasoning continues: NSJP *must have*, therefore, planned and organized the specific protest at the O'Hare entry road on April 15, 2024, either directly or through the alleged conduct of one of these other disparate student groups, because they are an "organizationally unified" movement. Even by Rule 8 standards these are just illogical and speculative leaps, not well-plead allegations. It is simply unreasonable to infer that because NSJP supports pro-Palestinian student groups and seeks a unified response to campus repression, that it somehow orchestrated a specific off-campus protest on a particular date and location. *United States ex rel. Zojo Solutions, Inc. v. Cooper Tools, Inc.*, Civil Action No. 10-CV-1504, 2011 U.S. Dist. LEXIS 21765, at *8-9 (N.D. Ill. Feb. 16, 2011) ("A reasonable inference 'is one that is plausible and that flows logically from the facts alleged.'").

Plaintiff also claims that NSJP's "toolkit" from October 2023 demonstrates the "unity of purpose and mission of NSJP and its chapters and affiliates." (Dkt. #91, p. 38). In so arguing, Plaintiff tacitly acknowledges that the "toolkit," which featured prominently in the SAC (*See* SAC, ¶¶13, 38-40), is not connected to the April 15, 2024, protest and, thus, *cannot* be used to link NSJP to that event. Indeed, despite arguing that the "toolkit" is evidence of Plaintiff's slippery "unity of

purpose" argument, Plaintiff does not and cannot allege that a single protestor at the April 15, 2024, event referenced the "toolkit" as the reason why they were protesting on that particular day.[5]

Further, and staying on the issue of toolkits, Plaintiff's Response conspicuously fails to address NSJP's reference to *Students for Justice in Palestine at the University of Florida v. Raymond Rodrigues, et al.*, Case No. 23-cv-275 (N.D. Fl.). (Dkt. #80, pp. 11-12). In that case, the district court agreed that the University of Florida SJP was separate from NSJP and not under its control. That finding—equally applicable here—renders Plaintiff's bald assertion that NSJP and every single SJP campus group, including SJP Chicago, are "legally indistinguishable" based on some "unity of purpose and mission" to be flat wrong and facially implausible.

In addition to the notice problems created by Plaintiff's new "legally indistinguishable" theory that is based on the vague "unity of purpose and mission" standard, Plaintiff's Response offers *nothing* other than his own self-assured and conclusory allegations that SJP Chicago and NSJP are the same entity. He points to no common membership, no direction and control by NSJP over SJP Chicago, and no agency relationship. He describes NSJP and other student groups, as a "unified, unincorporated association of multiple chapters and affiliates spread throughout the country." (Dkt. #91, p. 51). But his own allegations only describe NSJP as being comprised of steering committees and officers of an unincorporated association. (SAC, ¶13). His own exhibits show that NSJP itself only claims to "support" student groups that advocate for Palestinian liberation, not that NSJP claims any singular identity with other groups.

---

[5] Plaintiff's allegation that the defendants "executed Defendant's NSJP own language when planning and executing the blockade at issue" (SAC, ¶39) is utter fantasy. Plaintiff's Response does not and cannot identify a shred of evidence or non-conclusory allegation showing that any individual involved in the April 15, 2024, protest did so based on NSJP's October 2023 "toolkit." Plaintiff's arguments vastly exaggerate the role of the October 2023 "toolkit," especially in light of his allegations which assert that "toolkits" are only disseminated to "inspire" groups that NSJP *"does not formally control."* (SAC, ¶13).

Plaintiff's attempt to transform "support" for "solidarity organizations" into orchestrating a specific protest on a particular day is also utterly speculative and insufficient to plead liability against NSJP. In a clumsy sleigh-of-hand, Plaintiff argues that "NSJP contemporaneously described" the scene at the protest. (Dkt. #91, p. 3). But again, the Instagram social media exhibits he relies on do not contain any message posted by NSJP, but rather reference SJP Chicago as a "collaborator," which is described more below. (Dkt. #33-1, Ex. 33). In sum, Plaintiff's Response offers nothing other than his own assumptions to show why NSJP should be treated as "legally indistinguishable" from SJP Chicago. Assumptions are not enough at the pleading stage.

