IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MANHART, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | No. 1:24-cv-8209 |
| v. | ) ) ) | Hon. Mary M. Rowland |
| NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, et al., | ) ) ) ) | Magistrate Judge Keri L. Holleb Hotaling |
| Defendants. | ) | |

**DEFENDANT WESPAC FOUNDATION INC'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

## **INTRODUCTION**

Defendant WESPAC Foundation, Inc. ("WESPAC") submits this reply memorandum of law in support of its Motion to Dismiss Plaintiff Christopher Manhart's Second Amended Complaint ("SAC").

WESPAC did not "cloak [it]sel[f] in the mantle of "civil disobedience." ECF 91 ("Opp" or "Opposition Brief"), at 1 (opening line). To the contrary, WESPAC did not disobey any law or do *anything* in relation to the O'Hare blockage, and Plaintiff never specifically alleges otherwise: that WESPAC was aware of, helped plan, was present at, or funded this protest. Plaintiff offers this and other collective allegations against all "Defendants" which are not applicable to WESPAC,[1] revealing that he and his counsel sued WESPAC notwithstanding that it had no involvement in this blockade in order to harass and punish it for its Palestinian-rights advocacy and for fiscally supporting NSJP and others who do the same.

What Plaintiff's Opposition Brief does *not* do is rebut the deficiencies of his claims against WESPAC set forth in its Initial Brief, ECF 79. Plaintiff's failure to allege that WESPAC sent any money to Illinois for this protest or took any other tortious action in or aimed at Illinois in connection with it, still defeats personal jurisdiction. Plaintiff's derivative conspiracy, aiding and abetting, and in concert claims (including his alternative negligence and recklessness claim in Count IX) still cannot survive the SAC's failure to allege that WESPAC (1) had any prior knowledge of any O'Hare blockage plan, or (2) provided any money to NSJP or anyone else for it. WESPAC simply could not have agreed to join or provide substantial assistance to a plan it knew nothing about. And providing general fiscal assistance to NSJP is not a basis for liability if none of that assistance was spent in connection with the blockage that purportedly injured Plaintiff. Although Plaintiff does not – and cannot – plausibly allege that WESPAC and NSJP

---

[1] *See, e.g.,* Opp. 3 ("the organizational Defendants helped plan, promote and execute the O'Hare blockage as part of the A15 action conspiracy"); Opp. 15 ("The Defendants here conspired to block a roadway[.]").

were one integrated entity, providing general fiscal sponsorship assistance but not to this protest would not ground WESPAC's liability no matter how the WESPAC-NSJP fiscal sponsorship was structured. Nor does the Opposition Brief provide any basis for imposing on WESPAC a legal duty of care to Plaintiff to supervise NSJP's funds, let alone all its activities, either under Illinois or federal law.

Of course, even before we get to those deficient derivative claims against WESPAC, Plaintiff's underlying claims of false imprisonment and common-law-tort-for-foreseeable-injury-caused-by-intentional-breach-of-duty do not state valid claims against any Defendant under Rule 12(b)(6). Being stuck in traffic does not constitute the tort of false imprisonment under the Restatement of Torts or Illinois law, and "foreseeable injury caused by intentional breach of duty" is not a valid, cognizable cause of action under Illinois common law. There is no private right of action under any provision of the Vehicle Code, and any duty imposed by ordinances related to the public's right of unobstructed passage on a public highway is only for the benefit of the public at large, not to protect any individual from harm. Accordingly, there is no legal basis for Plaintiff's common law tort claim. Nor are his alleged injuries the kind the Vehicle Code was intended to protect. And if that claim were recognized, it would raise profound constitutional and public policy concerns in no way justified by any arguable need to allow any and all drivers and passengers to sue for any violation of the vehicle code that causes inconvenience or obstructs traffic. *See* CJE Reply 11-14; JVP Reply 9-14.[2]

Moreover, Plaintiff's alleged injuries – inconvenience, annoyance, anxiety, and general loss of time unaccompanied by specific allegations of tangible harm from being stuck in traffic –

