**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER MANHART, individually and on behalf of all others similarly situated | |
| Plaintiffs, | Case No. 24-cv-08209 |
| v. | Judge Mary M. Rowland |
| WESPAC FOUNDATION, INC., NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, DISSENTERS, JEWISH VOICE FOR PEACE, TIDES CENTER d/b/a COMMUNITY JUSTICE EXCHANGE, JINAN CHEHADE, SUPERIOR MURPHY, RIFQA FALANEH, SIMONE TUCKER | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Manhart has brought this putative class action against Defendants WESPAC Foundation, Inc. ("WESPAC"), National Students for Justice in Palestine ("NSJP"), Jewish Voice for Peace ("JVP"), Tides Center d/b/a Community Justice Exchange ("Tides Center"), Dissenters (collectively, "Organizational Defendants"), Jinan Chehade, Superior Murphy, Rifqa Falaneh, and Simone Tucker (collectively, "Individual Defendants"). Plaintiff's complaint arises out of a pro-Palestinian protest held on Interstate 190 and the surrounding interstates on April 15, 2024. Before the Court now are the following motions:

- Tides Center's motion for sanctions [71] and motion to dismiss [73].

- JVP's motion to dismiss pursuant to the Illinois Citizen Participation Act ("ICPA")[1] and for failure to state a claim [75].

- Individual Defendants' and Dissenters' motion for sanctions [76], motion to strike [77][2], and motion to dismiss for failure to state a claim [82].

- WESPAC's motion to dismiss for failure to state a claim and lack of personal jurisdiction [78].

- NSJP's motion to dismiss for failure to state a claim and lack of personal jurisdiction [80].

## I. Factual Background

### A. Overview

The following factual allegations taken from the operative complaint [69] are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

On April 15, 2024, at around 7:00 AM, Individual Defendants and other activists walked onto a portion of the I-190 highway that leads to O'Hare International Airport and linked their arms together with PVC piping to create a continuous wall across the interstate. [69] ¶ 70, 80. The "blockade" lasted until around 9:30 AM, and during that time, traffic on I-190 came to a standstill. [69] ¶¶ 66, 71. Defendants allegedly organized and/or participated in the blockade to protest the United States's support

---

[1] Individual Defendants and Dissenters incorporate by reference JVP's arguments in support of its motion to dismiss pursuant to the ICPA. [82] at 4.
[2] WESPAC joined Individual Defendants' motion to strike. [84].

of Israel in the war that has ensued between Israel and Hamas following Hamas's attack on Israel on October 7, 2023. *See generally* [69].

Plaintiff alleges he and other putative class members were trapped in their cars and in many cases missed their flights. *See* [69] ¶ 79. For his part, Plaintiff asserts that the protest caused him to miss his flight and as a result "miss[] an important work dinner and networking session." [69] ¶ 79.

The I-190 protest was done as part of an organizing effort called "A15 Action," which organized similar protests in other cities around the nation. [69] ¶¶ 52-56. The A15 Action website states that its purpose was "to coordinate a multi-city economic blockade on April 15th in solidarity with Palestine," aiming to "cause pain to the economy" and "to disrupt and blockade economic logistical hubs and the flow of capital." [69] ¶ 57

### B. Defendants

#### i. Defendant Tides Center

Defendant Tides Center is a nonprofit 501(c)(3) that allegedly "assisted the other Defendants in creating a bail fund for A15 Action activists and helped advertise and manage this fund." [69] ¶ 64. Tides Center also sponsors the public interest law firm Palestine Legal, where Defendant Falaneh works. [69] ¶ 20

#### ii. Defendant JVP

Defendant JVP is a California corporation and tax-exempt organization with multiple chapters across the United States, including one in Chicago. [69] ¶ 16. JVP describes itself as the "largest progressive Jewish anti-Zionist organization in the

3

world." [69] ¶ 16. Defendant Tucker is a student organizer for JVP's Chicago chapter. [69] ¶ 21. Along with NSJP, JVP allegedly participated in organizing the A15 Action protests. [69] ¶ 60. Specifically, JVP selected the area for the Chicago protest, coordinated funding to purchase supplies for the blockade, recruited individuals to participate in the blockade, and promoted the bail fund and the O'Hare blockade on social media during and after the event. [69] ¶ 60.

### iii. Defendant NSJP

Defendant NSJP is an unincorporated association with no formal principal place of business. [69] ¶ 13. Plaintiff alleges that NSJP has multiple affiliates in Chicago-area universities, including at Northwestern University, the University of Chicago, and others. [69] ¶ 13. The day after the attack in Israel, NSJP released a "toolkit" to its local chapters which called for its members to "engage in meaningful actions that go beyond symbolism and rhetoric" in furtherance of its pro-Palestinian aims. [69] ¶ 39. Like JVP, Plaintiffs allege that NSJP "was instrumental in coordinating the national A15 Action plan" and helped organize the protest on I-190. [69] ¶ 60. NSJP likewise promoted the bail fund on social media during and after the protest. [69] ¶ 60.

### iv. Defendant WESPAC

At times relevant to this action, WESPAC acted as the fiscal sponsor and legal entity for tax-exempt donations to NSJP. [69] ¶ 14. During the relevant time, the donation link on NSJP's website showed that donations NSJP received were funneled

to WESPAC. [69] ¶ 14. Some time after the protest, WESPAC began to "dissociate[]
itself from NSJP." [69] ¶ 14.

### v. Defendant Dissenters

Defendant Dissenters is an Illinois corporation and tax-exempt organization
based in Chicago. [69] ¶ 15. Dissenters describes its mission as "leading a new
generation of young people to reclaim our resources from the war industry, reinvest
in life-giving services, and repair collaborative relationships with the earth and
people around the world." [69] ¶ 15. Dissenters helped organize the I-190 protest and
helped select the location of the blockade. [69] ¶ 61.

### vi. Individual Defendants

Defendants Chehade, Murphy, Falaneh, and Tucker were present at the I-190
protest and participated in blocking traffic. [69] ¶ 65. They and other activists linked
arms with PVC piping, held signs, and broadcasted their activity across social media.
[69] ¶ 70. Chehade was "a primary organizer" of the protest and she was arrested by
the Chicago Police Department for her role in it. [69] ¶ 18. Murphy was present at
the protest and narrated a video describing the blockade. [69] ¶ 19. Falaneh was an
organizer of the protest. [69] ¶ 20. Tucker helped organize the protest and later posted
on social media: "we made our point. We stood in solidarity with our comrades in
Palestine, and we disrupted business as usual." [69] ¶ 21.

## II. Procedural Background

On September 9, 2024, Plaintiffs filed their original complaint in this action. [1].
This complaint contained three underlying causes of actions: (1) statutory violation

of the Illinois Vehicle Code, (2) public nuisance, and (3) false imprisonment. [1] ¶¶ 90-101. It also contained (as does each subsequent complaint) additional causes of action seeking to hold various of the Organizational Defendants liable under theories of in-concert liability, aiding and abetting liability, and conspiracy. [1] ¶¶ 102-157.

On October 23, 2024, counsel for WESPAC sent Plaintiff's counsel a letter informing counsel of their intent to move for sanctions under Rule 11. [64-1]. In the letter, counsel for WESPAC argued that the original complaint was deficient as to WESPAC because it failed to allege that anyone acting on behalf of WESPAC had any involvement at all with the I-190 protest and because it was filed with an improper purpose. *Id*.