### C. Even if Allegations Connect NSJP to SJP Chicago, Plaintiff's Pleadings Remain Implausible Because the Social Media Posts Do Not Show Substantial Assistance or Direct Involvement by the Entity Defendants, Nor Any Wrongdoing by SJP Chicago.

NSJP argued in its Motion to Dismiss that there were insufficient allegations to even imply that NSJP participated directly in the April 15, 2024, protest. (Dkt. #80, p. 7). Plaintiff's Response does not suggest otherwise. Rather, Plaintiffs' Response underscores how his claims against the entity Defendants, including NSJP, hinge entirely upon the various social media posts and messages that were attached to this attorney's declaration.[6]

Plaintiff requires that the Court "infer" from those social media posts that NSJP participated in the planning, recruiting, fundraising, coordinating, and "harmonizing" of the protest. (SAC, ¶60). Plaintiff relies on "inferences" because he cannot point to any non-conclusory allegation that NSJP participated in such alleged activities. Indeed, Plaintiff relies on these social media posts to support his allegations that NSJP "substantially assisted" and "agreed to" the alleged underlying torts, which he must adequately allege to state claims under the derivative

---

[6] As NSJP previously noted (Dkt. #80, p. 2, footnote 1), the First Amended Complaint included a declaration by one of Plaintiff's lawyers. (Dkt. #33-1). The SAC does not include a declaration but cites to the previously filed declaration.

theories of "in concert" and "aiding and abetting" liability as well as conspiracy. *See* Counts III-VIII. According to Plaintiff, these posts provide "ample evidence to "reasonably infer that NSJP participated in the A15 action conspiracy, which it knew about it in advance, and aided and abetted the blockade of traffic at O'Hare on April 15." (Dkt. #91, p. 38). However, Plaintiff's arguments are spurious and rely on multiple assumptions that make any relief against NSJP implausible.

First, Plaintiff's entire theory is inadequately plead and plainly implausible. According to Plaintiff, reposting, retweeting, or liking a social media post concerning an event shows that one knew about the event in advance, planned it, recruited others for it, funded it, engaged in a conspiracy for the event to happen, and substantially assisted the event. That type of theory invites virtually limitless liability and is inherently unreasonable. People who "like" social media posts or even post messages in another's stream or Instagram story do not reasonably anticipate being held liable for the underlying events. But based on the exhibits that Plaintiff chose to make the centerpiece of his case, that is exactly what Plaintiff tries to do.

As discussed above, Plaintiff's claims against NSJP are based on the flawed and inadequately pled theory that NSJP is "legally indistinguishable" from SJP Chicago because of a "unity of purpose and mission." This theory fails to provide adequate notice to NSJP because it would render NSJP liable for *any* activity done by a student group that was arguably ideologically aligned with pro-Palestinian views. Moreover, the exhibits themselves only show that SJP Chicago is listed as a "collaborator" on Instagram posts. (Dkt. #33-1, Ex. 20-22). Other than being listed as a "collaborator," Plaintiff's exhibits contain not a single post by SJP Chicago about the April 15, 2024, protest. SJP Chicago says nothing about NSJP in those posts, and there is also not a single post by NSJP about the specific protest.

8

Plaintiff also neglects to clarify what it means to be a "collaborator" on Instagram. The definition most certainly does not support the inferences Plaintiff asks from the Court. Instagram provides the following description of that term:

> You can use Instagram collabs (or collaborative posts) to co-author content with other accounts. The public original author can tag another private or public account as a collaborator. Then, the other account can either accept or deny the request. If the other account accepts, the post will also show on their profile and be distributed to their followers in Instagram feed. The post's header will attribute the content to both accounts. Note that the original author can add or remove a collaborator at any time.

*See* Instagram, About Collab Posts on Instagram, *available at*: https://help.instagram.com/291200585956732 (last visited, Apr. 24, 2025). Thus, someone can be tagged or listed as a "collaborator" without advanced knowledge. One who accepts the invite to "collaborate" simply enables another's post to be shared with their followers. The original poster can also remove the "collaborator" at any time. One could conceivably be tagged as a "collaborator" after an event was already underway in a purely post hoc manner.