---

[2] To avoid needless duplication, WESPAC again respectfully incorporates by reference the arguments of all co-defendants that apply to WESPAC, including Defendant Jewish Voice for Peace's Reply Memorandum of Law ("JVP Reply"), ECF 94; Defendant Tides Center D/B/A Community Justice Exchange's Reply in Support of its Motion to Dismiss ("CJE Reply"), ECF 96; and Defendant National Students For Justice in Palestine's Reply in Support of its Motion to Dismiss ("NSJP Reply"), ECF 99.

are not concrete enough to establish Article III standing. Nor are those injuries fairly traceable to WESPAC's general fiscal sponsorship of NSJP, which is not alleged to have provided any money for this blockage or to have "caused" it in any other plausible way. Plaintiff has simply sued WESPAC for alleged injuries resulting from decisions it did not make. *See* CJE Reply 3-6, JVP Reply 7.

Because his underlying claims are defective, Plaintiff's derivative claims fail against all Defendants. All derivative claims against WESPAC should therefore be dismissed, even before considering the additional reasons specific to WESPAC contained in Points I and II below.

## ARGUMENT

### I. PLAINTIFF STILL FAILS TO STATE A CLAIM AGAINST WESPAC

#### A. Plaintiff's Fiscal-Sponsor-Based Theory of Liability Has No Legal Basis

Plaintiff's sole defense of his case against WESPAC is that because "WESPAC is the sole direct fiscal sponsor of NSJP, and NSJP has no legally independent corporate structure, WESPAC is directly liable for NSJP's actions," Opp. 5; or put differently, because "WESPAC had a duty to supervise NSJP to ensure it wasn't acting illegally, and breached that duty, causing injury." Opp. 36, citing SAC ¶¶ 14, 42, 145-46, and Opp. 39-43.

WESPAC's initial brief on this motion highlighted the absence of any case law imposing on WESPAC, as fiscal sponsor to NSJP, any general legal duty of care to Plaintiff or those like him. ECF 79, at 1 (and 4, 8-9). The Opposition brief does not argue otherwise. Plaintiff admits that a prerequisite to tort liability here would be a "breach of a duty designed to protect motorists" like Plaintiff, Opp. 27, by a Defendant who "engaged" in "a course of action creating a foreseeable risk of injury" to Plaintiff. Opp. 31. But since Plaintiff does not allege that WESPAC was aware of the blockade, let alone planned, promoted, discussed, participated in or funded it, he can not plausibly claim that WESPAC "engage[d]" in any "course of action," let

3

alone one which created a foreseeable risk to Plaintiff.

Plaintiff does cite a four-part Illinois test, contending that "WESPAC's apparent failure to supervise NSJP's spending allowed NSJP to organize the illegal aspects of the A15 action in violation of tax law."[3] Opp. 31-32, 41-43.  However, without alleging that WESPAC had any awareness of the blockade (or an "A15 action plan"), Plaintiff cannot legitimately argue there was any "foreseeability of injury to Plaintiffs," any "likelihood of the injury," or any way of "guarding against the injury."  And the "magnitude of the burden of guarding against" an injury that WESPAC could not foresee, as well as "the consequences of placing that burden on" WESPAC, would be huge and impossible to bear. Under Plaintiff's theory, WESPAC and every fiscal sponsor would have unlimited liability to anyone in the world who alleges injury from any act or omission of a fiscal sponsoree, even when the fiscal sponsor was entirely unaware of the circumstances in which the act or omission allegedly occurred.  Unless the law is an ass,[4] Plaintiff fails his own test for the imposition of a legal duty and liability on WESPAC here.