On November 11, 2024, Plaintiffs filed a first amended complaint ("FAC"). [33]. The FAC contained new allegations seeking to tie NSJP's conduct to WESPAC. [33] ¶¶ 114-15. Otherwise, the FAC contained substantially similar factual allegations and brought the same causes of action as the original complaint. On January 6, 2025, WESPAC sent Plaintiffs' counsel another letter explaining their intent to move for Rule 11 sanctions, [64-2], and subsequently filed the contemplated motion. [63].[3]

On January 6, 2025, Tides Center sent Plaintiff's counsel a letter explaining Tides Center's intent to move for sanctions. [59-1]. In the letter and its attachment, Tides Center argued, among other things, that Plaintiff's tort claims were facially frivolous. *Id*. The same day, the Individual Defendants and Dissenters sent a letter and draft

---

[3] After Plaintiff filed the SAC, this motion was dismissed without prejudice. [68, 69]. WESPAC did not file a subsequent motion for sanctions.

Rule 11 motion to Plaintiff, arguing that his complaint was frivolous for similar reasons. [76-1].

Plaintiff filed his second amended complaint ("SAC") on January 29, 2025. [69]. The allegations contained in the SAC are substantially similar to those in the FAC, though the SAC again brings new allegations seeking to tie NSJP's conduct to WESPAC. *E.g.*, [69] ¶¶ 14, 42, 50. In the SAC, Plaintiff dropped his claims for public nuisance and statutory violation of the Illinois Vehicle Code. [69]. The SAC includes a new claim for "Common-Law Tort for Foreseeable Injury Caused by Intentional Breach of Duty." [69] ¶ 14. The SAC also dropped all claims against two Defendants who were accordingly dismissed from the litigation with prejudice. *See* [68].

In response to Plaintiff's SAC, Defendants filed the motions now before the Court.

## III. Motions to Dismiss Pursuant to Rule 12(b)(6)

### A. Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); see also Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's

7

favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## B. Overview

The SAC contains nine counts. Count I is a claim for false imprisonment against Individual Defendants; Count II is a "common-law tort for foreseeable injury caused by intentional breach of duty" against Individual Defendants; Count III is a claim for "Highway Obstruction In-Concert" against NSJP, JVP, Dissenters, and WESPAC; Count IV is a claim for false imprisonment in-concert against NSJP, JVP, Dissenters, and WESPAC; Count V is a claim for "conspiracy to obstruct highways" against all Defendants; Count VI is a claim for conspiracy to commit false imprisonment against all Defendants; Count VII is a claim for "aiding and abetting obstructing a highway"

8

against all Organizational Defendants; Count VIII is a claim for aiding and abetting false imprisonment against all Organizational Defendants; and Count IX is a claim for "negligence or recklessness" pled in the alternative against WESPAC.

Defendants argue that Plaintiff has failed to state a claim because (1) he has failed to state a claim for false imprisonment, (2) "foreseeable injury caused by intentional breach of duty" is not a valid cause of action under Illinois law, (3) he has not alleged facts sufficient to show he has Article III standing.[4] The Court addresses each in turn.

### C. False Imprisonment

#### i. Plaintiff has failed to state a claim

Under Illinois law, false imprisonment "is the unlawful restraint of an individual's liberty or freedom of locomotion." *Morris v. Faulkner*, 361 N.E.2d 112, 114 (Ill. App. Ct. 1977). "Imprisonment has been defined as any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." *Hale v. Pace*, 2011 WL 1303369, at *11 (N.D. Ill. Mar. 31, 2011) (citations omitted). "In order for a false imprisonment to be present, there must be an actual or legal intent to restrain." *Marcano v. Nw. Chrysler-Plymouth*

---

[4] Various Defendants argued for dismissal of the SAC for various other reasons, including for lack of personal jurisdiction, that the Court does not address here because the Court holds that dismissal is appropriate for the reasons explained here. However, the Court notes multiple Defendants argued that Plaintiff insufficiently alleged Defendants' involvement in the April 15 blockade. See, e.g., [75] at 28 (arguing that the SAC did not plausibly allege JVP's involvement); [82] at 5 (arguing that the SAC contained only threadbare allegations as to each Individual Defendant's involvement). Without reviewing the specific allegations as to each Defendant, the Court notes as a general matter that these arguments are unavailing. The SAC alleges that, for example, JVP and NSJP planned and organized the April 15 protest, and their involvement included picking the location of the protest and recruiting individuals to participate in the protest. [69] ¶ 60. The SAC further alleges that Individual Defendant Tucker was an active participant in the blockade. [69] ¶ 16. If the case were to continue, discovery may have demonstrated that those allegations were false. But the Court is disinclined to think dismissal on that basis would be appropriate at the pleadings stage where the Court is to draw plausible factual inferences in Plaintiff's favor.

*Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982). "[A]ctual force is not a requisite to an action for false imprisonment, [but] not every inducement to remain can rise to the level of false imprisonment." *Id.* "In the tort of false imprisonment, it is not enough for the plaintiff to have felt 'compelled' to remain in" a place, "the evidence must establish a restraint against the plaintiff's will, as where she yields to force, to the threat of force or the assertion of authority." *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1312 (1984) (citing Restatement (Second) of Torts §§ 38–41 (Ill. App. Ct. 1965)).

Plaintiff argues that Defendants falsely imprisoned him within his car by halting the flow of traffic while Defendant was on the highway. Defendants argue that Plaintiff failed to state a claim for false imprisonment because, although they may have prevented him from proceeding down I-190, they did not "confine" him to his car or anywhere else. The Court agrees with Defendants.

The Second Restatement of Torts squarely addresses the factual situation before the Court now:

> *Blocking highway.* In order to make the actor liable for false imprisonment . . . , it is necessary that he shall have confined another in a particular area, the boundaries of which are fixed by the will of the actor. ***It is not enough that the other's freedom of movement has been improperly restricted. Thus, one who blocks off a highway, intending to prevent the public from passing along it, is not liable for false imprisonment to one whose privilege to use the highway has been thus denied.*** Indeed, the actor does not incur any liability by so doing, since the public is merely privileged to travel the public highways and has not a right to do so; that is, the interest of the members of the public in such travel is not protected by a right of action in them.

Restatement (Second) of Torts § 36, *comment d* (1965) (emphasis added). The Restatement further provides that one is not liable for false imprisonment even if they "intentionally prevent[] another from going in a particular direction in which he has a right or privilege to go." *Id*. § 36(3). Other secondary authorities stand for the same principle. *See* W. Prosser, W. Keeton, Prosser and Keeton on Torts at 47 (5th ed. 1984) ("[T]he restraint must be total, rather than a mere obstruction of the right to go where the plaintiff pleases.") (hereinafter "Prosser and Keeton").