In light of this important context that Plaintiff ignores, the paper-thin conclusory allegations do not give rise to a reasonable inference that simply being listed as a "collaborator" to a social media post concerning an event means that one actively participated in the planning or otherwise substantially assisted the organizing of that event. In short, there are not even adequate allegations against SJP Chicago based on the social media posts Plaintiff highlights.

But Plaintiff's claims against NSJP depend on yet another layer of assumption and speculation. None of Plaintiff's exhibits show any posts under NSJP's own social media accounts, which Plaintiff acknowledges exist, separate and apart from SJP Chicago's social media accounts. (Dkt. #33-1, ¶41). Thus, Plaintiff's implausible claims rest on *at least* the following string of assumptions: being listed as a "collaborator" on an Instagram post about an event means that one

9

actively planned and substantially assisted the event with others; SJP Chicago was listed as a collaborator for the April 15, 2024, protest and thus knew about the protest in advance; knowing about the protest in advance meant that SJP Chicago recruited people, funded the protest, "harmonized" the protest, selected the site for the protest, and coordinated the protest; because SJP Chicago had that knowledge and took those actions, NSJP must have also known and therefore should be held responsible for SJP Chicago actions, despite the lack of *any* communications or messages from either SJP Chicago or NSJP about the April 15, 2024, protest. The Court should not permit claims based on such multi-level assumptions to survive beyond the pleading stage.

> **D. Plaintiff's Impermissible Group Pleadings Fail to Put NSJP on Notice of His Claims, Fail to Satisfy Rule 8's Bare-Minimum Pleading Standards, and Must be Dismissed.**

Even a cursory review of Plaintiff's exhibits and allegations reveals that he relies almost entirely upon group pleadings—more accurately put, guilt by association. Plaintiff does not deny that he relies on group pleading. Rather, he contends that NSJP "misstates the governing standard and ignores the detail pleaded." (Dkt. #91, p. 38). He further alleges that Rule 8 "does not require exhaustive evidentiary proof at the pleading stage, but factual content to show liability plausible." (*Id*.). But NSJP does not complain about the lack of "exhaustive evidentiary proof." Instead, NSJP faults Plaintiff's failure to identify anything that NSJP itself did, and his insistence on instead using group pleading as a crutch. Despite Plaintiff's belief that his allegations were sufficiently individualized, a quick look at the allegations amply demonstrates to the contrary.

For example, after mentioning the A15action.com website and citing several archived webpages—none of which reference to NSJP to begin with—Plaintiff simply concludes that the "organizational Defendants helped plan, promote and execute the O'Hare blockade as part of the A15action conspiracy." (Dkt. #91, pp. 3-4). Based on these conclusions, Plaintiff asserts that "[t]he

10

reasonable inference is that participants in the conspiracy planned to do something illegal." (Dkt. #91, p. 4). Not so. It is entirely unreasonable to infer that NSJP planned to do anything based on the A15action.com website when that website makes no reference to NSJP and there is not even a non-conclusory allegation that NSJP viewed, much less adhered to the A15action.com website.

Plaintiff also points the Court to paragraphs 60-61, and 73-74 of the SAC. But paragraph 60 lumps NSJP together with JVP and fails to identify anything that NSJP itself did because the allegations do not distinguish the two entirely distinct entities. Paragraph 61 is directed at Dissenters, not NSJP. It only references NSJP in conjunction with JVP and does not add anything new, much less anything directed at NSJP individually. Nor do any of the paragraphs or exhibits referenced through Plaintiff's attorney's declaration identify any conduct or statements by NSJP. Instead, those paragraphs cite social media posts by separate entities and groups, including USCPR, which Plaintiff has since dismissed, and also other groups that were never sued. (*See* Dkt. #33-1, ¶¶35-37, Exhibits 19-24; ¶¶75-78, Exhibits 20, 24, 51, 52).