Plaintiff's attempt to impose a cognizable legal duty on WESPAC under federal law stemming solely from the 1968 IRS Revenue Ruling fares no better.  *See* Opp. at 41 ("Unless WESPAC will contend in this Court that it violated tax law, the IRS imposes on it a legal duty to supervise the spending of its NSJP project to ensure compliance with tax law[.]").  Even if WESPAC owed a duty to the Treasury (in return for its tax exemption) to exercise some measure of discretion or control over the funds it provided to NSJP as a fiscal sponsor, Plaintiff again fails to cite any law, rule, regulation or case anywhere in the country extending such duty to anyone other than the government, let alone to someone such as Plaintiff as to whom WESPAC had no

---

[3] Citing *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) ("(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant.").

[4] Courtesy of Mr. Bumble and Charles Dickens, Oliver Twist ("ass" meaning "donkey," not "behind").

4

relation or awareness. Opp. 41-43. This glaring lack of legal authority was raised in WESPAC's opening papers, ECF 79, at 3-4, 8-9, but Plaintiff obviously has failed to remedy that defect.

### B. WESPAC Has No Conspiracy, Aiding and Abetting or In Concert Liability

Plaintiff admits that Illinois conspiracy and aiding and abetting law require a defendant to have knowingly joined a plan whose purpose was to cause an unlawful blockade and then provided substantial support or encouragement. Opp. 37. That is effectively a concession of WESPAC's non-liability for conspiracy and aiding and abetting, because WESPAC did not have, and is not alleged to have had, any prior knowledge or awareness of any plan by NSJP or anyone else to cause an unlawful blockade at O'Hare. Without such knowledge, WESPAC could not have knowingly and intentionally conspired or agreed to join such plan,[5] nor could WESPAC have provided substantial aider-and-abettor assistance, support or encouragement to a plan it knew nothing about.[6]

Nor is WESPAC liable to Plaintiff, either vicariously or for "In-Concert" Liability, for providing general fiscal assistance to NSJP if, as here, none of that general fiscal assistance is alleged to have been spent on this blockage which purportedly injured Plaintiff. Even if *arguendo* WESPAC had some duty *to Plaintiff* to exercise some discretion and control over the funds it provided to NSJP as general fiscal sponsorship support from donors disposed to donate to NSJP, the SAC fails to allege that any such funds WESPAC transmitted to NSJP were actually used in connection with this blockade, and NSJP has confirmed that Plaintiff could not truthfully

---

[5] *See also* CJE Reply 6-9, *inter alia* citing *United States v. McKinney,* 954 F.2d 471, 475 (7th Cir. 1992) (holding that acts that do not contribute to accomplishing the charged conspiracy's goal are not a valid basis for a conspiracy), and observing that the Chicago protest would have happened as it did, with or without CJE's nationwide bail fund which did not contribute to accomplishing the alleged conspiracy's goal. The same observation is true of WESPAC's general provision of donated funds to NSJP as fiscal sponsor, which did not contribute to the charged conspiracy alleged goal of blockading O'Hare.
[6] *See also* CJE Reply 9-11 and n.11, citing cases holding that aiding and abetting requires actual rather than constructive knowledge, and requiring that the defendant be aware of its role in the alleged tortious activity at the time he provides the (substantial) assistance.

5

allege that any WESPAC or NSJP funds were used for the blockade. *See* ECF 79, at 7, 9; ECF 80 (NSJP Br.), at 9. Where there is no WESPAC funding for the blockage that purportedly injured Plaintiff, there can be no harm to Plaintiff attributed to WESPAC. Even if WESPAC had a (non-existent) legal duty to Plaintiff and his class of motorists and passengers to make sure the donated funds it transmitted to NSJP were not spent in connection with this blockage, Plaintiff cannot complain of a breach of that duty – and impose liability on WESPAC for that blockage or any injuries stemming from it – where Plaintiff has not and cannot allege that one WESPAC dime was spent in connection with it.