In response, Defendants argue that § 36 of the Restatement was "supersede[d]" in Illinois law in *Robinson*, where an Illinois appellate court held that a defendant who blocked a public road could be liable to the plaintiffs for false imprisonment. [91] at 22 (citing *Robinson v. Miller*, 1985 Ill. App. LEXIS 2179 at *8-*9 (Ill. App. Ct., May 14, 1985)). But *Robinson,* an unpublished 40-year-old decision, has no precedential or persuasive value outside of "contentions of double jeopardy, res judicata, collateral estoppel or law of the case." Il. Sup. Ct. R. 23(e); *see also Hartford Accident & Indem. Co. v. Lin*, 97 F.4th 500, 512 (7th Cir. 2024) (noting that an unpublished Illinois case cannot be cited for persuasive purposes except under "limited circumstances" not present here). *Robinson* thus does not represent good law and cannot save Plaintiff's claim here. Moreover, even if *Robinson* were good law, the factual circumstances in *Robinson* are too dissimilar to Plaintiff's to command a different outcome. In *Robinson*, the plaintiffs were trapped on a 30-acre plot of wooded land that they owned and which was only accessible by a single dirt road after the defendants blocked the road with a locked chain and a truck. 1985 Ill. App. LEXIS 2179 at *2,

*8. Unlike Plaintiff here, who apparently saw several people get out of their cars and walk to their destination without interference, [69] ¶ 75, the *Robinson* defendants blocked the plaintiffs' *only path* out of the area of confinement with a locked chain and barricaded it with a truck.

Further, the Restatement specifically carves out an exception for plaintiffs like those in *Robinson* whose access to or from property they own and are living on is blocked. Restatement (Second) of Torts § 36, *comment d* (noting "obstruction of a highway is an actionable wrong to" one whose "right of access to his" home is deprived). The plaintiffs in *Robinson* were temporarily living on the blockaded plot of land, *see* 1985 Ill. App. LEXIS 2179 at *2, and thus had a claim for false imprisonment under the Restatement. Rather than "supersed[ing]" the Restatement, as Plaintiff argues, *Robinson* comports with it.

Plaintiff also argues that *comment d* "does not even apply here" because "by its own language" it only describes a scenario where a blockade had already started and a driver gets on the highway, rather than one where a blockade impedes a driver who is already on the highway. [91] at 22-23. But the Court does not read *comment d* to impose or foreclose liability based on the timing of the blockade *vis-à-vis* the timing of a plaintiff getting onto the highway.[5] The salient point is that the interest of the

---

[5] Even if the Restatement *did* contain this temporal condition, it is not clear that would not help Plaintiff here. Plaintiff alleges that "[a]ll traffic into the airport stopped for almost three hours because of the blockade," [69] ¶ 4, but that he himself was stuck in traffic for "over an hour," [69] ¶ 6, suggesting that the blockade had already been going for at least an hour before he drove into the traffic it produced.

traveler "is not protected by a right of action." Restatement (Second) of Torts § 36, *comment d.*

Plaintiff points to Illustration 11 to § 36 of the Restatement to buttress this point, which provides in its entirety (emphasis added):

> A unlawfully encloses a part of the highway. *B enters the enclosure, and A prevents him from passing out of it on the other side, but puts no obstacle in the way of his leaving by the way in which he entered.* This is not an actionable confinement of B, though B has the right or privilege of an unobstructed passage along the highway.

This illustration—detailing a situation in which a defendant *would not be liable* for false imprisonment—accurately describes the factual circumstances alleged here. Defendants *did not place any obstacles* on Plaintiff's way of leaving. According to Illustration 11, liability does not attach. Plaintiff's apparent argument is that cars appearing behind him on the highway is tantamount to Defendants "put[ing]" an obstacle in the way of his leaving. The Court does not agree. Rather, the Court believes the text of Illustration 11 means what it says — if a defendant encloses a part of the highway "but puts no obstacle in the way of [a plaintiff]'s leaving by the way he entered[, it] is not an actionable confinement." Adopting Plaintiff's reading requires believing that the drafters of the Restatement were unaware that a traffic jam might result from an obstructed highway and that travelers might be temporarily stuck in traffic as a result. Plaintiff cites no legal authority for the proposition that a defendant who blocks an individual from travelling in only one direction can be liable for false imprisonment if other individuals who the defendant does not control subsequently prevent the plaintiff from exiting in another direction. Pursuant to

Illustration 11, however, such conduct does not give rise to liability for false imprisonment.

Plaintiff also argues that he had "no reasonable means of escape" as contemplated by the Restatement. In support, Plaintiff argues that it is illegal under Illinois law to leave one's vehicle unattended on the highway and thus he could not have escaped from the confines of his car. But Plaintiff misunderstands the legal effect of the existence of means of escape. In a claim for false imprisonment, whether a plaintiff had reasonable means of escape is a separate inquiry from whether the defendant confined the plaintiff. *See* Restatement (Second) of Torts § 36(1)-(2). The existence of a reasonable means of escape is a basis to find that a defendant was *not* confined. *Id.* § 36(2), *comment a*. Assuming Plaintiff *was* unable to reasonably escape his car, that does not mean that Defendants confined him there. Whatever conditions prevented Plaintiff from exiting his car on the highway are present every time Plaintiff is in his car on the highway; Defendants did not impose them on Plaintiff.

That aside, it appears that Plaintiff could have abandoned his car on the side of the road without facing legal penalties. Plaintiff cites 625 ILCS 5/4-201 of the Illinois Vehicle Code, which indeed prohibits abandoning a vehicle on a public highway. But the Code defines an "abandoned vehicle" narrowly to include only one that "is in a state of disrepair rendering the vehicle incapable of being driven in its condition" or one that "has not been moved or used for 7 consecutive days or more and is apparently deserted." 625 ILCS 5/1-101.05. Thus, Plaintiff could have left his car without facing liability under 625 ILCS 5/4-201 for at least a week.

The Court does not doubt that Plaintiff felt trapped in his car and in fact could not easily go where he wanted to. His frustrations were no doubt exacerbated because he was on the way to the airport. But to state claim for false imprisonment, the confinement must be "involuntary;" it is not enough for a plaintiff to voluntarily remain in a place even if they believe they are justified in doing so. *Marcano v. Nw. Chrysler-Plymouth Sales, Inc.*, 550 F. Supp. 595, 603 (N.D. Ill. 1982) (applying Illinois law). Although not factually on all fours, *Marcano* is instructive. There, the plaintiff alleged that she was falsely imprisoned when a used car dealership wrongly took her keys away from her while her purse was inside the car, effectively stranding her without a way to get home. *Id.* at 598-99. The court reasoned that although the plaintiff was justified in staying at the dealership with her locked car, the defendants' conduct fell short of involuntary confinement because they did not prevent her from leaving. *Id.* at 603. The same result follows here: Plaintiff felt justified in staying in his car, but that does not mean Defendants involuntarily confined him there. Accordingly, Count I is dismissed for failure to state a claim.

### ii. Centuries-old common law principles warn against Plaintiff's proposed expansion of false imprisonment.

The Court also notes that longstanding common law principles preclude Plaintiff's sweeping false imprisonment claim. Historically, the common law recognized that the tort of public nuisance existed to vindicate the rights violated when someone tortiously obstructed a public highway. 3 W. Blackstone, Commentaries (1768) *135-36 (hereinafter "Blackstone"). But the common law would *only* allow a private

plaintiff to bring such an action if the plaintiff "suffer[ed] some extraordinary damage, beyond the rest of the king's subjects, by a public nuisance." *Id*.