Based on these fundamental pleading deficiencies, Plaintiff does not and cannot state causes of action against NSJP under its theories of conspiracy, aiding and abetting, and in-concert liability. (Counts III-VIII). As for the conspiracy count, Plaintiff points to nothing other than his bald allegations of an agreement involving NSJP and others to obstruct highways and block traffic. (SAC, ¶¶119, 126). But even before *Twombly*, a "bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009); (*id.*) at 971 ("Even before the Supreme Court's new pleading rule, as we noted, conspiracy allegations were often held to a higher standard than other allegations; mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her was not enough."). Plaintiff's conclusory allegations of a conspiracy without further details about the proof of the

11

agreement are simply insufficient. *Wexler v. Chubb National Insurance Co.*, No. 21-cv-2543, 2024 U.S. Dist. LEXIS 96058, at *15-16 (N.D. Ill. May 30, 2024) (quoting *Ickert v. Cougar Package Designers, Inc.*, 2017 IL App (1st) 151975-U, ¶ 29 ("'It is insufficient to merely conclude that the defendants agreed with others to achieve an ill-purpose' - proof of the agreement is necessary and, absent such proof, a civil conspiracy claim must be dismissed.").

Likewise, Plaintiff's Response fails to show how the in-concert liability (Counts III and IV) and aiding and abetting liability (Counts VI and VIII) theories state any cause of action against NSJP individually. These are derivative claims that must attach to a valid underlying tort, which is absent here as argued in JVP's Motion to Dismiss and Reply. *Panitz v. Veristar LLC*, No. 22-cv-5200, 2023 U.S. Dist. LEXIS 175350, at *10 (N.D. Ill. Sep. 29, 2023) (Rowland, J.) ("Aiding and abetting is a derivative claim and must be attached to an independent tort.").

Plaintiff does nothing in his Response to rebut NSJP's arguments calling out the sheer speculation required for this Court to find that NSJP's generalized support for Palestinian solidarity organizations substantially assisted the specific alleged torts on April 15, 2024, that purportedly caused Plaintiff's damages. (Dkt. #80, p. 13). Moreover, even if the Court were to consider the social media posts referencing SJP Chicago in the context of weighing whether a claim was stated against NSJP, it would still have to engage in multiple levels of speculation to find that being added as a "collaborator" on an Instagram story shows that one actively recruited people for the protest, planned the protest, funded the protest, purchased supplies for the protest, and "harmonized" the protest—all in a manner that caused Plaintiff's damages. Such a string of attenuated inferences would be unreasonable. But that is the attenuated inferential chain that the Court must find for Plaintiff's claims to survive against NSJP.

### E.  Plaintiff Fails to Meet His Burden to Allege Personal Jurisdiction Over NSJP.

Plaintiff's failure to plausibly establish personal jurisdiction over NSJP compels dismissal pursuant to Rule 12(b)(2). Plaintiff, who bears the burden to demonstrate the existence of personal jurisdiction (*Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020)), relies exclusively on his flawed theory that NSJP is "legally indistinguishable" from SJP Chicago and any other student group that shares similar pro-Palestine views. (Dkt. #91, pp. 51-53). In doing so, Plaintiff simply ignores NSJP's arguments concerning the inadequacy of using the conduct of separate and distinct organizations to establish jurisdiction, absent evidence showing more than control, direction, and supervision. (Dkt. #80, p. 14, citing *Wells Fargo Bank, N.A. v. RLJ Lodging Trust*, 2013 WL 5753805 (N.D. Ill. Oct. 23, 2013)). Again, Plaintiff's "legally indistinguishable" theory cannot be squared his own allegations that NSJP "does not formally control" "local chapters and allied groups" (SAC, ¶13); nor can it be articulated in any meaningful way to provide NSJP with adequate notice about *whose* conduct it could be responsible for (*i.e.*, could it be held liable any student group on any campus?).