Although we have repeatedly emphasized this dispositive point, *see, e.g.,* Doc 79, at 1, 7, 9, Plaintiff declined to address it in his Opposition Brief. *See, e.g.,* Opp. 42 (asserting that "WESPAC's apparent failure to supervise NSJP's spending allowed NSJP to organize the illegal aspects of the A15 action in violation of tax law," without addressing Plaintiff's failure to allege that any "NSJP's spending" obtained from WESPAC was used to organize the A15 Action (the blockade); and asserting that WESPAC "already had a legal duty to supervise NSJP's activities, and had legal 'control and discretion' over NSJP's funds," without addressing Plaintiff's failure to allege that any "NSJP's funds" were used in connection with the blockade).

This as well as anything reveals the malicious abuse of process perpetrated by Plaintiff and his counsel in maintaining this SLAPP suit against WESPAC. They know there is no basis to claim that general IRS guidance about sponsors' obligations to control funds given to sponsorees created a duty owed by WESPAC to them and other drivers at O'Hare. They know it is preposterous to harp on this non-existent duty to control funds when no funds from WESPAC were spent on this blockage. And without any logic let alone legal authority of any kind, they try to expand that non-existent duty from one requiring control of funds to one requiring general supervision of all *activities*. They posited an agency theory that actually conflicted with Illinois

law and the Restatement. When that was batted away, they have now claimed, utterly without any supporting factual allegations and in the face of sworn certifications to the contrary,[7] that WESPAC and NSJP are one integrated entity. There are no specific factual allegations in the SAC of events, communications or documents that would lend plausibility to that threadbare legal conclusion; no allegations reflecting joint management, shared offices, staffing, salary payments, or anything that might plausibly indicate one integrated entity. *See* ECF 79, at 10. They simply make this up out of whole cloth, on information and belief, in the face of authority teaching that "unsupported suspicions" upon information and belief do not provide "reasonable grounds" to support such a conclusory allegation. *Id.* And they cite only an author of a book purportedly as a sole, sufficient substitute for any law, rule, regulation or case law specifying legal requirements for how fiscal sponsorships are or must be structured.[8] Opp. 39-41. Moreover, they defend this false claim knowing that, even if WESPAC and NSJP were joined at the hip, there would be no valid claim against WESPAC from its fiscal sponsorship of NSJP if, as here, WESPAC (or NSJP) is not alleged to have contributed one dime to the blockage that supposedly injured Plaintiff. Although we pointed out the deficiencies of this conclusory pleading before, *see, e.g.,* ECF 60, ¶¶ 6-8, Plaintiff has not addressed them in his Opposition.

---

[7] Plaintiff's "direct" fiscal sponsorship or "integrated entity" allegation flies in the face of both WESPAC's Notice of No Affiliates, ECF 48, and WESPAC's certification in the California SLAPP suit that it has never had an "alter-ego" or "integrated-entity" fiscal sponsorship with any other entity. ECF 60, ¶ 6. That obviously includes NSJP even if NSJP is not a corporation or 501©(3) entity with its own tax exemption, two utterly irrelevant facts trumpeted by Plaintiff. Opp. 39-40. Indeed, an entity with its own tax exemption would be unlikely to seek out a fiscal sponsorship of any kind, direct or not, and pay a fee when its donors could contribute directly to such entity and obtain the same tax deduction for their donations. The fact that NSJP does not have its own tax exemption does not at all suggest that its fiscal sponsorship with WESPAC made it an "integrated entity," let alone shoehorn WESPAC into some sort of vicarious liability for alleged injury to Plaintiff from a blockade to which neither WESPAC nor NSJP contributed one dime.

[8] Plaintiff offers absolutely no legal support for Plaintiff's assertion that "if the sponsored entity does not have 501©(3) status, the only legal way to fiscally sponsor it is through a direct fiscal sponsorship." Opp. 39. No law, rule, regulation or case is cited to support it, and we have found none.

## II. THERE IS STILL NO PERSONAL JURISDICTION OVER WESPAC

Conceding the absence of general personal jurisdiction, Plaintiff contends there is specific personal jurisdiction over WESPAC despite not alleging that WESPAC itself ever did anything in Illinois or even directed at Illinois. This contention is frivolous.