Illinois courts have adopted the same approach. In *David M. Swain & Son v. Chicago, B. & Q.R. Co.*, the Illinois Supreme Court considered whether a plaintiff could bring an action against someone who obstructed a highway by digging a trench across it. 97 N.E. 247, 248-49 (Ill. 1911). The court stated a plaintiff could bring a nuisance claim, but *only if* they suffered some special damages beyond those suffered by the public. *Id*. If "the injury was loss of time, business engagements, and the like," a plaintiff could not bring an action because that would constitute "merely an injury to the public right to use the street," rather than one to any individual. *Id*. The Illinois Supreme Court further explained that this principle would hold no matter how long an individual was delayed from the obstruction or how considerable the damage to his business was. *Id*. American and English courts in the 19th century and earlier consistently recognized that the proper cause of action to vindicate rights violated by a highway obstruction was that of public nuisance, and that the tort of public nuisance required special, individualized damages. *See, e.g., Houck v. Wachter*, 34 Md. 265, 269 (1871) ("The obstruction of a highway is a common nuisance, and being a wrong of a public nature, the remedy is by indictment; it is not in itself a ground of civil action by an individual, unless he has suffered from it some special and particular damage, which is not experienced in common with other citizens."); *Stetson v. Faxon*, 36 Mass. 147, 156 (1837) (collecting cases).

Justice Thomas reiterated this limitation on claims seeking to vindicate violations of public rights in his *Spokeo* concurrence: "common-law courts . . . required a further showing of injury for violations of 'public rights' . . . Such rights include 'free navigation of waterways, *passage on public highways*, and general compliance with regulatory law.'") *Spokeo, Inc. v. Robins*, 578 U.S. 330, 345 (2016) (Thomas, J., concurring) (emphasis added) (citations omitted); *see also* Prosser and Keeton at 643-44 ("The *most obvious illustration* [of a public nuisance], of course, is the obstruction of a public highway.") (emphasis added). Justice Thomas explained that the common law required "a further showing of injury" for violations of public rights like highway obstructions because, absent that heightened requirement, "every subject in the kingdom" would be able to "harass the offender with separate actions.") *Id.* (citing Blackstone). The common law has maintained and "uniformly" applied this restriction, designed to "relieve the defendant[]" of the actions that might follow if everyone were free to sue for a violation of public rights, since at least 1536. Prosser and Keeton at 646.

This backdrop sheds light on the confusing tension at the heart of Plaintiff's claim. Plaintiff's first two complaints contained claims for public nuisance, which the common law recognized as the correct tort to bring in response to an obstructed public highway. [1] ¶94; [33] ¶ 93. The SAC—the complaint before the Court now—does not contain any *claim* for public nuisance, but still describes Defendants' conduct as a "public nuisance." [69] ¶ 119, 133. But as Justice Thomas explained (and as Defendants explained in their Rule 11 letters in response to Plaintiff's first two

complaints), a plaintiff can only bring a public nuisance suit stemming from the obstruction of a highway if they suffered some special injury beyond that suffered by the general public—something all three complaints have failed to allege. It appears then that Plaintiff is framing what the common law would have recognized as a claim for public nuisance under the guise of a claim for false imprisonment because Plaintiff's injuries are insufficient to a state public nuisance claim.

To allow this claim to proceed would stretch the tort of false imprisonment beyond recognition and supplant the common law's—and Illinois's—long-established limitations on claims meant to vindicate public rights. It would invite precisely what Justice Thomas and William Blackstone warned against by allowing "every subject in the kingdom [to] harass the offender with separate actions." The risk of this approach is clear here, where the putative class seeks $36 million in damages because Defendants allegedly obstructed a highway for a few hours, [39] at 3. Plaintiff cannot use the wrong tort as a backdoor into allowing the public to harass Defendants with a class action where the law would prohibit a claim under the correct tort from proceeding. Count I is dismissed with prejudice.

### D. Count II - Common-Law Tort for Foreseeable Injury Caused by Intentional Breach of Duty

#### i. The Court assumes that Plaintiff intended to bring a claim for a violation of a public safety statute.

Count II is labeled a "common-law tort for foreseeable injury cased by intentional breach of duty." As an initial matter, Defendants argue that this is not a recognized cause of action in Illinois law. Defendants are correct. But although Plaintiff's

phrasing is clumsy, the Court understands from Plaintiff's briefing that he intends to bring a claim for a violation of a public safety statute. In Illinois, "[t]he violation of a public safety statute is *prima facie* evidence of negligence and *creates a cause of action* if it is the proximate cause of the subsequent injury." *Ding v. Kraemer*, 376 N.E.2d 266, 268 (Ill. App. Ct. 1978) (citing *Ney v. Yellow Cab Co.*, 117 N.E.2d 74 (Ill. 1954) (emphasis added)). It is the violation of a public safety statute itself that creates the cause of action. "A party injured by such a violation may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs from the kind of injury that he suffered." *Kalata v. Anheuser-Busch Companies, Inc.*, 581 N.E.2d 656, 661 (Ill. 1991). Accordingly, the Court considers whether Plaintiff has adequately alleged that Defendants violated a public safety statute and whether Plaintiff's injuries were of the kind intended to be protected by the relevant statute.

Plaintiff argues that Defendants violated 625 ILCS 5/11-1416, which makes it unlawful to hinder or obstruct one from driving on Illinois highways. Plaintiff's claim can *only* survive under this theory if 625 ILCS 5/11-1416 is designed to protect public safety. *Gillette v. Anderson*, 282 N.E.2d 149, 152 (Ill. 1972). The statute provides in its entirety:

> No person shall wilfully and unnecessarily hinder, obstruct or delay, or wilfully and unnecessarily attempt to delay, hinder or obstruct any other person in lawfully driving or traveling along or upon any highway within this State or offer for barter or sale merchandise on said highway so as to interfere with the effective movement of traffic.

No court has addressed whether 625 ILCS 5/11-1416 is designed to protect public safety, but Illinois courts have applied that label to other provisions of the Illinois Vehicle Code liberally. *E.g., Harper v. Epstein*, 306 N.E.2d 690, 692 (Ill. App. Ct. 1974) (statute requiring drivers to remove key from ignition before exiting car concerns public safety); *Schultz v. Siddens*, 548 N.E.2d 87, 89 (Ill. App. Ct. 1989) (statute regulating the operation of farm tractors on public highway concerns public safety). Notably, though, one Illinois court held that a statute prohibiting anyone from obstructing a pedestrian walkway was "not enacted as a public safety measure, but rather as a measure to facilitate the free flow of pedestrian traffic." *Cecola v. Illinois Bell. Tel. Co.*, 264 N.E.2d 809, 813 (Ill. App. Ct. 1970). It is not clear to the Court that the same isn't true for 625 ILCS 5/11-1416—by its plain language it appears to concern itself with "the effective movement of traffic" rather than public safety. Nevertheless, the Court assumes *arguendo* that 625 ILCS 5/11-1416 is a statute designed to protect public safety.

Even making that assumption, Count II fails because Plaintiff's alleged injuries do not implicate public safety. As noted above, "[a] party injured by such a violation [of a public safety statute] may recover only by showing that the violation proximately caused his injury and the statute or ordinance was intended to protect a class of persons to which he belongs ***from the kind of injury that he suffered***." *Kalata*, 581 at 661. Plaintiff's alleged injuries are that he was caught in traffic for a few hours and missed a networking event. These are not matters of public safety. *C.f. Duncavage v. Allen*, 497 N.E.2d 433, 440 (Ill. App. Ct. 1986) (landlord-defendant

whose violation of the Chicago Building and Housing Code caused decedent's death was liable because statute implicated public safety and human life).