*New York v. Operation Rescue National*, 80 F.3d 64 (2d Cir. 1996), the sole case Plaintiff cites to bolster its jurisdictional argument, cuts against him. (Dkt. #91, p. 52). There, the court enjoined one entity and then found that the injunction equally applied to another entity. The court found a specific individual was a member of both the enjoined entity and the successor entity, which was deemed to be a mere continuation of the enjoined entity. Plaintiff's own allegations show that there is simply no comparison to that fact pattern, as NSJP is not alleged to be a successor, alter-ego, or continuation of any SJP campus chapter in Chicago, and where there are no allegations of common membership between the separate groups.

In a footnote in its Response, Plaintiff suggests that NSJP's clarification that SJP Chicago is a separate entity "should trigger jurisdictional discovery." (Dkt. #91, p. 52, footnote 13). But that is not how challenges to personal jurisdiction under Rule 12(b)(2) work. A plaintiff cannot, through conclusory and speculative pleadings, aim its complaint at the wrong party and then when that error is challenged, claim it needs discovery to help fix its error. Rather, it is the plaintiff who bears the burden to establish personal jurisdiction after the defendant raises the challenge, as Plaintiff's own case law emphasizes. *See Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F. Supp. 2d 775, 780 (N.D. Ill. 2009) ("When a defendant challenges the court's exercise of personal jurisdiction, the plaintiff bears the burden of demonstrating that personal jurisdiction exists."). A plaintiff can only meet its burden through "well-pleaded factual allegations." *Id*. It is not the defendant's burden to disprove personal jurisdiction through discovery. Here, and as discussed above, Plaintiff has not offered any "well-pleaded factual allegations" to sustain its burden.

Plaintiff's cited cases do nothing to support its reference to jurisdictional discovery (which does not even amount to a request). In *Ticketreserve*, 656 F. Supp. 2d at 783, the plaintiff was denied jurisdictional discovery because it only offered an "unsupported assertion of personal jurisdiction." There, the plaintiff "failed to provide any evidence disputing the fact" that the defendant was not involved in a website subject of a patent infringement lawsuit. *Id.* at 782. And while limited jurisdictional discovery was ordered in Plaintiff's other case, *Richardson v. Kharbouch*, No. 19 C 02321, 2020 U.S. Dist. LEXIS 52153, at *11-13 (N.D. Ill. Mar. 25, 2020), where the plaintiff alleged the defendant infringed on his copyright by using part of a song he created, it was only because the plaintiff specifically showed that the defendant performed a concert in Illinois, which the defendant admitted, in addition to evidence showing that the

14

defendant distributed music to consumers in Illinois in violation of copyright law. There is no similar evidence or admissions by NSJP to justify jurisdictional discovery, which is not requested.

In the end, Plaintiff fails to allege facts that demonstrate personal jurisdiction over NSJP via its alleged "affiliation" with SJP Chicago. He does not allege that NSJP holds itself out to be the same as SJP Chicago. He does not allege that NSJP directs or controls SJP Chicago. He can only point to NSJP's website which indicates "support" for "Palestine solidarity organizations," not control over those organizations. Plaintiff points to no substantial and continuous contacts by NSJP in Illinois. He does not and cannot allege that NSJP personally participated in the April 15, 2024, protest. Nor does Plaintiff point to anything from SJP Chicago that indicates it deemed itself to be "indistinguishable" from NSJP or that it acted NSJP's direction or control. In short, Plaintiff's conclusory allegations fall far short of demonstrating personal jurisdiction over NSJP based on the April 15, 2024, protest, which compels dismissal under Rule 12(b)(2).

## II. CONCLUSION

For the reasons set forth in NSJP's motion to dismiss, as well as the arguments raised by NSJP's co-defendants raised in their respective motions to dismiss which are adopted in full herein, Plaintiff's Second Amended Complaint should be dismissed against NSJP and with prejudice.

Respectfully submitted,

/s/ Joshua G. Herman
**JOSHUA G. HERMAN**

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 404
Chicago, IL 60604
Tel: (312) 909-0434
jherman@joshhermanlaw.com

**COLLIN POIROT (NY 5673405)**
2603 Oak Lawn, Suite 300
Dallas TX 75219
(214) 392-2281
cpoirot.law@gmail.com