Plaintiff acknowledges he must show that "(1) the defendant" – WESPAC, not the Defendants collectively – "must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." Opp. 50. Yet he argues that such jurisdiction is appropriate "because the claims in the complaint arise out of actions by defendants in Illinois – the O'Hare blockade." *Id.* How that argument squares with Plaintiff's observation that "WESPAC only funded NSJP in New York," Opp. 53, and his failure to allege that WESPAC sent any money to Illinois for this protest or took *any* action in Illinois in connection with it, and indeed knew nothing about it, would be mystifying but for the utter bad faith reflected in Plaintiff's claims against WESPAC in its three complaints so far.[9]

Moreover, Plaintiff admits that for the intentional torts he purports to plead, he has to show intentional, tortious conduct by the defendant, "expressly aimed at Illinois, with the defendant's knowledge that the effects would be felt – *i.e.*, the plaintiff would be injured – in the forum state." Opp. 50. However, Plaintiff has not alleged any intentional, tortious conduct by WESPAC, expressly aimed at Illinois, with the knowledge that Plaintiff here would be injured in Illinois. Indeed, Plaintiff's Opposition effectively concedes WESPAC had no advance knowledge of this Illinois protest, did not commit any intentional, tortious conduct, and had no

---

[9] *See also* CJE Reply 2-3 (citing cases questioning the idea of personal jurisdiction based on derivative theories like conspiracy and rejecting theory of personal jurisdiction resting entirely on derivative conspiracy claim but making no claim as to defendant's individual conduct in Illinois).

8

knowledge of Plaintiff or any other drivers and passengers stuck in traffic. Thus, WESPAC could not have known that anyone in Illinois would be injured (allegedly).[10] The contention that suing WESPAC in Illinois under these circumstances comports with "fair play and substantial justice" is simply frivolous.

### III. THIS SLAPP SUIT AGAINST WESPAC SHOULD BE DISMISSED

Plaintiff's arguments against the applicability of the Illinois Citizen Participation Act are meritless, and his SLAPP suit should be dismissed pursuant to the ICPA. The ICPA is substantive and cognizable in federal court. The statute applies to the intentional torts alleged here, as well as to Claim IX alleging negligence or recklessness, and the other derivative claims. Dismissal is warranted because it is patently obvious that Plaintiff and his counsel sued WESPAC and the other Defendants, without merit and in retaliatory fashion, because of their First-Amendment protected speech and advocacy aimed at procuring favorable governmental action, and for which Plaintiff and his counsel seek to punish Defendants and squelch their ongoing advocacy. *See* JVP Reply 2-9.

Plaintiff contends that his claims are not "based on First-Amendment protected activity," but rather on Defendants' "conduct." Opp. 3. That is clearly not true with respect to WESPAC, which is not actually alleged to have engaged in (and did not engage in) any "conduct" relating to events at O'Hare. Rather, it is WESPAC's having provided fiscal sponsorship support –

---

[10] All of the cases Plaintiff relies on are distinguishable and no help to him here. This fiscal sponsorship is not like general partnerships in which personal jurisdiction over the partnership automatically "gives rise to personal jurisdiction over the general partners comprising the partnership." *Brown v. 1995 Tenet Paraamerica Bicycle Challenge,* 931 F. Supp. 592, 594 (N.D. Ill. 1996). Unlike WESPAC here, the Florida defendants in *Calder v. Jones,* 465 U.S. 783 (1984) were not charged with untargeted negligence, but rather with intentional conduct expressly aimed at California and calculated to cause injury to the plaintiff there. Similarly, the Michigan defendant in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985) had established a substantial and continuing relationship with the plaintiff in Florida, the forum state, received fair notice that he might be subject to suit in Florida, and failed to demonstrate how jurisdiction in that forum would be fundamentally unfair. Here, WESPAC *has* clearly demonstrated that jurisdiction would be fundamentally unfair where, *inter alia,* it had no relationship with Plaintiff and received no notice that he might be subject to suit in Illinois.

donations and contributions – to NSJP, another Palestinian-rights educational and advocacy organization, that Plaintiff asserts renders WESPAC liable for anything NSJP did. Opp. 5, 39-43.[11] That form of communication and advocacy is indeed activity protected by the First Amendment. *See, e.g., Citizens United v. FEC,* 558 U.S. 310, 327, 339-51 (2010) (holding that prohibition or restriction on independent, non-profit corporate expenditures on political communication is an outright ban on political speech in violation of the First Amendment).