In response, Plaintiff argues that the protest could have prevented emergency vehicles from responding to various emergencies. [91] at 30. Maybe, but Plaintiff was not injured by any delayed emergency vehicles or anything else that bears on public safety. His claim cannot proceed on the basis of some hypothetical person's hypothetical injury; *he* must have suffered the kind of injury the statute is designed to protect against. *Kalata*, 581 N.E.2d at 661. Because he has alleged no such injuries, his claim fails.[6]

### ii. Plaintiff's argument in the alternative—that the Court should imply a right of action—is precluded by Illinois law.

In his brief, Plaintiff argues in the alternative that the Court should imply a private right of action to sue for violations of 625 ILCS 5/11-1416. He makes this argument despite the fact that he also asserts, confusingly, that in Count II he "***does***

---

[6] It is also not clear that Plaintiff is in a class that is designed to be protected by the statute. Illinois courts have held that "statutes seeking to secure the enjoyment of rights to which individuals are entitled as members of the public, *such as ordinances relating to the public right of an unobstructed passage on a public highway*" are meant to benefit "municipalit[ies] at large." *Nichols by Nichols v. Sitko*, 510 N.E.2d 971, 974 (Ill. App. Ct. 1987) (emphasis added). When a statute purports to impose a duty that is "plainly for the benefit only of the public at large, a violation of the [statute] is of no evidential value upon the question of negligence." *Id*. Illinois courts have dismissed plaintiffs' claims premised on the violation of a public safety statute where the plaintiff is a member only of the public generally rather any specific class identified by the statute. *See Buerkett v. Illinois Power Co.*, 893 N.E.2d 702, 713 (Ill. App. Ct. 2008) (plaintiff could not sue for violations of the Illinois Public Utilities Act because although the statute was "designed for the protection of the public generally," the plaintiff did not establish that he was a member of any class of individuals meant to be protected). However, at least some Illinois courts have allowed plaintiffs to bring claims for violations of public-safety-focused sections of the Illinois Vehicle Code without directly addressing whether the plaintiff was in a class the statute was meant to protect. *E.g. Kacena v. George W. Bowers Co.*, 211 N.E.2d 563, 567 (Ill. App. Ct. 1965). Because Plaintiff's claim fails for other reasons, the Court declines to resolve this issue.

21

*not plead an implied cause of action.*" [91] at 27 (emphasis in original). One or the other of these positions is disingenuous, at best.

To imply a private right of action, Illinois courts have held that the following four factors must be satisfied:

> (1) the plaintiff is a member of the class for whose benefit the statute was enacted,
> (2) the plaintiff's injury is one the statute was designed to prevent,
> (3) a private right of action is consistent with the underlying purpose of the statute, and
> (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Pilotto v. Urban Outfitters W., L.L.C.*, 72 N.E.3d 772, 781 (Ill. App. Ct. 2017). Plaintiff argues that "[a]ll four factors point to giving" him a right to sue under an implied right of action theory. [91] at 28. Assuming that 625 ILCS 5/11-1416 is indeed a public safety statute, the Court has already addressed why Plaintiff's injury is not one that the statute was designed to protect. But if the statute is designed to promote the efficient flow of traffic, then Plaintiff has satisfied the second factor. However, the fourth factor forecloses any argument that a private right of action can be implied into the statute.

The Illinois Supreme Court has explained that it will "impl[y] a right of action under a statute *only in cases* where the statute would be ineffective, as a practical matter, unless a private right of action were implied." *Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill. 1999) (emphasis added). In assessing whether a statute contains adequate enforcement mechanisms, Illinois courts look to the language of the statute itself. *See Carmichael v. Prof'l Transp., Inc.*, 239 N.E.3d

512, 519 (Ill. App. Ct. 2021) (holding that the Illinois "Vehicle Code provides for a framework for enforcement" and declining to imply a private right of action). And the statute contains multiple provisions explaining how it is enforced. 625 ILCS 5/16-102 ("The Illinois State Police shall patrol the public highways and make arrests for violation of the provisions of this Act.")[7]; 625 ILCS 5/11-208(a)(2) (the Code enables "local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power" to "[r]egulat[e] traffic by means of police officers"). Further, any suggestion that the statute would be "ineffective[] as a practical matter" unless a private right of action is implied is observably false because Plaintiff alleges that Defendants were arrested for blocking traffic. [69] ¶¶ 18-19, 44. A private cause of action thus cannot be implied into the statute under any reasonable reading of Illinois law.

### iii. To the extent that Plaintiff intended to plead a claim for negligence arising from a breach of a common law duty, that claim fails.

Plaintiff also argues that all Defendants owed and breached a common-law duty of care to Plaintiff that duty. [91] at 31-32. In Illinois, courts consider the following four factors when determining whether a defendant had a duty of care: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of

---

[7] Plaintiff argues that Defendants' reliance on 625 ILCS 5/16-102 is "misplaced" because it appears in Chapter 16 rather than Chapter 11 of the Illinois Vehicle Code. [91] at 27. But the subsection describes the Illinois State Police's responsibility to enforce "the Act." The Illinois Vehicle Code defines "the Act" to mean *everything contained in the Illinois Vehicle Code*, including Chapter 11. *See* 625 ILCS 5/1-101.1. The Court finds no support for Plaintiff's attempt to cabin the Illinois Vehicle Code's enforcement mechanism in Chapter 16.

placing that burden on the defendant." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (quoting *Widlowski v. Durkee Foods*, 562 N.E.2d 967, 968 (Ill. 1990)).

The Court does not know whether Plaintiff intended to plead a common law negligence claim. Defendant JVP, understandably confused by the unusual nature of Count II and its legal basis, argued in its opening brief that (1) a private right of action could not be implied into the Illinois Vehicle Code and (2) *if* Plaintiff intended Count II to function as a claim for negligence, Plaintiff's claim failed because, under the *Simpkins* factors, Defendants did not owe Plaintiff a common law duty of care. [75] at 23.

Plaintiff responded to the latter argument by analyzing the *Simpkins* factors and arguing that Defendants *did* owe Plaintiff a common law duty of care. [91] at 31. But the SAC nowhere pleads a claim for negligence against Defendants premised on a common law duty of care to Plaintiff or the putative class. Rather, the SAC alleges that Defendants are liable to Plaintiff for violating a duty arising out of the Illinois Vehicle Code. [69] ¶¶ 97-100. And Plaintiff states in his brief that Count II can be "consider[ed] the common law tort [of] negligence insofar that there was a breach of duty (*implied by the Vehicle safety rules*)." [91] at 29 n.9 (emphasis added). Because Plaintiff claims that the duty arose out of a statutory violation, the existence of a common law duty of care is not germane to any claims in the SAC. *See Gauchas v. Chicago Transit Auth.*, 206 N.E.2d 752, 756 (Ill. App. Ct. 1965) (distinguishing

between a claim premised on breach of a common law duty and a claim premised on violation of a statute meant to protect public safety).

In any event, even if Plaintiff had pled a negligence claim based on a violation of a common law duty arising from the *Simpkins* factors, that claim would fail. As a general principle in tort law, "[i]ntent and negligence are mutually exclusive; intentional acts may not form the basis for a negligence claim." 57A Am. Jur. 2d Negligence § 29. "[I]f there is substantial certainty that an injury will result from an act or there is a deliberate act to cause the injury, that act is an intentional act, not a negligent act." *Id*. Plaintiff does not argue or allege that Defendants (notwithstanding WESPAC's alleged negligence with respect to NSJP) were negligent in causing his injuries. To the contrary, he alleges and argues that Defendants intended to cause exactly the injuries he suffered. *See, e.g.*, [91] at 31 ("Defendants' causing injuries through blockades was not just foreseeable but intended); [91] at 32 ("[T]he intentional and unlawful conduct of Defendants is the direct and proximate cause of Manhart's injury. . ."); [69] ¶ 75 (describing injuries that occurred "because of the intentional efforts of Defendants."). Because "there is no claim of negligence that flows from intentionally tortious conduct," 57A Am. Jur. 2d § 29, Plaintiff could not state a claim for common law negligence against Defendants.