In *Citizens United*, the Supreme Court made certain observations highly relevant here. It noted that (1) the First Amendment stands against attempts to disfavor certain subjects or viewpoints or to distinguish among different speakers as a means to control content; (2) "the Government lacks the power to ban corporations from speaking"; (3) "effective public communication requires the speaker to make use of the services of others"; and (4) all speakers, including individuals and the media, use money amassed from the economic marketplace to fund their speech, which is protected by the First Amendment. *See also Buckley v. Valeo,* 424 U.S. 1, 65–66 (1976) ("The right to join together for the advancement of beliefs and ideas is diluted if it does not include the right to pool money through contributions, for funds are often essential if advocacy is to be truly or optimally effective."); and *Voice v. Noem*, 380 F. Supp. 3d 939 (D.S.D. 2019) (holding state law ban on out-of-state political contributions to be an unconstitutional abridgment of First Amendment).

Here, beyond his admission that he is suing WESPAC solely for being NSJP's fiscal sponsor, Plaintiff does not dispute that such fiscal sponsorship, in furtherance of both WESPAC's and NSJP's mission of advocacy for Palestinian rights, was lawful under federal law. *See, e.g.,* SAC ¶ 14, 51; Opp. 41 (noting that the "IRS permits a 501(c)(3) entity to fund

---

[11] *See also* SAC ¶¶ 106, 114 (making clear that Plaintiff's theory of liability against WESPAC is based on its rendering general "financial assistance" to NSJP, not providing any money that was specifically used for or in connection with this blockage that allegedly injured Plaintiff).

non-exempt activities if they further its exempt purposes"). And because the SAC does not allege that WESPAC knew of, promoted, discussed, or participated in the O'Hare blockage that allegedly injured Plaintiff, or that any money NSJP received from WESPAC was spent in connection with that blockage,[12] Plaintiff has effectively conceded that it sued WESPAC solely because of its First-Amendment-protected activity.

## CONCLUSION

This Court should grant Defendant WESPAC's Motion to Dismiss with prejudice, together with the relief sought in its Motion.

Dated: April 28, 2025　　　　　　　　　　　　HERBST LAW PLLC

　　　　　　　　　　　　　　　　　　　　By:　/s/ Robert L. Herbst
　　　　　　　　　　　　　　　　　　　　　　Robert L. Herbst
　　　　　　　　　　　　　　　　　　　　　　rherbst@herbstlawny.com
　　　　　　　　　　　　　　　　　　　　　　420 Lexington Avenue, Suite 300
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10170
　　　　　　　　　　　　　　　　　　　　　　Tel: 914-450-8163 Fax: 888-482-4676
　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　　WESPAC Foundation

---

[12] *See* SAC ¶¶ 105, 106, 114, 121, 128, 135, 142, 146. None of these paragraphs – the only paragraphs in all nine counts relating to WESPAC – allege that WESPAC was aware of or did anything to plan, participate in, promote or fund this blockage. Plaintiff alleges that WESPAC had, or as fiscal sponsor should have had, "awareness of NSJP's blockade strategy," SAC ¶¶ 106, 114. But as we pointed out earlier, ECF 79, at 12-13, "Plaintiff alleges no facts making plausible the conclusory statement that WESPAC knew of any 'blockade strategy,' let alone one to be used at O'Hare," having "abandoned all previous allegations that WESPAC was involved in planning the protest or otherwise providing actual support for it." Notably, in his Opposition, Plaintiff pointed to no facts supporting its allegation of WESPAC's knowledge or constructive knowledge of any blockade strategy, thereby conceding the point.

11