### E. Counts III – VIII: Claims for In-Concert, Aiding and Abetting, and Conspiracy Liability

Claims III through VIII seek to hold Defendants liable for the conduct underlying Counts I and II under a theories of in-concert liability, aiding and abetting liability, and conspiracy liability. All three theories require some underlying tortious conduct.

*See Chadha v. N. Park Elementary Sch. Ass'n*, 123 N.E.3d 519, 537–38, 542 (Ill. App. Ct. 2018) (dismissing claims for civil conspiracy and aiding and abetting where underlying tort claims failed because they "are not independent torts" and they "require underlying conduct that is tortious"); *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1025 (7th Cir. 2018) (in-concert liability provides a means to hold an individual liable for the tortious conduct of another). Because Counts I and II are dismissed, there is no underlying tort for which any Defendants could be held liable in Counts III – VIII. Accordingly, those counts are also dismissed.

### F. Count IX: Negligence or Recklessness Claim Against WESPAC

In Count IX, Plaintiff brings a claim in the alternative for negligence or recklessness. Plaintiff alleges that WESPAC was NSJP's "fiscal sponsor" and as such had a "legal duty to control and supervise the activities of NSJP." [69] ¶ 146. Plaintiff thus argues that WESPAC is liable for NSJP's tortious conduct. [91] at 41. Because the Court has found that Plaintiff has failed to allege that NSJP is liable for any tortious conduct, Count IX necessarily fails. Even if NSJP—or any other Defendants—were liable, however, Count IX would fail because Plaintiff has not pled facts sufficient to show that WESPAC owed Plaintiff any duty.

It is not clear from where WESPAC's legal duty arises. Plaintiff alleges in his complaint that it stems from a 1968 revenue ruling from the IRS, which allows a 501(c)(3) entity to fund non-exempt activities if they further the entity's exempted purposes if the sponsor retains "control and discretion" over the funds. [69] ¶ 13; [91] at 41 (citing Rev. Rul. 68-489, 1968-2 C.B. 210). But Plaintiff cites no case or legal

authority from any jurisdiction suggesting or even contemplating that *any* IRS rule could *ever* create a legal duty sufficient to substantiate a tort claim. In any event, Count IX fails because Plaintiff failed to state a claim for any tortious conduct against NSJP. For these reasons, Count IX is dismissed.

### G. Article III Standing

Defendants separately argue all of Plaintiff's claims fail because he does not have Article III standing. To satisfy standing, a plaintiff's complaint must claim "to have suffered an injury that the defendant caused and the court can remedy." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Id*. An injury is "concrete" when it is "real," rather than "abstract." *Spokeo*, 578 U.S. at 340 (citations omitted). An "intangible" injury may still be concrete if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 341; *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (receiving unwanted text messages can constitute an injury-in-fact because of the alleged injury "is analogous" to those suffered when a defendant commits the tort of intrusion upon seclusion).

Defendants argue that as a general matter, courts in this Circuit have recognized that the kinds of injuries alleged by Plaintiff here—annoyance, inconvenience, lost time, and stress—are not concrete for Article III purposes. *See Keller v. Lvnv Funding*, LLC, 2022 WL 7501335, at *2 (N.D. Ill. Oct. 13, 2022) (allowing Article III standing based on "[a]nnoyance, indignation, stress, intimidation or confusion . . . would blow a hole in the standing requirement"); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (stress and anxiety insufficient for Article III standing). Plaintiff responds that because false imprisonment was a recognized cause of action at the time of the nation's founding (and before), he has standing to bring his claims. [91] at 9-10.

Plaintiff does not cite any authority for the notion that pleading the tort of false imprisonment (which the Court has found Plaintiff has failed to do) is sufficient to confer standing. Plaintiff also does not cite any legal source or historical authority suggesting that the tort of false imprisonment was ever used at common law in any factual circumstances bearing any resemblance to his claim here.[8] Plaintiff points out that false imprisonment existed under the umbrella of the "ancient action of trespass," [91] at 10, but Plaintiff has not pled facts or even argued that he has pled facts sufficient to show that he has a claim for the ancient action of trespass.[9] Plaintiff

---

[8] The Court has been able to locate a vanishingly small number of historical sources even contemplating that a plaintiff *could* be falsely imprisoned on a public highway. To the extent they exist, they contemplate a situation where a defendant forcibly detains someone by, for example, holding them at knifepoint. *See Bloomer v. State*, 35 Tenn. 66, 68 (1855).

[9] And he likely could not, because historically, courts limited an action in trespass to challenging confinement behind 'stone walls and iron bars.'" Michael L. Rustad & Thomas H. Koenig, Taming the Tort Monster: The American Civil Justice System As A Battleground of Social Theory, 68 Brook. L. Rev. 1, 14 (2002) (citing William L. Prosser, Handbook on the Law of Torts 42 (4th ed. 1971))

cannot rely on the existence of the tort of false imprisonment at the time of the founding to establish Article III standing when the actions forming the basis for his claim could not themselves substantiate a false imprisonment claim under either the common law at the time of the founding or under Illinois law today. *See U.S. v. All Funds on Deposit with R.J. O'Brien & Associates*, 783 F.3d 607, 616 (7th Cir. 2015) (to have standing, a plaintiff must have "a colorable claim.").

Plaintiff's historical arguments aside—and although Plaintiff never makes the argument—the Seventh Circuit has held that loss of time is sufficient to confer standing. *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir. 2011) (citing *American Civil Liberties Union v. St. Charles*, 794 F.2d 265 (7th Cir. 1986) ("What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display."). Some courts in this circuit have considered lost time insufficient to provide standing when a plaintiff voluntarily sacrifices time out of a desire to prevent a future injury that is not certainly impending, *see Dusterhoft v. OneTouchPoint Corp*, No. 22-CV-0882-BHL, 2024 WL 4263762, at *7 (E.D. Wis. Sept. 23, 2024), or where the plaintiff's lost time was spent fighting a legal action that was ultimately dismissed, *see Price v. Vill. of Homewood*, No. 24-1896, 2024 WL 4502106, at *1 (7th Cir. Oct. 16, 2024). Neither rationale exists here. Plaintiff's alleged injuries are thus sufficient to confer standing.

## IV.    Motions for Sanctions under the Illinois Citizen Participation Act.

Defendants also seek to dismiss the SAC and recover fees and costs pursuant to the ICPA. The ICPA was created to combat SLAPPs (Strategic Lawsuits against Public Participation). *Kenyon v. Bd. of Educ. of Twp. High Sch. Dist. 113*, No. 24-CV-09878, 2025 WL 1101615, at *8 (N.D. Ill. Apr. 14, 2025). SLAPPs are lawsuits "aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Sandholm v. Kuecker*, 962 N.E.2d 418, 427 (Ill. 2012) (citing *Wright Development Group, LLC v. Walsh*, 939 N.E.2d 389 *Ill. 2010)). "Plaintiffs in SLAPP suits do not intend to win but rather to chill a defendant's speech or protest activity and discourage opposition by others through delay, expense, and distraction." *Sandholm*, 962 N.E.2d at 427. To deter SLAPPs, the ICPA awards prevailing movants with attorney's fees and costs. 735 ILCS 110/25.

When a party moves "to dispose of a claim" pursuant to the ICPA, the statute provides that "a hearing and decision on the motion must occur within 90 days after notice of the motion is given to the respondent." 735 ILCS 110/15; 735 ILCS 110/20(a). Unless the reviewing court "finds that the responding party has produced clear and convincing evidence that the acts of the moving party are not immunized from, or are not in furtherance of acts immunized from, liability," the motion should be granted. 735 ILCS 110/20(c).

Plaintiff argues that the ICPA is a state procedural rule and thus inapplicable in federal court. The Court agrees that, at least at the pleadings stage, the ICPA cannot be used to dismiss a complaint in federal court. The Supreme Court explained in *Shady Grove* that if a Federal Rule of Civil Procedure answers or covers a question

in dispute, the federal rule governs unless that rule is invalid. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 397 (2010). Federal Rules of Civil Procedure 12 and 56 "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015) (citations omitted) (emphasis added). Defendants cannot rely on state statutes to dismiss Plaintiffs' claims in federal court where federal rules already provide the exclusive means to do so.

The Court notes that at least some courts in this district have held that the ICPA is a substantive rule and can be applied by a court sitting in diversity. *See, e.g., Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 808 (N.D. Ill. 2011). Respectfully, however, those decisions have not addressed whether the ICPA passes muster under *Shady Grove*'s standard. Instead, the Court is persuaded by the *Intercon Solutions* court's thorough analysis of Washington's substantially similar anti-SLAPP law. Like the ICPA, the Washington anti-SLAPP law asked district courts to review and dismiss a plaintiff's claims based on the merits of the claims rather than the standards set forth in Rule 12 or Rule 56. *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1047 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729 (7th Cir. 2015). In other words, the statute provided an answer to a question governed by a Federal Rule of Civil Procedure, and the court held that it could not be applied in federal court. The same result follows here: the Federal Rules provide the exclusive means for federal courts to rule upon a pretrial motion to adjudicate whether a

Plaintiff has stated a viable cause of action, so the ICPA cannot be used in federal court for the same purpose.

The Court understands that this holding frustrates the important policy goals that the Illinois legislature furthered in the ICPA and may encourage forum shopping. But neither concern alleviates the Court's obligation to follow Supreme Court precedent. *See Burlington N. R. Co. v. Woods,* 480 U.S. 1, 3-4 (1987) (holding that state procedural law intended to deter frivolous litigation was inapplicable in federal court); *Shady Grove*, 559 U.S. at 415-16 ("The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping.").

Accordingly, Defendants' requests for relief pursuant to the ICPA is denied.

### V.    Motion to Strike

Individual Defendants and Dissenters also moved to strike certain allegations in the SAC. Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have discretion in deciding whether to strike portions of a pleading. *Talbot v. Roberts Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Motions to strike pleadings "are not favored" and will generally not be granted unless "it is clear that [the pleading] can have no possible bearing on the subject matter of the litigation" and "the moving party will be prejudiced" by the pleading. *Anderson v. Bd. of Educ. of City of Chicago*, 169 F. Supp. 2d 864, 868 (N.D. Ill. 2001) (citations omitted). "Prejudice results when the matter complained of has the effect of confusing

the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Id.*

Defendants argue that multiple factual allegations in the SAC should be stricken because they are intended to inflame and harass rather than further any legitimate litigation goals. *See generally* [77]. Because the SAC is dismissed in its entirety, Defendants are not required to answer any of Plaintiff's allegations and are thus not prejudiced. Accordingly, Defendants' motion to strike [77] is denied as moot.

## VI.   Motions for Sanctions

Individual Defendants, Dissenters, and Tides Center move for sanctions against Plaintiff pursuant to Rule 11. The purpose of Rule 11 is to deter baseless filings. *Royce v. Michael R. Needle, P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). The decision to impose Rule 11 sanctions "is within the sound judgment of the district court." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). Rule 11(b) provides that:

> by presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary

support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*Malec Holdings II Ltd. v. Eng.*, 217 F. App'x 527, 529 (7th Cir. 2007) (citing Fed. R. Civ. P. 11(b)).

Here, the Court believes that Plaintiff's filings were presented for the improper purpose of harassment and that Plaintiff made legal contentions that were neither supported by existing law nor nonfrivolous arguments in favor of the extension or modification of existing law. Accordingly, and for the reasons explained in further detail below, Defendants' motions for sanctions [72]; [76] are granted.

Plaintiff's improper purpose is evident from the SAC. The SAC is rife with allegations that are irrelevant to Plaintiff's stated causes of action and which are only a hair's breadth away from calling Defendants terrorists and placing the loss of innocent lives at their feet. Among other things, the SAC alleges that Defendants engaged in a "propaganda offensive" on behalf of Hamas, [69] ¶ 5, and that at least some Defendants acted "as Hamas's propaganda arm in the United States," [69] ¶ 55. The SAC also alleges that Defendants are responsible for "extend[ing] the war" in Gaza, "resulting in the deaths of thousands of Palestinians and Israelis." [69] ¶ 2. An earlier version of Plaintiff's complaint alarmingly urged the Court to "punish[] [Defendants] without remorse or hesitation." [33] ¶ 8.

Plaintiff's briefing takes on a similar tenor: Plaintiff cites extensively from an article from a think tank that accuses Defendants of engaging in "civil terrorism," being "anti-Western," and working to "make life intolerable for Americans who support . . . the U.S. in its current form." [91] at 6-7.

The article goes on to discuss *this* litigation and describes it approvingly as a vehicle through which Plaintiff's counsel "may make a dent in the [D]efendants' resources" via a "slow" discovery process. That same article also calls for the "civil terrorists" who participated in the protest at issue in this action—that is, Defendants—to be denaturalized and deported. This is the opinion of a think tank, the Manhattan Institute, not necessarily Plaintiff's counsel. But counsel approvingly cited several paragraphs of this article, [91] at 1, 6-7, and it sets the context for the litigation. Taken together with Plaintiff's request for $36 million on behalf of the putative class,[10] [39] at 3, the Court is persuaded that Plaintiff's intent in bringing this action was not to recover the damages actually sustained, but instead to harass Defendants.

The Court is also troubled by the frivolity of several of Plaintiff's legal arguments. To be clear, there is nothing *per se* frivolous about the legal theories identified in the SAC. Outside of secondary sources like the Restatement, the Court is not aware of any case or legal authority that has squarely addressed Plaintiff's false imprisonment theory here. And plaintiffs are allowed to make nonfrivolous arguments that the law

---

[10] Although not relevant to whether Plaintiff stated a claim, the Court has a difficult time imagining how potential members of the class might be identified and how Rule 23 questions might be answered if this case were to go forward.

should be extended or modified. Fed. R. Civ. P. 11(b)(2). A creative lawyer may be able to make a non-frivolous argument that there is a tort available that should be expanded to encompass Defendants' conduct, and such an argument would be permissible under Rule 11 (if ultimately unsuccessful).

What is not permissible, however, is for Plaintiff to make false representations of law in support of his novel legal arguments. This is where Plaintiff has gone too far. For example, in arguing that Illinois law had "superseded" *comment d* of § 36 of the Restatement, Plaintiff relied exclusively on an unpublished case with no relevant precedential value that in fact comported with *comment d*. It is impermissible to ascribe nonexistent holdings to cases, or to claim that a non-precedential case establishes precedent.

Plaintiff's false imprisonment claim also hinges on his argument that 625 ILCS 5/4-201 would have made it illegal for Plaintiff to exit his car during the blockade. But for the reasons discussed above, that is not correct. Rule 11 imposes a duty on parties to conduct a "reasonable inquiry into the law." *Brown,* 830 F.2d at 1435. It does not reflect a reasonable inquiry into the law for Plaintiff to premise his claim for false imprisonment on a section of the Illinois Vehicle Code that pertains to abandoning vehicles without being aware of how the Illinois Vehicle Code defines an abandoned vehicle.

Plaintiff's arguments with respect to Count II also do not evince a reasonable inquiry into the law. Plaintiff's brief describes Count II as representing at least three different potential causes of action: one premised on a violation of a public safety

statute, one (articulated only in a footnote) premised on a common-law negligence claim[11], and one arguing that the Court should imply a right of action into the Illinois Vehicle Code. None of these causes of action are identified with any degree of specificity in the SAC and each fails for the reasons discussed above. And when Defendants pointed to controlling law that, for example, the Court could *not* imply a private right of action into a statute unless that statute would be otherwise ineffective, Plaintiff's response was to ignore that law and to misrepresent the text of the Illinois Vehicle Code. *See* [91] at 28-29 (arguing that 625 ILCS § 5/16-102 applies only to Chapter 16 of the Illinois Vehicle Code despite it saying otherwise).

Defendants raised many of these exact arguments in draft Rule 11 motions that were shared with Plaintiff in response to earlier versions of the complaint that contained claims for violations of the Illinois Vehicle Code. *See* [59-1] at 12 (explaining that a private plaintiff could not bring a claim for a violation of the relevant portion of the Illinois Vehicle Code). Presumably in response those draft motions, Plaintiff dropped his statutory violation claim from the SAC and replaced it with the common law claim premised on the violation of a public safety statute. But in his response brief, Plaintiff functionally revived the claim by arguing in the alternative that a right should be implied, despite simultaneously arguing that he "***does not plead an implied cause of action***." [91] at 27 (emphasis in original). Plaintiff's confusing defense of Count II leaves the Court with the definite conclusion

---

[11] Further, to the extent that Plaintiff intended Count II as a negligence claim, Plaintiff ignored Defendants' correct argument that Count V would necessarily fail because a claim for negligence cannot support conspiracy claim, something which Plaintiff would have known after a reasonable inquiry into the law. *Rogers v. Furlow*, 699 F. Supp. 672, 675 (N.D. Ill. 1988)

that he adopted a "throw spaghetti at the wall and see what sticks" approach. Rule 11 requires more rigor than that. Plaintiff's counsels' actions forced Defendants to spend time and money shadowboxing a myriad of possible arguments to support a legal theory that Plaintiff was not able to sufficiently articulate himself.

Separately, and as explained above, the Court agrees with Plaintiff that the ICPA cannot be applied in federal court. Plaintiff argued both that the *Shady Grove* doctrine precluded ICPA application and, in the alternative, that even if it could be applied the ICPA did not reach Plaintiff's conduct in this case. In making the latter argument, Plaintiff cited to the Seventh Circuit's decision in *Intercon Solutions* in support of the proposition that "the [ICPA] is not a defense to intentional torts." [91] at 14 (citing 791 F.3d at 731-33). Plaintiff also argued that in *Intercon Solutions*, the court "strongly hinted its skepticism of [the ICPA]'s validity." [91] at 22. But in that case, the Seventh Circuit said almost nothing about ICPA other than noting that it was *not at issue*. 791 F.3d at 732.[12] Rather, the Seventh Circuit considered whether Washington's anti-SLAPP statute could be applied in federal court. *Id*. The court ultimately decided that the issue was moot because while the appeal was pending, Washington's supreme court held that the statute was unconstitutional. *Id*.

---

[12] The entirety of the Seventh Circuit's discussion of the ICPA is reproduced below:

> Illinois has its own anti-SLAPP statute . . . which creates a qualified immunity that can be resolved in federal court on a motion for summary judgment or at trial. [The ICPA] contains a few procedural rules, but they differ from [the Washington statute], and [appellee] has not invoked them; indeed, it does not mention the Illinois statute at all.) We therefore arrive at the same outcome as the district court, but on the holding of *Davis* rather than the district court's reasons. This circuit's resolution of questions about how the procedural aspects of other states' anti-SLAPP statutes work in federal court will have to await some other case.

Of a similar vein, while arguing that the ICPA cannot be used in federal court, Plaintiff falsely attributed a quote to the Illinois Supreme Court. Plaintiff wrote that in *Sandholm*, "[t]he Illinois Supreme Court itself calls [the ICPA] a 'procedural tool.'" [91] at 20 (purporting to quote *Sandholm*, 962 N.E.2d at 429). This quote does not exist in *Sandholm* and, beyond citing to Illinois's rules of civil procedure, *Sandholm* does not comment on whether the ICPA is a procedural or substantive tool. The Court cannot find any other case in Illinois that calls the ICPA a "procedural rule."

Plaintiff's counsel Theodore Frank filed a declaration with the Court urging that the Court deny Defendants' motions for sanctions. [92-1]. In his declaration, Mr. Frank described his longstanding and successful practice of bringing novel theories and questions of first impression before courts. He further urged that he would not bring a frivolous lawsuit, and that he has been contemplating the legal theories that led to this lawsuit since at least 1999. The Court appreciates that Mr. Frank has a genuine and personal concern with Defendants' alleged conduct. But that concern does not give Plaintiff *carte blanche* to make frivolous legal arguments, ignore controlling precedent, and misrepresent existing law in support of his case.

Defendants sent Plaintiff multiple draft Rule 11 motions explaining the flaws in Plaintiff's legal theories. Instead of taking heed, Plaintiff doubled down on arguments that a reasonable inquiry into the law would have revealed were baseless. That, combined with the inflammatory allegations in this case, evince Plaintiff's intent to harass rather than a genuine desire to vindicate any violated rights. Accordingly, Defendants' motions for sanctions [71, 76] pursuant to Rule 11 are granted.

## I. Dismissal with Prejudice

For similar reasons, the SAC is dismissed with prejudice. While it is common to grant a plaintiff leave to amend their complaint, dismissal with prejudice is appropriate when any amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 520 (7th Cir. 2015). Dismissal is also appropriate where the action is "intended to harass." *Showers v. Spectrum Charter Commc'ns*, No. 1:24-CV-00242-SEB-KMB, 2024 WL 5108157, at *2 (S.D. Ind. Dec. 12, 2024) (citing *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013)). Dismissal with prejudice is thus appropriate here.

## II. Conclusion

For the reasons stated herein, Defendants' motions to dismiss [73, 75, 78, 80, 82] are granted in part and denied in part. They are granted insofar as they seek to dismiss the SAC for failure to state a claim under Rule 12(b)(6). They are denied to the extent they seek relief under the ICPA. Defendants Tides Center [71] and Individual Defendants' and Dissenters' [76] motions for sanctions pursuant to Rule 11 are granted. Defendants' motions to strike [77] and NSJP's motion to join the motion to strike [81] are denied as moot. Civil case terminated.

E N T E R:

Dated: August 7, 2025

_____
MARY M. ROWLAND
United States District Judge